UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


Shirley Tabb                              )
200 K Street, NW, Apt. 618               )
Washington, D.C. 20001                   )
                                         )
                                         )
           Plaintiff,                    )
     v.                                  )
                                         )
District of Columbia                     )     Case No. _____
1350 Pennsylvania Ave., NW               )
Washington, D.C.                         )     (Complaint pursuant to 42 U.S.C. §
                                         )     1983 - Violation of Rights Protected by
Brenda Donald Walker                     )     the U.S. Constitution and other claims)
1750 Poplar Lane, NW                     )
Washington, D.C.  20012                  )
                                         )
Mindy Good                               )
5112 Dudley Lane, Apt. 201               )
Bethesda, Maryland 20814                 )
                                         )
_____  )
           Defendants.                   )


## COMPLAINT


1.      This case involves the violation of Plaintiff Shirley Tabb's rights to freedom of

speech and due process pursuant to the First Amendment and Fifth Amendment of the

U.S. Constitution, violation of federal civil rights (42 U.S.C. § 1985),  violation of rights

secured by the Family and Medical Leave Acts of the United States and District of

Columbia, and violations of the District's Whistleblower Protection Act.  Plaintiff seeks

damages, declaratory and injunctive relief, attorneys' fees and costs.

Complaint

## JURISDICTION

2.      This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) and (b), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

## VENUE

3.      The events described herein predominately took place in Washington, D.C.; venue is therefore proper pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

4.      Plaintiff requests a jury trial on all matters that can be decided by a jury.

## PARTIES

5.      Plaintiff Shirley Tabb is an adult resident of the District of Columbia.  Ms. Tabb was an employed by the District's Child and Family Services Agency (CFSA) before she was summarily and illegally terminated.

6.      Defendant District of Columbia ("District") is the government of the District of Columbia.

7.      The District of Columbia's Child and Family Services Agency ("CFSA"), a cabinet-level agency of Defendant District of Columbia, is charged to administer the child welfare support system and to ensure the safety and well being of the children residing within the District of Columbia.  CFSA is subject to the ongoing jurisdiction of

Complaint

- 2 -

this Court pursuant to the terms of a Consent Decree entered in a class action lawsuit brought by and on behalf of all children subject to the authority of CFSA. The Court has imposed stringent requirements on CFSA and the District, including the establishment of CFSA as a cabinet-level agency of the District. *See, LaShawn v. Williams*, Civil Action No. 89-1754 (D.D.C. 2000).

8.      At all times relevant to this Complaint, Defendant Mindy Good was an employee of the District of Columbia CFSA and was Plaintiff's immediate supervisor. Defendant Good is presently employed at CFSA. Defendant Good is a resident of Bethesda, Maryland.

9.      At all times relevant to this Complaint, Defendant Brenda Donald Walker was the Director of CFSA. Director Walker was charged with managing CFSA to ensure that the agency meets its obligations to the families and children of the District who come under the agency's care. See, *e.g.*, D.C. Code § 4-1303.03. Defendant Walker was involved in decisions and actions taken that are the subject of this litigation. She is being sued in her individual capacity. Defendant Walker is a resident of the District of Columbia.

<u>**FACTS COMMON TO ALL COUNTS**</u>

10.     In 1992, Plaintiff Shirley Tabb was hired as a Social Worker by the District's Department of Human Services Child & Family Services Division, which is now CFSA.

11.     Plaintiff Tabb's educational background includes a Bachelor of Arts degree and a Master of Social Work (MSW) degree. Plaintiff is a licensed independent social worker (LICSW).

Complaint

12.     During her career at CFSA, Plaintiff was promoted to the position of Supervisory Social Worker, then to the position of Public Affairs Specialist.

13.     In early July 2005, the Plaintiff met with Defendant Walker and discussed the lack of emergency foster home resources that had resulted in children sleeping in the CFSA office building.

14.     During the meeting, the Plaintiff asked Defendant Walker if she could use her social work and marketing skills to recruit emergency homes in the faith-based community.   In addition, the Plaintiff suggested that she could assume senior level responsibility over two poorly performing recruitment units that the agency depends upon for placement resources.  Defendant Walker rejected the Plaintiff's suggestions.

15.     Following the July 2005 meeting with Defendant Walker, children continued to sleep in the CFSA office building.

16.     On August 15, 2005, Plaintiff Tabb communicated with Susan Newman, senior advisor, Religious Affairs, Executive Office of the Mayor.    Plaintiff advised Ms. Newman that (a) CFSA had children sleeping in the building for lack of foster home resources; (b) she wanted the opportunity to do something about it, and ( c ) she recommended to Defendant Walker emergency placement of children at the Holiday Inn a few blocks from the CFSA office building.  The Plaintiff also discussed the recruitment of emergency foster homes in the faith-based community with Ms. Newman.

17.     On August 18, 2005, Plaintiff received an official admonition from Defendant Mindy Good.  Defendant Good admonished the Plaintiff for speaking to Susan

Newman about children sleeping in the CFSA office building and her desire to implement some emergency plan to address the problem.  In support of her admonishment, Defendant Good also referenced that the Plaintiff had contacted a public information officer at the D.C. Department of Human Services (DHS) in March 2005 about developing a campaign to increase awareness around child abuse and neglect, reviving the Back to Sleep Campaign and other projects.

18.     In response, on August 18, 2005, the Plaintiff submitted a ten-page, written rebuttal to Defendant Good's  admonition.  In her rebuttal, the Plaintiff stated, in part, "[w]e are breaking the law when children sleep in the agency."  The Plaintiff also stated that "[w]e remove children from neglectful and abusive situations, only to bring them into another neglectful, abusive and degrading situation (in our custody)."

19.     Despite the Plaintiff's detailed responses to Defendant Good's admonition, a review of the admonition by then-Administrator for Intake and Investigations, Heather Stowe, resulted in a final decision approving the admonition.  Approval of the admonition made it an official reprimand, which was placed in the Plaintiff's personnel file.  The admonition was approved by Ms. Stowe on August 22, 2005.

20.     In September 2005, having failed to get any positive response from CFSA management, the Plaintiff contacted then-Deputy Mayor Neil Albert.  Deputy Mayor Albert was responsible for the performance of CFSA and other social service agencies.

21.     In her communications with Deputy Mayor Albert, the Plaintiff shared her desire to transfer from CFSA to DHS and develop a faith-based recruitment and community awareness project.

Complaint

22.    The Plaintiff also communicated to Deputy Mayor Albert that children were sleeping in the CFSA office building.  Plaintiff shared pictures of children sleeping in the building with the Deputy Mayor.  She also advised the Deputy Mayor Albert that a placement worker had advised the Plaintiff that intake social workers were not calling potential foster families after 12 midnight or 1 a.m. to secure placements for children because it was too late.

23.    Deputy Mayor Albert provided no substantive response to Plaintiff Tabb's concerns.   Nor, did the Deputy Mayor provide further assistance to the Plaintiff with her faith-based recruitment and community awareness project.

24.    In mid-September 2005, while on medical leave, the Plaintiff received a telephone message from a social worker colleague who reported that she had six children in the office one night and only one blanket.  The social worker asked if Plaintiff Tabb could provide some comforters.

25.    CFSA management's failure to address the problem of children sleeping in the CFSA office building prompted the Plaintiff to take action to bring further attention to the issue.  Plaintiff contacted the media to alert them to the problem.  The media reported that children were sleeping in the CFSA office building.

26.    On September 19 and 20, 2005, WUSA-TV did three news stories on the issue. Each story included interviews of the Plaintiff. Two of the stories played the voice mail of the Plaintiff's colleague asking for comforters for children at CFSA.   WJLA-TV also carried the story.

Complaint

27.    In response to the WUSA-TV reports, Defendant Mindy Good stated that children sleeping in the CFSA office building was "totally unacceptable."  CFSA's Principal Deputy Director Uma Ahlualia was also filmed providing a response to the news stories.

28.    On October 3, 2005, while the Plaintiff was still on medical leave, Defendant Walker issued a "Notice of Summary Removal."  The Notice stated, in part, that "effective October 3, 2005 . . . [the Plaintiff was] summarily removed from . . . [her] position of Public Relations Specialist in the Child and Family Services Agency, Office of Public Information (CFSA OPI)."

29.    Defendant Walker's Notice cited, in part, (a) Plaintiff's use of the CFSA e-mail system to "approach another government agency about an unauthorized campaign to raise awareness about child abuse and neglect . . ." in March 2005; and (b) that on or about September 19, 2005 the Plaintiff "misrepresented agency practice to the media; violated CFSA confidentiality laws in showing the image of a child in CFSA's custody." However, no identifying characteristics of the child in the photograph were shown.

30.    The Plaintiff was given no advance notice of her removal and no opportunity to contest the allegations raised against her pre-termination.

31.    At the time of her termination, Plaintiff Tabb's pay grade was DS-14, step 6, which earned her an annual salary of $92,848.00.

Complaint

**VIOLATIONS OF PLAINTIFFS'**
**RIGHTS UNDER THE U.S. CONSTITUTION**
**PURSUANT TO 42 U.S.C. § 1983**

**Count I - Defendant District of Columbia's Violation**
**of Plaintiff's First Amendment Rights**

32.     Plaintiff re-alleges and restates paragraphs 1 - 31 herein.

33.     Plaintiff spoke out on matters of public concern when she raised concerns to CFSA management, other District Government Officials, and the media about the adequacy of the agency's placement program, including specific concerns about children having to sleep in the CFSA office building because there was no timely and appropriate placement for them.

34.     The laws of the District of Columbia make clear that the Plaintiff has a right "to freely express . . . [her] opinions on all public issues, including those related to the duties . . . [she was] assigned to perform."  D.C. Code § 1-615.58(1).  Moreover, pursuant to District law, the Plaintiff has a right "to disclose information unlawfully suppressed, information concerning illegal or unethical conduct which threatens or which is likely to threaten public health or safety . . ."   D.C. Code § 1-615.58(2).

35.     Plaintiff's concerns about the inappropriate placement of children brought into CFSA's care, including the issue of children sleeping in the CFSA office building,  were issues of interest to the this Court in the *LaShawn A.* class action litigation, the Court Monitor, the child advocacy community, and the general public.   The Plaintiff's concerns were not expressed in a manner that was disruptive to the operation of CFSA. In fact, the Plaintiff only brought the issue of children sleeping in the CFSA office building to the media when several attempts to address the problem with CFSA management, including Defendant Walker, resulted in no immediate action.

Complaint

36.     Plaintiff's speaking out about children sleeping in the CFSA office building was a substantial, motivating factor in the actions taken against her, including her summary termination.  On or about September 19, 2005, Plaintiff raised concerns with the media regarding the issue of children sleeping in the CFSA office building.  Within two weeks of speaking out about the issue, and without any notice or opportunity to be heard, Defendant Walker summarily terminated the Plaintiff.

37.     Defendant Walker is a policy making official within the District of Columbia government.  At the time of the Plaintiff's summary termination, Defendant Walker was the Director of CFSA.  Presently, Defendant Walker is the Deputy Mayor in charge of CFSA and other human resource agencies.

38.     Defendant Walker directly retaliated against the Plaintiff because she raised concerns about the timely and appropriate placement of children, including the problem of children sleeping in the CFSA office building.  Defendant Walker's actions against the Plaintiff were condoned and/or ratified by Defendant District of Columbia. Such retaliation is a deliberate violation of the Plaintiff's rights under the First Amendment of the U.S. Constitution, proximately causing injury to the Plaintiff. Therefore, Defendant District of Columbia is liable to the Plaintiff for violations of her civil rights under 42 U.S.C. § 1983.

### Count II - Defendant Brenda Donald Walker's Violation
### of Plaintiff's First Amendment Rights

39.     Plaintiff re-alleges and restates paragraphs 1 - 38 herein.

40.     Defendant Walker violated Plaintiff's rights under the First Amendment when

Complaint

she summarily terminated the Plaintiff for raising concerns about the timely and appropriate placement of children that come into CFSA's care, including the concern about children sleeping in the CFSA office building.

41.    Well established precedent in the District of Columbia holds that the Plaintiff has a First Amendment right to speak out on matters of concern that involve the propriety of government action and protection of the health and safety of vulnerable citizens such as children.   Plaintiff's right to speak out on such issues has been codified in District of Columbia law.  D.C. Code § 1-615.58.

42.    Defendant Walker was aware of Plaintiff's rights were clearly established by law and precedent.  Despite this knowledge, Defendant Walker took action to retaliate against the Plaintiff and violate her First Amendment rights.

43.    Such retaliation is a deliberate violation of the Plaintiff's rights under the First Amendment of the U.S. Constitution, proximately causing injury to the Plaintiff. Therefore, Defendant Walker is liable to the Plaintiff for violations of her civil rights under 42 U.S.C. § 1983.

44.    Defendant Walker's conduct as described herein was intentional, willful, malicious and reckless.  Plaintiff is entitled to an award of punitive damages against Defendant Walker in her individual capacity.

### Count III - Defendant District of Columbia's Violation of Plaintiff's Fifth Amendment Right to Due Process

45.    Plaintiff re-alleges and restates paragraphs 1 - 44 herein.

Complaint

46.    The Plaintiff was a career employee at CFSA with a significant interest in her continued employment.  The Plaintiff has a property interest in her career employment at CFSA.

47.    On October 3, 2005, the District of Columbia summarily terminated the Plaintiff without any pre-termination process.    Plaintiff was not given any opportunity pre-termination to rebut or challenge the allegations made against her and in support of her termination.

48.    Defendant Walker's actions against the Plaintiff were condoned and/or ratified by Defendant District of Columbia.  Such retaliation and violation of the Plaintiff's Fifth Amendment right to due process is a deliberate violation of the Plaintiff's rights under the U.S. Constitution, proximately causing injury to the Plaintiff.  Therefore, Defendant District of Columbia is liable to the Plaintiff for violations of her civil rights under 42 U.S.C. § 1983.

### Count IV - Defendant Brenda Donald Walker's Violation of Plaintiff's Fifth Amendment Right to Due Process

49.    Plaintiff re-alleges and restates paragraphs 1 - 48.

50.    Defendant Walker violated Plaintiff's rights under the Fifth Amendment when she summarily terminated the Plaintiff without any pre-termination due process. Defendant Walker was aware at all times relevant to this Complaint that the Plaintiff was a union member and career employee with a property interest in her job and significant procedural and substantive rights regarding the terms and conditions of her employment.

Complaint

51.     Well established precedent in the District of Columbia holds that the Plaintiff has a Fifth Amendment right to due process prior to any action to terminate her employment.

52.     Defendant Walker was aware of Plaintiff's rights were clearly established by law and precedent.  Despite this knowledge, Defendant Walker took action to retaliate against the Plaintiff and violate her Fifth Amendment rights.

53.     Such retaliation is a deliberate violation of the Plaintiff's rights under the Fifth Amendment of the U.S. Constitution, proximately causing injury to the Plaintiff. Therefore, Defendant Walker is liable to the Plaintiff for violations of her civil rights under 42 U.S.C. § 1983.

54.     Defendant Walker's conduct as described herein was intentional, willful, malicious and reckless.  Plaintiff is entitled to an award of punitive damages against Walker in her individual capacity.


### VIOLATIONS OF THE D.C. WHISTLEBLOWER PROTECTION ACT

**Count V - Defendant District of Columbia's Violation
of Plaintiff's Rights Pursuant to the D.C. Whistleblower Protection Act**

55.     Plaintiff re-alleges and restates paragraphs 1 - 54 herein.

56.     On October 21, 2005, counsel for the Plaintiff hand delivered a letter to Defendant Walker advising that the Plaintiff was contesting her termination under the U.S. Constitution, D.C. Whistleblower Protection Act, and family and medical leave

Complaint

acts.  Further, on November 10, 2005, counsel for the Plaintiff submitted a letter to the
D.C. Office of Risk Management indicating that the Plaintiff had been injured as a result
of her wrongful termination.  The letter advised that the Plaintiff's claims included
violations of  the U.S. Constitution, D.C. Whistleblower Protection Act, and family and
medical leave acts.  On November 28, 2005, the D.C. Office of Risk Management (ORM)
acknowledged the Plaintiff's claim.  Thereafter, ORM declined to take any action to
settle or otherwise resolve the Plaintiff's claims.   The Plaintiff has satisfied the notice
requirements of D.C. Code § 12-309.

57.    Plaintiff made protected disclosures under the D.C. Whistleblower Protection
Act (D.C. Code §§ 1-615.51 - 1-615.58) when she raised concerns to CFSA management,
other District Government Officials, and the media about the adequacy of the agency's
placement program, including specific concerns about children having to sleep in the
CFSA office building because there was no timely and appropriate placement for them.

58.    The laws of the District of Columbia make clear that the Plaintiff has a right "to
freely express . . . [her] opinions on all public issues, including those related to the
duties . . . [she was] assigned to perform."  D.C. Code § 1-615.58(1).  Moreover, pursuant
to District law, the Plaintiff has a right "to disclose information unlawfully suppressed,
information concerning illegal or unethical conduct which threatens or which is likely
to threaten public health or safety . . ."    D.C. Code § 1-615.58(2).

59.    Plaintiff's concerns about the inappropriate placement of children brought into
CFSA's care, including the issue of children sleeping in the CFSA office building,  were
issues of interest to the this Court in the *LaShawn A.* class action litigation, the Court
Monitor, the child advocacy community, and the general public.   The Plaintiff's
concerns were not expressed in a manner that was disruptive to the operation of CFSA.

Complaint

In fact, the Plaintiff only brought the issue of children sleeping in the CFSA office building to the media when several attempts to address the problem with CFSA management, including Defendant Walker, resulted in no immediate action.

60.    Plaintiff's speaking out about children sleeping in the CFSA office building was a contributing factor in the personnel actions taken against her, including her summary termination.  On or about September 19, 2005, Plaintiff raised concerns with the media regarding the issue of children sleeping in the CFSA office building.  Within two weeks of speaking out about the issue publicly, and without any notice or opportunity to be heard, Defendant Walker summarily terminated the Plaintiff.

61.    Defendant Walker is a policymaking official within the District of Columbia government.  At the time of the Plaintiff's summary termination, Defendant Walker was the Director of CFSA.  Presently, Defendant Walker is the Deputy Mayor in charge of CFSA and other human resource agencies.

62.    Defendant Walker retaliated against the Plaintiff because she raised concerns about the timely and appropriate placement of children, including the problem of children sleeping in the CFSA office building.  Defendant Walker's actions against the Plaintiff were condoned and/or ratified by Defendant District of Columbia. Such retaliation is a deliberate violation of the Plaintiff's rights under the D.C. Whistleblower Protection Act, proximately causing injury to the Plaintiff.  Therefore, Defendant District of Columbia is liable to the Plaintiff for the personnel actions taken against her, including her termination.

Complaint

### Count VI - Defendant Brenda Donald Walker's Violation
### of Plaintiff's Rights Pursuant to the D.C. Whistleblower Protection Act

63.     Plaintiff re-alleges and restates paragraphs 1 - 62 herein.

64.     As previously stated, the Plaintiff has satisfied the notice requirements of D.C. Code § 12-309.

65.     Plaintiff made protected disclosures under the D.C. Whistleblower Protection Act (D.C. Code §§ 1-615.51 - 1-615.58) when she raised concerns to CFSA management, other District Government Officials, and the media about the adequacy of the agency's placement program, including specific concerns about children having to sleep in the CFSA office building because there was no timely and appropriate placement for them.

66.     The laws of the District of Columbia make clear that the Plaintiff has a right "to freely express . . . [her] opinions on all public issues, including those related to the duties . . . [she was] assigned to perform." D.C. Code § 1-615.58(1).  Moreover, pursuant to District law, the Plaintiff has a right "to disclose information unlawfully suppressed, information concerning illegal or unethical conduct which threatens or which is likely to threaten public health or safety . . ."    D.C. Code § 1-615.58(2).

67.     Plaintiff's concerns about the inappropriate placement of children brought into CFSA's care, including the issue of children sleeping in the CFSA office building,  were issues of interest to the this Court in the *LaShawn A.* class action litigation, the Court Monitor, the City Council, the child advocacy community, and the general public.   The Plaintiffs concerns were not expressed in a manner that was disruptive to the operation of CFSA.   In fact, the Plaintiff only brought the issue of children sleeping in the CFSA office building to the media when several attempts to address the problem with CFSA

Complaint

- 15 -

management, including Defendant Walker, resulted in no action.

68.     Plaintiff's speaking out about children sleeping in the CFSA office building was a contributing factor in the personnel actions taken against her, including her summary termination.  On or about September 19, 2005, Plaintiff raised concerns with the media regarding the issue of children sleeping in the CFSA office building.  Within two weeks of speaking out about the issue, and without any notice or opportunity to be heard, Defendant Walker summarily terminated the Plaintiff.

69.     Defendant Walker was aware that Plaintiff's rights were clearly established by law.  Despite this knowledge, Defendant Walker took action to retaliate against the Plaintiff and violate the D.C. Whistleblower Protection Act (D.C. Code §§ 1-615.51 - 1-615.58).

70.     Such retaliation is a deliberate violation of the Plaintiff's rights under the D.C. Whistleblower Protection Act, proximately causing injury to the Plaintiff.  Therefore, Defendant Walker is liable to the Plaintiff for violations of the D.C. Whistleblower Protection Act.


### Count VII - Defendant Mindy Good's Violation
### of Plaintiff's Rights Pursuant to the D.C. Whistleblower Protection Act

71.     Plaintiff re-alleges and restates paragraphs 1 - 70 herein.

72.     The Plaintiff has satisfied the notice requirements of D.C. Code § 12-309.

73.     Plaintiff made protected disclosures under the D.C. Whistleblower Protection

Complaint

Act (D.C. Code §§ 1-615.51 - 1-615.58) when she raised concerns to CFSA management, other District Government Officials, and the media about the adequacy of the agency's placement program, including specific concerns about children having to sleep in the CFSA office building because there was no timely and appropriate placement for them.

74.    The laws of the District of Columbia make clear that the Plaintiff has a right "to freely express . . . [her] opinions on all public issues, including those related to the duties . . . [she was] assigned to perform."  D.C. Code § 1-615.58(1).  Moreover, pursuant to District law, the Plaintiff has a right "to disclose information unlawfully suppressed, information concerning illegal or unethical conduct which threatens or which is likely to threaten public health or safety . . ."    D.C. Code § 1-615.58(2).

75.    Plaintiff's concerns about the inappropriate placement of children brought into CFSA's care, including the issue of children sleeping in the CFSA office building,  were issues of interest to the this Court in the *LaShawn A.* class action litigation, the Court Monitor, the City Council, the child advocacy community, and the general public.   The Plaintiffs concerns were not expressed in a manner that was disruptive to the operation of CFSA.   In fact, the Plaintiff only brought the issue of children sleeping in the CFSA office building to the media when several attempts to address the problem with CFSA management, including Defendant Walker, resulted in no immediate action.

76.    Plaintiff's speaking out about children sleeping in the CFSA office building was a contributing factor in the personnel actions taken against her, including her summary termination.  On or about September 19, 2005, Plaintiff raised concerns with the media regarding the issue of children sleeping in the CFSA office building.  Within two weeks of speaking out about the issue, and without any notice or opportunity to be heard, Defendant Walker summarily terminated the Plaintiff.

Complaint

77.     Defendant Good conspired and collaborated with Defendant Walker in executing the Plaintiff's summary termination.

78.     In addition, prior to Plaintiff's termination, Defendant Good discriminated and retaliated against the Plaintiff by alleging that the Plaintiff's performance was substandard.  Plaintiff's performance was not substandard.

79.     Defendant Good was aware that Plaintiff's rights were clearly established by law. Despite this knowledge, Defendant Good took action to retaliate against the Plaintiff and violate the D.C. Whistleblower Protection Act (D.C. Code §§ 1-615.51 - 1-615.58).

80.     Such retaliation is a deliberate violation of the Plaintiff's rights under the D.C. Whistleblower Protection Act, proximately causing injury to the Plaintiff.  Therefore, Defendant Good is liable to the Plaintiff for violations of the D.C. Whistleblower Protection Act.

### VIOLATION OF D.C. AND FEDERAL
### FAMILY AND  MEDICAL LEAVE STATUTES

### Count VIII - Defendant District of Columbia's Violation of the
### Federal and District of Columbia Family and Medical Leave Acts

81.     Plaintiff re-alleges and restates paragraphs 1 - 80 herein.

82.     As stated previously, the Plaintiff has satisfied the notice requirements of D.C. Code § 12-309.

83.     On or about August 18, 2005, the Plaintiff began medical leave.  Plaintiff took

Complaint

leave because she was suffering medical complications associated with diabetes.

84.    Plaintiff completed CFSA's family and medical leave  application and had her primary care  physician certify her medical condition and need for leave.

85.    Subsequent to Plaintiff completing and submitting her family and medical leave application, she received approval to take leave.

86.    Plaintiff's approved leave covered the period September 19, 2005 through October 7, 2005.

87.    In violation of Plaintiff's rights under the District's family and medical leave statute, the Defendants discriminated against and retaliated against the Plaintiff by terminating her during her period of approved leave.   The Defendants retaliated against the Plaintiff because she was on approved medical leave and sought to cause serious injury to the Plaintiff by initiating unjustified personnel actions while she was on medical leave.  The Defendants discriminatory and retaliatory actions proximately caused injury to the Plaintiff resulting in damages, attorneys' fees, and costs.

88.    In violation of Plaintiff's rights under the federal family and medical leave statute, the Defendants discriminated against and retaliated against the Plaintiff by terminating her during her period of approved leave.   The Defendants retaliated against the Plaintiff because she was on approved medical leave and sought to cause serious injury to the Plaintiff by initiating unjustified personnel actions while she was on medical leave.  The Defendants discriminatory and retaliatory actions proximately caused injury to the Plaintiff resulting in damages, attorneys' fees, and costs.

Complaint

## <u>VIOLATION OF 42 U.S.C. § 1985</u>

### Count IX - Defendants Walker and Good Conspired to Discourage or Prevent the Plaintiff from Testifying in the *LaShawn A.* Litigation or from Providing Information to the Court Monitor

89.    Plaintiff re-alleges and re-states paragraphs 1 - 88 herein.

90.    Defendant District of Columbia and CFSA are subject to oversight from this Court in the *LaShawn A.* class action litigation.  One of the areas frequently reviewed by the Court is CFSA's ability to competently address intake and investigations.

91.    When children come into care through intake best practice requires that they be placed in an appropriate setting.  In most cases, it is not best practice for children to spend three to four hours at CFSA awaiting an appropriate placement.  Nor, is it best practice for children to sleep overnight in the CFSA office building.

92.    Defendants Walker and Good conspired together and with others to harass, intimidate and retaliate against Plaintiff Tabb in an effort to keep her from testifying before or reporting to the Court or Court Monitor in the *LaShawn A.* class action litigation that children were sleeping in the CFSA office building.

93.    Defendants conspiracy included efforts to destroy the Plaintiff's reputation with others in order to diminish her credibility and professional standing in the community.  Such actions are designed to minimize the impact of the Plaintiff's disclosures with the Court and Court Monitor.   Defendants' acts of retaliation and intimidation violate 42 U.S.C. § 1985(2).

Complaint

94.     As a result of the Defendants participation in a conspiracy to prevent the Plaintiff

from testifying or reporting information to the Court or Court Monitor in the *LaShawn*

*A.* class action litigation, the Plaintiff has suffered and will continue to suffer stress,

anxiety, damage to her reputation, loss of employment, and other injuries.

95.     The conduct of Defendants Walker and Good as described herein was

intentional, willful, malicious, and reckless.  Plaintiff is entitled to an award of punitive

damages against Defendants Walker and Good in their individual capacities.

## RELIEF REQUESTED

96.     WHEREFORE, Plaintiff prays that the Court provide the following relief:

(A)     An order declaring that the Defendants have violated Plaintiff's First and
         Fifth Amendment rights under the U.S. Constitution;

(B)     An order declaring that the Defendants have violated the District of
         Columbia Whistleblower Protection Act (D.C. Code §§ 1-615.51 - 1-615.58);

( C)     An order declaring that Defendant Brenda Donald Walker violated D.C.
         Code § 1-615.53;

(D)     An order declaring that Defendant Mindy Good violated D.C. Code § 1-
         615.53;

(E)     An order requiring that the Defendant District of Columbia take
         appropriate disciplinary action, including the possibility of dismissal,

Complaint

- 21 -

against Defendants Good and Walker;

(F)     An order requiring Defendant Walker to pay a civil fine of $1,000.00 for her violation of D.C.  Code § 1-615.53;

(G)     An order requiring Defendant Good to pay a civil fine of $1,000.00 for her violation of D.C.  Code § 1-615.53;

(H)     An order declaring that Defendants Walker and Good violated 42 U.S.C. § 1985(2).

( I )     An order declaring that the Defendants have violated the Federal and District family and medical leave statutes;

(J)     An order reinstating the Plaintiff to her previous position along with salary and benefits to which she would be entitled had she been continuously employed;

(K)     An award to the Plaintiff of lost wages, economic, compensatory and punitive damages in the amounts appropriate to the proof adduced at trial along with prejudgment and post-judgment interest;

(L)     Pursuant to the District's Family and Medical Leave law (D.C. Code § 32-509(b)(6) & (7)), an award to the Plaintiff of an amount not less than three times her lost salary, employment benefits, or other compensation denied or lost due to the violation plus interest on the amount calculated at the rate prescribed in D.C. Code §  28-3302(b) or ( c);

Complaint

(M)    An award of Plaintiff's reasonable attorneys' fees, expert witness fees, costs and expenses; and

(N)    Such other relief as the Court or Jury may deem just or appropriate.

DATED this 28th day of April, 2006.

Respectfully submitted,

_____
Richard E. Condit, Esq.
D.C. Bar No. 417786
2000 P Street, NW, Suite 240
Washington, D.C.  20036-6924
Telephone: (202) 265-7337 ext. 231
Fascimile: (202) 318-3211
Email: r1condit1@earthlink.net

Complaint

- 23 -