UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Shirley Tabb, | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| District of Columbia; | ) |
| Brenda Donald Walker; | ) |
| Mindy Good. | )     Civil Action No. 06-00789 (PLF) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

I.    **Standards for Adjudicating a Rule 12(b)(6) Motion**

When adjudicating a motion to dismiss filed pursuant to Fed.R.Civ.P., Rule 12(b)(6), the Court must view the Plaintiffs' Complaint following "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (footnote omitted); see also *Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C. Cir. 1987). "This Court 'must accept the facts pleaded as true and construe them in a light favorable to plaintiffs.' *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir.1983)." *Covad Communications Co. v. BellSouth*, 299 F.3d 1272, 1279 (11th Cir. 2002). "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 514, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)). Finally, in considering a Rule 12(b)(6) motion, the Court is not permitted to rely upon evidence outside the pleadings. Rule 12(b); *Morrison v. Amway Corp.*, 323 F.3d 920 (11th Cir. 2003) (See, Part III of the Court's opinion).

As is articulated more fully in the discussion that follows, when applying this standard to Plaintiffs' claims, this Court must deny the Defendants' motion under Rule 12(b)(6).

**II.    Summary Judgment Standard**

This Court has also recently described the standard for assessment of motions for summary judgment.

> Summary judgment should be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See *Fed. R. Civ. P. 56*. Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*.

> In determining whether the moving party has met this burden, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000). See *Washington Post Co. v. United States Dep't of Health and Human Servs.,* 865 F.2d 320, 325 (D.C. Cir. 1989). Once the moving party makes its initial showing, however, the nonmoving party's opposition must consist of more than mere unsupported allegations or denials and must demonstrate "specific facts showing that there is a genuine issue for trial." *Celotex*

> *Corp., 477 U.S. at 324.* See *McKinney v. Dole, 246 U.S. App. D.C. 376,
> 765 F.2d 1129, 1135 (D.C. Cir. 1985).* Accordingly, at that point, the
> non-moving party is "required to provide evidence that would
> permit a reasonable [fact-finder] to find" in its favor. *Laningham v.
> United States Navy,* 259 U.S. App. D.C. 115, 813 F.2d 1236, 1242 (D.C.
> Cir. 1987).

*Lerner v. District of Columbia*, 362 F. Supp.2d 149, 158 - 159 (D.D.C. 2005).

In addition, the court may only rely upon documentary evidence

submitted in support of summary judgment that is in the court record or that has

been established as admissible. *Kempinski v. Greene,* 189 F. Supp. 877, 878 (E.D.

Pa. 1960), *aff'd,* 292 F.2d 820 (3d Cir. 1961) (exhibits that are part of court record

may be considered by court in deciding summary judgment motion; exhibits not

of record may be considered if counsel so stipulate, but are otherwise

inadmissible for purposes of deciding motion); *Pollack v. Newark, N.J.,* 147 F.

Supp. 35, 39 (D.N.J. 1956), *aff'd,* 248 F.2d 543 (3d Cir. 1957), *cert. denied,* 355 U.S.

964 (1958) ("in considering a motion for summary judgment, the court is entitled

to consider exhibits and other papers that have been identified by affidavit or

otherwise made admissible in evidence"); *See Fed. R. Civ. P.* 56(e) ("[s]worn or

certified copies of all papers or parts thereof referred to in an affidavit shall be

attached thereto or served therewith").

## ARGUMENT

III.    **The Defendants' Motion for Summary Judgment must Be Denied as No Statement of Material Facts Has Been Filed and the Documents Relied upon Are Not Admissible**

The Defendants have asked the Court to grant summary judgment and dismiss all of the Plaintiff's claims.  In order to succeed in a summary judgment motion the Defendants must file a "statement of material facts as to which the moving party contends there is no genuine issue."        Local Civil Rules 7(h) and 56.1.  The Defendants did not file a statement of facts in compliance with this Court's rules.  Therefore, they are not entitled to summary judgment and the Court should deny their motion.

Nor, can the statement of facts included in the Defendants Memorandum be deemed the equivalent of the statement of material facts required by the rules. Defendants factual allegations refer to documents and issues that are strenuously contested by the Plaintiff.  See, *e.g.*, Declaration of Shirley Tabb (attached).   No

affidavits have been filed establishing the admissibility of the documents.[1]

Defendants have failed to establish that there are no material facts in dispute.

In sum, the Defendants' motion for summary judgment is substantively

defective and should be denied by the Court.

IV.   **The District's Whistleblower Protection Act Provides a Cause of Action Against Individual Supervisors**

In its Motion, the District asserts that the D.C. Whistleblower Protection

Act (DCWPA) does not provide a cause of action against individual supervisors.

Defendants' Motion (Def. Mot.) at 7 - 9.  The Defendants misconstrue the plain

language if the DCWPA.[2]

---

[1]  Plaintiff has referred to some of the documents offered by the Defendants in support of their motion in her declaration.  However, she does not waive her objection to the admissibility of the documents and the fact that the documents referenced are not in the "record" before the Court.  *See Fed. R. Civ. P.* 56( c) (The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law).  She has had no opportunity for discovery and no record has been established that can be relied upon for summary judgment purposes.

[2]  The D.C. Court of Appeals has stated the rule applied in cases involving statutory construction. "When interpreting a statute, we first look to its plain language. Peoples Drug Stores, Inc. v. District

The Whistleblower Protection Act provides significant remedies for public employees and contractors who suffer reprisals for engaging in activities protected by the statute.  See, DCWPA, D.C. Code §§ 1-615.51 to 1-615.58.   It is clear from the plain language of the Act that supervisors may be held personally liable for engaging in unlawful retaliation.

The D.C. Council enacted the DCWPA based upon its finding  "that the public interest is served when employees of the District government are free to report waste, fraud, abuse of authority, violations of law, or threats to public health or safety without fear of retaliation or reprisal."   D.C. Code § 1-615.51.  In making this finding the Council recognized the necessity of opening the channels of communication for public employees in order to insure their participation in reform and improvement of the government.

Significantly, for the purposes of the issue raised by the Defendants, the Council formally adopted the following public policies in order to alter the status quo and demand accountability from District employees who served as supervisors/ managers.

---

of Columbia, 470 A.2d 751, 753 (D.C. 1983). If we find sections of the statute capable of more than one reading, we then search for an interpretation that makes sense of the statute as a whole. Id. at 754. While the court may turn to the legislative history to confirm that its interpretation is consistent with the legislative intent, it shall conduct such an analysis 'only where there are 'persuasive reasons' for doing so.' Id. at 754-55."  *Crawford v. District of Columbia*, 891 A.2d 216, 219 n.6 (D.C. 2006).

Accordingly, the Council declares as its policy to:

(1) **Enhance the rights of District employees to challenge the actions or failures of their agencies** and to express their views without fear of retaliation through appropriate channels within the agency, complete and frank responses to Council inquiries, free access to law enforcement officials, oversight agencies of both the executive and legislative branches of government, and appropriate communication with the public;

\*          \*          \*          \*

(3) Provide **new rights and remedies** to guarantee and ensure that public offices are truly public trusts;

(4) **Hold public employees personally accountable** for failure to enforce the laws and for negligence in the performance of their public duties;

(5) **Ensure that rights of employees to expose corruption, dishonesty, incompetence, or administrative failure are protected**;

\*          \*          \*          \*

(8) **Motivate employees to do their duties justly and efficiently.**

D.C. Code § 1-615.51 (emphasis added).   The plain language of the Council's policy directives emphasizing "new rights and remedies", holding employees "personally accountable", and motivating "employees to do their duties justly and efficiently" clearly indicates that one of the main purposes of the DCWPA is to hold supervisors/mangers personally accountable.

Turning to the operative portions of the statute, the prohibition that is emphasized is that "[a] supervisor shall not threaten to take or take a prohibited personnel action or otherwise retaliate against an employee because of the employee's protected disclosure or because of an employee's refusal to comply with an illegal order." D.C. Code § 1-615.53. Here it is important to note that the Council did not use the typical language of other whistleblower provisions by stating that "an employer shall not threaten . . ." Specifically, the Council prohibited "supervisors" from retaliating against employees who engage in protected activities.

The next section of the statute states that "An employee aggrieved by a violation of § 1-615.53 may bring a civil action . . ." D.C. Code § 1-615.54(a). The emphasis in this section is on enforcement of the prohibition against supervisors retaliating against an employee who has engaged in protected activity stated in D.C. Code § 1-615.53.

Following the enforcement section of the statute, the Council made clear how it intended to hold supervisors and other District officials who violate D.C. Code § 1-615.53 accountable. The law provides that as part of the relief in a judicial proceeding, "any supervisor, including any manager, department director, or other District official, who is found to have violated § 1-615.53 **shall**

be subject to appropriate disciplinary action including dismissal." D.C. Code § 1-615.55(a) (emphasis added). This section of the statute further emphasizes that supervisors/managers will be held accountable stating: "As part of the relief ordered in a judicial proceeding, any supervisor who is found to have violated § 1-615.53 **shall** be subject to a civil fine not to exceed $ 1000" (emphasis added).

A finding in a judicial proceeding such as this one that a supervisor/manager violated the prohibition against retaliation: (1) subjects the supervisor to mandatory discipline from her agency or the Mayor; and (2) requires the court to issue a civil fine up to $1,000. D.C. Code § 1-615.55. In fact, the statute directs that "[u]pon receipt of an adjudicative finding that a protected activity was a contributing factor in an alleged prohibited personnel action, the appropriate agency head shall immediately institute disciplinary action against the offending supervisor." D.C. Code § 1-615.58(10).

In the instant action, Ms. Tabb is requesting that the Court issue civil fines of $1,000 against Defendants Brenda Donald Walker and Mindy Good and hold them liable for their unlawful retaliation. Complaint ¶ 96. Defendants Walker and Good are necessary parties. Their dismissal from this judicial proceeding would limit the relief that Plaintiff is entitled to receive under the DCWPA.

Contrary to the plain language of the DCWPA, the Defendants argue that the statute cannot be enforced against Defendants Walker and Good. Specifically, they cite to a conclusion by a different judge of this Court who determined that "[i]n light of the structure of the Act and the absence of any legislative history demonstrating an intent by the D.C. Council to create a right of action for damages personally against supervisors, the Court finds that the Act does not create such a private right of action." *Winder v. Erste*, 2005 U.S. Dist. Lexis 5190, *27 (D.D.C. 2005) (unpublished).

However, with due respect, *Winder* is incorrectly decided. The plaintiff in *Winder* argued that the DCWPA provided an implied cause of action against individual supervisors. *Winder*, 2005 U.S. Dist. Lexis at *23. In addressing this argument, the Court incorrectly read the statute and misinterpreted it by failing to recognize the findings and policies articulated by the Council (D.C. Code § 1-615.51) and by misinterpreting D.C. Code § 1-615.55.

The Court began its analysis by stating that "[t]he structure of the statute strongly indicates that the right of action set forth in § 1-615.54 was intended to run only against the District --the pre-suit notice provision and evidentiary standards, as discussed above, apply only to the District." *Winder*, 2005 U.S. Dist. Lexis at *24. Contrary to the *Winder* Court's assessment, the enforcement

provision of the statute does not indicate that a cause of action may only be

brought against the District.   This section of the statute states:

> An employee aggrieved by a violation of § 1-615.53 may bring a
> civil action before a court or a jury in the Superior Court of the
> District of Columbia seeking relief and damages, including but not
> limited to injunction, reinstatement to the same position held before
> the prohibited personnel action or to an equivalent position, and
> reinstatement of the employee's seniority rights, restoration of lost
> benefits, back pay and interest on back pay, compensatory damages,
> and reasonable costs and attorney fees.

D.C. Code § 1-615.54(a).  This language makes clear what relief an employee may

receive for a supervisor's violation of D.C. Code § 1-615.53 and where and when

she may file her suit.  While the statute makes clear that the remedies provided

are intended to address the impacts of prohibited personnel practices [D.C. Code

§ 1-615.52(a)(5)], it does not limit recovery to such make whole remedies.

Instead, the statute states that an employee may seek "relief and damages,

including but not limited to . . . compensatory damages, and reasonable costs and

attorney fees."  D.C. Code 1-615.54(a).  The statute makes clear that an aggrieved

employee is not limited to the "relief and damages" listed in the statute.

Consequently, where appropriate, relief may be fashioned against an individual

supervisor, including an award of punitive damages.

The portion of the statute requiring notice pursuant to D.C. Code § 12-309 merely insures that notice is provided because much of the relief being sought by an employee can only be provided by the government.   This language, particularly in light of the other portions of the statute requiring supervisor/manager accountability, does not limit an employee's cause of action under the statute solely to the District of Columbia.

Instead of following the plain language and structure of the statute, the *Winder* Court reinterpreted the statute stating:

> the more reasonable reading of this provision [§ 1-615.55] is that it authorizes fines as part of the judicial relief available to the District in a judicial appeal from an OEA decision on a disciplinary action. See D.C. Code §  1-616.52(b) (providing for appeals of disciplinary actions to OEA); id. §  1-606.03(d) (providing for appeal of OEA decisions to Superior Court of the District of Columbia).  The imposition of a $ 1000 cap on fines against supervisors suggests that the D.C. Council considered the extent to which supervisors should be required to make a monetary payment for their actions, and limited it as expressly provided. [footnote omitted] It would not make sense to interpret the statute to allow a maximum fine of $ 1000 against [sic] interpret the statute to impose such a result absent a clear indication of legislative intent to this effect.

*Winder*, 2005 U.S. Dist. Lexis at *25-*26.   The "reasonable reading" the *Winder* Court articulated simply does not comport with the plain language of the statute.

The suggestion that civil fines are only authorized "as part of the judicial relief available to the District in a judicial appeal from an OEA decision on a

disciplinary action" is an interpretation that goes beyond the very structure of

the statute.  No where in the statute are civil fines connected with a "judicial

appeal from an OEA decision."  The provision of the statute that refers to civil

fines states:

> (a) As part of the relief ordered in an administrative, arbitration or judicial
> proceeding, any supervisor, including any manager, department director, or
> other District official, who is found to have violated § 1-615.53 shall be
> subject to appropriate disciplinary action including dismissal.

> (b) As part of the relief ordered in a judicial proceeding, any supervisor who
> is found to have violated §  1-615.53 shall be subject to a civil fine not to
> exceed $ 1000.

D.C. Code § 1-615.55.  Section (a) simply provides that when a supervisor is

found in a judicial proceeding to have violated D.C. Code § 1-615.53, disciplinary

action up to termination shall be implemented.  The Court's finding provides the

basis for the disciplinary action.  Section (b) specifies that as part of the relief

ordered in a judicial proceeding a civil fine shall be awarded against a supervisor

that has violated the statute.

     If the Plaintiff establishes that a supervisor has violated the statute, the

Court is required issue a civil fine.  In addition, the Court must order the agency

employing the supervisor to take disciplinary action.

     In sum, a cause of action and relief from individual supervisors who have

violated the statute are clearly authorized and must be granted when proof of

retaliation is established.   The Court should reject the Defendants' arguments to the contrary.

Next, the Defendants argue that Plaintiff's Complaint fails to meet the elements of a DCWPA claim.  Def. Memo at 9 - 10.  Specifically, the Defendants incorrectly argue that the Plaintiff's protected disclosure under the Act was her "statement to the media" about children sleeping overnight in the CFSA office building.  Def. Memo at 10.   Plaintiff made clear in her Complaint that she raised concerns about inadequate and untimely placement of children to Defendant Walker (Complaint ¶s 13 - 15, 60, 62); the Mayor's advisor for religious affairs, Susan Newman (Complaint ¶ 16); Defendant Good (Complaint ¶ 18); and Deputy Mayor Neil Albert (Complaint ¶ 20 - 23).  See, also, Complaint ¶ 57 (citing her protected disclosures to "CFSA management, other District Government Officials, and the media about the adequacy of the agency's placement program, including specific concerns about children having to sleep in the CFSA office building because there was no timely and appropriate placement for them.").  Moreover, the Plaintiff was removed from her position, in part, for communicating her concerns about developing a campaign to raise awareness about child abuse and neglect (Complaint ¶ 29).

Plaintiff alleged in her Complaint that her protected disclosures to the

Defendants were a contributing factor in the retaliatory acts taken against her. Complaint ¶s 60, 62, 68, 70, 76, and 80.  Thus, for the purposes of a motion to dismiss, the Plaintiff has adequately stated a claim under the DCWPA.

Finally, the Defendants assert without proof that the Plaintiff is not protected under the DCWPA because she allegedly disclosed "confidential information" about a child in care.  Def. Memo at 10.  The Defendants' bald statement that the Plaintiff violated any confidentiality restrictions is ridiculous. Plaintiff did not reveal the identity or any identifying characteristics of the children that were left to sleep overnight in the CFSA office building.  The Court should reject this argument as plainly without basis.[3]

V.    **Walker and Good Violated Plaintiff's Rights and Should Not Be Shielded from Her Claims by the Qualified Immunity Defense**

In summary, "[q]ualified immunity generally shields public officials from civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)."  *Moore v. Hartman*, 388 F.3d 871, 872 (D.C. Cir. 2004).  More specifically, the Court in *Moore*

---

[3]  For the same reasons that Plaintff's claims under the DCWPA must be upheld against the individual Defendants, her claims against the District are also sufficient to survive a motion to dismiss.

stated:

> Underlying this doctrine is the basic principle of fair notice: officials may be held liable if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right," *Anderson v. Creighton,* 483 U.S. 635, 640, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987); otherwise, the unfairness of holding officials responsible on grounds they could not have anticipated trumps the individual's interest in vindicating transgressed rights. *See id. at 641*; *Crawford-El v. Britton,* 523 U.S. 574, 590-91, 140 L. Ed. 2d 759, 118 S. Ct. 1584 (1998). To ensure that shielding public officials from unclear law does not freeze the law in place, however, courts facing qualified immunity claims ordinarily engage in a two-step inquiry, considering first what the law is, and only then whether that law was clearly established. *See Wilson v. Layne,* 526 U.S. 603, 609, 143 L. Ed. 2d 818, 119 S. Ct. 1692 (1999). Were the procedure otherwise, constitutional avoidance might lead courts to rest on findings of uncertainty without first clarifying the law for future cases--a result contrary to the interest of both government officials and individuals claiming that such officials violated their constitutional rights. *See id.*; *County of Sacramento v. Lewis,* 523 U.S. 833, 841 n.5, 140 L. Ed. 2d 1043, 118 S. Ct. 1708 (1998).

> Because the qualified immunity inquiry focuses on whether the officials could have known "what [they were] doing" was unlawful, *Anderson,* 483 U.S. at 640, defining the right "at the appropriate level of specificity" is critical. *Wilson,* 526 U.S. at 615; *see also Butera v. District of Columbia,* 344 U.S. App. D.C. 265, 235 F.3d 637, 646 (D.C. Cir. 2001). While the right need not have arisen in identical or even "fundamentally" or "materially similar" circumstances, *see Hope v. Pelzer,* 536 U.S. 730, 739, 741, 153 L. Ed. 2d 666, 122 S. Ct. 2508 (2002), the right can be considered clearly established only if the unlawfulness was "apparent" in light of pre-existing law, *see Anderson,* 483 U.S. at 640. The "salient question," then, is "whether the state of the law [at the relevant time] gave [the officials] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope,* 536 U.S. at 741.

*Moore*, 388 F.3d at 876 - 877.   As discussed in *Moore*, the two-part analysis for a

qualified immunity defense involves (1) establishing what the law is, and (2) whether the

law was clearly established.

Defendants Walker and Good first argue that the Plaintiffs *Section 1985* claim must be dismissed based upon application of the intracorporate conspiracy doctrine. Def. Mem. at 13 - 15. However, the District of Columbia government is not a corporation. As this Court recently recognized, there are no rulings by any court of appeals that applies the intracorporate conspiracy doctrine to *Section 1983* actions and that the D.C. Circuit has yet to decide whether the doctrine can be applied as a defense to *Section 1985(3)* claims. *Kivanc v. Ramsey*, 407 F. Supp 2d 270, 276 n.4 (D.D.C. 2006).

Courts that have considered the application of the intracorporate conspiracy doctrine have distinguished *Section 1985(2)* claims from *Section 1985(3)* claims. The D.C. Circuit has not addressed the issue. However, the Eleventh Circuit has analyzed the issue as follows:

> The only issue before us is whether the intracorporate conspiracy doctrine applies to and bars a claim arising under Title 42 U.S.C. § 1985(2), alleging a criminal conspiracy among a corporation and its employees to prevent by force, intimidation, or threat, an individual from testifying in a federal court. We hold that it does not. This outcome flows from the long-established conclusion that the intracorporate conspiracy doctrine does not apply to criminal conspiracies. Because a § 1985(2) claim alleging a conspiracy to deter a person by force, intimidation, or threat from testifying in a federal court proceeding squarely and unambiguously alleges a criminal conspiracy in violation of 18 U.S.C. §§ 371, 1512, the intracorporate conspiracy doctrine does not apply and, therefore, cannot shield the

Defendants from civil liability. [footnotes omitted]

*McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1035-1036 (11th Cir. 2000) (en banc).  The *McAndrew* Court's analysis is legally sound and is good public policy.

Moreover, the Supreme Court has not recognized intracorporate conspiracy as a basis for denying relief pursuant to 42 U.S.C. § 1985.  *Great American Federal Savings & Loan Association v. Novotny*, 422 U.S. 366, 372 n. 11 (1979).  In *Novotny*, the Court assumed without deciding "that the directors of a single corporation can form a conspiracy within the meaning of § 1985 (3)."

Additionally, Defendants fail to discuss application of any of the exceptions to the intracorporate conspiracy doctrine.  Where the participants in a conspiracy act out of personal bias or where there are a series of discriminatory acts, the intracorporate conspiracy doctrine may not be applied.  See, *e.g.*, *Weaver v. Gross,* 605 F. Supp. 210,  215 (D.D.C. 1985) (recognizing scope of employment exception); *Craft v. Bd. of Trustees,* 516 F. Supp. 1317, 1324 (N.D. Ill. 1981); *Stathos v. Bowden,* 728 F.2d 15, 21 (1st Cir. 1984) (both cases recognizing the multiple discriminatory acts exception).

In the instant case, Plaintiff Tabb has alleged that the individual Defendants engaged in several discriminatory acts.  See, *e.g.*, Complaint ¶ 17, 28 - 30, 34 - 38, 41 - 44, 50 - 54,  65 - 70, 73 - 80, 93 - 95.  These acts are contrary to

District law and policy.  Plaintiff's allegations are sufficient to survive a motion

to dismiss.  In addition, Plaintiff should be allowed discovery in order to further

establish exceptions to the application of the intracorporate conspiracy doctrine.


VI.    **The District and Walker Violated Plaintiff's Fifth Amendment Right to
       Due Process**

Defendants argue next that Defendant Walker is entitled to qualified

immunity shielding her from liability for violating Plaintiff's *Fifth Amendment*

rights and that the Plaintiff's *Fifth Amendment* claim against the District should be

dismissed.  Def.s Memo at 15 - 18.  In defense of both Fifth Amendment claims,

the Defendants argue that Plaintiff Tabb received all the process she was legally

due when the District summarily removed her with no notice or pre-removal

process and then proceeded to terminate her with no hearing or further process.

Def.s Memo at 16. They rely on District government regulations concerning

removals.  However, the District failed to follow those regulations and failed to

provide the Plaintiff with adequate due process.

Defendant Walker made baseless allegations in support of the Plaintiff's

removal claiming that the conduct referenced threatened the integrity of

government operations.  See, Def.s Exhibit 6 at 1.  Such a charge strongly

suggests that Plaintiff Tabb's actions were unlawful, deceitful, or violated public trust.  However, the allegations made by Defendant Walker do not warrant such a charge.   In fact, of the charges raised in the removal letter, only the unsubstantiated allegations that the Plaintiff "misrepresented agency practice", "violated confidentiality laws", and disclosed "detailed personal information about why the child was in CFSA's custody" even come close to raising an issue of integrity.

The District's personnel regulations make clear that the proponent of a summary removal must make a good faith effort to determine that the reason for removal that is relied upon is met.  DCMR § 6-1616.2.  Defendant Walker's notice of summary removal (Def.s Exhibit 6) fails to evidence any good faith effort to insure that there was in fact a basis for summary removal.  For example, although much is made of the Plaintiff's alleged violation of "CFSA confidentiality laws", no law, regulation or policy is cited in the notice.  No facts are stated supporting the allegation that the Plaintiff disclosed "detailed personal information about why the child was in CFSA's custody."  And, regarding the assertion that the Plaintiff "misrepresented agency practice", there is no policy or practice cited.

Additionally, Defendant Walker's claim that the Plaintiff was abusing

Family Medical Leave is completely unsupported by reference to any standard, physician's certification, absence of approval or other basis. Def.s Exhibit 6 at 2. The fact that the Plaintiff was able to make contact with the media while she was on leave is not a basis to claim that she abused leave. Put it in a slightly different context, Defendant Walker's allegation about Plaintiff's abuse of leave would mean that a parent that is home sick could not pick up her children from school or make phone calls as such would demonstrate an abuse of the leave policy. Of course, such an interpretation of family and medical leave standards strains credulity; particularly in light of the Plaintiff's medical issues. See, Declaration of Shirley Tabb (Tabb Declr) ¶s 11 - 13, 33, 38.

Even a modicum of effort to investigate the issues raised against the Plaintiff would have demonstrated that there was no basis to impose a summary removal. In fact, CFSA's records demonstrate that the Plaintiff was not scheduled to return to the office until about October 24, 2005 because of complications she was suffering from diabetes. Declaration of Shirley Tabb ¶ 38.

Absent a good faith basis for imposing summary removal "the employee shall be entitled to an advance written notice as specified in § 1608." DCMR § 6-1616.2. Plaintiff Tabb was entitled to advance written notice providing the complete bases for Defendant Walker's allegations.

Moreover, although Plaintiff Tabb provided a written response to Defendant Walker's baseless allegations ( Tabb Declr ¶s 46 - 49), her response was not considered or referenced in the final decision (Def.s Exhibit 7).  At a minimum, under the District's regulations the hearing officer was required to review the Plaintiff's response to the notice of summary removal.  DCMR § 6-1612.4(b).

Finally, the claim that Plaintiff Tabb did not appear for a scheduled hearing regarding the summary removal is somewhat disingenuous.  Plaintiff Tabb, through counsel, invoked her right to challenge the personnel actions being proposed by instituting a civil action under the DCWPA, D.C. Code §§ 1-615.54, 1-615.56.   A letter announcing her intent to file a civil action was hand delivered to Defendant Walker on October 21, 2005, six days before the hearing the Defendants scheduled.  Tabb Declr ¶ 50.

In sum, the District and Defendant Walker violated District regulations in instituting a summary removal of the Plaintiff.  Such flawed and retaliatory-implemented procedure does not meet minimum due process requirements.  Therefore, Defendant Walker is not entitled to qualified immunity, as she directed the improper actions taken against the Plaintiff.

VII.   **The District and Walker Violated Plaintiffs First Amendment Rights**

The Defendants assert that Plaintiff's First Amendment claim against the District should be dismissed and that Defendant Walker should be spared any liability based upon the qualified immunity shield.  Def.s Memo at 18 - 27.   To begin, the Defendants assert that Plaintiff Tabb's disclosures about children sleeping overnight in the CFSA office building were not matters of public concern.  Def.s Memo at 19.   Defendants assert that the Plaintiff's disclosures were "personally motivated" , and "an attempt to provide herself job security." *Id*.  Overall, the Defendants theory is that the Plaintiff's disclosures were purely for self-interest either to get a job or preserve her job.  Def.s Memo at 19 - 21.  As the Defendants correctly point out, even if Plaintiff Tabb's motivations in disclosing and pursuing the issue of children sleeping overnight at the CFSA office building could be deemed to be in "pursuit of her self-interest", that does not mean that her disclosures were not of public concern.  Def.s Memo at 21, citing, *O'Donnell v. Barry*, 148 F. 3d 1126, 1133 (D.C. Cir. 1998).

Even if the Defendants have espoused the correct legal standard for evaluating whether the Plaintiff's disclosures to the media and others can be considered matters of public concern, how is the Court expected to evaluate the Plaintiff's motivations and intentions?  Simply stated, the standards employed to

evaluate a motion to dismiss and motion for summary judgment[4] require the

Court to view the facts in the Plaintiff's favor.   Considering the facts alleged in

the Complaint and in Plaintiff Tabb's declaration and attachments in a light most

favorable to her, there is simply no basis for the Court to decide that her alleged

self-interested motivation should negate the important issue of public concern

she raised.

Moreover, the public importance of the issue raised by the Plaintiff is

clearly illustrated in the fact that the *LaShawn A.* Court Monitor addressed the

issue in its report.  Tabb Declr ¶ 51.  Public exposure of the issue forced CFSA to

admit and address the problem.  *Id*.

Next, the Defendants argue that Plaintiff's disclosures "are not matters of

public concern under *Garcetti v. Ceballos*, 126 S.Ct. 1951 (2006)."  Def.s Memo at 21

- 23.  The decision in *Ceballos* turned on the question of whether a memo from a deputy

district attorney raising questions about the legitimacy of a search warrant could be

considered speech protected by the *First Amendment*.  Ceballos claimed that he was

retaliated against for submitting the memo.  The Supreme Court held that in

circumstances where public employees make statements pursuant to their official duties,

they are not protected from discipline by the *First Amendment*.

---

[4] As explained previously, Defendants' failure to follow this Court's rules requires the
Court to deny the motion for summary judgment.

Significantly, the Supreme Court emphasized the narrow nature of its holding.

> The controlling factor in Ceballos' case is that his expressions were made
> pursuant to his duties as a calendar deputy. See Brief for Respondent 4
> ("Ceballos does not dispute that he prepared the memorandum 'pursuant to
> his duties as a prosecutor'"). That consideration -- the fact that Ceballos
> spoke as a prosecutor fulfilling a responsibility to advise his supervisor
> about how best to proceed with a pending case -- distinguishes Ceballos'
> case from those in which the *First Amendment* provides protection against
> discipline. We hold that when public employees make statements pursuant
> to their official duties, the employees are not speaking as citizens for *First
> Amendment* purposes, and the Constitution does not insulate their
> communications from employer discipline.

*Ceballos*, 126 S.Ct. at 1959 - 1960.[5] Therefore, the speech at issue must be strictly part of

an employee's job duties in order for *First Amendment* protections to be nullified.

Despite this very recent change in the scope of *First Amendment* protections for

public employees, it is clear from the Plaintiff's Complaint, declaration, and response of

the Defendants that she was not speaking out pursuant to her job duties.   In fact,

Defendant Walker relied upon the allegation that the Plaintiff "failed to obtain

permission from [her] supervisor to disseminate information to the media" as

part of the basis for Plaintiff's summary removal.  Def.s Exhibit 6 at 1.  It is hardly

credible to now argue that Plaintiff was acting pursuant to her duties.

Finally, the Defendants assert generally that Defendant Walker is entitled

to qualified immunity, in part, because "it is extremely difficult to show that a

---

[5] In addition, the Court noted that broadly written job descriptions cannot
form a basis for restricting employees' rights.  *Ceballos*, 126 S.Ct. at 1961 - 1962.

right was clearly established in the particularized sense needed for qualified immunity purposes." Def.s Memo at 24. The Defendants then go on to make the conclusory statement that "[i]t cannot be said that the law clearly put Defendant Donald Walker on notice that the alleged conduct was unlawful." Def.s Memo at 25. This argument fails to articulate a basis for claiming that, considering the facts alleged, Defendant Walker was not clearly on notice that retaliating against an employee for raising concerns to management and the media about CFSA's care and placement of children was unlawful. District law makes clear that employees have the right to: (1) freely express their opinion on all public issues, including those involving their duties; and (2) disclose information concerning illegal or unethical conduct or information that may be suppressed. D.C. Code § 1-615.58.

Moreover, the Supreme Court has long held that criticisms of the policies and practices of one's employing agency is protected by the First Amendment. See, *e.g.*, *Givhan v. Western Line Consolidated School District*, 439 U.S. 410 (1979). *See, also, O'Donnell*, 148 F.3d at 1133 - 1135. Defendant Walker cannot legitimately claim that the Plaintiff's disclosures were not clearly established and protected under District and Federal law.

Similarly strained is the Defendants argument that the Plaintiff has not

"alleged a basis for municipal liability" against the District for the violation of

her First Amendment rights.  Def.s Memo at 25.  Plaintiff alleged that Defendant

Walker is a policymaking official in the District government.  Complaint ¶s 9, 37.

Plaintiff's Complaint more than adequately meets the requirements for pleading

claims pursuant to 42 U.S.C. § 1983.

> There are a number of ways in which a "policy" can be set by a
> municipality to cause it to be liable under §  1983: the explicit setting of a
> policy by the government that violates the Constitution, *see Monell, 436
> U.S. at 694-95*; the action of a policy maker within the government, *City of
> St. Louis v. Praprotnik,* 485 U.S. 112, 123-30, 99 L. Ed. 2d 107, 108 S. Ct.
> 915 (1988); the adoption through a knowing failure to act by a policy maker
> of actions by his subordinates that are so consistent that they have become
> "custom," *id. at 130*; or the failure of the government to respond to a need
> (for example, training of employees) in such a manner as to show
> "deliberate indifference" to the risk that not addressing the need will result
> in constitutional violations, *Harris,* 489 U.S. at 390; *Daskalea v. Dist. of
> Columbia,* 343 U.S. App. D.C. 261, 227 F.3d 433,  441 (D.C. Cir. 2000).
> Deliberate indifference is determined by analyzing whether the municipality
> knew or should have known of the risk of constitutional violations, an
> objective standard. *Farmer,* 511 U.S. at 841.

*Baker v. District of Columbia*, 326 F.3d 1302, 1306 - 1307 (D.D.C. 2003).  In the instant

case, the Defendants have taken actions that reflect each of the ways in which a policy

can be set by a municipality for the purposes of *Section 1983* liability.

Plaintiffs in a *Section 1983* action are not required to meet a heightened pleading

standard.  *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,*

507 U.S. 163 (1993) (plaintiffs alleging municipal liability under 42 U.S.C. § 1983 need

not satisfy any heightened pleading standard).  In light of the liberal pleading standard,

this Circuit has stated: " [a] complaint, in other words, need not allege all that a plaintiff must eventually prove." *Atchinson v. District of Columbia*, 73 F.3d 418, 421 - 422 (D.C. Cir. 1996). Plaintiff Tabb's Complaint can be fairly read to take issue with the District's policies, practices, and customs concerning: (i) restrictions on free speech and retaliation for engaging in free speech, (ii) retaliatory implementation of personnel policies and practices; and (iii) discrimination and retaliation for utilizing family and medical leave.

Defendants arguments to dismiss Plaintiffs' First Amendment retaliation claims are simply without merit. The Court should deny Defendants' motion.


VIII.  **The District Violated the Federal and Local Family and Medical Leave Acts**

In their last argument, the Defendants assert that Plaintiff Tabb is not entitled to relief under the District or Federal family and medical leave statutes because the consequences of her alleged misconduct would have resulted in her termination even "if she had been continuously working." Def.s Memo at 28. Much like other arguments offered by the Defendants, in order to prevail the Court would have to accept the "facts" offered by the Defendants as true and absent any dispute. There are no facts before the Court other than those alleged in the Complaint and in the Plaintiff's declaration because the defendants have not properly presented any facts. The exhibits the Defendants' submitted are not

admissible and no sworn statements have been offered by the individual Defendants to suggest that there are no material facts in dispute. Thus, there is no basis for the Court to judge whether the Plaintiff would have been terminated absent her family and medical leave issues. Plaintiff has alleged that she suffered retaliation and discrimination because of her use of leave and while on leave. Complaint ¶s 87 – 88. The Defendants have offered no factual or legal basis that would justify dismissing Plaintiff's family and medical leave claims at this stage of the litigation.

IX.    **Conclusion**

For the foregoing reasons, the Defendants' motions to dismiss or for summary judgment should be denied. The Court should direct the parties to move forward with case planning, pretrial schedule, and discovery.

DATED this 5th  day of September, 2006.


Respectfully submitted,

/s/Richard E. Condit
_____
Richard E. Condit, Esq.
**D.C. Bar No. 417786**
2000 P Street, NW, Suite 240
Washington, D.C.  20036-6924
Telephone: (202) 265-7337 ext. 231
Facsimile: (202) 318-3211
Email: r1condit1@earthlink.net