## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHIRLEY TABB, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-00789 (PLF) |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, et. al, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants District of Columbia, Brenda Donald Walker, and Mindy L. Good, by and through undersigned counsel, move for the entry of summary judgment under Fed. R. Civ. P. 56. The individual defendants specifically seek summary judgment on the basis of qualified immunity. Additionally, all defendants seek summary judgment on the basis that plaintiff's speech was not protected under the First Amendment, nor under the Whistleblower Act. Lastly, plaintiff is owed no protection under the D.C. or Family Medical Leave Acts. A memorandum of points and authority in support and a proposed Order accompany this motion.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

_____/s/_____
PATRICIA A. JONES [428132]
Chief, General Litigation, Section IV

_____/s/_____
LEAH BROWNLEE TAYLOR [488966]
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-7854; (202) 727-6295
leah.taylor@dc.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHIRLEY TABB,

        Plaintiff,

        Civil Action No. 06-00789 (PLF)

v.

DISTRICT OF COLUMBIA, <u>et. al</u>,

        Defendant.

## DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

These defendants herein submit their statement of material facts not in genuine dispute pursuant to LCvR 7(h), and state as follows:

1.    The plaintiff was employed as a Public Information Specialist with Child and Family Services (hereafter "CFSA"). See Complaint, ¶ 12.

2.    Brenda Donald Walker was the Director of CFSA.  See Complaint, ¶ 9.

3.    Mindy Good was the Public Information Officer for CFSA and plaintiff's immediate supervisor during plaintiff's tenure as a Public Information Specialist. See Complaint, ¶ 9.

4.    As Public Information Specialist, plaintiff's job responsibilities required the plaintiff be knowledgeable about CFSA program activities, initiatives in the agency and required the plaintiff to stay abreast of systemic issues, problems and progress. See Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 5, incorporated by reference in Shirley Tabb's Declaration at ¶ 36 ("Tabb Declaration"). As Public Information Specialist, it was the plaintiff's job to develop communication campaigns for agency programs. See 10/10/05 Response to Notice of

Summary Removal at pg 2, incorporated by reference in Tabb Declaration at ¶ 49.

5.      As Public Information Specialist, plaintiff was a mandated reporter and required by law to report child abuse and neglect in the work place. See 10/10/05 Response to Notice of Summary Removal at pg 4., incorporated by reference in Tabb Declaration at ¶ 49.

6.      In March 2005, the plaintiff, in her capacity as Public Information Specialist, contacted a public information officer with the Department of Human Services about developing a campaign to increase awareness around child abuse and neglect, reviving the Back to Sleep Campaign and other projects with CFSA. See Complaint, at ¶ 17.

7.      In July of 2005, plaintiff, in her capacity as Public Information Specialist, met with her supervisor Brenda Donald Walker about children sleeping at CFSA and expressed her desire to address the issue and utilize her skills in her capacity as a government employee. According to the plaintiff, everyone at CFSA knew about children sleeping at CFSA.  See Complaint, at ¶ 13. See also, Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 4. incorporated by reference in Shirley Tabb's Declaration at ¶36.

8.      On August 15, 2007, the plaintiff, in her capacity as Public Information Specialist, contacted Susan Newman, Senior Advisor for Religious Affairs for the Executive Office of the Mayor.  During her contact with Ms. Newman, during work hours, plaintiff identified her background and official position with CFSA and discussed the lack of foster home resources for CFSA and the possibility of contracting with Holiday Inn to provide a temporary placement for children. See Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 4 incorporated by reference in Shirley Tabb's Declaration at ¶ 36.

9.      In September 2005, the plaintiff, in her capacity as Public Information Specialist, contacted Deputy Mayor Neil Albert, who was responsible for the performance of CFSA. During

her contact with Deputy Mayor Albert, plaintiff identified her background and official position with CFSA and indicated that there were children sleeping in the building at CFSA and communicated concerns that were relayed to her by a placement worker at CFSA. See Complaint at ¶¶ 20-22. See also Tabb Declaration at ¶¶ 39-42.

10.     In September 2005, the plaintiff contacted the media concerning lack of placement resources and was identified in her official capacity as the Public Information Specialist for CFSA. See Complaint at ¶¶ 25, 68. See also Tabb Declaration at ¶44.

11.     CFSA provided plaintiff with a notice of summary removal before her termination. See Tabb Declaration at ¶¶ 46-50. See also Declaration of Barbara Bailey.

12.     Pursuant to Chapter 16 § 1616 of the District Personnel Regulations (DPM), the notice of summary removal affords the plaintiff the opportunity to participate in an administrative hearing prior to termination.  See DPM, Chapter 16, § 1616.

13.     Plaintiff did not appear for her October 27, 2005, scheduled hearing, which she requested on October 10, 2007. See 10/10/05 Response to Notice of Summary Removal at pg 5., incorporated by reference in Tabb Declaration at ¶ 49.

14.     Plaintiff acknowledges that the defendants granted her family medical leave and that she took family leave from March 2005- July 2005.  See Tabb Declaration, at ¶13.  See Complaint at ¶ 28.

15.     Plaintiff avers that she was terminated because she disclosed that children were sleeping in a CFSA building.  See Complaint, generally.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE

Deputy Attorney General, Civil Litigation Division

_____/s/_____
PATRICIA A. JONES [428132]
Chief, General Litigation, Section IV

\_\_\_\_/s/ _____ \_\_\_\_
LEAH BROWNLEE TAYLOR [488966]
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-7854; (202) 727-6295
leah.taylor@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHIRLEY TABB, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-00789 (PLF) |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, et. al, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

## I.        STATEMENT OF FACTS

This case arises from the termination of Shirley Tabb's employment as a Public

Information Specialist in the District of Columbia's Child and Family Services Administration

("CFSA"). See Complaint, ¶ 12.  Brenda Donald Walker was the Director of CFSA during all

times relevant to the allegations set forth in the Complaint.  See Complaint, at ¶ 9.  Mindy Good

was the Public Information Officer for CFSA and plaintiff's immediate supervisor during

plaintiff's tenure as a Public Information Specialist.  See Complaint, at ¶ 9.

Plaintiff's job responsibilities as Public Information Specialist required that she be

knowledgeable about CFSA program activities, initiatives in the agency and required her to stay

abreast of systemic issues, problems and progress in CFSA. See Shirley Tabb's 8/18/05

Response to 8/18/05 Admonition pg. 5, incorporated by reference in Shirley Tabb's Declaration

at ¶ 36. As Public Information Specialist, it was the plaintiff's job to develop communication

campaigns for agency programs. See 10/10/05 Response to Notice of Summary Removal at pg 2,
incorporated by reference in Tabb Declaration at ¶ 49.  As Public Information Specialist, plaintiff
was a mandated reporter and required by law to report child abuse and neglect in the work place.
See 10/10/05 Response to Notice of Summary Removal at pg 4., incorporated by reference in
Tabb Declaration at ¶ 49.

      Plaintiff's speech at issue consists of 5 separate communications – all which were made
in her capacity as Public Information Specialist and were related to the CFSA foster care
program about which she was responsible for disseminating information.  In March 2005,
plaintiff, in her capacity as Public information Specialist, contacted a public information officer
with the Department of Human Services about developing a campaign to increase awareness
around child abuse and neglect, reviving the Back to Sleep Campaign and other projects with
CFSA.   See Complaint, at ¶17.  Plaintiff used agency equipment for purposes of her
communication. See Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 5.  In July
2005, the plaintiff spoke to Brenda Donald Walker, her supervisor, about children sleeping at
CFSA and her desire to address the issue in her capacity as a government employee. See
Complaint, at ¶ 13, 14.  According to the plaintiff, everyone at CFSA knew about children
sleeping at CFSA.  See Complaint, at ¶ 13.  See also, Shirley Tabb's 8/18/05 Response to
8/18/05 Admonition pg. 4. incorporated by reference in Shirley Tabb's Declaration at ¶36.

      On August 15, 2007, plaintiff, again in her capacity as Public Information Specialist,
contacted Susan Newman, Senior Advisor for Religious Affairs for the Executive Office of the
Mayor. See Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 4.  During her
communication with Susan Newman, plaintiff identified her background and official position
with CFSA, and discussed the lack of foster home resources for CFSA and the possibility of

contracting to provide a temporary placement for children.   See Shirley Tabb's 8/18/05

Response to 8/18/05 Admonition pgs. 4,5.   In September 2005, the plaintiff, as Public

Information Specialist, contacted Deputy Mayor Neil Albert, who was responsible for the

performance of CFSA.  See Complaint at ¶¶ 21-22.  During her communication with Deputy

Mayor Albert, plaintiff identified her background and official position with CFSA and indicated

that there were children sleeping in the building at CFSA.  Plaintiff also communicated concerns

relayed to her by a placement worker at CFSA.  See Complaint at ¶¶ 20-22. See also Tabb

Declaration at ¶¶ 39-42.  Finally, in September 2005, the plaintiff, as public information

specialist, contacted the media concerning lack of placement resources. See Complaint at ¶¶ 25,

68. See also Tabb Declaration at ¶44.

     Plaintiff avers that she was terminated because of her protected activity of

communicating about children sleeping in CFSA's building.  See Complaint, generally.

Plaintiff's Complaint does not contain any factual support for the allegation that she was

terminated because she took leave under either the D.C. Family Medical Leave Act and/or the

Federal Medical Leave Act.  See Complaint, generally.  For the reasons set forth below, these

defendants are entitled to judgment as a matter of law.

### III.    ARGUMENT

#### A.    <u>Standard of Review.</u>

     Pursuant to the Federal Rules of Civil Procedure 56(c), summary judgment is proper "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law."  The non-movant must produce "specific facts

showing that there is a genuine issue for trial." <u>Celotex v. Catrett</u>, 477 U.S. 317, 322 (1986); *Kitt*

*v. Capital Concerts, Inc*., 742 A.2d 856, 858 (D.C. 1999).  These facts must have "significant probative" force "tending to support the complaint."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

No class of cases, including employment discrimination claims, is exempt from this rule. See *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000); *Evans v. New York Botanical Garden*, 253 F. Supp. 2d 650, 657 (S.D.N.Y. 2003) ("The salutary purposes of summary judgment . . . apply no less to discrimination cases than to commercial or other areas of litigation.").  The Supreme Court has expressly authorized early summary judgment when public officials face insubstantial claims.  See *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982) ("In identifying qualified immunity as the best attainable accommodation of competing values . . . we relied on the assumption that this standard would permit '[insubstantial] lawsuits [to] be quickly terminated.'") (internal citations omitted).

B.  **Plaintiff Has Failed to State a Claim Under the First Amendment Because She Did Not Speak as a Private Citizen.**

A public employee's cause of action for retaliation in violation of the First Amendment requires proof of four elements: (1) the public employee must have spoken as a citizen on a matter of public concern.; (2) that the employee's First Amendment interest is not outweighed by the governmental interest of promoting the efficiency of the public service performed through its employees; (3) that the employee's speech was a substantial or motivating factor for the denial of a right or benefit; and (4) that the government would not have reached the same decision absent the protected conduct in which the employee engaged. *See Garcetti v. Ceballos*, 126 S,Ct. 1951, 1958 (2006).  *See also, Leonard v. D.C.,* 794 A.2d 618 (D.C. 2002), holding that the first inquiry in a First Amendment analysis is whether the plaintiff was speaking as a citizen. *Garcetti*, 126 S,Ct. at 1958.

The *Garcetti* Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes . . . ." *Garcetti*, 126 S.Ct. at 1959-60. *Garcetti* involved a state deputy attorney who was reassigned and denied a promotion after he wrote a memo to his supervisors about inaccuracies in an affidavit used to procure a search warrant. The Supreme Court held that when the plaintiff wrote his memo and had later discussions with his supervisors concerning the inaccuracies of the search warrant, he did not speak as a citizen, but spoke as a government employee. The Court found that "when he went to work and performed the task he was paid to perform, Ceballos acted as a government employee. The fact that his duties sometimes required him to speak or write does not mean his supervisors were prohibited from evaluating his performance" *Id.* at 1960. The Court found that because plaintiff's speech was pursuant to his official duties, he was not acting as a private citizen and did not enjoy First Amendment protection.

*Garcetti* and its progeny instruct that in cases where a government employee speech falls within the scope of the employee's employment responsibilities, there is no First Amendment protection. The Court of Appeals recently held in *Wilburn v. DC*, 2007 U.S. LEXIS 6397 (March 20, 2007), that the plaintiff, the former interim Director of the Office of Human Rights, had no First Amendment protection when she complained of racism and sexism to the Department of Personnel, a Deputy Mayor, and the Mayor's Chief of Staff concerning the Department of Personnel's rejection of her salary recommendations for two (2) African American females. According to the Court, the plaintiff had no First Amendment protection because her speech was made in the context of her employment as interim Director of the Office of Human Right, where her "official position description included identifying and eliminating discriminatory practices in employment." Id. at *29. Other Courts of Appeals have similarly held that a public employee

enjoys no First Amendment Protection when the speech is made in the course of their employment responsibilities. *See Hill v. Bourough of Kutztown* 455 F.3d 225, 242 (3d Cir. 2006)(holding that  a public employee enjoys no First Amendment Protection when employee reported harassment to Bourough Council when he had a duty as a Manager to report complaints) *See Mills v. Evansville,* 452 F.3d 646, 648 (7th Cir. 1006)(holding that that an officer had no First Amendment protection in her speech when it was made while she was on duty, and in uniform, and the speech was made to her superiors contributing to the formation and execution of official policy). See *Green v. Bd of County Comm'rs,* 472 F.3d 794, 2007 U.S. App. Lexis 1 (10th Cir. 2007)(holding that a drug lab employee who ignored her supervisors and scheduled confirmatory drug tests she suspected were faulty was not protected by the First Amendment even though her conduct was condemned by her supervisors and not explicitly required in her day to day activities, because her acts were generally the type of activities that she was paid to do.)

In *Thompson v. District of Columbia*, 2007 U.S. Dist. Lexis 19500 *7-8 (D.D.C. March 20, 2007), the Court held that a government employee's speech was not protected by the First Amendment when it occurred in the course of plaintiff's official duties as an auditory and security officer and "even if the speech was outside the bound of the plaintiff's job description, his speech was as a government employee and related to his professional responsibilities." Plaintiff's own averments clearly demonstrate that her speech was made in her capacity as the Public Information Specialist at CFSA. The plaintiff concedes that in her position she was mandated reporter and required by law to report child abuse and neglect (even in the work place) See 10/10/05 Response to Notice of Summary Removal at pg 4., incorporated by reference in Tabb Declaration at ¶ 49. See *Wilburn*, supra (finding no First Amendment protected speech

when it was undisputed that in plaintiff's position as interim OHR Director, she had a duty to

identify and eliminate discriminatory practices in employment.)

Every communication at issue- communications to other District agencies, superiors,

officials and to the media, were made in her capacity as Public Information Specialist and were

related to the lack of resources in the CFSA foster care program about which the plaintiff was

responsible for addressing. The plaintiff acknowledges that her job duties included staying

abreast of systemic issues, problems and progress in CFSA programs, See Shirley Tabb's

8/18/05 Response to 8/18/05 Admonition pg. 5, incorporated by reference in Shirley Tabb's

Declaration at ¶ 36 ("Tabb Declaration"). Plaintiff also does not dispute that she used agency

equipment for purposes of her communication. See Shirley Tabb's 8/18/05 Response to 8/18/05

Admonition pg. 5.

The fact that the *manner* of plaintiff's speech was condemned by her superiors because it

was made without authorization or prior approval is not dispositive for purposes of First

Amendment analysis. *Green v. Bd of County Comm'rs*, 472 F.3d 794, 2007 U.S. App. Lexis 1

(10th Cir. 2007). The undisputed fact is that plaintiff engaged in the type of speech that was she

was generally paid to do- communicating with other District personnel and the media concerning

CFSA's programs and progress. It is undisputed that when the plaintiff made her speech, even to

the media, her speech related to her professional responsibilities as a Public Information

Specialist- disseminating information and developing communication campaigns for the agency.

See 10/10/05 Response to Notice of Summary Removal at pg 2, incorporated by reference in

Tabb Declaration at ¶ 49.

Like the government speech in *Mills*, 452 F.3d at 648, plaintiff's speech was also made in

an attempt to change an agency practice of allowing children to sleep in the CFSA building.

Under the bright line rule set forth in *Garcetti*, because the plaintiff's speech was made in the course of her duties and not as a private citizen, her communications enjoy no First Amendment protection, and summary judgment is appropriate.

C.     **Plaintiff's Complaint Fails to State a Claim under the Whistleblower Protection Act**

According to the Council, "the public interest is served when employees of the District government are free to report waste, fraud, abuse of authority, violations of law, or threats to public health or safety without fear of retaliation or reprisal. See D.C. Official Code § 1-615.51. The Whistleblower Protection Act (WPA) defines the term "protected disclosure" as "any disclosure of information, not specifically prohibited by statute, by an employee to a supervisor or a public body that the employee reasonably believes evidences "gross mismanagement, gross misuse or waste of public resources or funds, abuse of authority in connection with the administration of a public program or the execution of a public contract, a violation of a federal, state, or local law, rule or regulation, or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature; or a substantial and specific danger to the public health and safety." D.C. Official Code § 1-615.52(6).

The plaintiff claims that her protected disclosure to the media resulted in her termination. See Complaint, generally. As a matter of law, the media is not defined as a supervisor or a public body under the Whistleblower Protection Act. See D.C. Official Code § 1-615.52(6). As such, her statements to the media were not protected disclosures under the WPA. The plaintiff's reprimand for other communications referenced herein was due to the *manner* of plaintiff's speech, not the content, because it was made without authorization or prior approval her speech. See 8/18/05 Mindy Good Admonition. The plaintiff's reprimand is therefore, not the proper basis for an action under the WPA, which prohibits personnel actions made because of the protected

disclosure. Furthermore, plaintiff avers that *everyone* knew about children sleeping at CFSA, therefore there was no disclosure to her superiors. See Complaint, at ¶ 13. See also, Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 4. incorporated by reference in Shirley Tabb's Declaration at ¶36. The dismissal of plaintiff's WPA count against all defendants is appropriate

**D.      Defendants Good and Walker Have a Qualified Immunity for the Alleged Constitutional Violations.**

"Government officials performing discretionary function, generally are shielded form liability for civil damages insofar as their conduct does not violate clearly establish . . . rights which a reasonable person would have known". *Harlow v. Fitzgerald*, 457 U.S. 800, 8l4 (l982). The purpose of qualified immunity is to protect governmental employees against insubstantial lawsuits which have the following societal costs: l) expenses of litigation; 2) diversion of official energy from pressing public issues; 3) deterrence of able citizens from acceptance of public office; and 4) the possibility that the fear of being sued will dampen the ardor of all but the most resolute individuals. Id. at 8l4.

Recent Supreme Court opinions have made clear that, in analyzing claims of qualified immunity, courts must begin by determining "whether the plaintiff has alleged a deprivation of a constitutional right at all." *County of Sacramento v. Lewis*, 118 S. Ct. 1708, 1714 n. 5 (1998). This issue is judged by current law. Only upon finding that the purported constitutional right exists should a court proceed to the determination of whether the constitutional right was clearly established at the time of the official action. *See Conn v. Gabbert*, 119 S. Ct. 1292, 1295 (1999), holding "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation."

Deciding the constitutional question before addressing whether a right was clearly established "promotes clarity in the legal standards for official conduct, to the benefit of both officers and the general public." *Wilson v. Layne*, 119 S. Ct. 1692, 1697 (1999). "The chronic difficulty with this [qualified immunity] analysis for courts is in accurately defining the right at issue. An overly narrow definition of the right can effectively insulate the government's actions by making it easy to assert that the narrowly defined right was not clearly established. On the other hand, as the Supreme Court has noted in *Anderson*, if the right is defined too broadly, '[p]laintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *LaBounty v. Coughlin*, 137 F.2d 68, 73, 74 (2nd Cir. 1998) (quoting *Anderson*, 483 U.S. at 639).

In this case, it cannot be said that defendant Good or Donald Walker knowingly violated plaintiff's First Amendment rights. Under Garcetti, plaintiff's speech was made in the course of her duties and not as a private citizen and her communications enjoy no First Amendment protection. The defendants were entitled to discipline the plaintiff given the fact that her communications were made as a government employee. Even if the Court finds that plaintiff's speech was made as private citizen, given the undisputed fact that the plaintiff's speech was made during work hours, through agency email, and in plaintiff's capacity as Public Information Specialist, a reasonable person in the defendants' position *would not have known* that the speech was protected by the First Amendment and not subject to disciplinary action. Defendants Good and Donald Walker are entitled to qualified immunity as a matter of law.

**E.    Plaintiff has Failed to Establish that the District is Liable for the Alleged Constitutional Deprivation.**

To the extent plaintiff seeks to pursue her claim pursuant to 42 U.S.C. § 1983, she has failed to plead sufficient facts to support municipal liability against the District.  42 U.S.C. § 1983, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or cause to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Municipal liability under 42 U.S.C. § 1983 is severely limited.  *See Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 690 (1978).  Municipal liability results only when the municipality itself can be directly charged with fault for an unconstitutional deprivation. *See Wilson v. Lang*, 526 U.S. 603, 609 (1999); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1985); and *Baker v. McCollan*, 443 U.S. 137, 146-47 (1979), holding courts must address the threshold issue in any action brought under § 1983: "whether the plaintiff has alleged the deprivation of an actual constitutional right at all." Therefore, municipal liability results only when the policy or custom fairly attributable to the municipality is the "moving force" behind the particular constitutional violation.  *See Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citing *Monell*, 436 U.S. at 694).  Plaintiff's complaint lacks factual support that any District custom, policy or practice and/or final policymaker caused a constitutional deprivation.  See Complaint, generally.  Plaintiff has failed to plead sufficient facts to support that her alleged constitutional injuries resulted from any

District custom, policy, and/or practice.  Therefore, the District is entitled to judgment as a matter of law on plaintiff's § 1983, claim against it.

F.    **Plaintiff Was Provided Procedural Due Process under the 5th Amendment**

Prior to the deprivation of any property interest in employment, an employee is entitled to some kind of hearing immediately before or promptly following imposition of the deprivation. *See Cleaveland Bd. Of Education v. Loudermill,* 470 U.S. 532 (1985).  In *Loudermill*, the Supreme Court found that "a pretermination hearing" though necessary, need not be elaborate  . . . the essential requirement of due process, and all that respondents seek or the Court of Appeals required are notice and an opportunity to respond."

Plaintiff avers that on October 3, 2005, the defendants issued her a "Notice of Summary Removal."  Complaint, at ¶ 28.  Pursuant to Chapter 16 § 1616 of the District Personnel Regulations (DPM), a notice of summary removal affords an employee the opportunity to participate in an administrative hearing prior to termination.  See DPM, Chapter 16, § 1616.  On October 10, 2005, plaintiff requested a hearing, and received notice of the October 27, 2005, scheduled hearing.  The hearing was scheduled prior to the effective date of her termination.  See 10/10/05 Response to Notice of Summary Removal at pg 5., incorporated by reference in Tabb Declaration at ¶ 49.  Plaintiff did not appear for her October 27, 2005, scheduled hearing, but chose to file this complaint.  See 10/10/05 Response to Notice of Summary Removal at pg 5., incorporated by reference in Tabb Declaration at ¶¶ 49, 50.

Under *Loudermill*, the procedures that the District afforded plaintiff pre-termination, and that she summarily rejected, were constitutionally adequate to protect her right to due process. *See D'Acquisto v. Washington*, 750 F. Supp 342 (E.D. Ill. 1990)(holding there was no Fifth Amendment violation when police officers were summarily suspended without pay without a

"hearing" when they refused to participate in underlying criminal investigation). Because plaintiff was afforded due process, her claims against these defendants fail as a matter of law.

**G.**    **There is No Federal Family Medical Leave Act Question to Establish Subject Matter Jurisdiction**

Under the Federal Family Medical Leave Act, the plaintiff is only entitled to twelve weeks for family *or* medical leave in one year. See 29 U.S.C.§2612. Plaintiff has failed to allege or demonstrate that she was entitled to *Federal* Family Medical Leave on October 7, 2005, or on the date of her termination on November 3, 2007. See Complaint at ¶ 86. Plaintiff acknowledges that she exhausted her twelve weeks of Federal Family Medical Leave Act to care for her mother (from March 2005 to July 2005) as of the date of her notice of removal and termination. See Tabb Declaration, at ¶13. As the plaintiff does not dispute that she exhausted her 12 weeks of medical leave under *Federal* Family Medical leave, plaintiff has failed to present a *federal* question as to her medical leave and the Court should decline to exercise jurisdiction over this claim. See Plaintiff's DC Family Medical Leave Application for Family Medical Leave.

**H.**    **Plaintiff Has Failed to State a Claim for Which She Is Entitled to Relief Under Either the D.C. Family Medical Leave Act and/or the Federal Medical Leave Act.**

The Federal Family Medical Leave Act and the D.C. Family Medical Leave Act recognizes a cause of action for termination in retaliation for taking protected leave. *See Change v. Institute for Public-Private Partnerships, Inc.,* 846 A.2d 318, 327 (D.C. 2004). Plaintiff acknowledges that the defendants granted her leave under the Family Medical Leave Act. See Complaint at ¶¶85-86. In fact, she avers that she was issued a "Notice of Summary Removal" while still on medical leave. See Complaint, at ¶ 28. Plaintiff provides no factual support that would demonstrate that the defendants terminated her because she took leave under the Family

Medical Leave Act.   In fact, according to plaintiff, her termination resulted because she spoke to the media about children sleeping in the CFSA building.  See Complaint, generally.  Even viewed in the light most favorable to the plaintiff, there are no facts pled by the plaintiff that would support a finding that that the plaintiff was terminated because she took protected leave.  See *Kowal v. MCI Communications* Corp., 305 U.S. App. D.C. 60, 16 F.3d 1271, 276 (1994)(holding the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint, "[n]or must the court accept legal conclusions cast in the form of factual allegations." ) Plaintiff has failed to state a cause of action against these defendants under either the Federal Medical Leave Act, or the D.C. Family Medical Leave Act.  Therefore, these defendants are entitled to judgment as a matter of law on these claims.

WHEREFORE, the defendants respectfully request this Court grant them summary judgment as a matter of law.

Respectfully submitted,

Linda Singer
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

_____/s/_____
PATRICIA A. JONES [428132]
Chief, General Litigation, Section IV

_____/s/_____
LEAH BROWNLEE TAYLOR [488966]
Assistant Attorney General
441 4th Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-7854; (202) 727-6295
 leah.taylor@dc.gov

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHIRLEY TABB, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-00789 (PLF) |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, et. al, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>ORDER</u>

Upon consideration of the defendants Mindy Good, Brenda Donald Walker, and the District of Columbia's Motion for Summary Judgment, plaintiff's response thereto, if any, and the record herein, it is this by the Court this _____ day of _____, 2007,

ORDERED:    that the Motion is GRANTED for the reasons set forth in the defendants' motion; and it is

FURTHER ORDERED:   that judgment as a matter of law is granted in favor of defendants Good, Walker and the District of Columbia.

_____
JUDGE, United States District Court for the District of Columbia