UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHIRLEY TABB, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| BRENDA DONALD WALKER, and | ) | CASE No.  06-00789 (PLF) |
| | ) | |
| MINDY GOOD, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rules 7(h) and 56.1, the Plaintiff responds to the

Defendants' Statement of Material Facts as follows:

1.      Admit.

2.      Admit.

Plaintiff's Memorandum in Opposition
Page 1

3.      Admit.

4.      Denied.  Plaintiff's Declaration (Dkt. #8, att. #1), Exhibit G (response

to admonition) at page 5 does not reference job responsibilities.  However,

Exhibit G at page 6 states:

Conversely, my responsibility is to know about program activities and
initiatives in the agency, as editor of the agency's e-newsletter, CFSA
Reporter, and Public Information Specialist.

My job is to stay abreast of systemic issues, problems and progress.

The PIO references discussions about the lack of placement resources in
senior management meetings during OPI staff meetings.


5.      Denied.  There is no law or regulation the Plaintiff is aware of that

makes a public information officer a mandatory reporter.

6.      Admit.

7.      Denied in part.  Plaintiff has never attested that she met with

Defendant Walker in her capacity as a Public Information Specialist.

Rather, Plaintiff met with Defendant Walker and other officials because she

was a concerned employee and citizen.  Responding to her summary

removal, Plaintiff stated, in part: "I was not in a decision making position

while at CFSA, but the agency's position on our involvement in this

important - life and death initiative - made no sense and was incongruent

with my moral and professional ethics.  I saw the agency's attitude as socially, morally and spiritually irresponsible.  Therefore- I was compelled to take some action."  Tabb Declr., Ex. I, p. 2.

8.      Denied in part.  Plaintiff has never attested that she met with Susan Newman in her capacity as a Public Information Specialist.

9.      Denied in part.  Plaintiff has never attested that she met with Deputy Mayor Albert in her capacity as a Public Information Specialist.

10.      Denied.  None of the references cited indicate that Plaintiff was identified in her official capacity or that she claimed to be making statements in her official capacity when she spoke to the media.  In fact, Plaintiff was on leave at the time she spoke to the media.  Tabb Declr. ¶s 42 - 46.

11.      Denied in part.  Plaintiff received a notice of summary removal which was in effect a termination notice because Defendant Walker had no intention of allowing the Plaintiff to return to the agency.  See, Declaration of Union Representative Stephen White (attached).

12.      Admit.  In addition, DCMR § 6-1616.2 states:

"An agency head may summarily remove an employee under this section **only** if at the time the summary removal action is taken, **a good faith effort**

has been made to determine that at least one (1) of the conditions described in § 1616.1 is met; and only if the action is taken for cause pursuant to § 1603. Otherwise, the employee shall be entitled to an advance written notice as specified in § 1608." [emphasis added]. Plaintiff was not provided the process and information required by DCMR § 6-1608. See, also, Tabb Declr. ¶s 46 - 48.

13.    Admit. Plaintiff did not appear for the hearing scheduled by the agency. She invoked her rights under the Whistleblower Protection Act. Tabb Declr. ¶s 49 - 50.

14.    Denied. Plaintiff did not take leave from March - July 2005. Plaintiff returned from leave around May 9, 2005. Tabb Declr. ¶s 15, 27.

15.    Admitted in part. In her Complaint, Plaintiff states several bases for the actions taken against her. See, generally, Complaint and Tabb Declr.

## **ARGUMENT**

### I.    **Standard of Review**

This Court has recently described the standard for assessment of motions for summary judgment.

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law. See *Fed. R. Civ. P. 56*.
Material facts are those that "might affect the outcome of the suit
under the governing law." *Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. The party seeking
summary judgment bears the initial burden of demonstrating an
absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,
477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*.

In determining whether the moving party has met this burden, "the
court must draw all reasonable inferences in favor of the nonmoving
party, and it may not make credibility determinations or weigh the
evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150,
147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000). See *Washington Post Co. v.
United States Dep't of Health and Human Servs.,* 865 F.2d 320, 325 (D.C.
Cir. 1989). Once the moving party makes its initial showing,
however, the nonmoving party's opposition must consist of more
than mere unsupported allegations or denials and must demonstrate
"specific facts showing that there is a genuine issue for trial." *Celotex
Corp., 477 U.S. at 324.* See *McKinney v. Dole, 246 U.S. App. D.C. 376,
765 F.2d 1129, 1135 (D.C. Cir. 1985)*. Accordingly, at that point, the
non-moving party is "required to provide evidence that would
permit a reasonable [fact-finder] to find" in its favor. *Laningham v.
United States Navy,* 259 U.S. App. D.C. 115, 813 F.2d 1236, 1242 (D.C.
Cir. 1987).

*Lerner v. District of Columbia*, 362 F. Supp.2d 149, 158 - 159 (D.D.C. 2005).

In addition, the court may only rely upon documentary evidence

submitted in support of summary judgment that is in the court record or that has

been established as admissible. *Kempinski v. Greene,* 189 F. Supp. 877, 878 (E.D.

Pa. 1960), *aff'd,* 292 F.2d 820 (3d Cir. 1961) (exhibits that are part of court record

may be considered by court in deciding summary judgment motion; exhibits not

of record may be considered if counsel so stipulate, but are otherwise

inadmissible for purposes of deciding motion); *Pollack v. Newark, N.J.,* 147 F.

Supp. 35, 39 (D.N.J. 1956), *aff'd,* 248 F.2d 543 (3d Cir. 1957), *cert. denied,* 355 U.S.

964 (1958) ("in considering a motion for summary judgment, the court is entitled

to consider exhibits and other papers that have been identified by affidavit or

otherwise made admissible in evidence"); *See Fed. R. Civ. P.* 56(e) ("[s]worn or

certified copies of all papers or parts thereof referred to in an affidavit shall be

attached thereto or served therewith").

## II.    Plaintiff has Stated a Valid First Amendment Claim

The Defendants assert that absent the benefit of discovery and as a matter

of law, the Plaintiff's claims under the First Amendment should be dismissed.

The crux of Defendants' argument is that the Plaintiff's speech and association

with the media on the issue of children in CFSA's care sleeping in the agency's

office building and not being provided prompt and appropriate home

placements were matters addressed pursuant to her duties as a public

information specialist.  Def. Memo at 10 - 13.  The Defendants analysis is

incorrect on the facts and law.

Defendants rely on *Garcetti v. Ceballos*[1] and subsequent decisions for the

---

[1]  126 S. Ct. 1951 (2006).

proposition "that in cases where a government employee speech falls within the scope of the employee's employment responsibilities, there is no First Amendment protection." Def. Memo at 11. This broad proposition does not accurately reflect the holding and reasoning in *Garcetti*.

The Court explained that public employees retain important rights and play a critical role in our democracy.

> The Court's employee-speech jurisprudence protects, of course, the constitutional rights of public employees. Yet the *First Amendment* interests at stake extend beyond the individual speaker. The Court has acknowledged the importance of promoting the public's interest in receiving the well-informed views of government employees engaging in civic discussion. *Pickering* again provides an instructive example. The Court characterized its holding as rejecting the attempt of school administrators to "limi[t] teachers' opportunities to contribute to public debate." *391 U.S., at 573, 88 S. Ct. 1731, 20 L. Ed. 2d 811.* It also noted that teachers are "the members of a community most likely to have informed and definite opinions" about school expenditures. *Id., at 572, 88 S. Ct. 1731, 20 L. Ed. 2d 811.* The Court's approach acknowledged the necessity for informed, vibrant dialogue in a democratic society. It suggested, in addition, that widespread costs may arise when dialogue is repressed. The Court's more recent cases have expressed similar concerns. See, *e.g., San Diego v. Roe, 543 U.S. 77, 82, 125 S. Ct. 521, 160 L. Ed. 2d 410 (2004) (per curiam)* ("Were [public employees] not able to speak on [the operation of their employers], the community would be deprived of informed opinions on important public issues. The interest at stake is as much the public's interest in receiving informed opinion as it

is the employee's own right to disseminate it" (citation omitted)); cf. *Treasury Emples., 513 U.S., at 470, 115 S. Ct. 1003, 130 L. Ed. 2d 964* ("The large-scale disincentive to Government employees' expression also imposes a significant burden on the public's right to read and hear what the employees would otherwise have written and said").

*Garcetti*, 126 S. Ct. at 1958 - 1959. In light of the importance of public employees' speech, the Court went on to explain the limits of its holding.

Proper application of our precedents thus leads to the conclusion that the *First Amendment* does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities. Because Ceballos' memo falls into this category, his allegation of unconstitutional retaliation must fail.

Two final points warrant mentioning. First, as indicated above, the parties in this case do not dispute that Ceballos wrote his disposition memo pursuant to his employment duties. We thus have no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate. We reject, however, the suggestion that employers can restrict employees' rights by creating excessively broad job descriptions. See *post, at ____, n 2, 164 L. Ed. 2d, at 707* (Souter, J., dissenting). The proper inquiry is a practical one. Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for *First Amendment* purposes.

*Garcetti*, 126 S. Ct. at 1961 - 1962.  It is important to note that the Court specifically rejected the idea that public employers could "restrict employees' rights by creating excessively broad job descriptions."  *Id*.

However, that is exactly what the Defendants have attempted here as they make factually unsupported arguments asserting that the Plaintiff was acting pursuant to her job duties when she reported to government executives and the media that there was a shortage of proper placements for children coming into CFSA's care and that children were sleeping in the agency's office building. Nothing offered in the Defendants' Statement of Material Facts supports the notion that the Plaintiff's job duties as a Public Information Specialist in any manner covered her communications to government executives and the media seeking to expose and stop the improper treatment of injured children coming into CFSA's care.  The Court should reject the Defendants' arguments and deny their motion.

### III.   Plaintiff has Stated a Valid Claim Under the District's Whistleblower Protection Act

The Defendants rather sparsely argue that the Plaintiff has failed to state a valid claim under the District's Whistleblower Protection Act (WPA).  Def. Memo

at 14 - 15.  The Defendants argument focuses wrongly on the Plaintiff's communication with the media and then asserts that contact with the media is not protected under the Act.  The Defendants analysis is in error.

However, as the Plaintiff pointed out in her response to the Defendants' first motion, she clearly has alleged sufficient facts to raise a claim under the WPA.  the Defendants incorrectly argue that the Plaintiff's protected disclosure under the Act was her statements to the media.  Plaintiff made clear in her Complaint and declaration that she raised concerns about inadequate and untimely placement of children to Defendant Walker (Complaint ¶s 13 - 15, 60, 62); the Mayor's advisor for religious affairs, Susan Newman (Complaint ¶ 16); Defendant Good (Complaint ¶ 18); and Deputy Mayor Neil Albert (Complaint ¶ 20 - 23).  See, also, Complaint ¶ 57 (citing her protected disclosures to "CFSA management, other District Government Officials, and the media about the adequacy of the agency's placement program, including specific concerns about children having to sleep in the CFSA office building because there was no timely and appropriate placement for them.").  Moreover, the Plaintiff was removed from her position, in part, for communicating her concerns about developing a campaign to raise awareness about child abuse and neglect (Complaint ¶ 29).  Plaintiff's declaration has also addressed these issues.  See, Tabb Declr. ¶s 28 - 32,

35 - 37, 39 - 51.

Plaintiff has alleged in her Complaint and has offered evidence in the form of testimony by declaration and documents that support her claims under the WPA.   The Court should deny the Defendants' motion.

### IV.    Defendants Walker and Good are not Entitled to Qualified Immunity

As Plaintiff previously articulated in her opposition to Defendants' first motion, "[q]ualified immunity generally shields public officials from civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)."  *Moore v. Hartman*, 388 F.3d 871, 872 (D.C. Cir. 2004).  More specifically, the Court in the *Moore* case stated:

> Underlying this doctrine is the basic principle of fair notice: officials may be held liable if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right," *Anderson v. Creighton*, 483 U.S. 635, 640, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987); otherwise, the unfairness of holding officials responsible on grounds they could not have anticipated trumps the individual's interest in vindicating transgressed rights. *See id. at 641*; *Crawford-El v. Britton*, 523 U.S. 574, 590-91, 140 L. Ed. 2d 759, 118 S. Ct. 1584 (1998). To ensure that shielding public officials from unclear law does not freeze the law in place, however, courts facing qualified immunity claims ordinarily engage in a two-step inquiry, considering first what the law is, and only then whether that

law was clearly established. *See Wilson v. Layne,* 526 U.S. 603, 609, 143 L. Ed. 2d 818, 119 S. Ct. 1692 (1999). Were the procedure otherwise, constitutional avoidance might lead courts to rest on findings of uncertainty without first clarifying the law for future cases--a result contrary to the interest of both government officials and individuals claiming that such officials violated their constitutional rights. *See id.; County of Sacramento v. Lewis,* 523 U.S. 833, 841 n.5, 140 L. Ed. 2d 1043, 118 S. Ct. 1708 (1998).

Because the qualified immunity inquiry focuses on whether the officials could have known "what [they were] doing" was unlawful, *Anderson,* 483 U.S. at 640, defining the right "at the appropriate level of specificity" is critical. *Wilson,* 526 U.S. at 615; *see also Butera v. District of Columbia,* 344 U.S. App. D.C. 265, 235 F.3d 637, 646 (D.C. Cir. 2001). While the right need not have arisen in identical or even "fundamentally" or "materially similar" circumstances, *see Hope v. Pelzer,* 536 U.S. 730, 739, 741, 153 L. Ed. 2d 666, 122 S. Ct. 2508 (2002), the right can be considered clearly established only if the unlawfulness was "apparent" in light of pre-existing law, *see Anderson,* 483 U.S. at 640. The "salient question," then, is "whether the state of the law [at the relevant time] gave [the officials] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope,* 536 U.S. at 741.

*Moore*, 388 F.3d at 876 - 877.   As discussed in *Moore*, the two-part analysis for a

qualified immunity defense involves (1) establishing what the law is, and (2)

whether the law was clearly established.

Individual Defendants Walker and Good now argue that  they could not

have knowingly violated the Plaintiff's First Amendment rights because the

Plaintiff did not engage in activities protected by the First Amendment.  Def.

Memo at 16.  The Defendants rely upon the Supreme Courts decision in *Garcetti*

*v. Ceballos*[2] to argue that Plaintiff's association and communications with the media regarding the proper placement of children in CFSA's care and children sleeping in CFSA's office building are unprotected by the First Amendment because "her speech was made in her capacity as the Public Information Specialist at CFSA."  Def. Memo at 12.  The Defendants' argument misapplies the facts and the law.

Significantly, the Supreme Court in *Garcetti* emphasized the narrow nature of its holding.

> The controlling factor in Ceballos' case is that his expressions were made pursuant to his duties as a calendar deputy. See Brief for Respondent 4 ("Ceballos does not dispute that he prepared the memorandum 'pursuant to his duties as a prosecutor'"). That consideration -- the fact that Ceballos spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case -- distinguishes Ceballos' case from those in which the *First Amendment* provides protection against discipline. We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for *First Amendment* purposes, and the Constitution does not insulate their communications from employer discipline.

*Ceballos*, 126 S.Ct. at 1959 - 1960.  Therefore, the speech at issue must be strictly part of an employee's job duties in order for *First Amendment* protections to be nullified.

---

[2]  126 S. Ct. 1951 (2006).

It is clear from the Plaintiff's Complaint, declaration and response of the Defendants that she was not speaking out pursuant to her job duties.   In fact, Defendant Walker relied upon the allegation that the Plaintiff "failed to obtain permission from [her] supervisor to disseminate information to the media" as part of the basis for Plaintiff's summary removal.  Dkt. #4 (Def.s Exhibit 6 at 1).  It is no more credible now than when the Defendants made similar arguments the first time, in July 2006, to now argue that Plaintiff was acting pursuant to her duties.

Moreover, the Supreme Court has long held that criticisms of the policies and practices of one's employing agency is protected by the First Amendment. See, *e.g.*, *Givhan v. Western Line Consolidated School District*, 439 U.S. 410 (1979). *See, also, O'Donnell v. Barry*, 148 F.3d 1126, 1133 - 1135.  Defendants Walker and Good cannot legitimately claim that the Plaintiff's disclosures were not clearly established and protected under District and Federal law.

## V.    Plaintiff's Original and Amended Complaints Adequately Plead Municipal Liability Under 42 U.S.C. § 1983

The Defendants next argue:

> Plaintiff's complaint lacks factual support that any
> District custom, policy or practice and/or final
> policymaker caused a constitutional deprivation. See
> Complaint, generally. Plaintiff has failed to plead

> sufficient facts to support that her alleged constitutional injuries resulted from any District custom, policy, and/or practice. Therefore, the District is entitled to judgment as a matter of law on plaintiff's § 1983, claim against it.

Def. Memo at 17 - 18.

Plaintiff alleged that Defendant Walker is a policymaking official in the District government. Complaint ¶s 9, 37. Plaintiff's Complaint more than adequately meets the requirements for pleading claims pursuant to 42 U.S.C. § 1983.

> There are a number of ways in which a "policy" can be set by a municipality to cause it to be liable under § 1983: the explicit setting of a policy by the government that violates the Constitution, *see Monell, 436 U.S. at 694-95*; the action of a policy maker within the government, *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123-30, 99 L. Ed. 2d 107, 108 S. Ct. 915 (1988); the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become "custom," *id. at 130*; or the failure of the government to respond to a need (for example, training of employees) in such a manner as to show "deliberate indifference" to the risk that not addressing the need will result in constitutional violations, *Harris,* 489 U.S. at 390; *Daskalea v. Dist. of Columbia,* 343 U.S. App. D.C. 261, 227 F.3d 433, 441 (D.C. Cir. 2000). Deliberate indifference is determined by analyzing whether the municipality knew or should have known of the risk of constitutional violations, an objective standard. *Farmer,* 511 U.S. at 841.

*Baker v. District of Columbia*, 326 F.3d 1302, 1306 - 1307 (D.D.C. 2003). In the instant case, the Defendants have taken actions that reflect each of the ways in

Plaintiff's Memorandum in Opposition
Page 15

which a policy can be set by a municipality for the purposes of *Section 1983* liability.

For example, there is no doubt that Defendant Walker is a policymaker. She served as the head of CFSA and was given specific powers "[t]o be the personnel authority for all employees of the Agency, including the exercise of full authority to hire, retain, and terminate personnel . . ." D.C. Code § 4-1303(a-1)(8). Defendant Walker is responsible for overseeing the actions of her managers and in this case was directly involved with Defendant Good regarding the actions taken against the Plaintiff. Consequently, both Walker and Good have engaged in conduct creating personal liability for themselves and municipal liability for the District under 42 U.S.C. § 1983. See, *e.g.*, *Barham v. Ramsey*, 338 F. Supp. 2d 48, 63 (D.D.C. 2004), *citing*, *Haynesworth v. Miller*, 820 F.2d 1245, 1262 (D.C.Cir.1987); *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir.2003).

Plaintiffs in a *Section 1983* action are not required to meet a heightened pleading standard. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163 (1993) (plaintiffs alleging municipal liability under 42 U.S.C. § 1983 need not satisfy any heightened pleading standard). In light of the liberal pleading standard, this Circuit has stated: " [a] complaint, in other words, need not allege all that a plaintiff must eventually prove." *Atchinson v.*

*District of Columbia*, 73 F.3d 418, 421 - 422 (D.C. Cir. 1996).

The Defendants' arguments are not supported by the law or facts adduced thus far.  The Court should deny their motion.

**VI.    Plaintiff was Denied Procedural Due Process When She was Summarily Terminated**

The Defendants assert that the Plaintiff was provided sufficient Due Process protections because CFSA made available an administrative hearing prior to Plaintiff's termination becoming final.  Def. Memo at 18.   This issue was addressed in the District previous motion.  Plaintiff's response here is similar.

Defendant Walker made baseless allegations in support of the Plaintiff's removal claiming that the conduct referenced threatened the integrity of government operations.  See, Def.s Exhibit 6 at 1.   The District's personnel regulations make clear that the proponent of a summary removal must make a good faith effort to determine that the reason for removal that is relied upon is met.  DCMR § 6-1616.2.   Defendant Walker's notice of summary removal (Def.s Exhibit 6) fails to evidence any good faith effort to insure that there was in fact a basis for summary removal.  For example, although much is made of the Plaintiff's alleged violation of "CFSA confidentiality laws", no law, regulation or policy is cited in the notice.  No facts are stated supporting the allegation that the

Plaintiff disclosed "detailed personal information about why the child was in CFSA's custody." And, regarding the assertion that the Plaintiff "misrepresented agency practice", there is no policy or practice cited.

Additionally, Defendant Walker's claim that the Plaintiff was abusing Family Medical Leave is completely unsupported by reference to any standard, physician's certification, absence of approval or other basis. Def.s Exhibit 6 at 2. The fact that the Plaintiff was able to make contact with the media while she was on leave is not a basis to claim that she abused leave. See, Declaration of Shirley Tabb (Tabb Declr) ¶s 11 - 13, 33, 38 (Dkt. #8, att. #1).

Even a modicum of effort to investigate the issues raised against the Plaintiff would have demonstrated that there was no basis to impose a summary removal. In fact, CFSA's records demonstrate that the Plaintiff was not scheduled to return to the office until about October 24, 2005 because of complications she was suffering from diabetes. Tabb Declr. ¶ 38.

Absent a good faith basis for imposing summary removal "the employee shall be entitled to an advance written notice as specified in § 1608." DCMR § 6-1616.2. Plaintiff Tabb was entitled to advance written notice providing the complete bases for Defendant Walker's allegations.

Moreover, although Plaintiff Tabb provided a written response to

Defendant Walker's baseless allegations ( Tabb Declr ¶s 46 - 49), her response was not considered or referenced in the final decision (Def.s Exhibit 7). At a minimum, under the District's regulations the hearing officer was required to review the Plaintiff's response to the notice of summary removal. DCMR § 6-1612.4(b).

Finally, the claim that Plaintiff Tabb did not appear for a scheduled hearing regarding the summary removal is misleading. Plaintiff Tabb, through counsel, invoked her right to challenge the personnel actions being proposed by instituting a civil action under the WPA, D.C. Code §§ 1-615.54, 1-615.56. A letter announcing her intent to file a civil action was hand delivered to Defendant Walker on October 21, 2005, six days before the hearing the Defendants scheduled. Tabb Declr ¶ 50.

In sum, the District and Defendant Walker violated District regulations in instituting a summary removal of the Plaintiff. Such flawed and improperly implemented procedure does not meet minimum due process requirements and the standards articulated in *Loudermill*.[3]    Therefore, Defendants are not entitled

---

[3] *Cleveland Bd. Of Education v. Loudermill,* 470 U.S. 532 (1985).

to summary judgment on the issue of their violation of Plaintiff's right to Due

Process.

### VII.   Plaintiff was Retaliated Against for Taking Legitimate Family and Medical Leave

The Defendants begin by arguing incorrectly that the Plaintiff had

exhausted her twelve weeks of family and medical leave by July 2005.  Def.

Memo at 19.  This statement is factually incorrect and is directly refuted in the

Plaintiff's declaration where she states that she began leave in mid-March to care

for her mother and returned to work on or about May 9, 2005 due to her mother's

death.  See, Tabb Declaration ¶s 13 - 15, 27 (Dkt. #8, att. #1).

Next, Defendants argue that

Plaintiff provides no factual support that would demonstrate that
the defendants terminated her because she took leave under the
Family Medical Leave Act. In fact, according to plaintiff, her
termination resulted because she spoke to the media about children
sleeping in the CFSA building. See Complaint, generally. Even
viewed in the light most favorable to the plaintiff, there are no facts
pled by the plaintiff that would support a finding that the plaintiff
was terminated because she took protected leave.

Def. Memo at 19 - 20.  This argument is, again, factually incorrect.  Plaintiff has

stated in her Complaint that she was retaliated against in violation of the District

and Federal family and medical leave acts.  Complaint ¶s 81 - 88.   Factual

Plaintiff's Memorandum in Opposition
Page 20

support for the Plaintiff's claim of retaliation and discrimination under the family and medical leave acts is contained in Defendant Walker's October 3, 2005 summary removal letter stating as one of the alleged bases for removal that Plaintiff had misused family and medical leave.  Dkt. #4 (Def.s Exhibit 6 at 2). The removal letter states that CFSA considers the Plaintiff's coordination of a photo of a child sleeping at CFSA, obtaining an audiotape of a co-worker message from Plaintiff's answering machine, and coordinating interviews with the media regarding children sleeping in the CFSA office building ns abuse of family medical leave.  *Id.*   However, the record is clear that the Plaintiff had not abuse leave (see Tabb Declr.¶s 11 - 15, 27, 38, 46) and the Defendants do not cite any basis for declaring the conduct of the Plaintiff a violation of leave policy.

Thus, the  Defendants are utilizing Plaintiff's legitimate leave as a pretext to support her illegal termination.  The Defendants are using the fact that the Plaintiff was on family and medical leave against her.   Considering the facts adduced this far in the light most favorable to the Plaintiff (nonmoving party), the Court should deny the Defendants motion.

### VIII.  Conclusion

The Court should deny the Defendants' second motion for summary

judgment.  The Defendants misstate the facts and fail to establish that they are entitled to judgment as a matter of law.

Further, in light of the unnecessary delay caused by the Defendants' second motion, the Plaintiff asks that the Court require the parties to file a Rule 16.3 report promptly and dispense with initial disclosures so that the parties can begin discovery as soon as possible.

DATED this 1st  day of June, 2007.


Respectfully submitted,

/s/

_____
Richard E. Condit, Esq.
D.C. Bar No. 417786
1612 K Street, NW, Suite 1100
Washington, D.C.  20006
Telephone: (202) 829-2444 / (202) 408-0034 x. 142
Facsimile: (202) 318-3211
Email: r1condit1@earthlink.net