UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHIRLEY TABB )
)
)
)
Plaintiff, )
v. )
)
DISTRICT OF COLUMBIA, et al.; )
)
) CASE No. 06-00789 (PLF)
)
Defendants. )
)
)
)
)
)
)

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
### DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Presently before the Court is the Defendants' Motion for Protective Order. Defendants seek to shield attorneys in the Child & Family Services Agency's (CFSA) Office of General Counsel from providing discovery depositions in this matter. As will be demonstrated in the analysis that follows, Defendants cannot prohibit members of CFSA's General Counsel's Office from providing testimony regarding non-privileged matters in a discovery deposition.

-1-

The central argument that the Defendants offer in support of their Motion is that the deponents "are attorneys at and for CFSA and their conversations with agency officials are shielded by the attorney-client privilege." Def.s Memo at 3, ¶2. In addition, Defendants argue that "plaintiff's counsel seeks to depose two attorneys employed with CFSA to pierce the attorney-client privilege to learn what legal advice they may have provided to their client(s), and/or what information their clients disclosed to them." Def.s Memo at 4, ¶7. Neither argument offered by the Defendants' satisfies the standard for issuing a protective order nor do these arguments provide a basis to completely bar the testimony in discovery of witnesses with relevant testimony.

To begin, it is clear that simply because one is an attorney does not exclude her/him from providing testimony in a discovery deposition. See, *e.g.*, *Adams v. Franklin*, 924 A.2d 993 (D.C. 2007) (testimony sought from attorney regarding facts surrounding demand letter were not privileged). The courts have uniformly recognized that the attorney-client and attorney work product privileges are not absolute.

> The purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Wender v. United Servs. Auto. Ass'n*, 434 A.2d 1372, 1373 (D.C.1981) (internal citation omitted). But the privilege should be narrowly construed to protect only the purposes which it serves. *Id*. at 1373-74. "Thus the privilege applies only in the following circumstances: (1) where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *Jones v. United States*, 828 A.2d 169, 175 (D.C.2003) (citation omitted).

*Adams*, 924 A.2d at 998 - 999. Further, even if a privilege exists it may be waived if, for

example, (1) privileged information is placed in issue in a claim or defense,[1] (2) privileged communications are disclosed,[2] or (3) where there is a compelling or substantial need for the information claimed as privileged.[3]

Questions posed to members of CFSA's General Counsel's Office who were involved in the decision to terminate Plaintiff Shirley Tabb regarding, for example, (1) documents that support or negate the claimed bases for Ms. Tabb's termination, (2) facts that support or negate the claimed bases for Ms. Tabb's termination, and (3) persons with knowledge of discoverable facts are not matters that are protected by any privilege.  See, *e.g.*, *Riddell Sports, Inc. v. Brooks*, 158 F.R.D. 555, 559 (S.D.N.Y. 1994) (collection of evidence without creative or analytic input from attorney is not privileged).

In the instant case, Defendants claim that Ms. Tabb was properly terminated based upon sound factual and legal bases.  Unfortunately, thus far in discovery, none of the decision-makers who were involved in Ms. Tabb's summary removal appear to have personal knowledge of the validity of the purported factual or legal bases for the action.  For example, then-CFSA Director Brenda Donald signed the letter that

---

[1] See, *Rhone-Poulenc, Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994); *John Doe Co. v. U.S.*, 350 F.3d 299, 302 (2d Cir. 2003); *Novartis Pharms. v. EON Labs Mfg.*, 206 F.R.D. 396, 398 (D.Del. 2002).

[2] See, *Bundy v. United States*, 422 A.2d 765, 767 n. 4 (D.C.1980); *In re Qwest Comm.s Int'l*, 450 F.3d 1179, 1185 (10th Cir. 2006); *Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007).

[3] See, *In re Sealed Case*, 676 F.2d 793, 809 - 810 (D.C. Cir. 1982) (compelling need); *Director, Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1308 (D.C. Cir. 1997) (substantial need).

summarily removed Ms. Tabb and stated the purported bases for the action. In deposition, Ms. Donald testified that she did not have personal knowledge of the standards for summary removal and that she relied on the general counsel's assertion "that these were grounds enough to justify that [summary removal]." Deposition of Brenda Donald at 201.[4] Ms. Donald was never shown the personnel regulations or standards or the confidentiality laws or standards that allegedly applied to Ms. Tabb's case. Donald at 204.

Ms. Donald went on to testify about the substance of meetings she had with persons from Human Resources and CFSA's General Counsel's Office and the actions she was considering. Donald at 146 - 149, 152 - 154.

After Ms. Donald made the decision to summarily remove Ms. Tabb from her position without any pre-removal process, Mr. Ronnie Charles was assigned to make a final decision regarding whether to sustain the action. Mr. Charles is a Senior Deputy Director at CFSA and a certified human resources professional.

Mr. Charles testified that he relied on the General Counsel's office to "validate the violations" that formed the bases for Ms. Tabb's removal and termination. Deposition of Ronnie Charles at 124. He further testified that he did not validate the facts that were alleged in support of Ms. Tabb's removal. Charles at 125. Thus, it appears that members of the General Counsel's Office are the only persons with personal knowledge of any factual investigation and whether the alleged facts are

---

[4] The referenced depositions excerpts are attached as Exhibit 1.

sufficient to sustain the action taken against Ms. Tabb.

Deborah Wilson was the CFSA Human Resources professional involved in the summary removal of Ms. Tabb. However, Ms. Wilson testified that she did not verify or check any of the facts that formed the basis for Ms. Tabb's removal. Deposition of Deborah Wilson at 150. Ms. Wilson believed that Ms. Donald and senior staff would have validated the facts relied upon to terminate Ms. Tabb. Wilson at 150.

Mindy Good was Ms. Tabb's immediate supervisor. Ms. Good testified that Ms. Donald made the decision to remove Ms. Tabb from her position. Deposition of Mindy Good at 126. Ms. Good further testified that she had no input into the decision to remove Ms. Tabb and she did not know what facts were relied upon to support the action. Good at 150 - 151.

In sum, the CFSA Director (Ms. Donald), Deputy Director (Mr. Charles), Human Resources professional (Ms. Wilson) and immediate supervisor (Ms. Good) know almost nothing of the facts or legal bases purportedly relied upon for Ms. Tabb's removal and termination. In fact, to this day, Ms. Tabb has never been informed of the confidentiality laws or policies she is alleged to have violated when she revealed to the media that children were sleeping in the CFSA office building. Yet, the issue of Ms. Tabb's alleged violation of confidentiality laws is a critical enumerated basis for her removal and termination.

As a result of the testimony of the foregoing witnesses who lack personal knowledge of the factual or legal bases for the action taken against Ms. Tabb, it appears

that the CFSA General Counsel Donald Terrell and Assistant/Associate General Counsel Deone Merene may be the only persons who can attest to the purported factual and legal bases for the actions taken against Ms. Tabb.  No claim of privilege should conceal their testimony on these central issues.

First, any testimony regarding the witness's knowledge of facts, policies, and laws that were applied to Ms. Tabb's situation is not privileged.  Such basic or raw information does not touch upon the opinions or analysis of the attorneys.

Second, as for attorney-client privilege, Ms. Donald waived the privilege when she testified about the content of discussions she had in meetings involving members of CFSA's General Counsel's Office.  Donald at 146 - 149, 152 - 154.  Defendant Donald having waived the privilege, Plaintiff is entitled to discover the remaining privileged information.  "Once a party has waived the attorney-client privilege, the other party should receive access to the remaining relevant withheld materials."  *Adams*, 924 A.2d at 999, *citing*, *Edmund J. Flynn Co. v. LaVay*, 431 A.2d 543, 551 (D.C.1981).

Third, the Defendants have placed the advice of counsel at issue in the litigation.  As noted previously, both Ms. Donald and Mr. Charles relied on advice of the General Counsel's office to confirm facts and sustain the actions taken against Ms. Tabb.  Donald at 201, 204; Charles at 124.  A party waives privilege by asserting a defense that puts the subject matter of the privileged communication or attorney's advice at issue.  See, *e.g.*, *Baker v. General Motors Corp.*, 209 F.3d 1051, 1055 (8th Cir. 2000).

Finally, regarding any assertion that the information sought is attorney work product, there is both a compelling and substantial need for the information held by Mr. Terrell and Ms. Merene that cannot be provided by other witnesses. See, *e.g.*, Fed.R.Civ.P., Rule 26(b)(3(A)(ii); *In re Sealed case*, 676 F.2d at 809 - 810. Plaintiff has no other means to determine the validity of the purported factual and legal bases for the actions taken against her then to question the attorneys who were relied upon to justify the actions.

In conclusion, the Defendants Motion for Protective Order should be denied. The question of whether any privilege might be at issue during the depositions of Mr. Terrell or Ms. Merene is not ripe as no questions have been presented to the witnesses. However, even if attorney-client or work product privilege applied to some issues, these privileges cannot be sustained regarding questions concerning the factual and legal bases for Ms. Tabb's removal and termination because the privilege was waived by Ms. Donald and because Ms. Tabb has no other means to obtain this critical information.

DATED this 18th day of February, 2008.

Respectfully submitted,

*/s/ Richard E. Condit*

---

Richard E. Condit, Esq.
D.C. Bar No. 417786
1612 K Street, NW, Suite 1100
Washington, D.C. 20006
Telephone: 202.408.0034 x.142
Facsimile: (202) 318-3211
Email: r1condit1@earthlink.net