VIDEOTAPED DEPOSITION OF BRENDA DONALD
CONDUCTED ON THURSDAY, DECEMBER 27, 2007

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

SHIRLEY TABB,                   :
    Plaintiff,              :   Civil Action No.:
v.                              :   1:06CV00789(PLF)
DISTRICT OF COLUMBIA,           :
et al.,                         :
    Defendants.             :
----------

Videotaped Deposition of

BRENDA DONALD

Washington, D.C.

Thursday, December 27, 2007

10:42 a.m.

Job No: 2-118552

Pages: 1 - 244

Reported by: Kelly Carnegie, CSR, RPR

VIDEOTAPED DEPOSITION OF BRENDA DONALD
CONDUCTED ON THURSDAY, DECEMBER 27, 2007

Page 201

1  Mindy Good as her supervisor would have.
2      Q   At the time that you signed this letter, Ms.
3  Donald, were you aware of what the District's
4  standards were for summary removal?
5      A   As -- not in total. I was advised by HR and
6  in consultation with our general counsel that these
7  were grounds enough to justify that.
8      Q   Did you make any effort to determine on your
9  own whether or not the information that was being
10 alleged to you was sufficient basis for summary
11 removal?
12     A   On my own? No, I did not.
13     Q   So you relied on others?
14     A   Yes.
15     Q   And those others were HR and someone from
16 the office of general counsel?
17     A   Yes.
18     Q   And is it -- was it primarily Mr. Charles
19 within HR, or was there someone else?
20     A   I'm sure he would have had his employee
21 relations person to be involved in this, but I don't
22 know. There was not an individual who was involved in

VIDEOTAPED DEPOSITION OF BRENDA DONALD
CONDUCTED ON THURSDAY, DECEMBER 27, 2007

Page 204

1   example.  Is that correct?
2       A   Yes.
3       Q   Ms. Donald, do you know if you were ever
4   shown either the personnel regulations or standards or
5   the confidentiality laws or standards that allegedly
6   applied to Ms. Tabb's case?
7       A   No, I would not have been shown that.
8       Q   Let me show you what I'll mark as the next
9   exhibit.
10          (Donald Deposition Exhibit No. 12
11   was marked for identification and was attached to
12   the deposition transcript.)
13  BY MR. CONDIT:
14      Q   Ms. Donald, I'm going to show you what I've
15  marked as Exhibit 12.  This is titled LaShawn A.
16  versus Williams, an Assessment of the District of
17  Columbia's Progress as of June 30, 2005.  It is a
18  document of the Center for the Study of Social Policy,
19  and it's dated on November 3, 2005.  It's an excerpt.
20  I'd like you to take a look at it and see if you're
21  familiar with it, please.
22      A   I'm familiar with the report.

VIDEOTAPED DEPOSITION OF BRENDA DONALD
CONDUCTED ON THURSDAY, DECEMBER 27, 2007

Page 146

1   Q   Okay.  Page 2 is the picture of the child on
2   Exhibit 7.  Was it ever determined whether or not that
3   child spent the night at CFSA?
4   A   Not that I know of.
5   Q   Not that you know of?  You mean it was never
6   determined, or that they didn't spend the night?
7   A   Either one.  I don't know if the child spent
8   the night or if it was determined that the child spent
9   the night.
10  Q   Okay.
11  A   And if, in fact, when the child was taken in
12  the picture.
13  Q   Okay.  So following the news story and news
14  reports around the 20th of September, 2005, what steps
15  or actions, if any, did you take with respect to
16  Shirley Tabb's involvement in those stories?
17  A   Again, I met with Mindy and Ronnie Charles
18  and/or general counsel's office to discuss the
19  situation and to find out if there's anything that we
20  could or should do about it.
21  Q   How soon after the news reports aired did
22  you have the meeting that you're describing with Ms.

VIDEOTAPED DEPOSITION OF BRENDA DONALD
CONDUCTED ON THURSDAY, DECEMBER 27, 2007

Page 147

1   Good, Mr. Charles, and someone from the office of
2   general counsel?
3       A   I don't remember, but fairly soon.
4       Q   So would it have been within a day, a week?
5       A   I would say within a week. I'm not sure how
6   soon.
7       Q   And where did the meeting take place?
8       A   I believe it was in my office.
9       Q   Other than yourself, Ms. Good, Mr. Charles,
10  and a member of the office of general counsel's staff,
11  was there anyone else in the meeting?
12      A   No, I don't think so.
13      Q   And about how long did the meeting last?
14      A   I don't know, an hour maybe.
15      Q   And did you chair the meeting or run the
16  meeting?
17      A   Yes.
18      Q   And what were the subject areas that were
19  touched upon in the meeting?
20      A   Well, we obviously discussed the fact that
21  Shirley was on sick leave and participated in a news
22  story about the department and identified or showed a

VIDEOTAPED DEPOSITION OF BRENDA DONALD
CONDUCTED ON THURSDAY, DECEMBER 27, 2007

Page 148

1  picture of one of our clients to the media, and we
2  were concerned about that.
3           And then we discussed Shirley Tabb in
4  general in terms of other concerns that we had which
5  went to possible misuse of leave, and this was an
6  example of was supposed to be on sick leave, how do
7  you participate in a media interview; performance
8  issues that have been documented and discussed
9  previously about if you've got a person who is the
10 public information officer, is that person not aware
11 of all that we've been doing over the past year to try
12 to address the issue of placements, and then is she --
13 how can she represent the department in her role as a
14 spokesperson and advocate for the department by going
15 to the media and basically trashing the department.
16          And then we looked at the letter of
17 admonition and the events that prompted that, we
18 looked at performance issues, and we put everything on
19 the table and said that we felt that -- I felt that,
20 based on everything, that this was an employee who was
21 not serving the agency well and what options did we
22 have.

L.A.D. REPORTING & DIGITAL VIDEOGRAPHY
(202)861-3410  (800)292-4789  (301)762-8282  (703)288-0026  (410)539-3664

c87c10fa-eb59-4a9d-b17f-dfc3c6e84edd

VIDEOTAPED DEPOSITION OF BRENDA DONALD
CONDUCTED ON THURSDAY, DECEMBER 27, 2007

Page 149

1  Q  So is it fair to say that this meeting that
2  you're describing would not have taken place had it
3  not been for the media event?
4  A  I don't think that would be fair at all
5  because we had had conversations about performance
6  issues.  We had had conversations about this going to
7  the mayor's office and going above the chain of
8  command and not appropriately and properly
9  representing the department as an employee whose job
10 it was to do that.
11        So those were discussions that we had,
12 and there were also the concerns about the possible
13 misuse of leave and that time and attendance issues
14 that addressed performance and a lot of documentation
15 about that.
16 Q  So are you telling me then that this meeting
17 that you're just describing was scheduled prior to the
18 events of the media reports about children sleeping in
19 the building?
20 A  No, I'm not.
21 Q  So it would be fair to say that it was
22 scheduled as a result of those reports, right?

VIDEOTAPED DEPOSITION OF BRENDA DONALD
CONDUCTED ON THURSDAY, DECEMBER 27, 2007

Page 152

1  in accordance with the performance improvement plan
2  that Ms. Good had instituted?
3      A   I'm not sure.
4      Q   And, now, you said that you had determined
5  in the meeting you were describing with Ms. Good and
6  others that you felt based on everything that you were
7  reviewing that you needed to consider options with
8  respect to Ms. Tabb.  Is that correct?
9      A   Yes.
10     Q   And what options, if any, were discussed in
11 this meeting?
12     A   Discipline and up to termination.
13     Q   And did you evaluate each of those options,
14 discipline up through termination, in this meeting in
15 the conversation that was going on?
16     A   No.  That meeting was to discuss what kind
17 -- what were the options, and then for HR, through
18 Ronnie Charles and general counsel, to review the
19 whole file, all of the circumstances, and to come back
20 with a recommendation or set of recommendations.
21     Q   Okay.  So if I'm understanding correctly, at
22 the meeting you've been testifying about, when it got

VIDEOTAPED DEPOSITION OF BRENDA DONALD
CONDUCTED ON THURSDAY, DECEMBER 27, 2007

Page 153

1  to options, discussion, merely a list was given that
2  you could do discipline of various types perhaps, and
3  then up through termination, and it was the role of
4  folks after the meeting to make recommendations on
5  those options.  Is that right?
6      A   Not exactly like that.
7      Q   Okay.
8      A   It was basically, as I said, that I had
9  reached a conclusion that I felt that Shirley was not
10 serving the department well and wanted to know, given
11 all of the issues, performance, time and attendance,
12 violation of a client's confidentiality, protection,
13 and that we wanted to -- that I wanted to know what
14 our options were.
15     Q   Okay.  So after the meeting you were
16 describing, which occurs --
17     A   Within a few days after --
18     Q   Within a few days after the media reports?
19 So that's within a few days of September 20, 2005.
20 When was the next time you either met on the subject
21 of what to do with respect to Ms. Tabb?
22     A   It would have been within the next few days

VIDEOTAPED DEPOSITION OF BRENDA DONALD
CONDUCTED ON THURSDAY, DECEMBER 27, 2007

Page 154

1  or however long it took them to research and come
2  back.
3      Q   And who was involved in that second meeting?
4      A   Same people.
5      Q   Same people?
6      A   Ronnie Charles and general counsel.
7      Q   Okay.  And so what transpired in that
8  meeting?
9      A   Then they came back and said that here are
10 the grounds, we have resources, we've looked at the
11 whole file, and based on all of the factors, the
12 document performance issues, the concerns about
13 abusive leave, and the going outside of the chain of
14 command, violated the admonition, letter of
15 admonition, and then exposing a client, which for us
16 was the straw that broke the camel's back, that we had
17 enough grounds to terminate her.
18         And those things were cited, and I
19 can't remember if they came in with a letter or a
20 letter that was subsequently drafted, but those things
21 were identified in the letter, or for the letter.
22     Q   Okay.  So based on this second meeting,