# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SHIRLEY TABB,              :
                           :
             Plaintiff,       :
                           :
v.                         :        Civil Action No. 06-789 (PLF)
                           :
DISTRICT OF COLUMBIA, *et. al.,*  :
                           :
             Defendants.     :

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants District of Columbia, Brenda Donald Walker, and Mindy Good, by and through undersigned counsel, move for the entry of summary judgment under FED. R. CIV. P. 56. Specifically, defendants seek summary judgment in their favor for the following reasons:

1.   Plaintiff has failed to state a claim under the First Amendment because she did not speak as a private citizen.

2.   Defendants Brenda Donald Walker and Mindy Good are entitled to qualified immunity because they were government officials performing discretionary functions and their conduct did not violate clearly established rights which a reasonable person would have known.

3.   Plaintiff has failed to establish that the District is liable for the alleged Constitutional deprivation, under plaintiff's § 1983 claim.

4.   Defendants are entitled to summary judgment regarding plaintiff's 5th Amendment Due Process claim because plaintiff admits that she was given procedural due process.

5.   Defendant the District of Columbia is entitled to summary judgment regarding plaintiff's D.C. Whistleblower Protection Act claim because she has not shown that her disclosures were protected disclosures and/or that the District terminated her because of those disclosures.

6.   Defendant the District of Columbia is entitled to summary judgment regarding plaintiff's claim under the Federal Family Medical Leave Act ("FMLA") because plaintiff has failed to adduce evidence to support a finding that she was entitled to Federal FMLA either on the date of her removal or the date of her termination, or that she was retaliated against because she took Family Medical Leave.

A memorandum of points and authority in support and a proposed Order accompany this motion.

Respectfully submitted,

PETER J. NICKELS
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Patricia A. Jones
PATRICIA A. JONES [428132]
Chief, General Litigation Sec. IV

/s/Zuberi B. Williams
ZUBERI BAKARI WILLIAMS[1]
Assistant Attorney General
Office of the Attorney General
441 Fourth Street, N.W., Suite 6N013
Washington, D.C. 20001
Office: (202) 724-6650; (202) 727-6295
Facsimile: (202) 730-0623
Email:  Zuberi.Williams@dc.gov

---

[1] Appearing under Rule 49(c)(4) of the District of Columbia Court of Appeals, and LCvR 83.2.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SHIRLEY TABB,                          :
                                       :
            Plaintiff,                 :
                                       :
v.                                     :        Civil Action No. 06-789 (PLF)
                                       :
DISTRICT OF COLUMBIA, *et. al.,*  :
                                       :
            Defendants.                :

<u>**DEFENDANTS' STATEMENT OF**</u>
<u>**MATERIAL FACTS NOT IN GENUINE DISPUTE**</u>

These defendants herein submit their statement of material facts not in genuine dispite

pursuant to LCvR 7(h), and state as follows:

1.      The plaintiff was employed as a Public Information Specialist with Child and

Family Services (hereafter "CFSA"). *See* Tabb Dep., at 51 – 55 and 66, attached hereto as

**Exhibit B.**

2.      Brenda Donald Walker was the Director of CFSA.  *See* District of Columbia's

Responses to Plaintiff's Interrogatory #4, attached as **Exhibit A.**

3.      Mindy Good was plaintiff's immediate supervisor during plaintiff's tenure as a

Public Information Specialist. Tabb Dep. at 10, hereto attached as **Exhibit R**.

4.      As a PI Specialist, it was the plaintiff's job to develop communication campaigns

for agency programs and disseminate information on behalf of the agency.  *See* 10/10/05

Response to Notice of Summary Removal at pgs 1-2, incorporated by reference in Tabb

Declaration at ¶ 49, attached hereto as **Exhibit C;** *see also* Tabb Dep., at 66 – 68, attached hereto

as **Exhibit D**.  Specifically, the job required Ms. Tabb to be knowledgeable about CFSA

program activities, initiatives in the agency and required her to stay abreast of systemic issues,

problems and progress in CFSA.  S*ee* Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 5, incorporated by reference in Shirley Tabb's Declaration at ¶ 49, attached hereto as **Exhibit E**; Tabb Dep., at 66 – 68, attached hereto as **Exhibit D.**

5.      As Public Information Specialist, plaintiff was required by law to report child abuse and neglect in the work place. *See* 10/10/05 Response to Notice of Summary Removal at pg 4., incorporated by reference in Tabb Declaration at ¶ 49, attached hereto as **Exhibit C**; *see also* Tabb Dep., at 240-41, attached hereto as **Exhibit S**.

6.       Plaintiff alleges that in March 2005, in her capacity as Public Information Specialist, she contacted a public information officer with the Department of Human Services about developing a campaign to increase awareness around child abuse and neglect, reviving the Back to Sleep Campaign and other projects with CFSA. *See* Tabb Dep., at 251 – 255, attached hereto as **Exhibit F**; *see also* Amended Complaint, ¶ 17.   Plaintiff admits that she used agency equipment for purposes of her communication. *See* Shirley Tabb Declaration, at ¶49, *incorporating by reference* Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 5; *see also* Tabb Dep., at 251 – 255, attached hereto as **Exhibit F.**

7.      Plaintiff alleges that in July 2005, she spoke to Brenda Donald Walker, her supervisor, about children sleeping at CFSA and her desire to address the issue in her capacity as a government employee. Tabb Dep., at 251 – 255, attached hereto as **Exhibit F**; *see also* Shirley Tabb Declaration, at ¶¶ 30-31, attached hereto as **Exhibit G.**

8.      According to the plaintiff, "the fact that children are sleeping in our building [was] a well known fact. Everyone in the agency [knew] it, as well community [sic]." *See* Shirley Tabb's Declaration at ¶36, attached hereto as **Exhibit G**, *incorporating by reference* Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 4, attached hereto as **Exhibit E**; s*ee also* Tabb Dep., at 177 – 79, 181-82 attached hereto as **Exhibit I**.

9.      Plaintiff avers that on August 15, 2007, in her capacity as Public Information Specialist, she contacted Susan Newman, Senior Advisor for Religious Affairs for the Executive Office of the Mayor.  *See* Shirley Tabb's Declaration at ¶36, attached hereto as **Exhibit G** incorporating by reference Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 4 attached hereto as **Exhibit E**.  During her communication with Susan Newman, plaintiff avers that she identified her background and official position with CFSA, and discussed the lack of foster home resources for CFSA and the possibility of contracting to provide a temporary placement for children.   *See* Shirley Tabb's Declaration at ¶49, attached hereto as **Exhibit G** incorporating by reference Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pgs. 4, 5, attached hereto **Exhibit E**.

10.      Plaintiff avers that in September 2005, as Public Information Specialist, she contacted Deputy Mayor Neil Albert, who was responsible for the performance of CFSA.  *See* Tabb Dep., at 145 – 147 **Exhibit J**; *see also* Tabb Declaration at ¶ 39, attached hereto as **Exhibit G.**.  During her communication with Deputy Mayor Albert, plaintiff avers that she identified her background and official position with CFSA and indicated that there were children sleeping in the building at CFSA.  *See* Tabb Declaration, at ¶¶ 40-41, attached hereto as **Exhibit G**.  Plaintiff also avers that she communicated concerns relayed to her by a placement worker at CFSA. *See* Tabb Declaration, at ¶ 41, attached hereto as **Exhibit G.**

11.     Plaintiff avers that in September 2005, as Public Information Specialist, she contacted the media concerning the lack of placement resources. *See* Tabb Declaration, at ¶¶ 43-44, attached hereto as **Exhibit G**.

12.     CFSA provided plaintiff with a notice of summary removal before her termination. *See* Tabb Declaration at ¶¶ 46-50, attached hereto as Exhibit G.

13.     Pursuant to Chapter 16, § 1616 of the District Personnel Regulations (DPM), the notice of summary removal affords the plaintiff the opportunity to participate in an administrative hearing prior to termination.  *See* DPM, Chapter 16, § 1616.

14.     Plaintiff admitted that she did not appear for her October 27, 2005, scheduled hearing. *See* Tabb Dep., at 196-199, attached hereto as **Exhibit K;** *see also* Tabb Declaration at ¶¶ 49, 50 *incorporating by reference* 10/10/05 Response to Notice of Summary Removal at pg 5, attached hereto as **Exhibit C.**

15.     Plaintiff acknowledges that the defendants granted her family medical leave and that she took family leave from March 2005- July 2005.  *See* Tabb Declaration, at ¶13, attached hereto as **Exhibit G**.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SHIRLEY TABB, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 06-789 (PLF) |
| | : | |
| DISTRICT OF COLUMBIA, *et. al.,* | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.    STATEMENT OF FACTS**

This case concerns the termination of Shirley Tabb's employment from Child and Family

Services Agency for the District of Columbia.  *See* Amended Complaint, generally.  Ms. Tabb

started at CFSA as a social worker in 1992 and worked her way up to become a Public

Information Specialist ("PI Specialist") with the agency by 2003.  *See* Tabb Dep., at 51 – 55 and

66, attached hereto as **Exhibit B.**  Plaintiff avers that as a PI Specialist, it was her job to develop

communication campaigns for agency programs and disseminate information on behalf of the

agency.  *See* 10/10/05 Response to Notice of Summary Removal at pgs. 1-2, incorporated by

reference in Tabb Declaration at ¶ 49, attached hereto as **Exhibit C;** *see also* Tabb Dep., at 66 –

68, attached hereto as **Exhibit D**.  Specifically, the job required her to be knowledgeable about

CFSA program activities, initiatives in the agency and required her to stay abreast of systemic

issues, problems and progress in CFSA.  S*ee* Shirley Tabb's 8/18/05 Response to 8/18/05

Admonition pg. 5, incorporated by reference in Shirley Tabb's Declaration at ¶ 49, attached

hereto as **Exhibit E**; Tabb Dep., at 66 – 68, attached hereto as **Exhibit D** (plaintiff testifying that

she helped arrange a golf tournament campaign, write profile narratives for children waiting for

adoptive homes, speak at and attend staff functions, and present the uses of the public

information office for campaigns). Plaintiff avers that as PI Specialist, she was required by law

to report child abuse and neglect in the work place. *See* 10/10/05 Response to Notice of

Summary Removal at pg 4., incorporated by reference in Tabb Declaration at ¶ 49, **Exhibit C**;

*see also* Tabb Dep., at 240-41, attached hereto as **Exhibit S**, (plaintiff testifying that she believed

that, at all times she worked for CFSA, she was a mandatory reporter).

Brenda Donald Walker was the Director of CFSA during all times relevant to the

allegations set forth in the Complaint. *See* Amended Complaint, ¶ 9. Mindy Good plaintiff's

immediate supervisor during plaintiff's tenure as a Public Information Specialist. *See* Tabb

Dep., at 10, attached hereto as **Exhibit R**.

Plaintiff's speech at issue consists of five (5) separate communications – all which were

made in her capacity as Public Information Specialist and were related to the CFSA foster care

program about which she was responsible for disseminating information. Plaintiff avers that in

March 2005, in her capacity as Public information Specialist, she contacted a public information

officer with the Department of Human Services about developing a campaign to increase

awareness around child abuse and neglect, reviving the Back to Sleep Campaign and other

projects with CFSA. *See* Tabb Dep., at 251 – 255, attached hereto as **Exhibit F**. Plaintiff admits

that she used agency equipment for purposes of her communication. *See* Shirley Tabb

Declaration, at ¶49, *incorporating by reference* Tabb's 8/18/05 Response to 8/18/05 Admonition

pg. 5; *see also* Tabb Dep., at 251 – 255, attached hereto as **Exhibit F.**

Plaintiff avers that in July 2005, she spoke to Brenda Donald Walker, her supervisor,

about children sleeping at CFSA and her desire to address the issue in her capacity as a

government employee. *See id*.; *see also* Shirley Tabb Declaration, at ¶¶ 30-31, attached hereto as

**Exhibit G** (declaring under oath that during the meeting with Brenda Donald Walker, plaintiff "asked if [she] could use [her] social work and marketing skills to recruit emergency homes in the faith-based community"). According to the plaintiff, "the fact that children are sleeping in our building [was] a well known fact. Everyone in the agency [knew] it, as well community [sic]." *See* Shirley Tabb's Declaration at ¶ 36, attached hereto as **Exhibit G**, *incorporating by reference* Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 4, attached hereto as **Exhibit E**; s*ee also* Tabb Dep., at 177 – 179, attached hereto as **Exhibit I** (plaintiff testifying that Mindy Good, Brenda Donald Walker, CFSA's court appointed monitor, and CFSA workers who worked late at night or early in the morning all knew that children where sleeping in the building ); *Id*. at 181-82, 218, attached hereto as **Exhibit I** (plaintiff testifying that the Washington Post reported the fact that children where sleeping in the CFSA building before plaintiff's disclosures).

Plaintiff avers that on August 15, 2007, again in her capacity as Public Information Specialist, she contacted Susan Newman, Senior Advisor for Religious Affairs for the Executive Office of the Mayor. *See* Shirley Tabb's Declaration at ¶36, attached hereto as **Exhibit G** incorporating by reference Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 4. During her communication with Susan Newman, plaintiff avers that she identified her background and official position with CFSA, and discussed the lack of foster home resources for CFSA and the possibility of contracting to provide a temporary placement for children. *See* Shirley Tabb's Declaration at ¶36, attached hereto as **Exhibit G** incorporating by reference Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pgs. 4, 5.

Plaintiff avers that in September 2005, as Public Information Specialist, she contacted Deputy Mayor Neil Albert, who was responsible for the performance of CFSA. *See* Tabb Dep.,

at 145 – 147, attached hereto **Exhibit J**; *see also* Tabb Declaration at ¶ 39, attached hereto as **Exhibit G**. During her communication with Deputy Mayor Albert, plaintiff identified her background and official position with CFSA and indicated that there were children sleeping in the building at CFSA. *See* Tabb Declaration, at ¶¶ 40-41, attached hereto as **Exhibit G**. Plaintiff also communicated concerns relayed to her by a placement worker at CFSA. *See* Tabb Declaration, at ¶ 41, attached hereto as **Exhibit G.**

Finally, plaintiff avers that in September 2005, as public information specialist, she contacted the media concerning the lack of placement resources. *See* Tabb Declaration, at ¶¶ 43-44, attached hereto as **Exhibit G**.

Plaintiff has sued the defendants because she avers that she was terminated because of her protected activity of communicating about children sleeping in CFSA's building. *See* Amended Complaint, generally. For the reasons set forth below, these defendants are entitled to judgment as a matter of law.

## II.    STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The non-movant must produce "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986); *Kitt v. Capital Concerts, Inc.*, 742 A.2d 856, 858 (D.C. 1999). These facts must have "significant probative" force "tending to support the complaint." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

No class of cases, including employment discrimination claims, is exempt from this rule.

See *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000); *Evans v. New York Botanical Garden*, 253 F. Supp. 2d 650, 657 (S.D.N.Y. 2003) ("The salutary purposes of summary judgment . . . apply no less to discrimination cases than to commercial or other areas of litigation."). The Supreme Court has expressly authorized early summary judgment when public officials face insubstantial claims. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982) ("In identifying qualified immunity as the best attainable accommodation of competing values . . . we relied on the assumption that this standard would permit '[insubstantial] lawsuits [to] be quickly terminated.'") (internal citations omitted).

## III.  ARGUMENT

1.  <u>Plaintiff has failed to state a claim under the First Amendment because she did not speak as a private citizen.</u>

A public employee's cause of action for retaliation in violation of the First Amendment requires proof of four elements: (1) the public employee must have spoken as a citizen on a matter of public concern; (2) that the employee's First Amendment interest is not outweighed by the governmental interest of promoting the efficiency of the public service performed through its employees; (3) that the employee's speech was a substantial or motivating factor for the denial of a right or benefit; and (4) that the government would not have reached the same decision absent the protected conduct in which the employee engaged. *See Garcetti v. Ceballos*, 126 S,Ct. 1951, 1958 (2006). *See also, Leonard v. D.C.,* 794 A.2d 618 (D.C. 2002), holding that the first inquiry in a First Amendment analysis is whether the plaintiff was speaking as a citizen. *Garcetti*, 126 S.Ct. at 1958.

The *Garcetti* Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes . . . ." *Garcett*i, 126 S.Ct. at 1959-60. *Garcetti* involved a state deputy attorney who was reassigned and denied a promotion after he wrote a memo to his supervisors about inaccuracies in an affidavit used to procure a search warrant. The Supreme Court held that when the plaintiff wrote his memo and had later discussions with his supervisors concerning the inaccuracies of the search warrant, he did not speak as a citizen, but spoke as a government employee. The Court found that "when he went to work and performed the task he was paid to perform, Ceballos acted as a government employee. The fact that his duties sometimes required him to speak or write does not mean his supervisors were prohibited from evaluating his performance" *Id.* at 1960. The Court found that because plaintiff's speech was pursuant to his official duties, he was not acting as a private citizen and did not enjoy First Amendment protection.

*Garcetti* and its progeny instruct that in cases where a government employee's speech falls within the scope of the employee's employment responsibilities, there is no First Amendment protection. The Court of Appeals recently held in *Wilburn v. DC*, 2007 U.S. LEXIS 6397 (March 20, 2007), that the plaintiff, the former interim Director of the Office of Human Rights, had no First Amendment protection when she complained of racism and sexism to the Department of Personnel, a Deputy Mayor, and the Mayor's Chief of Staff concerning the Department of Personnel's rejection of her salary recommendations for two (2) African American females. According to the Court, the plaintiff had no First Amendment protection because her speech was made in the context of her employment as interim Director of the Office of Human Right, where her "official position description included identifying and eliminating discriminatory practices in employment." *Id.* at *29. Other Courts of Appeals have similarly

held that a public employee enjoys no First Amendment Protection when the speech is made in the course of their employment responsibilities. *See Hill v. Bourough of Kutztown* 455 F.3d 225, 242 (3d Cir. 2006)(holding that  a public employee enjoys no First Amendment Protection when employee reported harassment to Bourough Council when he had a duty as a Manager to report complaints) *See Mills v. Evansville,* 452 F.3d 646, 648 (7th Cir. 1006)(holding that that an officer had no First Amendment protection in her speech when it was made while she was on duty, and in uniform, and the speech was made to her superiors contributing to the formation and execution of official policy). See *Green v. Bd of County Comm'rs,* 472 F.3d 794, 2007 U.S. App. Lexis 1 (10th Cir. 2007)(holding that a drug lab employee who ignored her supervisors and scheduled confirmatory drug tests she suspected were faulty was not protected by the First Amendment even though her conduct was condemned by her supervisors and not explicitly required in her day to day activities, because her acts were generally the type of activities that she was paid to do.)

In *Thompson v. District of Columbia*, 2007 U.S. Dist. Lexis 19500 *7-8 (D.D.C. March 20, 2007), the Court held that a government employee's speech was not protected by the First Amendment when it occurred in the course of plaintiff's official duties as an auditory and security officer and "even if the speech was outside the bound of the plaintiff's job description, his speech was as a government employee and related to his professional responsibilities."

In this case, plaintiff, by her own averments, clearly demonstrates that her speech was made in her capacity as the Public Information Specialist at CFSA. The plaintiff concedes that in her position, she was mandated by law to report child abuse and neglect - **even in the work place**.  *See* 10/10/05 Response to Notice of Summary Removal at pg 4., incorporated by reference in Tabb Declaration at ¶ 49, attached hereto as **Exhibit C**; *see also* Tabb Dep., at 240-

41, attached hereto as **Exhibit S**, (plaintiff testifying that she believed that, at all times she worked for CFSA, she was a mandatory reporter). Every communication at issue in this case - communications to other District agencies, superiors, officials and to the media - were made in her capacity as Public Information Specialist and were related to her job duties. In fact, plaintiff acknowledges that her job duties included staying abreast of systemic issues, problems and progress in CFSA programs, S*ee* Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 5, incorporated by reference in Shirley Tabb's Declaration at ¶ 36, attached hereto as **Exhibit E**; Tabb Dep., at 66 – 68, attached hereto as **Exhibit D**. Plaintiff also does not dispute that she used agency equipment for purposes of her communication. *See* Shirley Tabb Declaration, at ¶49 *incorporating by reference* Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 5; *see also* Tabb Dep., at 251 – 255, attached hereto as **Exhibit F.**

Like the government speech in *Mills*, 452 F.3d at 648, plaintiff's speech was allegedly made in an attempt to change an agency practice of allowing children to sleep in the CFSA building. Under the bright line rule set forth in *Garcetti*, because the plaintiff's speech was made in the course of her duties and not as a private citizen, her communications enjoy no First Amendment protection, and summary judgment is appropriate.

 2. <u>Defendants Brenda Donald Walker and Mindy Good are entitled to qualified</u>
   <u>immunity</u>

Defendants Brenda Donald Walker and Mindy Good are entitled to qualified immunity because they were government officials performing a discretionary functions and their conduct did not violate clearly established rights which a reasonable person would have known. "Government officials performing discretionary function generally are shielded from liability for civil damages insofar as their conduct does not violate clearly establish . . . rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 8l4 (l982). The

purpose of qualified immunity is to protect governmental employees against insubstantial lawsuits which have the following societal costs: l) expenses of litigation; 2) diversion of official energy from pressing public issues; 3) deterrence of able citizens from acceptance of public office; and 4) the possibility that the fear of being sued will dampen the ardor of all but the most resolute individuals. *Id.* at 8l4.

Recent Supreme Court opinions have made clear that, in analyzing claims of qualified immunity, courts must begin by determining "whether the plaintiff has alleged a deprivation of a constitutional right at all." *County of Sacramento v. Lewis*, 118 S. Ct. 1708, 1714 n. 5 (1998). This issue is judged by current law. Only upon finding that the purported constitutional right exists should a court proceed to the determination of whether the constitutional right was clearly established at the time of the official action. *See Conn v. Gabbert*, 119 S. Ct. 1292, 1295 (1999) (holding that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation").

Deciding the constitutional question before addressing whether a right was clearly established "promotes clarity in the legal standards for official conduct, to the benefit of both officers and the general public." *Wilson v. Layne*, 119 S. Ct. 1692, 1697 (1999). "The chronic difficulty with this [qualified immunity] analysis for courts is in accurately defining the right at issue. An overly narrow definition of the right can effectively insulate the government's actions by making it easy to assert that the narrowly defined right was not clearly established. On the other hand, as the Supreme Court has noted in *Anderson*, if the right is defined too broadly, '[p]laintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely

abstract rights.'" *LaBounty v. Coughlin*, 137 F.2d 68, 73, 74 (2nd Cir. 1998) (quoting *Anderson*, 483 U.S. at 639).

Here, plaintiff has not adduced evidence that defendant Brenda Donald Walker and/or Mindy Good knowingly violated her First Amendment rights.  Under *Garcetti*, plaintiff's speech was made in the course of her duties and not as a private citizen and her communications enjoy no First Amendment protection.  The defendants' decision to discipline the plaintiff for the manner of her communications do not unclothed them of their right to immunity for their complained about actions.  Even if the Court finds that plaintiff's speech was made as a private citizen, given the undisputed fact that the plaintiff's speech was made during work hours, through agency email, and in plaintiff's capacity as Public Information Specialist, a reasonable person in the defendants' position *would not have known* that plaintiff could not be disciplined for the manner of her speech.  As such, these defendants are s entitled to qualified immunity as a matter of law.

     3.     <u>Plaintiff has failed to establish that the District is liable for the alleged Constitutional deprivation, under plaintiff's § 1983 claim.</u>

Plaintiff has failed to adduce sufficient evidence to hold the District liable pursuant to U.S.C. § 1983.  42 U.S.C. § 1983, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or cause to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Municipal liability under 42 U.S.C. § 1983 is severely limited.  *See Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 690 (1978).  Municipal liability results only when the municipality itself can be directly charged with fault for an unconstitutional deprivation.  *See*

*Wilson v. Lang*, 526 U.S. 603, 609 (1999); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1985); and *Baker v. McCollan*, 443 U.S. 137, 146-47 (1979), holding courts must address the threshold issue in any action brought under § 1983: "whether the plaintiff has alleged the deprivation of an actual constitutional right at all." Therefore, municipal liability results only when the policy or custom fairly attributable to the municipality is the "moving force" behind the particular constitutional violation.  *See Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citing *Monell*, 436 U.S. at 694).

Here, plaintiff has failed to adduce any evidence to support a finding that any District custom, policy or practice and/or final policymaker caused a constitutional deprivation. Therefore, the District is entitled to judgment as a matter of law on plaintiff's § 1983, claim against it.

     4.     <u>Defendants are entitled to summary judgment regarding plaintiff's 5th</u>
            <u>Amendment Due Process claim because plaintiff admits that she was given</u>
            <u>procedural due process.</u>

Prior to the deprivation of any property interest in employment, an employee is entitled to some kind of hearing immediately before or promptly following imposition of the deprivation. *See Cleaveland Bd. Of Education v. Loudermill,* 470 U.S. 532 (1985).  In *Loudermill*, the Supreme Court found that "a pretermination hearing" though necessary, need not be elaborate  . . . the essential requirement of due process, and all that respondents seek or the Court of Appeals required are notice and an opportunity to respond."  470 U.S. at 546.

Plaintiff testified that on October 3, 2005, the defendants issued her a "Notice of Summary Removal."  Tabb Dep., at  194 (plaintiff identifying the Notice of Summary Removal Letter), attached hereto as **Exhibit L**; *see also* Letter from Brenda Donald Walker to plaintiff; Re: Notice of Summary Removal dated October 3, 2005, attached hereto as **Exhibit M**; Tabb

Declaration, at ¶ 46.  Pursuant to Chapter 16 § 1616 of the District Personnel Regulations (DPM), a notice of summary removal affords an employee the opportunity to participate in an administrative hearing prior to termination.  *See* DPM, Chapter 16, § 1616.

On October 10, 2005, plaintiff requested a hearing, and an October 27, 2005, hearing was scheduled.  She was notified of that hearing.  *See* Tabb Dep., at 194 – 195, attached hereto as **Exhibit L**; *see also* Tabb Declaration, at 49, attached here to as **Exhibit G.**  In fact, the hearing was scheduled prior to the effective date of her termination.  *See* Tabb Declaration ¶ 49 *incorporating by reference* 10/10/05 Response to Notice of Summary Removal at pg 5.  Plaintiff admitted that she did not appear for the October 27, 2005, scheduled hearing, but instead chose to file this complaint.  *See* Tabb Dep., at 196-199, attached hereto as **Exhibit N;** *see also* Tabb Declaration at ¶¶ 49, 50 *incorporating by reference* 10/10/05 Response to Notice of Summary Removal at pg 5.

Under *Loudermill*, the procedures that the District afforded plaintiff pre-termination, and that she summarily rejected, were constitutionally adequate to protect her right to due process. *See D'Acquisto v. Washington*, 750 F. Supp 342 (E.D. Ill. 1990)(holding there was no Fifth Amendment violation when police officers were summarily suspended without pay without a "hearing" when they refused to participate in underlying criminal investigation).  Because plaintiff was afforded due process, that she chose to reject, her claims against these defendants fail as a matter of law.

     5.     <u>Defendant the District of Columbia is entitled to summary judgment regarding plaintiff's D.C. Whistleblower Protection Act claim because his alleged disclosures were not protected and has failed to show that he was terminated because of her disclosures.</u>

According to the Council, "the public interest is served when employees of the District government are free to report waste, fraud, abuse of authority, violations of law, or threats to

public health or safety without fear of retaliation or reprisal.  *See* D.C. Official Code § 1-615.51.

The Whistleblower Protection Act (WPA) defines the term "protected disclosure" as "any

disclosure of information, not specifically prohibited by statute, by an employee to a supervisor or

a public body that the employee reasonably believes evidences "gross mismanagement, gross

misuse or waste of public resources or funds, abuse of authority in connection with the

administration of a public program or the execution of a public contract, a violation of a federal,

state, or local law, rule or regulation, or of a term of a contract between the District government

and a District government contractor which is not of a merely technical or minimal nature; or a

substantial and specific danger to the public health and safety." D.C. Official Code § 1-615.52(6).

Here, on one hand, plaintiff avers that she made protected disclosures to Susan Newman,

Senior Advisor for Religious Affairs for the Executive Office of the Mayor, Deputy Mayor Neil

Albert, and the media that children were allegedly sleeping in the building at CFSA.  *See* Shirley

Tabb's Declaration at ¶36, s*ee* Tabb Dep., at 145 – 147 **Exhibit J**; *see also* Tabb Declaration at ¶

39, attached hereto as **Exhibit G.**  However, plaintiff then claims that "the fact that children are

sleeping in [the CFSA] building [was] a well known fact. Everyone in the agency [knew] it, as

well community [sic]."  *See* Shirley Tabb's Declaration at ¶36, attached hereto as **Exhibit G**,

*incorporating by reference* Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 4,

attached hereto as **Exhibit E.**  Plaintiff's alleged disclosure, about which "everyone at CFSA

knew," that children were sleeping in the buildings at CFSA, does not evidence a protected

disclosure as contemplated by the statute.  Under the statute, a protected disclosure means any

disclosure of information, not specifically prohibited by statute, by an employee to a supervisor

or a public body that the employee reasonably believes evidences:

(A)     Gross mismanagement;

(B)     Gross misuse or waste of public resources or funds;

(C)     Abuse of authority in connection with the administration of a public program or the execution of a public contract;

(D)     A violation of a federal, state, or local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor which is not a merely technical or minimal nature, or

(E)     A substantial and specific danger to the public health and safety.

Plaintiff has failed to provide evidentiary support to show that her alleged disclosure was protected under the Whistleblower Act. More importantly, plaintiff has failed to show that her protected disclosures resulted in adverse action against her. Accordingly, the District is entitled to judgment as a matter of law.

6.     Defendant the District of Columbia is entitled to summary judgment regarding plaintiff's claim under the Federal Family Medical Leave Act ("FMLA")

Defendant the District of Columbia is entitled to summary judgment regarding plaintiff's claim under the Federal Family Medical Leave Act ("FMLA") because plaintiff has failed to adduce evidence to support a finding that she was entitled to Federal FMLA either on the date of her removal or the date of her termination, and that the District violated her rights under FMLA because she took the requested leave.

Under the Federal Family Medical Leave Act, an employee is only entitled to twelve weeks for family *or* medical leave in one year. *See* 29 U.S.C.§ 2612. Plaintiff has failed to demonstrate that she was entitled to *Federal* Family Medical Leave on October 7, 2005, or on

November 3, 2005, the date of her termination.  Plaintiff acknowledges that she exhausted her twelve weeks of Federal Family Medical Leave Act to care for her mother (from March 2005 to July 2005) as of the date of her notice of removal and termination.  *See* Tabb Declaration, at ¶13, attached hereto as **Exhibit G**.  As the plaintiff does not dispute that she exhausted her 12 weeks of medical leave under *Federal* Family Medical leave, plaintiff has failed to present a *federal* question as to the District's violation of those rights since she was not entitled to federal medical leave at the time of her termination.  *See* Plaintiff's DC Family Medical Leave Application for Family Medical Leave, attached hereto as **Exhibit P**.  The Federal Family Medical Leave Act and the D.C. Family Medical Leave Act recognize a cause of action for termination in retaliation for taking protected leave.  *See Change v. Institute for Public-Private Partnerships, Inc.,* 846 A.2d 318, 327 (D.C. 2004).  Plaintiff acknowledges that the defendants granted her leave under the Family Medical Leave Act.  *See* Tabb Declaration, at ¶13, attached hereto as **Exhibit G**.  In fact, she avers that she was issued a "Notice of Summary Removal" while still on medical leave. See Exhibit E, at ¶ 46.   Plaintiff has failed to adduce any evidence that would demonstrate that the defendants terminated her because she took leave under the Family Medical Leave Act.    In fact, according to plaintiff, her termination resulted because she spoke to the media about children sleeping in the CFSA building.  *See* Tabb Declaration, at ¶¶ 35, 36, 46, 47,49, attached hereto as **Exhibit G**.  Additionally, even viewed in the light most favorable to the plaintiff, there are no facts adduced during discovery that would support a finding that that the plaintiff was terminated because she took protected leave. *See Kowal v. MCI Communications* Corp., 305 U.S. App. D.C. 60, 16 F.3d 1271, 276 (1994)(holding the court need not accept inferences drawn by

plaintiff if such inferences are unsupported by the facts set out in the complaint, "[n]or must the court accept legal conclusions cast in the form of factual allegations.")  Plaintiff has failed to state a cause of action against the District under either the Federal Medical Leave Act, or the D.C. Family Medical Leave Act.  Therefore, the District is entitled to judgment as a matter of law on these claims.

IV.    **CONCLUSION**

For the foregoing reasons, these defendants respectfully request that this Court enter summary judgment in their favor.

Respectfully submitted,

PETER J. NICKELS
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Patricia A. Jones
PATRICIA A. JONES [428132]
Chief, General Litigation Sec. IV

/s/Zuberi B. Williams
ZUBERI BAKARI WILLIAMS[2]
Assistant Attorney General
Office of the Attorney General
441 Fourth Street, N.W., Suite 6N013
Washington, D.C. 20001
Office: (202) 724-6650; (202) 727-6295
Facsimile: (202) 730-0623
Email:  Zuberi.Williams@dc.gov

---

[2] Appearing under Rule 49(c)(4) of the District of Columbia Court of Appeals, and LCvR 83.2.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SHIRLEY TABB,                     :
                                  :
          Plaintiff,              :
                                  :
v.                                :          Civil Action No. 06-789 (PLF)
                                  :
DISTRICT OF COLUMBIA, *et. al.,*  :
                                  :
          Defendants.             :

## **ORDER**

Upon consideration of the defendants Brenda Donald Walker, Mindy Good, and the

District of Columbia's Motion for Summary Judgment, plaintiff's response thereto, if any, and

the record herein, it is this by the Court this _____ day of _____, 2008,

     ORDERED:    that the Motion is GRANTED for the reasons set forth in the defendants'

motion; and it is

     FURTHER ORDERED:   that judgment as a matter of law is granted in favor of defendants

Good, Walker and the District of Columbia.


                         _____

                         JUDGE, United States District Court for the District of
                         Columbia