UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHIRLEY TABB,<br><br>    Plaintiff,<br>v.<br><br>DISTRICT OF COLUMBIA, and<br><br>BRENDA DONALD WALKER,<br><br>    Defendants. | CASE No. 06-00789 (PLF) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

**I.     Introduction**

Pursuant to the Federal Rules of Civil Procedure, Rule 56 and Local Civil Rules 7 and 56.1, Plaintiff Shirley Tabb requests that summary judgment in her favor be granted regarding the claims discussed herein. In addition, pursuant to LCvR 7(f), Plaintiff requests an oral hearing on her motion and supporting

evidence.

## II. Statement of the Case[1]

Plaintiff Shirley Tabb is a social worker who was employed by the District of Columbia Child and Family Services Agency (CFSA) from 1992 until 2005 when she was fired for making protected disclosures to her superiors and the media about the inadequate care and placement of children.[2] Ms. Tabb was particularly concerned that children who were taken into CFSA's custody would at times have to sleep or try and rest in and around the cubicles of agency social workers instead of in a more comfortable home-like setting.[3]

Ms. Tabb sought to improve the conditions that children experienced when they came to CFSA by offering to work on additional recruitment of foster homes within CFSA and by partnering with other agencies. In early July 2005, Ms. Tabb met with then-CFSA Director Brenda Donald [Walker] and discussed the lack of emergency foster home resources that had resulted in children sleeping in

---

[1] The facts referenced in this section are fully supported in Plaintiff's Statement of Material Facts.

[2] During her career at CFSA, Plaintiff was promoted to the position of Supervisory Social Worker, then to the position of Public Affairs Specialist.

[3] CFSA has been under Court Order, Receivership, or subject to Court oversight for more than fifteen years. See, e.g., LaShawn A. v. Dixon, 762 F. Supp. 959 (D.D.C. 1991); LaShawn A. v. Kelly, 887 F. Supp. 297 (D.D.C. 1995). One of the many requirements monitored by the Court is that CFSA will have no children stay overnight in its in-house Intake Center.

the CFSA office building.

During the meeting, the Plaintiff asked Defendant Donald if she could use her social work and marketing skills to recruit emergency homes in the faith-based community. In addition, the Plaintiff suggested that she could assume responsibility over two poorly performing recruitment units that the agency depends upon for placement resources. Defendant Donald rejected Ms. Tabb's overtures.

In August, 2005, Ms. Tabb then brought her concerns and suggestions to the attention of the then-Mayor's Religious Affairs Advisor, Dr. Susan Newman. Dr. Newman relayed Ms. Tabb's concerns to Deputy Mayor Neil Albert and he agreed to meet with her. Ms. Tabb met with Deputy Mayor Albert and shared her concerns about children sleeping in the CFSA office building and some of her ideas for addressing the issue. Following up on their meeting, Ms. Tabb sent an e-mail message with attached photos showing children with inadequate accommodations at CFSA. After receiving the photos, Deputy Mayor Albert did not communicate further with Ms. Tabb.

Defendant Donald was "furious" with Ms. Tabb's disclosures to Dr. Newman and Deputy Mayor Albert. Ms. Donald was angry because Ms. Tabb went outside the chain of command at CFSA and got her boss involved in an

issue that she felt would be taken out of context.

The day after Defendant Donald learned that Ms. Tabb had made disclosures to Dr. Newman and Deputy Mayor Albert, Ms. Tabb received a official admonition from her immediate supervisor Mindy Good for speaking to Dr. Newman about children sleeping in the CFSA office building and her desire to implement some emergency plan to address the problem. In support of her admonishment, Ms. Good also referenced that the Plaintiff had contacted a public information officer at the D.C. Department of Human Services (DHS) in March 2005 (5 months earlier) about developing a campaign to increase awareness around child abuse and neglect, reviving the Back to Sleep Campaign, and other projects.

In response, Ms. Tabb submitted a written rebuttal to the admonition. In her rebuttal, the Plaintiff stated, in part, "[w]e are breaking the law when children sleep in the agency." The Plaintiff also stated that "[w]e remove children from neglectful and abusive situations, only to bring them into another neglectful, abusive and degrading situation (in our custody)." Ms. Tabb's challenge to the admonition fell upon deaf ears.

During the August 2005 time period, Ms. Tabb was struggling with health issues associated with diabetes and related medical problems. Ms. Tabb

discussed her health concerns with her supervisor and a human resources specialist. The three of them agreed that Ms. Tabb should take a block of time to address her health issues. Ms. Tabb took leave from August 18 through September 16, 2005. Plaintiff then extended her leave into October because the symptoms she had been experiencing due to diabetes had not fully stabilized.

While she was on leave, Ms. Tabb kept up with events at CFSA by checking e-mail and voice mail regularly. In mid-September, 2005, Ms. Tabb received a voice-mail message from supervisory social worker Joanne Vaughn expressing the concern that she had six children in one night and only had one blanket. Ms. Vaughn asked Ms. Tabb if she could provide some comforters.

As a result of the lack of response she received from Defendant Donald and the Mayor's office, Ms. Tabb decided to contact the media to bring attention to the issue of children staying overnight at CFSA and the lack of decent accommodations. Ms. Tabb simply called the local television news stations and they sent reporters over to check out her story.

On September 19 and 20, 2005, WUSA-TV did three news stories on the issue. Each story included interviews of the Plaintiff. Two of the stories played the voice mail of the Plaintiff's colleague asking for comforters for children at CFSA and the redacted picture of a child trying to get comfortable on the floor of

an office cubicle on a portable cot that was clearly too small. WJLA-TV also carried the story. Print stories were also generated.

Less than two weeks after the news media ran the stories about children sleeping in the CFSA office building, and with no advance notice, Ms. Tabb was summarily terminated from her position at CFSA. On October 3, 2005, Defendant Donald issued the letter summarily terminating the Plaintiff on various grounds, including charges that she abused leave, "misrepresented agency practice to the media", and violated "confidentiality laws." What agency practices were allegedly misrepresented and what confidentiality laws were allegedly violated was not disclosed. Union representative Stephen White approached Ms. Donald to discuss Ms. Tabb's summary removal. Defendant Donald informed him that there was no point in discussing Ms. Tabb's circumstances because she was not going to get her job back.

Ms. Tabb contested her removal in writing, but was denied relief. She also invoked her right to contest CFSA's retaliation pursuant to the District's Whistleblower Protection Act (WPA).

On November 3, 2005, CFSA issued a letter to Ms. Tabb sustaining her summary removal. No further explanation of the charges against her were provided. This lawsuit followed.

Plaintiff's Memorandum in Support of Summary Judgment
Page 6

# ARGUMENT

## III. Standard of Review

The summary judgment standard is well established.

> Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F ED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). The nonmoving party cannot merely rest upon the allegations included in the complaint, and instead, must identify the specific facts which demonstrate that there is a genuine issue for trial. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The burden is upon the nonmoving party to demonstrate that there are material facts in dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Material facts are in dispute if they are capable of affecting the outcome of the suit under governing law. *Id.* In considering a motion for summary judgment, all evidence and inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Bayer v. United States Dept. of Treasury,* 956 F.2d 330, 333 (D.C.Cir.1992).

    \*   \*   \*   \*   \*   \*   \*

> The nonmoving party must therefore go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," *designate "specific facts showing that there is a genuine issue for trial"*...Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing[.]  *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (emphasis added).

*Price v. Washington Hospital Center*, 321 F. Supp. 2d 38, 43 - 44 (D.D.C. 2004). As will be established in the discussion that follows, Plaintiff Shirley Tabb has established that she is entitled to summary judgment on her First Amendment and Whistleblower Protection Act claims.

### IV.   Plaintiff has Established Her First Amendment Claim

Ms. Tabb was terminated in 2005 for making disclosures to the media about children who were in the care of CFSA being forced on some occasions to sleep in the agency's office building.  However, Ms. Tabb's disclosures to the media are protected by the First Amendment and her termination must be reversed.

> Generally, the government may not discharge an employee because of his or her exercise of First Amendment rights to freedom of speech or association. See *Elrod v. Burns*, 427 U.S. 347, 358-60, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (citing *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570

> (1972)).FN7 Thus, it has been held that an "at-will" employee cannot be dismissed for exercising First Amendment rights. See *Orange, supra*, 313 U.S.App. D.C. at 284, 59 F.3d at 1272 (citing *Hall*, supra, 272 U.S.App. D.C. at 305, 856 F.2d at 259). A public employee's cause of action for retaliation in violation of the First Amendment requires proof of four elements: (1) that the public employee was speaking on a matter of public concern; (2) that the employee's First Amendment interest is not outweighed by the governmental interest of promoting the efficiency of the public service performed through its employees; (3) that the employee's speech was a substantial or motivating factor for the denial of a right or benefit; and (4) that the government would not have reached the same decision absent the protected conduct in which the employee engaged. *O'Donnell v. Barry*, 331 U.S.App. D.C. 272, 279, 148 F.3d 1126, 1133 (1998) (citations omitted); *Tao v. Freeh*, 307 U.S.App. D.C. 185, 188-89, 27 F.3d 635, 638-39 (1994).

*Leonard v. District of Columbia*, 794 A.2d 618, 629 - 630 (DC App 2002). Ms. Tabb's circumstances clearly meet the standard for First Amendment protection.

### A.     Plaintiff Spoke Out on a Matter of Public Concern

As previously discussed, CFSA has been the subject of Court monitoring for more than fifteen years because of significant deficiencies in the agency's care of children and families. Reports assessing the progress and deficiencies of CFSA are regularly issued by the Court Monitor.

On November 3, 2005, the Court Monitor issued an assessment of CFSA's progress through June 2005. One requirement monitored is

whether children stay overnight in CFSA's in-house Intake Center. Donald at 205. The goal is that CFSA will have no child under twelve staying overnight in the Intake Center. As of June 2005, the Court Monitor documented that eighteen children stayed overnight in violation of this standard.[4]

There can be no credible dispute that Ms. Tabb's disclosure to the media that children were sleeping in the CFSA office building and not receiving proper accommodations is a matter of public concern. The Court continues to oversee the progress and set backs of CFSA's efforts to substantially improve its services to children and families.

The press reports that were generated as a result of Ms. Tabb's communications with the media resulted in the issue of children sleeping in the CFSA office building being brought to the attention of the Mayor and the then-Chair of the D.C. Council Human Services Committee, Adrian Fenty. Albert at 45; Tabb at 259. The press reports also made the public aware of the issue. Donald at 184:18 - 186:1. Thus, the Court should rule that Plaintiff has met this element of her First Amendment claim.

---

[4] Exhibit 1 at 88, *LaShawn A. v. Williams: An Assessment of the District of Columbia's Progress as of June 30, 2005* (excerpt).

Plaintiff's Memorandum in Support of Summary Judgment
Page 10

### B. Plaintiff's First Amendment Protected Interests are Not Outweighed by CFSA's Purported Interests

Defendants concerns about Ms. Tabb's disclosures to the media were not the result of a need to promote the efficiency of public service. Defendants' retaliatory action against Ms. Tabb was purely motivated by the desire to cover up and control unflattering information about CFSA's programs.

Initially, Defendant Donald was "furious" simply because Ms. Tabb reported her concerns about children sleeping in the CFSA office building to Dr. Susan Newman and Deputy Mayor Albert. Donald at 110 - 112. This step was viewed as an impermissible communication by Ms. Tabb outside the chain of command. Donald at 75 - 77.

When Ms. Tabb made her disclosures to the media, CFSA officials felt dismayed and betrayed because they believed the media attention would give the agency a "black eye." Good at 118:22 - 119:16. Ms. Donald characterized her feeling about the Plaintiff's disclosures to the media as the straw that broke the camels back. Donald at 166. These are not the concerns of an agency seeking to promote efficient or high quality service.

In order for the Defendants to demonstrate that the efficiency of government service outweighed Ms. Tabb's right to make disclosures on a matter of public concern to the media, they would to establish a sound record and rationale for the punitive action taken against Ms. Tabb. The Defendants have failed to do so.

To date, Ms. Tabb has not been informed of many of the specifics of the charges against her. The Defendants alleged that Plaintiff violated confidentiality laws[5], but over two years after her removal the Defendants have yet to cite any confidentiality law or policy that they believe Ms. Tabb violated.

Similarly, to date, Ms. Tabb has not been informed of what statements that could be legitimately attributed to her establish that she "misrepresented agency practice to the media."  The Defendants have also refused to state what "personal information" Ms. Tabb allegedly revealed about the child in the redacted photo that was released to the media or the child's family. Finally, the Defendants have not explained what law, rule, regulation, or policy provides that making a call to the media while on leave is an abuse of leave.

---

[5] Exhibi2, Defendant Donald's October 3, 2005 summary removal letter.

Plaintiff's Memorandum in Support of Summary Judgment

The dearth of factual or legal support for the Defendants' charges against the Plaintiff is proof of pretext. Upon this foundation, an assertion that the government's interests outweigh Ms. Tabb's First Amendment rights cannot be made. Moreover, Ms. Tabb's right to voice her opinion even about her work is specifically protect by law. D.C. Code § 1-615.58.

Accordingly, the Court should find that Plaintiff has established that her interests outweigh those of the government.

### C.  Plaintiff's Protected Speech was a Substantial or Motivating Factor in the Decision to Terminate her Employment

There is no doubt that Plaintiff's disclosure to the media was the substantial or motivating factor that triggered her summary removal. The Defendants have offered no admissible evidence to the contrary.

As a result of the media attention brought by Ms. Tabb's disclosures, the Mayor, D.C. City Council's Human Services Committee, and the public were made aware of the issue of children sleeping in the CFSA office building and the lack of accommodations. Albert at 45; Tabb at 259; Donald at 184:18 - 186:1. Defendant Donald testified that Ms. Tabb's disclosures to the media was the straw that broke the camel's back. Donald at 166. Similarly, Ms. Tabb's supervisor Mindy Good testified that

CFSA officials felt dismayed and betrayed by the media disclosure because it would give the agency a "black eye." Good at 118:22 - 119:16. This testimony by senior officials makes clear that there is no legitimate dispute about the fact that Ms. Tabb's protected media disclosures triggered the summary termination executed by the Defendants.

### D. CFSA Would not Have Terminated the Plaintiff Absent Her Protected Disclosures to the Media

There is no evidence in the record that Ms. Tabb would have been terminated even if she had not engaged in First Amendment protected activity. To the contrary, CFSA officials who were questioned had surprisingly little personal knowledge or basis of support for the factual claims and legal rationale they relied upon to terminate the Plaintiff.

For example, with regard to the articulated reasons that purportedly formed the bases for Ms. Tabb's removal and termination, Ms. Donald, in most instances, was unaware of the legal or policy reason or evidentiary bases that might support what was asserted in her October 3, 2005 letter. Donald at 164:2 - 164:4, 178:16 - 182:1, 188:8 - 189:6, 189:15 - 191:1, 191:2 - 192:7, 192:8 - 194:12, 195:6 - 197:4, 201:2 - 201:12, 204:3 - 204:7, 238:5 - 238:21. Ms. Donald deferred to staff (Ronnie Charles, Deborah Wilson, and Deon

Merene), but these individuals also demonstrated little personal knowledge of the legal or factual bases for the claims made against Ms. Tabb.

Human Resource Manager Deborah Wilson provided no support for Plaintiff's removal. See, *Statement of Material Facts* ¶s 38 - 42. Ms. Wilson's supervisor Ronnie Charles also confessed a similar level of ignorance of specific factual and legal bases for Ms. Tabb's removal. See, *Statement of Material Facts* ¶s 43 - 55. Finally, Deon Merene, the Assistant General Counsel that was relied upon by Ms. Donald, could not validate the factual or legal bases for Ms. Tabb's removal. See, *Statement of Material Facts* ¶s 56 - 64.

Consequently, it is clear that the Defendants would not have taken action against Ms. Tabb absent the negative attention they received from the media and the attention it prompted from the Mayor, City Council and the public. The incredible lack of foundation in the Defendants' charges demonstrates the extraordinary lengths they pursued to try and discredit the Plaintiff and marginalize the information she revealed.

## V. Plaintiff has Established Her Claim Under the District's Whistleblower Protection Act

The actions taken against Ms. Tabb were also greatly motivated by her protected disclosures to Defendant Donald, Dr. Newman, and Deputy Mayor Albert. Her disclosures to these officials are specifically protected by the District's Whistleblower Protection Act (WPA).

> Section 1-615.54(a) provides various remedies for an employee who can show that he or she has been harmed due to violation of the DCWPA, including compensatory damages, injunctive relief, reinstatement and reasonable costs and attorney's fees. The Act also provides that "[a]s part of the relief ordered in [a] judicial proceeding," a supervisor "found to have violated § 1-615.53 [by taking a 'prohibited personnel action'] shall be subject to appropriate disciplinary action including dismissal" and "shall be subject to a civil fine not to exceed $1000." D.C.Code § 1-615.55(a), (b).
>
> [1] Section 1-615.54(b) of the Act lays out the shifting burden of proof that must be met to prevail in a civil lawsuit. It provides:
>
> In a civil action ... once it has been demonstrated by a preponderance of the evidence that an activity *proscribed* by § 1-615.53 [footnote omitted] was a *contributing factor* in the alleged prohibited personnel action against an employee, the burden of proof shall be on the employing District agency to prove by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by this section.

*Crawford v. District of Columbia*, 891 A.2d 216, 218 - 219 (DC App 2006). The

record demonstrates that Ms. Tabb has proven her WPA claim.

There is no dispute that Ms. Tabb made protected disclosures when she reported her concerns about children sleeping in the building and presented her suggestions to address the problem to Defendant Donald, Dr. Newman, and Deputy Mayor Albert. Her disclosures were to a "public body" – CFSA (through her disclosures to Ms. Donald) and the Mayor's Office (via Dr. Newman and Deputy Mayor Albert).

Plaintiff's disclosures were a contributing factor in her removal as evidence by the admonishment she received for speaking to Dr. Newman and Deputy Mayor Albert. See, *Statement of Material Facts* ¶s 4 - 13, 16, 30, 31. Moreover, Ms. Tabb's admonishment was directly referenced in the October 3rd removal letter.

For the reasons outlined in the discussion of Plaintiff's First Amendment claim, the Defendants have no credible factual or legal bases for Ms. Tabb's summary removal. See, Section IV.D. They offer little admissible evidence to support their action. As a result, the Defendants cannot establish by clear and convincing evidence that Ms. Tabb's summary removal would have occurred for legitimate, independent reasons. The Court should rule that Plaintiff has proven her WPA claim.

## VI. Conclusion

The Court should grant Plaintiff's Motion for Summary Judgment concerning her First Amendment and WPA claims. The Defendants have simply failed to justify with admissible evidence the summary dismissal of the Plaintiff.

DATED this 21st day of April, 2008.

Respectfully submitted,

*/s/Richard E. Condit*

Richard E. Condit, Esq.
D.C. Bar No. 417786
1612 K Street, NW, Suite 1100
Washington, D.C. 20006
Telephone: (202) 408-0034 x. 142
Facsimile: (202) 318-3211
Email: r1condit1@earthlink.net

## INDEX OF PLAINTIFF'S REFERENCED EXHIBITS

Exhibit 1:    Court Monitor's Report (excerpt)

Exhibit 2:    October 3, 2005 summary removal letter

Exhibit 3:    Brenda Donald deposition transcript

Exhibit 4:    Mindy Good deposition transcript

Exhibit 5:    Deborah Wilson deposition transcript

Exhibit 6:    Ronnie Charles deposition transcript

Exhibit 7:    Neil Albert deposition transcript

Exhibit 8:    Deon Merene deposition transcript

Exhibit 9:    Shirley Tabb deposition transcript

Exhibit 10:   Stephen White declaration

Exhibit 11:   District's Response to Plaintiff's Request for Admissions