UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHIRLEY TABB,                    )
                                 )
                                 )
         Plaintiff,              )
    v.                           )
                                 )
DISTRICT OF COLUMBIA, and        )
                                 )
BRENDA DONALD WALKER,            )        CASE No.  06-00789 (PLF)
                                 )
         Defendants.             )
                                 )
                                 )
                                 )
                                 )

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to the Federal Rules of Civil Procedure, Rule 56 and Local Civil

Rules 7 and 56.1, Plaintiff Shirley Tabb submits this Statement of Material Facts in

support of her motion for summary judgment.

1.      In 1992, Plaintiff Shirley Tabb was hired as a Social Worker by the District's

Department of Human Services Child & Family Services Division, which is now

CFSA. Amended Complaint ¶ 10; Defendants' Answer to the [Amended] Complaint (Dkt. #22) ¶ 10.

2.    Plaintiff Tabb's educational background includes a Bachelor of Arts degree and a Master of Social Work (MSW) degree. Plaintiff is a licensed independent social worker (LICSW). Amended Complaint ¶ 11; Defendants' Answer to the [Amended] Complaint (Dkt. #22) ¶ 11; Tabb Deposition at 240 - 241.

3.    During her career at CFSA, Plaintiff was promoted to the position of Supervisory Social Worker, then to the position of Public Affairs Specialist. Amended Complaint ¶ 12; Defendants' Answer to the [Amended] Complaint (Dkt. #22) ¶ 12.

4.    In early July 2005, the Plaintiff met with Defendant Brenda Donald [Walker] and discussed the lack of emergency foster home resources that had resulted in children sleeping in the CFSA office building.  Amended Complaint ¶ 13; Defendants' Answer to the [Amended] Complaint (Dkt. #22) ¶ 13.

5.     During the meeting, the Plaintiff asked Defendant Donald if she could use her social work and marketing skills to recruit emergency homes in the faith-based community. In addition, the Plaintiff suggested that she could assume responsibility over two poorly performing recruitment units that the agency depends upon for placement resources. Defendant Donald rejected the Plaintiff's suggestions.   Amended Complaint ¶ 14; Defendants' Answer to the [Amended] Complaint (Dkt. #22) ¶ 14.

6.     Following the July 2005 meeting with Defendant Donald, children continued to sleep in the CFSA office building.  Defendant Donald rejected the Plaintiff's suggestions.   Amended Complaint ¶ 15; Defendants' Answer to the [Amended] Complaint (Dkt. #22) ¶ 15.

7.     On August 15, 2005, Plaintiff Tabb communicated with Dr. Susan Newman, senior advisor, Religious Affairs, Executive Office of the Mayor. Plaintiff advised Ms. Newman that (a) CFSA had children sleeping in the building for lack of foster home resources; (b) she wanted the opportunity to do something about it, and ( c ) she recommended to Defendant Walker emergency placement of children at the Holiday Inn a few blocks from the CFSA office

building. The Plaintiff also discussed the recruitment of emergency foster homes in the faith-based community with Ms. Newman.    Amended Complaint ¶ 16; Defendants' Answer to the [Amended] Complaint (Dkt. #22) ¶ 16.

8.      Defendant Donald was informed of Ms. Tabb's communications with the Deputy Mayor and Ms. Newman.  Donald at 73 - 75, 110 - 112.

9.      On August 17, 2005, Ms. Donald sent an e-mail message to Mindy Good and Ronnie Charles stating that she was "furious" about Ms. Tabb's communications with Ms. Newman.  Donald at 110 - 112.

10.      Defendant Donald testified that she was "furious" because "we have an employee who was going outside of the chain of command, raising an issue with the mayor's office that then gets to my boss, the deputy mayor, and is, you know, taken out of context.  Donald at 112:14 to 112:18.

11.      On August 18, 2005, Plaintiff received an official admonition from Mindy Good.  Ms. Good admonished the Plaintiff for speaking to Susan Newman about children sleeping in the CFSA office building and her desire to implement some

emergency plan to address the problem. In support of her admonishment, Ms.

Good also referenced that the Plaintiff had contacted a public information officer

at the D.C. Department of Human Services (DHS) in March 2005 about

developing a campaign to increase awareness around child abuse and neglect,

reviving the Back to Sleep Campaign and other projects.  Amended Complaint ¶

17; Defendants' Answer to the [Amended] Complaint (Dkt. #22) ¶ 17.

12.     In response, on August 18, 2005, the Plaintiff submitted a ten-page, written

rebuttal to Defendant Good's admonition. In her rebuttal, the Plaintiff stated, in

part, "[w]e are breaking the law when children sleep in the agency." The Plaintiff

also stated that "[w]e remove children from neglectful and abusive situations,

only to bring them into another neglectful, abusive and degrading situation (in

our custody)."   Amended Complaint ¶ 18; Defendants' Answer to the

[Amended] Complaint (Dkt. #22) ¶ 18.

13.     Despite the conscientious and protected nature of her communications and

her rebuttal to the charge against her, Plaintiff Tabb was officially admonished

for communicating her concerns to Ms. Newman.   Amended Complaint ¶ 19;

Defendants' Answer to the [Amended] Complaint (Dkt. #22) ¶ 19.

14.     In August 2005, Ms. Tabb took medical leave to address her diabetes and

related health issues.  Tabb at 120 - 121.  Her initial leave period was from August

18 through September 16, 2005.  Tabb at 131.

15.     Prior to taking leave, Ms. Tabb discussed her medical issues with her

immediate supervisor (Mindy Good) and CFSA Human Resources Specialist

Michelle Lewis.  The three of them agreed that Ms. Tabb should take a block of

time to address her diabetes and related health issues.  Tabb at 130.

16.     In August and early September, 2005, Plaintiff Tabb communicated her

concerns about children sleeping in the CFSA office building and the need for

more placement resources to Deputy Mayor Neil Albert.  Tabb Deposition at 143

- 145; Albert Deposition at 32 - 38.   Ms. Tabb sent pictures of children sleeping at

CFSA to Deputy Mayor Albert.   Tabb Deposition at 168; Albert Deposition at 41 -

43.

17.     In mid-September 2005, while on medical leave, Ms. Tabb received a

telephone message from supervisory social worker Jonanne Vaughn who

-6-

reported that she had six children in the office one night and only one blanket.

Ms. Vaughn asked if Plaintiff Tabb could provide some comforters. In the

message to Ms. Tabb, CFSA Ms. Vaughn stated:

> Hi, Ms. Tabb, this is Joanne Vaughan, Intake and Investigation
> Supervisor. I do the overnight shift. And I was calling you about
> those comforters because, like, last night, I had, like, six children in
> here; and all I had was -- well, I hate to say this; but all I had was one
> blanket. And I was wondering if we could get some of those
> comforters. I never thought that I -- I thought that things would
> slow down, and I wouldn't have any people staying -- children
> staying in the building.
>
> But, well, it wasn't that case last night. So if you would call me at 727-2 --
> I'm tired because I can't even remember my own -- 2091 -- no, 727-2901, I
> would really appreciate it. I'll try to call you one more time. I'm supposed
> to get off at 9:30, but that's not happening. So I'll try to call you back to see
> if I can actually get a few of the comforters for tonight. Thanks a lot, bye,
> bye. [Joanne Vaughn Deposition at 25 - 26].

Vaughn at 22 - 28.


18.    Having received no substantive response from CFSA management or the

Mayor's office regarding her concerns about children sleeping in the CFSA office

building and improving the availability of timely and appropriate placements,

Ms. Tabb contacted the news media in order to bring attention to the issue and to

attempt to get the issue addressed. Tabb at 180 - 181. Ms. Tabb contacted the

media on September 19, 2005 and stories ran that day and/or the following day.

Mindy Good Deposition at 147 - 148, 156 - 157.

19.    Members of the media responded by interviewing Ms. Tabb and seeking
comments from CFSA officials.  Good at 84 - 87.  The television news outlets that
covered the story also prepared written versions of the story that were posted on
their web sites.  Good at 147, 148, 153 - 156.

20.    In order to validate her disclosure, Ms. Tabb showed a partial photo of a
child trying to rest on a blue cot that was too small.  Ms. Tabb did not share the
name of the child or any identifying information with the media.  Tabb at 243:6 -
245:1.

21.    CFSA did not know the name of the child in the photo provided by Ms.
Tabb nor could the agency identify that the child had been in the agency's
custody.  Good at 93:17 - 95:5.

22.    In response to the WUSA-TV reports, Defendant Mindy Good stated that
children sleeping in the CFSA office building was "totally unacceptable."
Amended Complaint ¶ 27; Defendants' Answer to the [Amended] Complaint

(Dkt. #22) ¶ 27.

23.    CFSA officials reportedly felt dismayed or betrayed by the media attention because they knew it would give the agency a "black eye."  Good at 118:22 - 119:16.

24.    Ms. Tabb was on approved leave when she contacted the media and the stories were broadcast or published.  Defendant District of Columbia's Response to Plaintiff's Request for Admissions at ¶s 16 - 17.

25.    The press reports that were generated as a result of Ms. Tabb's communications with the media resulted in the issue of children sleeping in the CFSA office building being brought to the attention of the Mayor and the then-Chair of the D.C. Council Human Services Committee, Adrian Fenty.  Albert at 45; Tabb at 259.  The press reports also made the public aware of the issue. Donald at 184:18 - 186:1.

26.    On October 3, 2005, while Ms. Tabb was still on medical leave, Defendant Donald issued a "Notice of Summary Removal."  The Notice stated, in part, that

"effective October 3, 2005 . . . [the Plaintiff is] summarily removed from . . . [her]

position of Public Relations Specialist in the Child and Family Services Agency,

Office of Public Information (CFSA OPI)."   Amended Complaint ¶ 28;

Defendants' Answer to the [Amended] Complaint (Dkt. #22) ¶ 28; Exhibit 2,

Notice of Summary Removal from Brenda Donald to Shirley Tabb, dated October

3, 2005 (attached with Plaintiff's Memorandum).


27.     Defendant Donald made the decision to summarily remove and terminate

Ms. Tabb from her position at CFSA.  Donald at 21, 166:5; Good at 84; Ronnie

Charles Deposition at 37, 141.


28.     Ms. Tabb was on approved leave when the Notice of Summary Removal

was issued.   Defendant District of Columbia's Response to Plaintiff's Request for

Admissions at ¶ 1; Charles at 125:11 - 125:15.


29.     The Notice stated the following as the purported bases for Ms. Tabb's

removal:


        In March, 2005, you used the CFSA e-mail system to approach
        another government agency about an unauthorized campaign to

raise awareness about child abuse and neglect and to promote implementation of specific projects, without notifying or obtaining prior approval from your supervisor. You again mentioned the unauthorized campaign at an executive staff meeting. As a result, you were reprimanded.

In August, 2005, you were admonished for failure to perform your job duties in a competent and timely manner despite receiving clear direction and timelines from your supervisor.

On or about September 19, 2005, you misrepresented agency practice to the media; violated CFSA confidentiality laws in showing the image of a child in CFSA's custody and disclosing detailed personal information about why the child was in CFSA's custody. As a Public Relations Specialist, you are well aware of CFSA confidentiality laws and the need to protect children in our care from the stigma of involvement with our agency. Again, you failed to obtain permission from your supervisor to disseminate information to the media which constitutes malfeasance and insubordination as you had been admonished for similar conduct earlier this year.

You have been on Family Medical Leave since August 18, 2005, based on a claim that you are suffering from a serious medical condition which prevents you from working. Yet, you were able to coordinate a photo of a child, an audio tape of a co-worker and coordinate interviews with the media at this time. CFSA considers such actions an abuse of Family Medical Leave.

Your violation of supervisory instructions, blanket disregard for agency procedures and confidentiality laws, disruptive behavior and misuse of Family Medical Leave, threatens the integrity of government operations.


Exhibit 2 at 1 - 2.

30.    Defendant Donald testified that she was concerned about Ms. Tabb's

communications with the Mayor's office, in part, because Ms. Tabb "was going

outside of the chain of command." Donald at 75. Ms. Donald testified that "it

was policy that you don't communicate -- employees would not communicate

directly with the mayor's office or the deputy mayor's office without going

through the chain of command." Donald at 75 - 76.


31.    Regarding the purported policy that CFSA employees were not to

communicate directly with the mayor's office, Defendant Donald testified as

follows:

Q   All right.  Now, with respect to your
concern about there being a policy that employees
don't communicate directly with the deputy mayor's
office or the mayor's office, can you tell me where
that policy is reflected?
A   No, I don't think it's a written policy.
Q   And how would employees know about this
policy if it wasn't written?
A   It would have been communicated.  It would
have certainly been standard operating procedure that
you go up the chain of command.


Donald at 77.

32.     At the time of her summary removal, Ms. Tabb was a civil service employee and was part of a collective bargaining unit that was represented by a union.   Donald at 27.

33.     Ms. Tabb was not provided with any advance notice of her removal and no opportunity to contest the allegations raised against her pre-removal (*i.e.*, prior to October 3, 2005).  Tabb at 208:20 - 209:6; Donald at 170:9 - 170:19.

34.     Ms. Donald did not write the removal letter, it was prepared by Human Resources.  Donald at 159.

35.     With regard to the articulated  reasons that purportedly formed the bases for Ms. Tabb's removal and termination, Ms. Donald, in most instances, was unaware of the legal or policy reason or evidentiary bases that might support what was asserted in her October 3, 2005 letter.  Donald at 164:2 - 164:4, 178:16 - 182:1, 188:8 - 189:6, 189:15 - 191:1, 191:2 - 192:7, 192:8 - 194:12, 195:6 - 197:4, 201:2 - 201:12, 204:3 - 204:7, 238:5 - 238:21.

36.     Ms. Donald's decision to remove and terminate Ms. Tabb was also

influenced by alleged "overall performance issues" that were not articulated in the October 3, 2005 removal letter. Donald at 230:8 - 232:6. Thus, Ms. Tabb had no way of knowing what alleged "performance issues" were being raised against her.

37.     Although Ms. Donald relied extensively on CFSA's Human Resources department and Office of General Counsel, individuals from those parts of the agency had no better knowledge of the legal, policy or evidentiary bases for Ms. Tabb's removal or termination.

38.     Deborah Wilson is the Human Resources Manager at CFSA. Wilson Deposition at 6. During the period October 2005, Mr. Ronnie Charles was Ms. Wilson's direct supervisor. Wilson at 79.

39.     Ms. Wilson was not privy to the application of the summary removal standard to Ms. Tabb or the facts asserted in Ms. Tabb's removal. Wilson at 95:13 - 96:16.

40.     Ms. Wilson provided the generic template for the October 3, 2005 removal

letter.  Wilson at 148:12 - 149:18.

41.    Ms. Wilson does not know who may have drafted the non-template

portions of the October 3 removal letter.  Wilson at 149:19 - 150:4.

42.    Ms. Wilson is unaware of whether anyone checked or corroborated the

purported facts relied upon by the agency in the October 3rd removal letter.

Wilson at 150:5 - 150:22.

43.    Mr. Ronnie Charles is a Senior Deputy Director at CFSA.  Charles

Deposition at 8.

44.    Mr. Charles was not involved in the decision to terminate Ms. Tabb, but he

was involved in the policy review.  Charles at 28:16 - 28:21.

45.    Mr. Charles knew Ms. Tabb to be a very qualified employee.  Charles at

52:13 - 54:11.

46.    At the time of her removal, Mr. Charles had little or no personal

knowledge of Ms. Tabb's alleged work performance or attendance issues.

Charles at 54:12 - 55:18; 99:12 - 100:14; 104:5 - 104:21; 122:20 - 123:22; 125:6 -

125:17: 126:15 - 126:18.

47.    Mr. Charles did not create or draft the October 3rd summary removal letter

that was issued to Ms. Tabb.  Charles at 66:6 - 66:17; 116:20 - 120:1.

48.    Mr. Charles did not personally evaluate or assess the allegation against Ms.

Tabb that she violated leave policy or abused family or medical leave.  Charles at

73:3 - 74:4.

49.    It was the responsibility of CFSA's Office of General Counsel to validate

the allegation that Ms. Tabb had violated confidentiality laws and disclosed

personal information about a child.  Charles at 123:9 - 124:14.

50.    Mr. Charles did not validate the factual allegations presented against Ms.

Tabb in the agency's removal letter.  Charles at 125:6 - 125:10.

51.    Defendant Brenda Donald assigned Mr. Charles with the duty of issuing

the notice of final decision regarding Ms. Tabb's termination.  Charles at 139:21 -

140:2.

52.     Mr. Charles role in issuing the notice of final decision was to validate the

decision that was made much earlier by Ms. Donald.  Charles at 141:10 - 141:19.

53.     Mr. Charles did not remember reviewing Ms. Tabb's written response to

the October 3rd removal letter.  Charles at 141:6 - 141:9, 142:2 - 147:15.

54.     Ms. Tabb also communicated her concerns about children sleeping in the

CFSA office building to Judge Hogan who presides over the *LaShawn* case.   An e-

mail exchange involving Mr. Charles and other CFSA officials indicated that the

agency provided personnel information concerning Ms. Tabb to the Court

Monitor (Judy Metlzer) to be shared with Judge Hogan.  Mr. Charles was

unaware in his experience with any other circumstance where personnel

information was provided to an outside party in advance of a final decision.

Charles at 166:17 - 168:22.

55.     Mr. Charles did not consider Ms. Tabb's rights to communicate and

express her opinion as provided in D.C. Code § 1- 615.58 in deciding to affirm the

decision to remove Ms. Tabb.  Charles at 193:12 - 194:12.


56.     Ms. Deon Merene served as Assistant General Counsel at CFSA from June

2004 through January 2006.  Deon Merene Deposition at 7:5 - 7:9.


57.     In September 2005, Ms. Merene first became aware of possible personnel

actions concerning Ms. Tabb.  Merene at 23.


58.     Ms. Merene does not recall who made the decision to summarily remove

Ms. Tabb from her position at CFSA.  Merene at 69:3 - 69:12.


59.     The only pieces of information Ms. Merene reviewed that purportedly

supported CFSA's decision to remove Ms. Tabb were a television news interview

and parts of Ms. Tabb's personnel file concerning performance and family leave

status.  Merene at 63:2 - 63:15, 80:15 - 81:15.


60.     Ms. Merene could not recall what, if any, specific factual bases alleged in

the October 3rd removal letter she confirmed during her review of the issues.

Merene at 85:10 - 85:13, 87:5 - 87:10, 88:7 - 88:21, 90:12 - 91:4, 108:13 - 109:10, 110:8

- 111:12, 111:14 - 112:4, 112:17 - 113:13, 114:10 - 114:19.


61.    In Ms. Merene's opinion, the allegation in CFSA's October 3rd removal

letter that --


"In March 2005 you used the CFSA
e-mail system to approach another government agency
about an unauthorized campaign to raise awareness
about child abuse and neglect and to promote
implementation of specific projects, without notifying
or obtaining prior approval from your supervisor.  You
again mentioned the unauthorized campaign at an
executive staff meeting.  As a result, you were
reprimanded." [Merene at 88:7 to 88:15].


– would not constitute and adequate basis in and of itself for summary removal.

Merene at 100:5 - 101:21.


62.    Ms. Merene did not recall whether there was evidence to support the

allegations in the October 3rd removal letter that Ms. Tabb had shown an

identifiable image of a child to the news media or that Ms. Tabb disclosed

personal information about the child.  Merene at 102:14 - 104:1.

63.    During her involvement in the case, Ms. Merene was unaware that Ms.

Tabb had reported her concerns to Deputy Mayor Neil Albert and the Mayor's

Religious Affairs Advisor Dr. Susan Newman.  Merene at 115:20 - 116:6.

64.    Finally, considering all of  the information contained in the October 3rd

removal letter, Ms. Merene could not say that the letter justified summary

removal.  Merene at 117.

DATED this 21st  day of April, 2008.

Respectfully submitted,

*/s/Richard E. Condit*

_____
Richard E. Condit, Esq.
D.C. Bar No. 417786
1612 K Street, NW, Suite 1100
Washington, D.C.  20006
Telephone: (202) 408-0034 x. 142
Facsimile: (202) 318-3211
Email: r1condit1@earthlink.net