**Page 1**

1      IN THE UNITED STATES DISTRICT COURT
        FOR THE DISTRICT OF COLUMBIA
2
3  - - - - - - - - - - - - - +
                |
4  SHIRLEY TABB,     |
                |
5     Plaintiff,  | Civil Action No.
                |
6   vs.     | 1:06-CV-00789(PLF)
                |
7  DISTRICT OF COLUMBIA,  |
                |
8     Defendant.  |
                |
9  - - - - - - - - - - - - - +
10
11     Deposition of Deon Merene, Esquire
12        Washington, D.C.
13      Thursday, March 20, 2008
14         2:30 p.m.
15
16
17
18
19
20  Job No. 1-125448
21  Pages 1 - 124
22  Reported by: Laurie Bangart-Smith

**Page 2**

1         Deposition of
2       DEON MERENE, ESQUIRE
3
4  Held at the offices of:
5     UNITED STATES DISTRICT COURT
6     333 Constitution Avenue, Northwest
7     Judge Facciola's Chambers
8     Second Floor, Room 2321
9     Washington, D.C. 20001
10
11
12
13
14
15
16
17     Taken pursuant to notice, before Laurie
18  Bangart-Smith, Registered Professional Reporter,
19  Certified Realtime Reporter, and Notary public in
20  and for the District of Columbia.
21
22

**Page 3**

1       A P P E A R A N C E S
2  ON BEHALF OF THE PLAINTIFF:
3     RICHARD CONDIT, ESQUIRE
4     Law Offices of Richard Condit
5     1612 K Street, Northwest
6     Suite 1100
7     Washington, D.C. 20006
8     (202)408-0034
9  ON BEHALF OF THE DEFENDANT:
10     MICHAEL P. BRUCKHEIM, ESQUIRE
11     Assistant Attorney General
12     Office of the Attorney General
13     One Judiciary Square
14     441 Fourth Street, Northwest
15     Sixth Floor - South
16     Washington, D.C. 20001
17     (202)727-6295
18
19  ALSO PRESENT:
20     MAGISTRATE JUDGE JOHN M. FACCIOLA
21     JARED S. HOSID, CLERK
22     SHIRLEY TABB, PLAINTIFF

**Page 4**

1       EXAMINATION INDEX
2          PAGE
3  EXAMINATION BY MR. CONDIT . . . . . . . . . . . 5
4  EXAMINATION BY MR. BRUCKHEIM . . . . . . . . . 116
5  REDIRECT EXAM BY MR. CONDIT . . . . . . . . . . 118
6       E X H I B I T S
7     (Attached to the Transcript)
8  DEPOSITION EXHIBIT        PAGE
9  Exhibit 1  Defendant's Amended Log of
10     Privileged Documents      14
11  Exhibit 2  Letter to Shirley Tabb, 10/3/05,
12     Notice of Summary Removal     31
13  Exhibit 3  Letter to Shirley Tabb, 11/3/05,
14     Notice of Final Decision, Summary
15     Removal      50
16  Exhibit 4  E-mail chain     51
17  Exhibit 5  News article, "Agency's Practices
18     Questioned," by Nancy Yamada    76
19  Exhibit 6  Internet printout of article    78
20  Exhibit 7  Section 1616.1, "Summary Removal:
21     General Discipline"    96
22  Exhibit 8  WUSA Print Story     113

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

2 (Pages 5 to 8)

5

1          P R O C E E D I N G S
2          DEON MERENE, ESQUIRE
3    having been first duly sworn, testified upon her oath
4    as follows:
5          EXAMINATION BY COUNSEL FOR PLAINTIFF
6    BY MR. CONDIT:
7      Q    Good afternoon.
8      A    Good afternoon.
9      Q    Would you state your name for the record,
10   please.
11     A    Deon Merene.
12     Q    Would you spell your first and last name.
13     A    First name is D-E-O-N, last name is
14   M-E-R-E-N-E.
15     Q    Thank you.  Where do you work, ma'am?
16     A    I work for the Office of the Attorney
17   General.
18     Q    And where are you stationed in working for
19   the Office of the Attorney General?
20     A    Department of Mental Health.
21     Q    And where is that located?
22     A    64 New York Avenue, Northeast.

6

1      Q    Is there a floor or suite number?
2      A    Fourth floor.
3      Q    What position do you have at the Department
4    of Mental Health?
5      A    Deputy General Counsel.
6      Q    When did you first take that position?
7      A    Monday.
8      Q    Prior to working or taking the position as
9    Deputy General Counsel for Department of Mental
10   Health, where did you work?
11     A    Department of Mental Health.
12     Q    And what position did you have there?
13     A    Assistant Attorney General.
14     Q    And during what period of time did you work
15   as an Assistant Attorney General for the Department of
16   Mental Health?
17     A    February 2006 until the end of last week.
18     Q    Prior to holding the position as the
19   Assistant Attorney General, Department of Mental
20   Health, what position did you have?
21     A    Assistant General Counsel, Child and Family
22   Services Agency.

7

1      Q    And where were you stationed when you held
2    that position?
3      A    I believe the address was 400 Sixth Street,
4    Southwest.
5      Q    And during what period of time did you hold
6    the position as Assistant General Counsel for the
7    Child and Family Services agency?
8      A    I believe it was from June 2004 until the
9    end of January 2006.
10     Q    Why did you leave your position as Assistant
11   General Counsel at Child and Family Services Agency?
12          MR. BRUCKHEIM:  Objection as to relevance.
13          You can answer.
14          THE WITNESS:  I wanted a change.
15   BY MR. CONDIT:
16     Q    Okay.  Are you a licensed attorney?
17     A    I am.
18     Q    And where are you licensed?
19     A    District of Columbia and California.
20     Q    Are you actively licensed in California?
21     A    No.
22     Q    When did you become licensed in the District

8

1    of Columbia?
2          MR. BRUCKHEIM:  Objection as to relevance.
3          You can answer.
4          THE WITNESS:  2003.
5    BY MR. CONDIT:
6      Q    And what year did you graduate law school?
7      A    1993.
8      Q    What year did you begin working for the
9    District of Columbia government?
10     A    2002.
11     Q    And prior to working for the District of
12   Columbia government, for whom did you work?
13          MR. BRUCKHEIM:  Objection as to relevance.
14          You can answer.
15          THE WITNESS:  I worked for Sacramento
16   County, County Counsel's Office.
17   BY MR. CONDIT:
18     Q    And just in general, what were your major
19   duties for the County Counsel's office?
20          MR. BRUCKHEIM:  Objection as to relevance,
21          but you can answer.
22          THE WITNESS:  Civil prosecution of abuse and

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

3 (Pages 9 to 12)

9

1  neglect.
2  BY MR. CONDIT:
3  Q   During the period you served as Assistant
4  General Counsel at the Child and Family Services
5  Agency, what were your major duties?
6  **A  I'm sorry.  Could you repeat that.**
7  Q   When you served as Assistant General Counsel
8  for the Child and Family Services Agency, what were
9  your major duties?
10 **A   I guess to advise the Agency on various**
11 **legal issues as needed, as they came up.**
12 Q   Did you have any particular areas in which
13 you were required to advise the Agency?
14     MR. BRUCKHEIM:  Objection as vague and
15     broad.  Could you restate?  I don't know what you
16     mean by "particular areas."  Specialty or field
17     of law?
18 BY MR. CONDIT:
19 Q   If the witness understands.
20 **A   I'm not sure what you mean by "particular."**
21 Q   In other words, did you have a particular
22 role to play, certain subject areas that were your

10

1  areas of expertise or areas that you were required to
2  work in for the Agency?
3  **A   Other than FOIA officer, I would say no.**
4  Q   So am I understanding your testimony
5  correctly then that when you served as Assistant
6  General Counsel at Child and Family Services Agency,
7  you were the Agency's FOIA officer?
8  **A   For part of that time, yes.**
9  Q   During what period of time did you serve in
10 that function?
11 **A   I don't recall.**
12 Q   Were you serving in the capacity as the FOIA
13 officer in January of 2006?
14     MR. BRUCKHEIM:  Objection as to relevance.
15     You can answer.
16     THE WITNESS:  I don't recall.
17 BY MR. CONDIT:
18 Q   What other capacities or jobs, types of
19 tasks, if you will, have you undertaken other than
20 FOIA officer as Assistant General Counsel for Child
21 and Family Services Agency?
22     MR. BRUCKHEIM:  Objection as vague.  Are you

11

1  talking about types of cases that she handled or
2  types of law that she may have advised upon?  I'm
3  being more careful here than usual just because
4  of the issues involved, as you well know, so I'd
5  ask if you could clarify the question a little
6  bit.
7  BY MR. CONDIT:
8  Q   I'm just trying to understand what -- other
9  than generally advising the Agency, which is a pretty
10 broad range of possible activity, I'm trying to narrow
11 down and figure out what is or what was your main
12 areas of activity other than being a FOIA officer for
13 CFSA.
14     MR. BRUCKHEIM:  If you had any main areas of
15     activity, you can answer the question.
16     THE WITNESS:  Well, I guess I would have to
17     say that it varied over different periods of
18     time, and sometimes they were involved more with
19     the program areas, such as a licensing issue or
20     licensing issues, trying to start up new
21     programs, confidentiality issues around starting
22     up new programs; Memorandum of Understanding with

12

1  other agencies for different services.
2  BY MR. CONDIT:
3  Q   During your tenure as Assistant General
4  Counsel for Child and Family Services Agency, were you
5  ever called upon to provide guidance or input on
6  personnel matters?
7  **A   Yes.**
8  Q   About how often?
9  **A   I'm not sure what you mean.  Can you give me**
10 **a time frame, or . . .**
11 Q   Well, you said you worked there from
12 June 2004 to January 2006.  Was it a regular
13 occurrence during that period that you would be
14 advising on personnel matters such that you'd be doing
15 it every week, every month, every six months?  Any
16 kind of reference you can give us?
17 **A   Maybe every couple of months.**
18 Q   And what kinds of issues would you address
19 in providing input on personnel matters?
20     MR. BRUCKHEIM:  I'm just going to object and
21     ask the witness to only identify just general,
22     broad subjects and nothing related to specific

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

4 (Pages 13 to 16)

13

1  types of cases that may have been advised upon.
2      MR. CONDIT: I'm not asking to identify a
3  specific case, but specific information about the
4  kinds of personnel issues would be useful if it
5  doesn't identify a specific case.
6      MR. BRUCKHEIM: Okay. I just wanted to
7  clarify for the record.
8      You can answer the question.
9      THE WITNESS: Disciplinary actions,
10  background checks for hiring, job descriptions.
11  That's all I can think of.
12  BY MR. CONDIT:
13      Q   Okay. Have you reviewed any material
14  associated with this case?
15      A   Yes.
16      Q   What material have you reviewed?
17      A   I've reviewed one e-mail.
18      Q   What e-mail is that?
19      MR. BRUCKHEIM: I'm going to instruct the
20  witness not to answer. I will state that this is
21  an e-mail that was identified in the privilege
22  log as confidential.

14

1      MR. CONDIT: Let's mark the first exhibit,
2  please.
3      (Exhibit 1 was marked for identification and
4  attached to the deposition transcript.)
5  BY MR. CONDIT:
6      Q   Ms. Merene, I'm going to show you what has
7  been marked as Deposition Exhibit 1. It's the
8  District of Columbia's Amended Privilege Log. If
9  you'd take a look at it and identify for me in it what
10  e-mail you reviewed prior to this deposition.
11      MR. BRUCKHEIM: Counsel, I can state on the
12  record that it was identified as Bates number 737
13  to 738, an e-mail dated September 20th, 2005.
14      MR. CONDIT: Is that on Page 4 of the
15  exhibit?
16      MR. BRUCKHEIM: Yes.
17  BY MR. CONDIT:
18      Q   And Ms. Merene, would you concur in that
19  representation by counsel?
20      A   Yes.
21      MR. BRUCKHEIM: Just so the record is clear,
22  I didn't identify the e-mail to her as indicated

15

1  by the Bates stamp number as it appears here in
2  the privilege log, but the date is what was the
3  identifying factor.
4      MR. CONDIT: September 20, 2005?
5      MR. BRUCKHEIM: Yes.
6  BY MR. CONDIT:
7      Q   So, Ms. Merene, just to make sure the record
8  is clear, would you look at that particular reference
9  that counsel has pointed out on Page 4 of the exhibit,
10  Bates stamp 737 through 738, September 20, 2005, and
11  indicate that you understand that that is the e-mail
12  that you reviewed.
13      A   It appears to be, yes.
14      Q   All right. How many pages was the e-mail
15  that you reviewed?
16      A   I think it was two pages, maybe three.
17      Q   And why did you choose to review that e-mail
18  prior to your testimony today?
19      MR. BRUCKHEIM: Objection. Instruct the
20  witness not to answer that question.
21      MR. CONDIT: On what basis?
22      MR. BRUCKHEIM: It's going to call upon

16

1  areas of privilege. You're asking her to
2  identify why she reviewed it, and she's going to
3  have to describe the document to indicate why she
4  reviewed it, which is going to go into the realm
5  of privilege.
6      MR. CONDIT: All she has to say is why she
7  reviewed it, she doesn't have describe anything.
8  She could say, "I reviewed it so I'd become
9  familiar with certain facts. I reviewed it
10  because I wanted to remember what happened. I
11  reviewed it, you know, for any number of
12  reasons." So I don't think that objection --
13      MR. BRUCKHEIM: I can have her testify as to
14  that.
15      I mean I don't know how much it would
16  necessarily make a difference, but if you
17  reviewed it for any of those reasons, then, you
18  know, you can answer the question.
19      THE WITNESS: No, I didn't review it for any
20  of those reasons.
21      MR. CONDIT: Well, Counsel, I guess I'm
22  having a problem, because I don't understand how

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

17

1 answering the question of why you reviewed it has
2 anything to do with privilege.
3     MR. BRUCKHEIM: I'm concerned that you are
4 going to ask her to describe the contents of the
5 e-mail. The contents of the e-mail are the
6 reason why we declared it as privileged and
7 recorded it in the privilege log. Now, if you're
8 asking her if she reviewed it to refresh her
9 recollection, she's already provided the answer.
10 I'm not sure where else we can go. If you want
11 to try asking another question, we can see.
12     MR. CONDIT: Okay.
13 BY MR. CONDIT:
14     Q    Ms. Merene, did you, independent of counsel,
15 decide to review this e-mail, or was it suggested to
16 you that you review this e-mail?
17     MR. BRUCKHEIM: Again I'm going to instruct
18 her not to answer, because now you're asking her
19 what I advised her to do.
20 BY MR. CONDIT:
21     Q    I notice from the entry on the exhibit, the
22 privilege log, if you would open to Page 4 of the

18

1 document, please, and if you could draw your attention
2 to that reference of the document we've been
3 discussing, I notice that it's an e-mail from
4 Mr. Charles, and my question is: Other than the
5 e-mail from Mr. Charles, were there any other e-mails
6 connected to that message? In other words, was there
7 an e-mail chain, or was it just a message from
8 Mr. Charles?
9     MR. BRUCKHEIM: If you can recall, you can
10 answer that.
11     THE WITNESS: I believe it was an e-mail
12 chain.
13 BY MR. CONDIT:
14     Q    So about how long -- in the one or two pages
15 you reviewed, how long was the message from
16 Mr. Charles?
17     A    I don't recall.
18     Q    When did you review this e-mail message?
19     A    A couple of weeks ago.
20     Q    And you have not reviewed it again since
21 that time?
22     A    No.

19

1     Q    And that's the only document that you
2 reviewed that's related to this case?
3     A    Yes.
4     Q    Did you have a position description when you
5 served as Assistant General Counsel for the Child and
6 Family Services Agency?
7     A    Yes.
8     Q    And what duties were identified on your
9 position description?
10     A    I don't recall.
11     Q    Who was your immediate supervisor when you
12 served as Assistant General Counsel at the Child and
13 Family Services Agency?
14     A    There were several during the time that I
15 served.
16     Q    All right. If you could identify them,
17 please, and the times they served as your immediate
18 supervisor.
19     A    Terri Thompson Mallett is the first
20 supervisor. I'm not sure about when her tenure ended.
21 I want to say approximately May of 2005. The next
22 supervisor was Darrell Gorman.

20

1     Q    Would you spell the last name, please.
2     A    G-O-R-M-A-N.
3     Q    Thank you.
4     A    I'm not sure about his tenure, about how
5 long he was the supervisor, Acting General Counsel.
6 The next Acting General Counsel was Paul Kratchman. I
7 believe his tenure ended when Donald Terrell became
8 the General Counsel in October of 2005.
9     Q    Thank you.
10     During the period September through November
11 of 2005, where was your office physically located at
12 CFSA?
13     A    I'm sorry. What do you mean by "physically
14 located"?
15     Q    What physical address was it located at?
16     A    400 Sixth Street, Southwest, on the
17 fourth -- I'm not sure if it was the fourth floor.
18 Might have been fifth floor.
19     Q    So fourth or fifth floor; is that right?
20     A    Yes.
21     Q    And who do you think your immediate
22 supervisor was during the period September through

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

6 (Pages 21 to 24)

21

1 November of 2005?
2    **A   Paul Kratchman and then Donald Terrell.**
3    Q   At any time during the period of your tenure
4 at CFSA were you informed that some children who came
5 into care at CFSA were sleeping in the CFSA office
6 building?
7        MR. BRUCKHEIM: Objection. I'm going to ask
8    her not to answer that question, because if she
9    was informed in the course of being informed by
10    her client, that would constitute a confidential
11    and privileged communication.
12        MR. CONDIT: It depends on who informed her.
13    She can answer the question yes or no.
14        MR. BRUCKHEIM: You can answer yes or no.
15        THE WITNESS: I'm sorry. I'm confused. Was
16    I informed about children sleeping in the
17    building other than from my client?
18 BY MR. CONDIT:
19    Q   No. Were you informed? That's all we're
20 seeking to find out. Yes or no; were you informed
21 about children sleeping in the building during your
22 tenure at CFSA? And that's a yes or no.

22

1    **A   No.**
2    Q   Prior to today have you ever had occasion to
3 meet Shirley Tabb?
4    **A   I think I have met her.**
5    Q   Do you recall when you might have met her?
6    **A   I think when I was new to the Agency.**
7    Q   So maybe in the early part of your tenure,
8 in 2004?
9    **A   Yes.**
10    Q   Do you recall under what circumstances you
11 might have first met Ms. Tabb?
12    **A   Just being introduced as a new employee.**
13    Q   Did you have any occasion to work with
14 Ms. Tabb on any issues or matters of the Agency's
15 interest?
16    **A   No.**
17    Q   When, if at all, did you first become
18 involved in any personnel actions involving Shirley
19 Tabb?
20        MR. BRUCKHEIM: Objection as to foundation.
21    No. I would instruct her not to answer the
22    question. There has been no foundation laid that

23

1    she was involved in any personnel actions. I
2    don't know necessarily what "involved" means. I
3    would ask that you restate the question and/or
4    ask another question or try to lay some kind of
5    foundation.
6        MR. CONDIT: Well, for the record, I don't
7    think your objection is a legitimate one, but I
8    will accommodate you.
9 BY MR. CONDIT:
10    Q   Ms. Merene, anytime during your tenure at
11 CFSA did you become aware of a personnel action or
12 personnel actions involving Shirley Tabb?
13    **A   Yes.**
14    Q   When did you first become aware of such
15 personnel action or actions?
16        MR. BRUCKHEIM: You can answer the question
17    just with respect to the date but not with
18    respect to the source or the substantive subject
19    matter.
20        THE WITNESS: I would say it was around the
21    date of the e-mail in the exhibit, I think it was
22    September 2005.

24

1 BY MR. CONDIT:
2    Q   Well, if you would take a look at Page 4 of
3 Exhibit 1 and the e-mail you referenced earlier, tell
4 me if that refreshes your recollection as to when you
5 might have learned about personnel actions involving
6 Shirley Tabb.
7    **A   I don't know if that's the exact date. I**
8    **would say that it was around that time.**
9    Q   And how were you informed of a personnel
10 action or personnel actions involving Shirley Tabb?
11        MR. BRUCKHEIM: By "how," do you mean what
12    mode of communication, as in --
13        MR. CONDIT: Yes.
14        MR. BRUCKHEIM: That you can answer.
15        THE WITNESS: I don't recall.
16 BY MR. CONDIT:
17    Q   Did you maintain any type of file while you
18 were at CFSA that pertained in any way to Shirley
19 Tabb?
20    **A   I would say probably.**
21    Q   And where is that file now?
22    **A   I have no idea.**

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

7 (Pages 25 to 28)

25

1    Q   Did you turn over your files to anyone when
2  you left the Agency?
3    **A   Turn them over?  No, not necessarily.**
4    Q   Well, did you destroy the file that was
5  involving Shirley Tabb?
6    **A   No.**
7    Q   So as you were wrapping up matters for CFSA
8  before moving on to the Department of Mental Health,
9  what was the process in terms of dealing with any
10  issues that you were dealing with or files that you
11  had maintained during your tenure?
12        MR. BRUCKHEIM:  Objection as to foundation.
13        She is not here to testify as to what process or
14        policies were in place.  That's not her place to
15        testify as a witness.  That's more of a 30(b)(6)
16        witness.  I would instruct her, however, to
17        answer the question if you ask specifically what
18        did she do with respect to turning a file over.
19        As long as that doesn't reference any privileged
20        communications, I would have her answer that
21        question.
22

26

1  BY MR. CONDIT:
2    Q   When did you last see the file or handle the
3  file that had any information in it regarding Shirley
4  Tabb?
5    **A   I don't recall.**
6        MR. BRUCKHEIM:  I'd also just like to
7        clarify for the record that she's also testified
8        that she probably had a file, but it's not clear
9        that she actually did have a file.
10        MR. CONDIT:  The record will reflect what
11        the record reflects.
12  BY MR. CONDIT:
13    Q   Why is it you think you might have had a
14  file?
15    **A   Because generally if I was involved in any**
16  **sort of legal issues, I would try to create a file.**
17    Q   What type of information would you typically
18  place in such a file?
19    **A   Notes.**
20    Q   Your notes?
21    **A   My notes.**
22    Q   Anything else?

27

1    **A   No.**
2    Q   For personnel actions that you were involved
3  in, would you typically set up a file to follow your
4  activities and the activities of those you were
5  working with on the matter?
6    **A   Sometimes.  Depending on the issues.**
7    Q   And if it was a personnel matter that would
8  go on for some weeks or months, would it typically be
9  the case that you would set up a file?
10    **A   Theoretically speaking.  Again, it would**
11  **depend on the issues.**
12    Q   Were you familiar at all with the issues in
13  Shirley Tabb's personnel action?
14        MR. BRUCKHEIM:  You can answer yes or no.
15        THE WITNESS:  Familiar?
16  BY MR. CONDIT:
17    Q   Yes.
18    **A   At that time?**
19    Q   In the September through November of 2005
20  time period, yes.
21    **A   I would say probably.**
22    Q   And why do you think you probably were

28

1  familiar with the issues?
2    **A   Just based on the e-mail.**
3    Q   The e-mail that's been referenced in
4  Exhibit 1?
5    **A   Correct.**
6    Q   From September 20, 2005?
7    **A   Yes.**
8    Q   Did you play any particular role in the
9  issues concerning the personnel actions involving
10  Shirley Tabb?
11        MR. BRUCKHEIM:  Again I'm going to object.
12        Are you talking about -- well, I'm not sure what
13        you're talking about exactly.  What are you
14        talking about?
15        THE WITNESS:  What do you mean by "role"?
16  BY MR. CONDIT:
17    Q   Well, I don't mean to be curt, but "role,"
18  you know.  What function did you serve?
19    **A   Legal advisor.**
20    Q   And to whom were you providing legal advice?
21    **A   To whom?  I don't recall everyone I advised.**
22    Q   In your understanding at that time, who was

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

8 (Pages 29 to 32)

29

1  involved in making a decision for the Child and Family
2  Services Agency regarding any personnel actions being
3  taken against Shirley Tabb?
4      MR. BRUCKHEIM:  To that I'm going to object
5  and instruct her not to answer, because that's
6  going to call upon privileged communications.
7      MR. CONDIT:  No, it doesn't.
8      MR. BRUCKHEIM:  If somebody came to her and
9  said "I'm going to be making the decision here,
10  what should I do," that invokes a privileged
11  communication.
12      MR. CONDIT:  It does, but I'm not asking her
13  for that information.  I'm asking her who she
14  understood were the decision-makers at that time.
15      MR. BRUCKHEIM:  The identification in and of
16  itself would constitute a privileged
17  communication.  Are you asking her, you know,
18  what is her understanding as to who the Director
19  of the Agency was or who --
20      MR. CONDIT:  No.  I'm asking her the
21  question I asked, which is:  Who, in her
22  understanding at that time, was making the

30

1  decisions regarding personnel matters involving
2  Shirley Tabb?
3      MR. BRUCKHEIM:  I'm not going to have her
4  answer that.
5      MR. CONDIT:  Well, I'd like to get a ruling
6  on it.
7      MR. BRUCKHEIM:  Okay.
8      MR. CONDIT:  If we can go off the record,
9  please.
10      (Whereupon, a short recess was taken.)
11  BY MR. CONDIT:
12      Q   Ms. Merene, how many people were you
13  involved in advising regarding the Shirley Tabb
14  personnel matter?
15      A   I don't recall.
16      Q   Was it more than one?
17      A   Yes.
18      Q   More than two?
19      A   I guess it depends on what you mean by
20  "advise."
21      Q   Well, I suppose I'd leave it to you to
22  define that, since that was how you earlier answered

31

1  my question about what your role was.
2      A   Yes, more than two.
3      Q   More than three?
4      A   I'm not sure about more than three.
5      MR. CONDIT:  Okay.  Let me show you what
6  I'll mark as the next exhibit.
7      (Exhibit 2 was marked for identification and
8  attached to the deposition transcript.)
9  BY MR. CONDIT:
10      Q   Ms. Merene, you've been shown what has been
11  marked as Deposition Exhibit 2.  It's the October 3,
12  2005 letter from Brenda Donald Walker to Shirley Tabb
13  regarding notice of summary removal.  If you'd take a
14  look at it and, after you've had a chance to review
15  it, tell me if you've seen this document before.
16      MR. BRUCKHEIM:  I'm going to have to object.
17  The reason why I'm objecting is, if this document
18  was discussed, it was brought to Ms. Merene in
19  consultation in her capacity as an attorney, as
20  advising.  That's why I can't have her testify
21  about the communications, about anything related
22  to that, so I'm going to instruct her not to

32

1  answer, because it's in danger of -- it's
2  infringing upon the attorney/client privilege.
3      MR. CONDIT:  Well, danger of infringing on
4  the privilege is not infringing on the privilege.
5      MR. BRUCKHEIM:  Well --
6      MR. CONDIT:  The question only is:  Is she
7  familiar with this document?  Has she seen it
8  before?  That's not infringing on any privilege
9  in the United States of America that I'm aware
10  of.
11      MR. BRUCKHEIM:  If you're asking her if
12  she's familiar with a particular document and the
13  manner in which she became familiar is that it
14  was disclosed to her in the course of an
15  attorney/client communication, then that would
16  infringe.
17      MR. CONDIT:  But I didn't ask that question.
18  That question is not on the table.  The only
19  question on the table is:  Are you familiar with
20  the document?  Have you seen it before?
21      MR. BRUCKHEIM:  And I do understand what
22  you're asking, Richard, but my point is that, in

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

33

1    so answering, she could be revealing that this
2    particular document was, in fact, disclosed to
3    her in that communication.  If she says that
4    she's familiar with something, there had to have
5    been a source that would have made her familiar
6    with that.
7        If that source came from a communication
8    from the client, then she wouldn't be able to
9    testify about that, and quite frankly, I want to
10   close that off early, and I'm going to instruct
11   her not to answer based on privilege in terms of
12   what she may or may not be familiar with, because
13   now we're talking about documents that she could
14   have advised upon or that could have been
15   discussed or could infringe upon issues that she
16   advised upon.
17       MR. CONDIT:  And it could be talking about
18   documents that she has not done anything with and
19   doesn't know anything about.
20   BY MR. CONDIT:
21   Q   Ms. Merene, can you please answer yes or no
22   whether you've seen Exhibit 2, the October 3, 2005

34

1    correspondence, prior to today?
2        MR. BRUCKHEIM:  I'm going to instruct her
3    not to answer, Richard.  We should probably
4    bookmark this for the judge then.
5        Can we go off the record for a second.
6        (Discussion was held off the record.).
7    BY MR. CONDIT:
8    Q   Let's go back on the record and try some
9    simpler things.
10       If I could draw your attention, Ms. Merene,
11   back to Exhibit 2, and the question is -- and again
12   limited at the moment to "yes" or "no" -- have you
13   seen this document before?
14       MR. BRUCKHEIM:  Got to make the same
15   objection as before.  If it comes up in
16   privilege, if this is something that was given to
17   her -- clearly it wasn't drafted by her.  Her
18   name doesn't appear on the document.
19       MR. CONDIT:  Well, she didn't say that.  I
20   didn't even get to ask that question yet.
21       MR. BRUCKHEIM:  Well, that you can ask.
22       MR. CONDIT:  Well, thanks.

35

1        MR. BRUCKHEIM:  I'm here to help.
2        MR. CONDIT:  So you're instructing her not
3    to answer, so the record is clear, as to whether
4    or not she's seen this document before today?
5        MR. BRUCKHEIM:  That's correct.
6    BY MR. CONDIT:
7    Q   And Ms. Merene, you are going to accept that
8    advice and not answer the question?
9    A   Yes, I am.
10   Q   All right.  Ms. Merene, were you involved in
11   any way in drafting what we see here as Exhibit 2, the
12   October 3, 2005 notice of summary removal letter?
13       MR. BRUCKHEIM:  Well --
14       THE WITNESS:  I don't feel comfortable
15   answering.  I haven't read it.  I don't feel
16   customer answering.
17       MR. CONDIT:  Well, that's a good objection.
18       MR. BRUCKHEIM:  Again it's -- the question
19   is vague.  If you're talking about "involved,"
20   that's, that's the problem.  By "involved," did
21   she advise or give advice with respect to the
22   drafting of this letter?

36

1        MR. CONDIT:  Okay, I'll ask her a different
2    question.
3        MR. BRUCKHEIM:  If you ask her if she wrote
4    it herself, that she can identify yes or no,
5    because she knows what she wrote and what she
6    didn't write.
7    BY MR. CONDIT:
8    Q   Well, let's start with yes or no.
9    Ms. Merene, with respect to Exhibit 2, the October 3,
10   2005 letter, were you involved in drafting the
11   document; yes or no?
12       MR. BRUCKHEIM:  And I'm going to instruct
13   her not to answer because of the "involved"
14   question.
15   BY MR. CONDIT:
16   Q   Ms. Merene, with respect to Exhibit 2, the
17   October 3, 2005 letter, if you'd please take the time
18   to look it over carefully and tell me whether you
19   drafted any sections of this letter.
20   A   I don't feel comfortable with that either.
21       MR. BRUCKHEIM:  I'll put an objection on the
22   record again.  I guess we're talking about

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

10 (Pages 37 to 40)

37

1  privilege and we're getting into work product.
2     MR. CONDIT: Michael, this document is in
3  the case. She can't object to telling me whether
4  she wrote something in this document. It's in
5  the case. If it was privileged, it's now waived
6  as to that issue. This is getting a little
7  silly.
8     MR. BRUCKHEIM: Richard, I'm worried about
9  keeping the lines of privilege here. It's --
10 admittedly, I was puzzled by this deposition.
11 I'm not sure exactly, you know, what information
12 you want, what information you feel would be
13 beneficial, apart from the fact that I don't
14 think there's much information that this witness
15 can provide.
16    MR. CONDIT: Well, there isn't if you don't
17 let her answer any question, including those that
18 are not privileged. And by the way, for the
19 record, several of the things that you've
20 objected and told her not to answer are not
21 privileged, and it's -- you know, I'm really
22 glowing impatient with this.

38

1     If Ms. Merene drafted any part of Exhibit 2,
2  Exhibit 2 is in this case. It is public. It has
3  been released to other parties. There is no
4  privilege associated with that. And I would like
5  you to cite something more specific in law to me
6  for this record for when the judge comes to
7  review it if you're going to instruct her not to
8  answer that question, please.
9     MR. BRUCKHEIM: I will let her answer that
10 question.
11    You can answer.
12    THE WITNESS: Okay. What was the question?
13 BY MR. CONDIT:
14    Q  The question is: With respect to Exhibit 2,
15 the October 3, 2005 letter, did you draft any part of
16 it, all or any part of it?
17    A  I don't recall.
18    Q  Can you categorically deny, as you sit here
19 today, that you drafted any part of it?
20    A  Let me read it again.
21    Q  Take your time.
22    A  And what do you mean by "drafted"?

39

1     Q  Are any of the -- is any of the text of this
2  document, Exhibit 2, your words?
3     A  I don't recall.
4     Q  Can you categorically deny, as you sit here
5  today, that any of the text in this document are your
6  words?
7     A  Categorically, no.
8     Q  Is there anything you could review that
9  would refresh your recollection on whether or not you
10 drafted any of the text that we see that appears in
11 Exhibit 2?
12    A  I have no idea, because I don't know what
13 exists. I mean I don't know.
14    Q  You worked at CFSA, correct?
15    A  Right.
16    Q  So you know what files you had, what kinds
17 of information you had access to. Surely you know if
18 there's something there that might refresh your
19 recollection on this.
20    A  I don't recall, really.
21    Q  Looking at Exhibit 2 -- and if I can draw
22 your attention to the second page, please -- can you

40

1  identify whether or not at the bottom of the second
2  page that that's Brenda Donald Walker's signature?
3     A  What's the question?
4     Q  Can you identify whether or not the
5  signature on Page 2 is Brenda Donald Walker's
6  signature?
7     A  No.
8     MR. BRUCKHEIM: Objection as to foundation.
9     You can answer.
10 BY MR. CONDIT:
11    Q  During the period of time that is -- strike
12 that. During the October 2005 time frame, if an
13 employee was going to be terminated or summarily
14 removed, who, in your understanding, would be the
15 person or persons who would make the decision for that
16 action for the Agency?
17    A  The Director.
18    Q  Who was the Director at that time?
19    A  In October?
20    Q  Of 2005, yes.
21    A  I believe it was Brenda Donald Walker.
22    Q  Were there any persons other than Brenda

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

11 (Pages 41 to 44)

41

1 Donald during this period, October 2005, who would
2 make the decision to terminate or summarily remove an
3 employee from their position?
4     **A    I would probably say Ronnie Charles.**
5     Q    What position did Mr. Charles hold at that
6 time?
7     **A    I'm not sure of the title, but I know he was**
8 **over HR, Human Resources.**
9     Q    Did you have occasion during the September
10 through November 2005 time period to interact with
11 either Brenda Donald or Ronnie Charles concerning
12 anything to do with Shirley Tabb?
13        MR. BRUCKHEIM: I'm going to have to
14        instruct her not to answer that question.
15        MR. CONDIT: It's a yes or no for the
16        moment.
17        MR. BRUCKHEIM: For the moment you can
18        answer it yes or no.
19        THE WITNESS: Yes.
20     BY MR. CONDIT:
21     Q    During the October 2005 through
22 November 2005 time period, about how many times do you

42

1 think you may have interacted with Brenda Donald on
2 anything to do with Shirley Tabb?
3     **A    I don't -- I don't know if I did. I don't**
4 **recall.**
5        MR. BRUCKHEIM: I think your first question
6        referenced September. Your second one only said
7        October, November.
8        MR. CONDIT: Okay. Let me restate the
9        question.
10     BY MR. CONDIT:
11     Q    During the September 2005 through November
12 of 2005 time period, about how many times did you have
13 occasion to interact with Brenda Donald regarding
14 Shirley Tabb?
15        MR. BRUCKHEIM: I'm going to object to
16        relevance, but you can answer.
17        THE WITNESS: How many times?
18     BY MR. CONDIT:
19     Q    Yes.
20     **A    I don't recall.**
21     Q    Do you think you interacted with Brenda
22 Donald during that time period more than once?

43

1     **A    Yes.**
2     Q    Do you think you interacted with Brenda
3 Donald during that time period more than twice?
4     **A    No.**
5     Q    When you interacted with Brenda Donald
6 during the September through -- strike that. During
7 what month do you think you interacted with Brenda
8 Donald regarding Shirley Tabb?
9     **A    During what month?**
10     Q    Yes.
11     **A    I would say September.**
12     Q    September 2005?
13     **A    2005.**
14     Q    Okay. About how many times do you think you
15 interacted with Ronnie Charles during the period
16 September 2005 through November 2005 regarding Shirley
17 Tabb?
18        MR. BRUCKHEIM: Objection as to relevance,
19        but you can answer.
20        THE WITNESS: Maybe twice.
21     BY MR. CONDIT:
22     Q    During what month do you think you

44

1 interacted with Mr. Charles regarding Shirley Tabb?
2     **A    I'd say probably September 2005.**
3     Q    When you interacted with Brenda Donald
4 during September 2005 one to two times, as you've
5 testified, were you in a setting where more than one
6 person was present?
7     **A    Yes.**
8     Q    Were you in meetings on both occasions?
9     **A    I think so, but I'm not sure.**
10     Q    And were the meetings or interactions with
11 Brenda Donald that you had in September of 2005
12 prompted by yourself, or was it prompted by someone
13 else?
14     **A    It was prompted by someone else.**
15     Q    So you did not call the meetings or the
16 communications?
17     **A    No.**
18     Q    During the September 2005 through
19 November 2005 time period, did you have occasion to
20 interact with Deborah Wilson concerning Shirley Tabb?
21     **A    Yes.**
22     Q    About how many times during that time period

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

45

1  do you think you may have interacted with Deborah
2  Wilson?
3     **A   Probably two or three times.**
4     Q   When you interacted with Deborah Wilson two
5  to three times during the September to November 2005
6  time period, were there others present for those
7  interactions?
8     **A   I, I'm not sure.  I don't believe, though.**
9     Q   Why were you meeting with Ms. Wilson when
10  you met with her during those two to three occasions?
11    **A   I don't know that it was a meeting.**
12    Q   Well, what was the setting or the
13  circumstance of your interactions with Ms. Wilson
14  during the September to November 2005 time period?
15    **A   I don't recall if it was by phone or e-mail,**
16  **but I don't know that it was a meeting, like the same**
17  **room.**
18    Q   Okay.  So it could have been any of those
19  modes of communication; it could have been a meeting
20  or a phone call or an e-mail?
21    **A   Right.**
22    Q   And why were you interacting or

46

1  communicating with Ms. Wilson regarding Shirley Tabb
2  during the September to November 2005 time period?
3     MR. BRUCKHEIM:  I'm going to object and
4  instruct her not to answer based on privilege.
5     MR. CONDIT:  We haven't established that any
6  exists yet.
7  BY MR. CONDIT:
8     Q   You can answer yes or no.
9     MR. BRUCKHEIM:  It exists as soon as you
10  establish that they had interaction, and that's
11  been established on the record.
12  BY MR. CONDIT:
13    Q   Were you interacting with Ms. Wilson during
14  the September to November 2005 time period to provide
15  legal advice?
16    **A   Yes.**
17    Q   Did Ms. Wilson request your legal advice?
18    **A   Yes.**
19    Q   How would you define the phrase "legal
20  advice"?  What does that mean in terms of your work
21  when you were at CFSA?
22    MR. BRUCKHEIM:  Objection, but you can

47

1  answer.
2     THE WITNESS:  Well, I guess that's kind of
3  vague and broad for me to define.  It really
4  depends on the context of the facts, what's going
5  on.
6  BY MR. CONDIT:
7     Q   Well, do you understand that, for example,
8  having a conversation with Ms. Wilson about, you know,
9  what generally is going on within the Agency is not
10  legal advice, for example?
11    MR. BRUCKHEIM:  I'm not going to have her
12  answer those questions.  Now we're calling for a
13  legal conclusion.
14    MR. CONDIT:  From a lawyer who says she was
15  giving legal advice.
16    MR. BRUCKHEIM:  She said she was giving
17  legal advice, so --
18    MR. CONDIT:  Right.  I'm trying to define
19  what "legal advice" is from her perspective as
20  the person who purportedly gave the legal advice.
21    MR. BRUCKHEIM:  And if she is going to
22  describe what the legal advice is, then she's

48

1  describing what kind of advice she gave.
2     MR. CONDIT:  But I haven't asked that
3  question.  I have only asked her to identify her
4  general explanation of what "legal advice" is.
5     MR. BRUCKHEIM:  You want her to identify
6  what they talked about and what they said, and
7  I'm not going to have her answer the question
8  about defining "legal advice."
9  BY MR. CONDIT:
10    Q   Ms. Merene, as an attorney who worked within
11  the Child and Family Services Agency, would you agree
12  that if you had a conversation with, say, Ms. Wilson
13  about the current goings-on within the Agency,
14  somebody's appointed to a job, there's a certain event
15  that's going to take place having to do with some
16  success or failure of the Agency, that that type of
17  conversation does not have anything to do with
18  providing legal advice?
19    MR. BRUCKHEIM:  I'm not going to have to her
20  answer that question, because now you're
21  testifying, and you're just -- it's getting
22  ridiculous.

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

13 (Pages 49 to 52)

49

1    MR. CONDIT: So you're going to instruct the
2 witness -- I would like you to make the record
3 clear on this. You are going to instruct the
4 witness not to answer the question that I'm
5 asking her, trying to understand what her sense
6 of "legal advice" is?
7    MR. BRUCKHEIM: Yeah.
8    MR. CONDIT: And your basis is what?
9    MR. BRUCKHEIM: My basis is if you're trying
10 to get at what her idea of "legal advice" is,
11 then it's going to get into the realm of what
12 advice she actually gave or discussed.
13    MR. CONDIT: But I haven't asked that
14 question. I'm asking hypothetically to avoid
15 that very problem that you're hypersensitive to
16 and to understand what her perspective is on
17 "legal advice" so I know if I have anywhere else
18 to go with this line of questioning. I can't
19 even begin to understand that if I don't have an
20 understanding of the witness's perspective on
21 what she understands "legal advice" to be.
22    MR. BRUCKHEIM: Except you have that

50

1 understanding, because she's already testified
2 that Deborah Wilson sought her advice and sought
3 her advice specifically regarding Shirley Tabb
4 during the operative months of September 2005
5 through November 2005. So that's already been
6 established.
7    MR. CONDIT: Well, I disagree with your
8 basis for objection, but we'll move on and we'll
9 just -- if you could mark this section as well,
10 Madam Reporter, and see what we can . . .
11    THE REPORTER: Okay.
12    MR. CONDIT: Let me show you what I'll mark
13 as the next exhibit.
14    (Exhibit 3 was marked for identification and
15    attached to the deposition transcript.)
16 BY MR. CONDIT:
17    Q   Ms. Merene, you are being shown what has
18 been marked as Exhibit 3. It's a November 3, 2005
19 letter to Shirley Tabb from Ronnie Charles regarding
20 notice of final decision summary removal. If you'd
21 take a look at it, please, and tell me whether you've
22 seen this document before today.

51

1    A   I don't recall.
2    Q   Is there anything that you are familiar with
3 from your own files or from the Agency's files -- and
4 when I say "Agency," I mean CFSA -- that would refresh
5 your recollection of whether you've seen this letter
6 before today?
7    A   Not that I'm aware of.
8    Q   So I take it then that you did not draft any
9 of this letter that we see as Exhibit 3?
10    A   I don't believe so.
11    MR. CONDIT: I'll mark the next exhibit.
12    (Exhibit 4 was marked for identification and
13    attached to the deposition transcript.)
14 BY MR. CONDIT:
15    Q   Ms. Merene, you've been handed what has been
16 marked Exhibit 4. It's an e-mail chain, with the
17 e-mail at the top of the page being from Brenda Donald
18 to Mindy Good and Ronnie Charles, the subject
19 forwarding a message, "Need for Emergency Foster
20 Homes." If you'd take a look at this document and
21 tell me if you've seen it before today.
22    A   No, I don't believe so.

52

1    Q   When you say you "don't believe so," do you
2 think that you just don't recall or that you may have
3 seen it before today?
4    A   I'm saying it doesn't look familiar. I
5 don't believe I've seen it.
6    Q   Okay, thank you.
7    During what period of time did you
8 participate in providing legal advice regarding
9 Shirley Tabb's personnel action?
10    MR. BRUCKHEIM: Objection; asked and
11    answered, but you can answer.
12    THE WITNESS: What period of time?
13 BY MR. CONDIT:
14    Q   Yes. Like from what month or day to what
15 month or day?
16    A   I don't recall the month and day.
17    Q   Okay. I believe you've established in your
18 earlier testimony that you were involved in Ms. Tabb's
19 personnel issues at least in September of 2005; is
20 that right?
21    A   Right.
22    Q   Do you think you were involved at all prior

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

14 (Pages 53 to 56)

53

1  to September of 2005?
2      A  No, I don't believe I was.
3      Q  Were you involved at all in Shirley Tabb's
4  personnel issues after September 2005?
5      A  I'm not sure.
6      Q  Is there anything that would refresh your
7  recollection on that issue?
8      A  I don't, I don't know.
9      Q  Let me draw your attention, please, to the
10  exhibit having to do with the privilege log, which I
11  believe is Exhibit 1.  If you'd open it to the second
12  page of the exhibit, please, and if you'd go down to,
13  on that page, the Bates numbered document 696, which
14  has a date of December 6, 2005.  It says the author of
15  the document was Deon Merene and that it was a
16  document to Deborah Wilson and Cecelia Hawkins,
17  subject Shirley Tabb.  Do you see that?
18      A  I do.
19      Q  Do you know what document that is?
20      A  No, I don't.
21      Q  Does the date of December 6, 2005, refresh
22  your recollection on when you may have been involved

54

1  in personnel action involving Shirley Tabb?
2      A  Does it refresh my recollection?
3      Q  Yes, at least to some extent.
4      A  To some extent that it says the date there,
5  but I don't recall anything else from what it says
6  there.
7      Q  All right.  If you go down further on that
8  same page to the Bates stamp 699 through 700, dated
9  December 5, 2005, do you see that document?
10      A  I do.
11      Q  It's represented to be from David, which I
12  believe is Donald Terrell, to yourself and several
13  others.  Do you recall what that document is?
14      A  No, I don't.
15      Q  Let me ask you, please:  Who is Cecelia
16  Hawkins who is listed as a recipient on some of these
17  documents?
18      A  You know, I don't recall that name.
19      Q  So as you sit here today, is it the case
20  that you don't recall who Cecelia Hawkins is?
21      A  Correct.
22      Q  All right.  Do you know who Carlotta Harvell

55

1  is?
2      A  Carlotta was an administrative assistant to
3  the general counsel.
4      Q  And at the time of this reference to this
5  document, which is December 5, 2005, do you recall who
6  Kia Winston was or what position she had at the time?
7      A  Kia Winston was either a paralegal or a law
8  clerk.  I can't remember which.
9      Q  Do you know whether or not -- do you know if
10  Cecelia Hawkins worked in the Office of General
11  Counsel for CFSA?
12      A  I don't think so.
13      Q  Do you know who Frank McDougald is?
14      A  I believe he was the Chief Attorney General
15  downtown.
16      Q  Do you know why Mr. McDougald was involved
17  in anything to do with Shirley Tabb?
18      A  Do I know why?
19      Q  Yes.
20      A  Because he was the chief over the, I believe
21  what you would call "employment litigation" for the
22  Office of the Attorney General.

56

1      Q  Do you know what role Deborah Wilson was
2  playing with respect to the personnel actions being
3  taken against Shirley Tabb during the September 2005
4  through November 2005 time period?
5      A  I know she was an HR manager.
6      Q  HR manager?
7      A  Yes.
8      Q  But do you know what role, if any, she
9  played in Ms. Tabb's case?
10      A  I don't recall the details.
11      Q  Do you know who Ella Roberson is?
12      A  I don't.
13      Q  Let me draw your attention to Page 4 of
14  Exhibit 1 that's before you.  If you'd please look at
15  the reference to a document with the Bates stamp 735,
16  dated October 4, 2005.  Take a look at that row and
17  tell me if that refreshes your recollection on who
18  Ella Roberson might be.
19      A  That name just doesn't ring a bell.
20      Q  Is it likely that Ella Roberson was an
21  attorney?
22      A  I don't --

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

57

1      MR. BRUCKHEIM: Objection. She's already
2  testified she doesn't recall who Ella Roberson
3  is.
4      MR. CONDIT: I understand, but she knows who
5  the attorneys were that she worked with.
6      MR. BRUCKHEIM: She already testified she
7  doesn't know who Ella Roberson is. I'm not going
8  to have her speculate as to who Ella Roberson may
9  have been. How is she going to know?
10 BY MR. CONDIT:
11     Q  Do you recall, Ms. Merene, the attorneys you
12 worked with in the Office of General Counsel during
13 the period of September to November 2005?
14     A  I'm not sure I remember all of them.
15     Q  About how many people were attorneys in the
16 Office of General Counsel at CFSA during that time?
17     A  During that time? I don't know. Four?
18     Q  So there was yourself, right? Are you one
19 of the four?
20     A  I was one of the four.
21     Q  Okay. Who were the other three?
22     A  I think there was Sarah Kaplan, Paul

58

1  Kratchman. I can't recall any other. I think there
2  were others, but I can't recall their names.
3      Q  And who is Janet Maher?
4      A  Who is she?
5      Q  Yes.
6      A  Or who was she -- what do you mean? She was
7  an employee of CFSA at that time. Chief of Staff, I
8  believe.
9      Q  So during the period of September to
10 November 2005, Janet Maher was Chief of Staff of the
11 Agency?
12     A  I believe so. Was she? I think so.
13     Q  All right. If you could draw your
14 attention, please, on this same exhibit, Exhibit 1,
15 the same page, Page 4, the document references Bates
16 stamp 736, dated September 21, 2005. Do you see that?
17     A  Yes.
18     Q  As you read through that column and
19 reference what information is provided, do you recall
20 what that document is or what information is in the
21 document?
22     MR. BRUCKHEIM: I'm not going to have her

59

1  testify as to what the information is in the
2  document, because that's why it's on the
3  privilege log.
4      MR. CONDIT: I asked her to tell me if she
5  remembers the information. I didn't ask her for
6  the information.
7      MR. BRUCKHEIM: You can testify as to
8  whether or not you remember.
9      THE WITNESS: Yes.
10 BY MR. CONDIT:
11     Q  Was Janet Maher providing legal advice in
12 this document?
13     A  I guess that might be -- I can't answer that
14 without getting into the content and what people
15 believed is legal advice. I mean . . .
16     Q  Well, from your sense of what "legal advice"
17 is, was Janet Maher giving legal advice in this
18 document that was transmitted to you and others on
19 September 21, 2005?
20     MR. BRUCKHEIM: Giving or seeking?
21     MR. CONDIT: That wasn't my question.
22 That's your question.

60

1  BY MR. CONDIT:
2      Q  My question is: Was Janet Maher giving
3  legal advice in this document?
4      A  I don't -- I have to say I don't remember
5  with enough particularity to make that call.
6      Q  Would Janet Maher, in your understanding of
7  her role in the Agency at that time, be giving legal
8  advice on any matters, personnel or otherwise?
9      MR. BRUCKHEIM: Objection to this as to
10 relevance and speculation. I mean it's -- why
11 don't you just ask her if Janet Maher is an
12 attorney?
13 BY MR. CONDIT:
14     Q  Janet Maher was the Chief of Staff at that
15 time, correct?
16     A  Yes.
17     Q  During your experience with Ms. Maher, in
18 her role as Chief of Staff, did she provide legal
19 advice?
20     A  In my experience with her? So what's your
21 question now?
22     Q  My question is: In your experience with

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

16 (Pages 61 to 64)

61

1  Janet Maher as Chief of Staff, did you know -- did you
2  have occasion to experience that she provided legal
3  advice?
4      **A   No.**
5      Q    Drawing your attention to Exhibit 1, Page 4,
6  the last reference, Bates stamp 742 to 744; do you see
7  that?
8      **A   Yes.**
9      Q    And it's an October 27, 2005 e-mail from you
10 to Deborah Wilson.  Do you see that?
11     **A   Yes.**
12     Q    Would that refresh your recollection as to
13 your involvement in matters involving Shirley Tabb in
14 October of 2005?
15     **A   Yes, only as to what is there.**
16     Q    Correct.
17     **A   Right.**
18     Q    Okay.  So from this privilege log, would it
19 be fair to say that we've established that you had
20 some involvement in the personnel action concerning
21 Shirley Tabb during September, October and December of
22 2005?

62

1      MR. BRUCKHEIM:  Objection as to the term
2  "involvement," but you can answer.
3      THE WITNESS:  I guess I would say it would
4  be fair to say I was made aware of something that
5  was going on.
6  BY MR. CONDIT:
7      Q    Okay.  Can you identify in the privilege
8  log, please -- for documents that have you as an
9  author or recipient -- what documents, of those,
10 involve legal advice?
11     **A   No, I cannot.**
12     Q    Were you involved at all in the preparation
13 of Exhibit 1, the privilege log that we see here?
14     **A   No.**
15     Q    So were there occasions when you were
16 involved in issues regarding Shirley Tabb's personnel
17 actions that you were not dispensing legal advice?
18     **A   Can you repeat that.**
19     Q    Were there occasions during the period of
20 time when you were involved in the personnel action
21 concerning Shirley Tabb where you were not dispensing
22 legal advice?

63

1      **A   I don't know.  I don't recall.**
2      Q    When you were involved in the situation
3  involving Shirley Tabb's personnel action, did you
4  have occasion to review any of the evidence that was
5  purported to be supporting the Agency's decision
6  regarding its personnel actions against Ms. Tabb?
7      **A   Yes.**
8      Q    And what evidence did you review?
9      MR. BRUCKHEIM:  That I'm going to object on
10 the grounds of privilege.  Calls for materials
11 that would have been provided to her during the
12 course of an attorney/client communication.  I'm
13 not going to have her testify to that.
14     MR. CONDIT:  Could we mark this part of the
15 transcript, please.
16 BY MR. CONDIT:
17     Q    Do you know, Ms. Merene, what legal
18 standards, if any, were applied to the actions of
19 Ms. Tabb in the Agency's determination that it would
20 take personnel action against her?
21     **A   Other than what's in the documents that you**
22 **have here?**

64

1      Q    Other than --
2      **A   No.**
3      Q    Well, I don't know.  I don't know the answer
4  to that.
5      **A   I would be speculating as well.**
6      Q    So I take it then that you were not involved
7  in determining the legal bases for the action being
8  taken against Ms. Tabb?
9      MR. BRUCKHEIM:  I'm not going to have her
10 testify as to that, because again it's calling
11 upon -- well, can you repeat the question.
12     MR. CONDIT:  Can you read back the question.
13     (Whereupon, reporter reads requested
14     material.)
15 BY MR. CONDIT:
16     Q    That's a yes or no.
17     MR. BRUCKHEIM:  I'm going -- I'm not going
18 to have her answer it, just because it's a little
19 vague on -- the word that's tripping me up is
20 "determining," because it may call upon her act
21 of reviewing or dispensing advice or looking at
22 materials provided to her during the course of an

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

17 (Pages 65 to 68)

65

1    attorney/client communication.
2        MR. CONDIT:  There's a lot of maybes in
3    there.
4        MR. BRUCKHEIM:  I think I see what you're
5    getting at, but if you could narrow down the
6    question a little bit, I may be able to have her
7    answer if I'm right in terms of where you want to
8    go.
9    BY MR. CONDIT:
10    Q    Ms. Merene, were you involved in making a
11   determination of the legal bases that would support
12   any aspect of the personnel action taken against
13   Ms. Tabb?
14    A    I would say I provided legal advice.  I
15   don't know what you mean by "involved in determining."
16   I provided legal advice.
17    Q    Ms. Merene, did you investigate any law,
18   rule or regulation that could or might be employed
19   against Ms. Tabb based on the information that was
20   presented to you?
21       MR. BRUCKHEIM:  I'm not going to have her
22       answer that question, based on privilege.

66

1    BY MR. CONDIT:
2     Q    At the time you were involved in the
3    personnel issues concerning Ms. Tabb, were you
4    familiar with the legal standard for summary removal
5    of an employee?
6        MR. BRUCKHEIM:  That you can answer as to
7        what you may have known, absent any
8        communication.
9        THE WITNESS:  I don't recall.
10   BY MR. CONDIT:
11    Q    Had you had occasion, prior to Ms. Tabb's
12   situation, to be involved in the summary removal of
13   any employee at CFSA?
14    A    I don't recall.
15    Q    Is there anything that would refresh your
16   recollection on that issue?
17    A    There could be.  I'm not sure.
18    Q    Well, was summary removal a significant
19   action in your experience at CFSA?
20    A    I'm not sure what you mean by "significant."
21    Q    Was summary removal a routine experience at
22   CFSA during your tenure?

67

1     A    No, I wouldn't call it "routine."
2     Q    Okay.  During your tenure at CFSA when you
3    were involved in personnel matters, about how often
4    would you be involved in someone being summarily
5    removed or terminated from their position?
6     A    Maybe two or three times.
7     Q    Would that include Shirley Tabb?
8     A    Yes.
9     Q    Were any of the two or three times, other
10   than Shirley Tabb that you're thinking of, summary
11   removals?
12    A    I thought that's what you were asking about.
13    Q    No, I said summary removal or termination in
14   my previous question.
15       Well, let's go back and clarify the record.
16   Have you been involved -- scratch that.  How many
17   times were you involved during your tenure at CFSA in
18   the termination of an employee?
19    A    I don't recall.
20    Q    And when you answered a short time ago "two
21   or three times," what were you telling me; two or
22   three times what?

68

1     A    Summary removal or termination.
2     Q    Or termination?
3     A    Right.
4     Q    Okay.
5        MR. BRUCKHEIM:  Just for clarification, I
6        know you've asked the question involved.  By
7        "involved," do you mean advised?
8        MR. CONDIT:  No, but I can clarify that.
9    BY MR. CONDIT:
10    Q    In the two or three times that you were
11   involved in summary removal or termination, were you
12   involved, in each of those occasions, in providing
13   legal advice?
14    A    Yes.
15    Q    Have you had occasion to talk to anyone
16   about this litigation or anything to do with this case
17   other than Mr. Bruckheim?
18    A    Yes.
19    Q    And who other than Mr. Bruckheim have you
20   talked to about this case?
21    A    I spoke to Paul Kratchman and Donald
22   Terrell.

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

18 (Pages 69 to 72)

69

1    Q    Anyone else?
2    A    No.
3    Q    Are you aware as you sit here today who made
4    the decision to summarily remove Ms. Tabb from her
5    position?
6    A    No.
7    Q    Were you aware at the time -- that is,
8    October of 2005 -- who made the decision to remove --
9    excuse me -- summarily remove Ms. Tabb from her
10   position?
11   A    I may have been.  I don't recall if I knew
12   at that time or not.
13   Q    Do you recall at all what the process is for
14   summarily removing an employee?
15   A    No.
16   Q    Did you know at the time, October of 2005,
17   what the process or steps were to summarily remove an
18   employee?
19   A    I may have.
20   Q    Do you recall whether or not you
21   investigated or reviewed the steps to summarily remove
22   an employee in the September 2005 through

70

1    November 2005 time period?
2    A    I don't recall.
3    Q    Is there anything that would refresh your
4    recollection on that issue?
5    A    There may be.  I don't know.
6    Q    You testified a little earlier that you
7    might have created a file with respect to Ms. Tabb's
8    situation; is that right?
9    A    Right.
10   Q    And you testified that you might have kept
11   notes, your notes, in that file, correct?
12   A    Right.
13   Q    Would your notes reflect research that you
14   had done or questions you were addressing during that
15   period of time?
16   A    Probably.
17   Q    And I just want the record to be clear on
18   this, although I think I understand the answer
19   already, but I think your testimony was earlier that
20   you do not know what happened to that file if it was
21   created, or those notes?
22   A    Correct.

71

1    Q    Have you had any involvement in anything to
2    do with the discovery matters in this case other than
3    sitting here today and providing your deposition
4    testimony?
5    A    No.
6    Q    Do you know that, for example, that Brenda
7    Donald has given deposition testimony in this case?
8    A    Yes.
9    Q    And how is it that you came to know that?
10        MR. BRUCKHEIM:  I guess you can answer.
11        THE WITNESS:  Mr. Bruckheim mentioned that
12   today.
13        MR. BRUCKHEIM:  I didn't know how to object
14   without giving it away, so why not?
15        MR. CONDIT:  Okay.  I won't take that as
16   opening any doors; okay?
17        MR. BRUCKHEIM:  Okay, good.
18   BY MR. CONDIT:
19   Q    Ms. Donald testified about the facts,
20   circumstances that she could recall regarding
21   Ms. Tabb's personnel action, and in that testimony she
22   indicated that she met on one occasion "with Mindy

72

1    Good, Ronnie Charles and/or the General Counsel's
2    Office to discuss the situation and find out if
3    there's anything that we could or should do about it,"
4    and the "it" that she's referring to is the media
5    attention that was brought about by Ms. Tabb's
6    disclosure.
7        Do you have that context in mind?
8    A    Yes.
9    Q    My question to you is:  Do you recall being
10   involved in a meeting with Mindy Good, Ronnie Charles
11   and Ms. Donald around the September 20th time period,
12   2005?
13        MR. BRUCKHEIM:  You can answer.
14        THE WITNESS:  Yes.
15   BY MR. CONDIT:
16   Q    Ms. Donald testifies about the subject
17   matter of the meeting, and she says, "Well, we
18   obviously discussed the fact that Shirley was on sick
19   leave and participated in a news story about the
20   department and identified or showed a picture of one
21   of our clients to the media, and we were concerned
22   about that.  And then we discussed Shirley Tabb in

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

19 (Pages 73 to 76)

73

1  general in terms of other concerns that we had which
2  went to possible misuse of leave, and this was an
3  example of was" -- that's grammatically incorrect --
4  "supposed to be on sick leave. How do you participate
5  in a media interview, performance issues that have
6  been documented and discussed previously about if
7  you've got a person who is a public information
8  officer. Is that person not aware of all that we've
9  been doing over the past year to try to address the
10 issue of placements," et cetera, et cetera.
11      Is that the -- is that part of the subject
12 of the meeting that you're recalling in the
13 September 20th, 2005 time period?
14      MR. BRUCKHEIM: I'll instruct the witness
15 not to answer on the grounds of privilege.
16      MR. CONDIT: Ms. Donald has testified about
17 it.
18      MR. BRUCKHEIM: Ms. Donald testified to
19 that. The objection is on the record on that
20 deposition with respect to her specific
21 deposition testimony, so I would dispute that any
22 contention that the privilege has been waived by

74

1  Ms. Donald, and I'd instruct Ms. Merene not to
2  answer.
3      MR. CONDIT: I'll show you the transcript
4  that I'm reading from. There is no objection
5  here to that question.
6      MR. BRUCKHEIM: But there's an objection
7  that comes out from Mr. Williams at some point
8  during the questioning where he puts his
9  objection on the record about specific
10 conversations between general counsel and CFSA
11 staff in which he stated that you can ask
12 generally, you know, general subject areas, but
13 not specific. That was a specific question, and
14 I'm not going to have Ms. Merene answer the
15 question.
16      MR. CONDIT: Can we mark this part of the
17 transcript as well, please.
18      (Discussion was held off the record.)
19      MR. CONDIT: So Michael, all I'm asking the
20 witness to do is confirm whether or not this was
21 the subject matter which has already been
22 testified to in the meeting that she recalls.

75

1      MR. BRUCKHEIM: I'm not going to have her
2  testify about what was discussed at the meeting.
3  BY MR. CONDIT:
4      Q   Okay. Ms. Merene, I'm going to read to you
5  from the transcript of Ms. Donald's deposition, and
6  then I'll have a question for you.
7      The question to Ms. Donald was: "And did
8  you evaluate each of those options, discipline up
9  through termination, in this meeting in the
10 conversation that was going on? Answer: No. That
11 meeting was to discuss what kind -- what were the
12 options, and then for HR, through Ronnie Charles and
13 General Counsel, to review the whole file, all of the
14 circumstances, and to come back with a recommendation
15 or set of recommendations."
16      Now, my question to you is: Did you or
17 someone from the General Counsel's office come back
18 with a recommendation for Ms. Donald with respect to
19 possible personnel action concerning Shirley Tabb?
20 That's just a yes or no at this stage.
21      MR. BRUCKHEIM: I'm not going to have her
22 answer that question, because that relates to

76

1  specific advice that may have been provided.
2      MR. CONDIT: It doesn't relate to specific
3  advice. It only asks the question was a
4  recommendation provided, yes or no.
5      MR. BRUCKHEIM: Her recommendation is
6  specific advice.
7      MR. CONDIT: If you're talking about the
8  substance of the recommendation. I'm simply
9  asking if one was given.
10      MR. BRUCKHEIM: I'm not going to have her
11 answer.
12      MR. CONDIT: Can we mark this as part of the
13 transcript as well.
14      THE REPORTER: Okay.
15      MR. CONDIT: Just for the record, the
16 quotation I was reading from is on Page 152 of
17 Ms. Donald's deposition.
18      Let me show you, Ms. Merene, the next
19 exhibit.
20      (Exhibit 5 was marked for identification and
21 attached to the deposition transcript.)
22

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

20 (Pages 77 to 80)

77

1  BY MR. CONDIT:
2    Q   Ms. Merene, you've been handed what's been
3  marked as Exhibit 5. Exhibit 5 purports to be a copy
4  of a news story apparently written by Nancy Yamada,
5  dated around September 20, 2005. Would you take a
6  look at it and tell me if you've seen it before.
7    A   I don't recall it.
8    Q   Do you recall generally whether or not you
9  reviewed any news stories, whether in print or on
10 video forum, when you were examining issues concerning
11 personnel actions involving Shirley Tabb?
12       MR. BRUCKHEIM: I'm not going to have her
13    testify as to what she reviewed during the course
14    of her examination.
15       MR. CONDIT: What's the legal basis for your
16    refusal to have the witness answer?
17       MR. BRUCKHEIM: It goes to the deliberative
18    process. It invokes attorney/client again in
19    terms of what information may have been provided.
20    The question as phrased, I'm not going to have
21    her answer the question.
22

78

1  BY MR. CONDIT:
2    Q   Did you have occasion to read any news
3  stories or see any news stories on the television that
4  pertained to Shirley Tabb?
5       MR. BRUCKHEIM: You can answer.
6       THE WITNESS: Yes.
7  BY MR. CONDIT:
8    Q   And about how many news stories do you think
9  you either read or saw on the television?
10       MR. BRUCKHEIM: You can answer.
11       THE WITNESS: Maybe two.
12 BY MR. CONDIT:
13    Q   And during what time period did you observe
14 these print or video news clips?
15    A   I would say it was September of '05.
16       MR. CONDIT: Let me show you the next
17    exhibit.
18       (Exhibit 6 was marked for identification and
19    attached to the deposition transcript.)
20 BY MR. CONDIT:
21    Q   Ms. Merene, you've been handed what's been
22 marked as Exhibit 6. This is a news story purportedly

79

1  from WSA 9 website. Would you take a look at it and
2  tell me if you've seen it before.
3       (Judge Facciola and his clerk enter.)
4       THE COURT: Good afternoon. What's up?
5       MR. CONDIT: We have several items in
6    contention that require your services,
7    unfortunately, and our court reporter has been
8    kind enough to mark those areas, and what I would
9    recommend, if Your Honor is amenable, is that the
10    court reporter go to the marked areas and read at
11    least the relevant part of the dialogue, and
12    then, if we need to argue further, we can, or you
13    may have enough to make a ruling, and we can go
14    from there.
15       THE COURT: Okay.
16       MR. BRUCKHEIM: Some of them I think we
17    resolved, at least some of the first ones.
18       MR. CONDIT: Perhaps, but I don't recall, so
19    we'll tell Your Honor if it's off the table or
20    not.
21       THE COURT: Please.
22       MR. CONDIT: If you could go back to the

80

1  first one.
2       (Whereupon, reporter reads requested
3    material, Page 28, Line 22, through Page 29, Line
4    6.)
5       (Discussion off the record.)
6       MR. CONDIT: Read the next one.
7       (Whereupon, reporter reads requested
8    material, Page 31, Lines 10-15.)
9       MR. BRUCKHEIM: That's been solved, because
10    she did testify about that.
11       MR. CONDIT: Read the next one.
12       (Whereupon, reporter reads requested
13    material, Page 48, Lines 12-20.)
14       THE COURT: Is that still a problem?
15       MR. CONDIT: No. Read the next one.
16       (Whereupon, reporter reads requested
17    material, Page 63, Lines 4-10.)
18       THE COURT: It's overruled. Answer the
19    question.
20       THE WITNESS: What did I review?
21 BY MR. CONDIT:
22    Q   Yes.

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

81

1     A   I know I reviewed a TV interview of
2   Ms. Tabb. I don't remember the channel. And I know I
3   reviewed some parts of her personnel file. That's all
4   that I recall.
5     Q   Do you recall whether or not you reviewed
6   more than those two items or categories of items that
7   you just identified?
8     A   I don't recall.
9     Q   When you say you reviewed parts of
10  Ms. Tabb's personnel file, what parts did you review?
11    A   I don't recall.
12    Q   Do you recall anything about the content of
13  those parts of the personnel file?
14    A   Regarding performance and family leave
15  status.
16    Q   Did you make any recommendations based upon
17  the review of the TV interview that you saw with
18  respect to any personnel action that might be taken
19  against Ms. Tabb?
20        THE COURT: Answer yes or no.
21        THE WITNESS: Yes.
22

82

1   BY MR. CONDIT:
2     Q   To whom did you make a recommendation?
3     A   I guess I'd have to qualify that and say I'm
4   not sure about everyone I advise, but I know it
5   involved Brenda Donald Walker and Ronnie Charles.
6     Q   Did Ms. Walker or Mr. Charles follow your
7   advice?
8         MR. BRUCKHEIM: Objection.
9         THE COURT: Sustained.
10        MR. CONDIT: All right. If we could go on
11  to the next item, please. Thank you.
12        (Whereupon, reporter reads requested
13  material, Page 72, Line 18, through Page 73, Line
14  15.)
15        THE COURT: Answer the question yes or no,
16  please.
17        THE WITNESS: Would you repeat some of that.
18        MR. CONDIT: I can facilitate this by
19  showing the witness the transcript excerpt if you
20  would have no objection to that.
21        MR. BRUCKHEIM: I would have no objection to
22  that.

83

1         MR. CONDIT: For the record, I'm going to
2   show the witness the excerpt of the transcript of
3   Brenda Donald Walker.
4         THE WITNESS: I'm sorry. I'd rather it just
5   be read by the court reporter so it's clear what
6   I'm hearing as opposed to me reading. I'm sorry.
7         MR. CONDIT: All right.
8         (Whereupon, reporter reads requested
9   material, Page 72, Line 18, through Page 73, Line
10  15.)
11        THE WITNESS: Yes.
12  BY MR. CONDIT:
13    Q   Did you have just one meeting or more than
14  one meeting during that time period regarding this
15  subject that was just read to you by the court
16  reporter?
17    A   I don't recall if there was more than one
18  meeting.
19        MR. CONDIT: Okay, let's go on to the next
20  item, please.
21        (Whereupon, reporter reads requested
22  material, Page 75, Line 9, to Page 76, Line 6.)

84

1         THE COURT: Objection overruled. Answer yes
2   or no.
3         THE WITNESS: I don't recall.
4   BY MR. CONDIT:
5     Q   Is there any documentation or information
6   that you could review that would refresh your
7   recollection on this issue?
8     A   Possibly. I don't know.
9         THE COURT: All right. I've got to go take
10  these Grand Jury returns.
11        MR. CONDIT: We don't have any other places,
12  Your Honor.
13        (Judge Facciola and his clerk exit.)
14  BY MR. CONDIT:
15    Q   I want to draw your attention, Ms. Merene,
16  back to the exhibit that is the summary removal letter
17  of October 3, 2005. Would you identify the exhibit,
18  please.
19    A   Exhibit 2, Notice of Summary Removal?
20    Q   Yes, and my question is -- and you can take
21  a moment to review the document if you need to --
22  whether or not you were involved in confirming any of

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

22 (Pages 85 to 88)

---

85

1  the facts alleged in this document?
2       MR. BRUCKHEIM:  If you know, just answer yes
3  or no.
4       THE WITNESS:  What do you mean by
5  "confirming any of the facts"?
6  BY MR. CONDIT:
7    Q   Did you establish that there was information
8  that more likely supported the allegation than not?
9    A   Yes.
10   Q   And which items reflected in the October 3,
11  2005 letter were you involved in confirming the
12  factual basis?
13   A   I don't recall.
14   Q   Then how do you know you were involved in
15  confirming any of the facts in the document?
16   A   I know I reviewed things, and so I saw
17  facts, but I cannot tell you which ones they were, and
18  I think that's attorney/client privilege or work
19  product. I mean . . .
20      MR. BRUCKHEIM:  Can you read back the last
21  two questions and answers, please.
22      THE REPORTER:  Sure.

---

86

1       (Whereupon, reporter reads requested
2       material, Page 85, Lines 10-19.)
3  BY MR. CONDIT:
4    Q   Aside from whatever role you had in
5  confirming the factual bases alleged for Ms. Tabb's
6  removal, do you know whether anyone else was involved
7  in confirming the factual bases for Ms. Tabb's
8  removal?
9    A   I'm sure people in the HR Department.
10   Q   Do you know that from personal knowledge, or
11  are you speculating?
12   A   Well, I guess that's your call, but since
13  Personnel provided me with the information, I would
14  think that someone there did, but . . .
15   Q   And the information that Personnel provided
16  you -- I assume from your previous testimony -- was a
17  clip from a TV interview with Ms. Tabb and parts of
18  Ms. Tabb's personnel file regarding performance and
19  family leave status; is that right?
20   A   Yes.
21   Q   So to the extent that there are issues other
22  than those stated in Exhibit 3, the October 3rd, 2005

---

87

1  letter --
2       MR. BRUCKHEIM:  Exhibit 2, you mean?
3       MR. CONDIT:  Exhibit 2. I'm sorry.
4  BY MR. CONDIT:
5    Q   To the extent that there are facts other
6  than those in Exhibit 2, the October 3, 2005 letter,
7  would it be correct to say that you did not confirm
8  those facts?
9    A   I can't say categorically.  No, I can't say
10  that. I don't recall.
11   Q   Did you review information regarding
12  Ms. Tabb's family medical leave status to determine
13  whether or not she had a legitimate basis to be on
14  family medical leave?
15      MR. BRUCKHEIM:  Just answer yes or no.
16      THE WITNESS:  I don't recall.
17  BY MR. CONDIT:
18   Q   Is there anything that would refresh your
19  recollection on that issue?
20   A   I don't, I don't know.
21   Q   Did you review this October 3, 2005 letter
22  before it went out to Ms. Tabb?

---

88

1    A   I told you I don't recall.
2    Q   Let me ask you a few specific questions
3  about the document, Exhibit 2. I'll draw your
4  attention, please, to the first page, the second
5  paragraph. Do you see that?
6    A   Yes.
7    Q   It says, "In March 2005 you used the CFSA
8  e-mail system to approach another government agency
9  about an unauthorized campaign to raise awareness
10  about child abuse and neglect and to promote
11  implementation of specific projects, without notifying
12  or obtaining prior approval from your supervisor.  You
13  again mentioned the unauthorized campaign at an
14  executive staff meeting.  As a result, you were
15  reprimanded."
16      Do you see that paragraph?
17   A   I do.
18   Q   Did you investigate any of the facts
19  associated with that paragraph, any of the statements
20  that are made in that paragraph?
21   A   I don't recall.
22   Q   Do you know whether or not the statements

---

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

23 (Pages 89 to 92)

89

1  made in that paragraph would constitute an adequate
2  basis for summary removal in and of themselves?
3      MR. BRUCKHEIM: Objection. I'm not going to
4  have her answer that question.
5      MR. CONDIT: And your basis is?
6      MR. BRUCKHEIM: It's privileged. It's work
7  product. You're asking her does that constitute
8  an adequate basis for removal. I mean why are
9  you asking her if she thinks it has an adequate
10  basis? She's not a 30(b)(6) witness.
11      MR. CONDIT: She's the legal person that was
12  involved in evaluating the situation with respect
13  to Ms. Tabb's personnel action.
14      MR. BRUCKHEIM: And it's relating to advice
15  that she may have given, that she may have
16  provided.
17      MR. CONDIT: No, I'm not asking her about
18  what advice she gave. I'm asking her if, based
19  on her expertise in evaluating personnel matters,
20  if that information provides an adequate basis
21  for summary removal.
22      MR. BRUCKHEIM: No. She's not an expert.

90

1      I'm not having her answer that question.
2      MR. CONDIT: So your basis, just to be clear
3  on the record, is that Ms. Merene is not an
4  expert?
5      MR. BRUCKHEIM: That's one of the many
6  bases, but the question is improper. I'm not
7  having her answer the question. We can have the
8  judge come in.
9      MR. CONDIT: Can we mark this part of the
10  deposition, please.
11      THE REPORTER: Yes.
12  BY MR. CONDIT:
13      Q   Now, turning your attention back to Exhibit
14  2 and the last paragraph on Page 1, it says, in part,
15  "On or about September 19, 2005, you misrepresented
16  agency practice to the media; violated CFSA
17  confidentiality laws in showing the image of a child
18  in CFSA's custody and disclosing detailed personal
19  information about why the child was in CFSA's
20  custody."
21      Do you see that part of the paragraph?
22      **A   I see it.**

91

1      Q   Were you involved in confirming any of those
2  allegations that I've just read to you?
3      **A   I don't recall if I was involved in**
4  **confirming that.**
5      Q   Do you know the basis for those allegations?
6      **A   I saw the media clip, yes.**
7      Q   And by "media clip" you are referring to
8  what?
9      **A   What I spoke of earlier, whatever the**
10  **commercial or interview was on the news.**
11      Q   So this would have been an interview with
12  Ms. Tabb --
13      **A   Yes.**
14      Q   -- on a television news program?
15      **A   Yes.**
16      Q   And this would have been around the
17  September 20th time period, 2005?
18      **A   Around that time, yes.**
19      Q   All right. What was it that Ms. Tabb did
20  that purportedly violated CFSA confidentiality laws?
21      MR. BRUCKHEIM: I'm not going to have her
22  answer the question, for the same reason as

92

1  before.
2      MR. CONDIT: What's the legal basis?
3      MR. BRUCKHEIM: Privilege. She's not
4  testifying as a 30(b)(6) witness, nor is she
5  testifying as an expert. You're asking her to
6  confirm the bases of what's in a letter that she
7  has not confirmed that she has written or even
8  took part in drafting.
9      MR. CONDIT: But the record thus far
10  reflects that Ms. Merene is the only legal person
11  that was involved in this matter. The testimony
12  of the other witnesses indicates that they don't
13  know the answer to this question, that they
14  relied on someone else. So this becomes a
15  circular game where we're chasing our tail and
16  not getting the answer to what the basis is for
17  these representations in the document that
18  results in my client's termination.
19      MR. BRUCKHEIM: Yeah, if you can't get the
20  answers from the witnesses, you're not going to
21  get the answer from the attorney who's only going
22  to be able to testify about what the witnesses

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

93

1  may have told the attorney.
2      MR. CONDIT:  No, but that wasn't my question
3  to Ms. Merene.  My question was her knowledge and
4  understanding.
5      MR. BRUCKHEIM:  I'm not, I'm not having
6  her -- maybe we should get the judge in here now,
7  because if you're going to ask her these types of
8  questions about every aspect of this letter, then
9  I want to get a ruling, because I think that's
10  excessive and it's unnecessary, asking her to
11  confirm the basis of what happened.  You've
12  deposed every witness who was involved in this
13  process.  Their testimony is on record and it is
14  what it is.  Here we have a witness who was not
15  involved aside from giving legal advice.
16      MR. CONDIT:  Okay.  Well, let me just get a
17  few more of these on the record, and then we'll
18  have the judge rule on each of them.
19      MR. BRUCKHEIM:  Why don't we get the judge
20  now we that we don't waste time unnecessarily.
21      MR. CONDIT:  Because I want the record to be
22  clear, and I don't want to curtail my ability to

94

1  establish what's been provided and what's not
2  been provided in the way of the bases that the
3  Agency claims it terminated my client.
4      MR. BRUCKHEIM:  The questions are the same
5  for each paragraph.  I don't want to spend
6  another ten or 15 minutes getting to the same
7  point, getting the same objection where I'm going
8  to tell her not to answer.
9      MR. CONDIT:  Well, that's fine, but I want
10  to do that on the record, and so then we'll have
11  a clean record of exactly what was asked, and the
12  judge can then make a judgment on each one.
13      MR. BRUCKHEIM:  I'd like to go off the
14  record and get the judge now.  I want to know now
15  if this is going to be permissible.  If he
16  sustains the objection initially, the record will
17  be set and we'll have to move on.  If he
18  overrules the objection, then you'll ask the
19  questions and she will answer, but I'd like to
20  know now.  I don't want to waste time.
21      MR. CONDIT:  Okay.  I have one different
22  kind of question from this document that I'd like

95

1  to ask and get on the record before we get the
2  judge, and then if you object to that, we can
3  have the subject area covered for this document.
4  Is that acceptable?
5      MR. BRUCKHEIM:  Yes.
6  BY MR. CONDIT:
7      Q   Let me draw your attention, please, back to
8  Exhibit 2, and now Page 2 of the document, second full
9  paragraph.  In that paragraph, which starts, by the
10  way, "your violation of supervisory instructions."  Do
11  you see that?
12      A   I do.
13      Q   At the end of that sentence it says
14  "threatens the integrity of government operations."
15  Do you see that term?
16      A   Yes.
17      Q   Do you have an understanding of personnel
18  matters that informs you of what it means to threaten
19  the integrity of government operations?
20      A   Yes.
21      Q   What is your understanding of that term?
22      A   It has to be in a particular context.  I

96

1  can't just talk about it generically.
2      Q   Is there some guidance or information that
3  informs you about how to apply that term "threatens
4  the integrity of government operations"?
5      A   Yes.
6      Q   And what is it?
7      A   I would say the D.C. personnel regulations.
8      Q   And do those personnel regulations provide
9  some explanation of that terminology?
10      A   I believe they do.
11      MR. CONDIT:  One second.  I believe I have
12  the relevant sections provided to us.
13      Let's mark the next exhibit, please.
14      (Exhibit 7 was marked for identification and
15  attached to the deposition transcript.)
16  BY MR. CONDIT:
17      Q   Ms. Merene, I'm going to show you what's
18  been marked as Exhibit 7.  It's a two-page document,
19  titled on the top, "1616, Summary Removal:  General
20  Discipline."  Do you see the document before you?
21      A   I do.
22      Q   This is a document that was provided to

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

97

1  Ms. Tabb as part of the Agency's initial disclosures.
2  If you could review the document and tell me if this
3  is the part of the District's regulation that informs
4  you on the topic we were just discussing.
5      **A   Yes.**
6      Q   And where in the document, Exhibit 7, is
7  there any guidance or explanation with respect to the
8  application of the terminology, "threatens the
9  integrity of government operations"?
10     MR. BRUCKHEIM: Objection. The document
11  speaks for itself.
12     THE WITNESS: Right.
13     MR. BRUCKHEIM: I don't understand this
14  entire line of questioning.
15  BY MR. CONDIT:
16     Q   Ms. Merene, did you understand the question?
17     **A   Not really. The document does speak for**
18  **itself. I mean are you asking me to interpret it?**
19     Q   No, I'm asking you to tell me where in the
20  document "threatens the integrity of operations" is
21  explained. You indicated in your prior testimony that
22  you believed that the municipal regulations indicated

98

1  some guidance as to implying that terminology. I've
2  presented you with the municipal regulations that I
3  believe you're referring to, and I'd like to know if
4  there's something in here that provides you that
5  guidance.
6      MR. BRUCKHEIM: And lo and behold, it says,
7  "Threatens the integrity of government
8  operations," 1616.1(a).
9      MR. CONDIT: You're not the witness, and I'm
10  not asking that question.
11  BY MR. CONDIT:
12     Q   I'm asking: Is there something in this
13  document or is there some other part of the
14  regulations -- I'm not confining it to this document,
15  but this is the document we were given. Does this
16  section of the regulations, Exhibit 8 [sic] provide
17  any guidance as to what "threatens the integrity of
18  government operations" means or how it should be
19  applied, any guidance whatsoever?
20     **A   Again I think the document speaks for**
21  **itself. It can be interpreted by different people in**
22  **different ways, but my answer is yes, I believe this**

99

1  **document does provide some guidance.**
2      Q   And would you point out, please, what
3  section of the document provides you with that
4  guidance.
5      **A   All of it.**
6      Q   Well, for example, Section 1616.4, which
7  talks about the procedures for summary removal, that
8  doesn't provide you guidance on the question of what
9  it means to threaten the integrity of government
10  operations, does it?
11     **A   Well, it provides you with options if you**
12  **believe it's occurred.**
13     Q   I understand.
14     **A   That's guidance.**
15     Q   Okay, but that's not the question. Maybe
16  I'm not being clear on the question. I'm trying to
17  understand what "threatens the integrity of government
18  operations" means.
19     MR. BRUCKHEIM: You're being argumentative.
20     MR. CONDIT: No, I'm trying to clarify for
21  the witness.
22     MR. BRUCKHEIM: Let's go off the record,

100

1  please. I'm getting the judge.
2      (Judge Facciola and his clerk enter.)
3      THE COURT: Yes?
4      MR. CONDIT: Thank you, Your Honor.
5      Madam Court Reporter, if you could go back
6  to the earliest item in our recent discussion.
7      (Whereupon, reporter reads requested
8  material, Page 88, Line 22, through Page 89 Line
9  2.)
10     MR. CONDIT: And the paragraph, Your Honor,
11  that's being referred to is the second paragraph
12  on Page 1 of this exhibit, starting "In
13  March 2005."
14     THE COURT: And the question was?
15     MR. CONDIT: The question was whether or not
16  the bases alleged in that paragraph in and of
17  themselves would be adequate for summary removal.
18     THE COURT: And the objection?
19     MR. BRUCKHEIM: I objected on a number of
20  grounds. I objected on it possibly infringing on
21  attorney/client in terms of any communications
22  that may have been provided to Ms. Merene from

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

101

1 her client with respect to these bases. I
2 objected that counsel is asking if this would be
3 a valid basis for Ms. Tabb's removal. It's not
4 for Ms. Merene to say whether or not it's valid.
5 She did not initiate the action. She's not a
6 30(b)(6) witness, nor is she testifying as an
7 expert. This is essentially just calling for her
8 opinion on whether or not it's valid, which
9 really has no basis here.
10       THE COURT: All right. In reference to the
11 attorney/client privilege, I think the question
12 can be answered without invading it. The second
13 objection, I'm going to overrule it with the
14 understanding that if the same question is asked
15 at trial, you preserved your objection.
16       Can you answer the question, ma'am? The
17 question is whether the second paragraph would be
18 sufficient grounds by itself for Ms. Tabb's
19 summary removal.
20       THE WITNESS: My opinion as I sit here today
21 would be no.
22       MR. CONDIT: All right. Let's go to the

102

1 next item.
2       (Whereupon, reporter reads requested
3 material, Page 91, Lines 19 and 20.)
4       THE COURT: And the objection?
5       MR. BRUCKHEIM: Again it was based on the
6 same, on the same argument. Again it was calling
7 for a conclusion by a witness who doesn't have
8 any knowledge.
9       THE COURT: With the understanding that
10 you're not waiving the objection at trial, please
11 answer the question.
12       THE WITNESS: Okay. What was the question?
13 BY MR. CONDIT:
14   Q   The question was: What did -- and this is
15 referring to Paragraph 4, the last paragraph on Page 1
16 of the exhibit. The question was: What was it that
17 Ms. Tabb did that violated CFSA confidentiality laws?
18   **A   I believe it's what's stated there in the**
19 **letter, showing the image of a child in CFSA's custody**
20 **and disclosing detailed personal information about the**
21 **child, about why the child was in CFSA's custody.**
22   Q   Did you see any evidence indicating that an

103

1 identifiable image of a child had been shown to the
2 news media?
3       MR. BRUCKHEIM: Objection.
4       THE COURT: Nature of the objection?
5       MR. BRUCKHEIM: Attorney/client privilege.
6       THE COURT: Overruled.
7       THE WITNESS: I don't recall.
8 BY MR. CONDIT:
9   Q   Is there anything that would refresh your
10 recollection on that point?
11   **A   Probably if I saw the clip again.**
12   Q   Are you referring to the news clip?
13   **A   The news interview, right. I don't recall**
14 **it in detail, that much detail.**
15   Q   Now, the paragraph also refers to Ms. Tabb
16 allegedly disclosing detailed personal information
17 about why the child was in CFSA's custody. Did you
18 see any evidence supporting that allegation?
19   **A   I don't recall.**
20   Q   Do you know of anything that would refresh
21 your recollection on that point?
22   **A   Again if I were to see the interview, the**

104

1 television interview again.
2       MR. CONDIT: That covers that item if we can
3 move on to the next one, please.
4       THE REPORTER: Those were the only two.
5       MR. CONDIT: We did have a question on --
6 maybe we didn't mark it -- on -- well, let me
7 just ask this question while you're here, Your
8 Honor, and then we can resolve it.
9 BY MR. CONDIT:
10   Q   Drawing your attention, please, to the
11 exhibit, Page 2, and again this is the -- do you have
12 the exhibit?
13       MR. BRUCKHEIM: We have it.
14 BY MR. CONDIT:
15   Q   Exhibit, Page 2, second paragraph from the
16 top, starts with, "Your violation of supervisory
17 instructions." Do you see that?
18   **A   Yes.**
19   Q   And that particular sentence ends with
20 "threatens the integrity of government operations."
21 Do you see that?
22   **A   Yes.**

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

27 (Pages 105 to 108)

105

1    Q    And what is your understanding of how the
2  term "threatens the integrity of government
3  operations" is implied in personnel matters for CFSA?
4          MR. BRUCKHEIM:  Objection.
5          You can answer.
6          THE WITNESS:  I'm not sure what your
7      question is.
8  BY MR. CONDIT:
9      Q    Is there any guidance or information that
10  one could review to understand how the term "threatens
11  the integrity of government operations" is applied in
12  personnel matters at CFSA.
13      **A    As I said before, the D.C. personnel**
14  **regulations.**
15      Q    And we looked at those regulations, correct?
16      **A    We looked at the ones you gave me,**
17  **Exhibit 7.**
18      Q    And are there regulations other than
19  Exhibit 7 that would address the question of how to
20  apply or interpret the term "threatens the integrity
21  of government operations"?
22      **A    There may be.**

106

1      Q    Do you know specifically that there are as
2  you sit here today?
3      **A    No.**
4      Q    Is there anything in Exhibit 7 that would
5  inform us as to what "threatens the integrity of
6  government operations" means or how that phrase can be
7  applied with respect to personnel matters at CFSA?
8          MR. BRUCKHEIM:  Objection.
9          You can answer.
10          THE COURT:  Overruled.
11          THE WITNESS:  Yes.
12  BY MR. CONDIT:
13      Q    And could you identify on the exhibit,
14  please, what would provide you with that guidance or
15  interpretation.
16      **A    I think the first section, 1616.1(a) and**
17  **also I think 1616.2, which refers you to 1616.1.**
18      Q    Okay.  So just to be clear, 1616.1(a) that
19  you referred to simply repeats the phrase, "threatens
20  the integrity of government operations," correct?
21      **A    Correct.**
22      Q    So there is no -- in that particular section

107

1  of this regulation, there is no interpretive guidance
2  there; am I right?
3          MR. BRUCKHEIM:  Objection.
4          You can answer.
5          THE WITNESS:  Interpreted?  No.
6  BY MR. CONDIT:
7      Q    Then you referred to Section 1616.2,
8  correct?
9      **A    Correct.**
10      Q    And what is the interpretive guidance that
11  would help us understand what "threatens the integrity
12  of government operations" means?
13      **A    I believe the reference to other sections,**
14  **1603 and 1608.**
15      Q    Okay.  Are there any other sections of this
16  particular regulation that we see as Exhibit 7 that
17  would inform us as to what the term "threatens the
18  integrity of government operations" means or how it
19  may be applied with respect to personnel matters at
20  CFSA?
21          MR. BRUCKHEIM:  Objection; the document
22      speaks for itself.

108

1          You can answer.
2          THE WITNESS:  Not that I can see.
3          MR. CONDIT:  And I believe we don't have any
4      other items tagged at this time.
5          THE REPORTER:  Right.
6          MR. CONDIT:  I believe we have sufficient
7      rulings to finish this line, and I believe we are
8      ten or 15 minutes from being completed with the
9      deposition.
10          THE COURT:  Thank you.
11          (Judge Facciola and his clerk exit.)
12  BY MR. CONDIT:
13      Q    So let's focus on Exhibit 2 and address some
14  of the other issues that I wanted to address.  On
15  Page 1 of the exhibit -- and again this is the
16  October 3, 2005 letter -- last paragraph, it says,
17  "Again, you failed to obtain permission from your
18  supervisor to disseminate information to the media
19  which constitutes malfeasance and insubordination as
20  you had been admonished for similar conduct earlier
21  this year."
22          Do you see that statement?

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

28 (Pages 109 to 112)

109

1    **A    I do.**
2    Q    Do you know of any facts that confirm or
3    support that statement?
4    **A    As I sit here today, no.**
5    Q    Are there any laws, regulations or policies
6    that prohibit a CFSA employee, who is on their own
7    time, from communicating with the media?
8        MR. BRUCKHEIM:  Objection.
9        You can answer.
10       THE WITNESS:  I don't know.
11   BY MR. CONDIT:
12   Q    Do you know whether or not there were any
13   laws, rules or policies at the time of this action --
14   October 3, 2005 -- that were considered or evaluated
15   in order to support the statement that we've reviewed
16   on the last paragraph of Page 1?
17   **A    I'm sorry.  That was a very long question.**
18   Q    Okay.  I'll try to again.
19   **A    I'm getting tired.**
20   Q    I understand and I apologize for that.
21       At the time, October 3, 2005, do you know if
22   there were any laws, regulations or policies that were

110

1    reviewed or considered with respect to the personnel
2    action being taken against Ms. Tabb on the issue of
3    her interaction with the media?
4    **A    The CFSA confidentiality laws.**
5    Q    Anything else?
6    **A    I don't recall.  That's just what comes to**
7    **mind right now.**
8    Q    All right, and drawing your attention to
9    Page 2 of the exhibit and the very first paragraph on
10   that page, it says, "You have been on Family Medical
11   Leave since August 18, 2005, based on a claim that you
12   are suffering from a serious medical condition which
13   prevents you from working.  Yet you were able to
14   coordinate a photo of a child, an audiotape of a
15   coworker, and coordinate interviews with the media
16   during this time.  CFSA considers such actions an
17   abuse of Family Medical Leave."
18       Do you see that?
19   **A    Yes.**
20   Q    Were you involved at all in assessing
21   whether or not Ms. Tabb had violated policies or laws
22   or regulations concerning Family Medical Leave?

111

1        MR. BRUCKHEIM:  Objection.
2        You can answer but only as yes or no, if you
3    recall.
4        THE WITNESS:  Yes.
5    BY MR. CONDIT:
6    Q    What evidence or information did you review
7    on the issue of Ms. Tabb's alleged violation of Family
8    Medical Leave policies or standards?
9        MR. BRUCKHEIM:  Objection.
10       You can answer.
11       THE WITNESS:  Again her personnel file, but
12   other than that, I don't recall.
13   BY MR. CONDIT:
14   Q    This particular paragraph that I've
15   referenced to you indicates that an audiotape of a
16   coworker was prepared in some way.  Do you recall
17   whether or not you listened to an audiotape of a
18   coworker that pertained to Ms. Tabb's personnel
19   matters?
20   **A    I don't recall.**
21   Q    And just so the record is clear, with
22   respect to the personnel record of Ms. Tabb that you

112

1    reviewed, did you review it to determine whether or
2    not Ms. Tabb had submitted the appropriate paperwork
3    and gotten approved for Family Medical Leave?
4    **A    I don't recall.**
5    Q    When you referred in your testimony a short
6    time ago to confidentiality laws that may have been
7    violated by Ms. Tabb, do you have in mind what
8    confidentiality laws you're referring to?
9    **A    You mean the cite, the code cite?**
10   Q    Well, either the code cite or the content,
11   paraphrased or recalled as best you can.
12   **A    No, I don't feel comfortable paraphrasing,**
13   **because I haven't thought about it in a couple of**
14   **years.**
15   Q    So you don't know as you sit here today?
16   **A    No.**
17   Q    Drawing your attention back to the exhibit
18   at Page 2 and the second paragraph, it refers at the
19   top of that paragraph -- or it's actually a
20   sentence -- to, quote, "your violation of supervisory
21   instructions."  Do you see that?
22   **A    Yes.**

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

113

1    Q   Do you know what supervisory instructions
2  Ms. Tabb was allegedly violating?
3    **A   As I sit here today?**
4    Q   Yes.
5    **A   No.**
6    Q   Do you know what information could be
7  consulted to determine what supervisory instructions
8  were being referred to?
9    **A   What could be consulted?  No.**
10   Q   In that same paragraph it refers to Ms. Tabb
11 engaging in "disruptive behavior."  Do you know what
12 is being referred to there as the disruptive behavior?
13   **A   No.**
14      MR. CONDIT:  Show you what I'll mark as the
15   next exhibit.
16      (Exhibit 8 was marked for identification and
17      attached to the deposition transcript.)
18 BY MR. CONDIT:
19   Q   Ms. Merene, you've been handed what has been
20 marked as Deposition Exhibit 8.  This is a three-page
21 document, a WUSA print story, dated September 20,
22 2005, at looks like 7:31 and 11 seconds P.M.  I'd like

114

1  you to take a look at it and tell me if you've seen
2  this document before today.
3       And while you're thinking about it, I'll
4  note for the record that this is a document provided
5  by the Agency in its initial disclosures.
6    **A   I don't recall if I've seen it or not.**
7    Q   Do you know whose handwriting it is that we
8  see on the first page of this exhibit, Exhibit 8?
9    **A   No.**
10   Q   Were you involved at all in compiling any
11 documentary or other information that was supposed to
12 support the Agency's basis for its personnel action
13 against Ms. Tabb?
14   **A   No.**
15   Q   Do you know who at the time was responsible,
16 if anyone, for that collection of evidence or
17 information?
18   **A   Probably would have been Deborah Wilson, but
19   I'm not sure about that.**
20      MR. CONDIT:  All right.  Let's go off the
21   record for a minute.  I think we're about done.
22      (Whereupon, a short recess was taken.)

115

1  BY MR. CONDIT:
2    Q   Just a couple more questions, ma'am.  I know
3  it's been a long afternoon.
4       Are you familiar with the term "employee
5  relations file"?
6    **A   No.**
7    Q   When you referred in your testimony to
8  "personnel file," what does that mean as you
9  understand it?
10   **A   The file that contains the employee's
11   records.**
12   Q   Would that file include information such as
13 performance evaluations?
14   **A   Yes.**
15   Q   And did you know -- when you were involved
16 in the personnel matter concerning Shirley Tabb, did
17 you look at Ms. Tabb's or have reason to look at
18 Ms. Tabb's employment annual evaluations?
19   **A   I believe I did.**
20   Q   Were you aware during your work on issues
21 regarding Ms. Tabb's personnel matters that she had
22 disclosed her concerns to Deputy Mayor Albert?

116

1    **A   No.**
2    Q   Were you aware during the time that you were
3  working on the personnel matters concerning Ms. Tabb
4  that she disclosed her concerns to Susan Newman, the
5  Mayor's Religious Affairs Advisor?
6    **A   No.**
7       MR. CONDIT:  All right.  I don't have any
8    other questions, but Mr. Bruckheim might.
9       MR. BRUCKHEIM:  I'll just ask a couple.
10      EXAMINATION BY COUNSEL FOR DEFENDANT
11 BY MR. BRUCKHEIM:
12   Q   Ms. Merene, did you work with Shirley Tabb
13 at all during her tenure at CFSA?
14   **A   No.**
15   Q   Did you supervise her in any way?
16   **A   No.**
17   Q   Did you have any contact with her in any
18 work-related context at any time during her tenure at
19 CFSA?
20   **A   During my tenure?**
21   Q   During your tenure.
22   **A   No.**

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

117

1    Q   You had testified about Exhibit 2 with
2  respect to, I believe, the second paragraph, and I
3  believe the question was: Would the reasons provided
4  in Paragraph 2 of Exhibit 2 provide a reason for
5  Ms. Tabb's summary removal? And your answer to that
6  question was "no," and I wanted to ask some follow-up
7  on that.
8        This second paragraph provides essentially
9  one reason for her removal; is that right?
10   **A   It's not clear.**
11   Q   Was it your testimony that in and of itself
12  that paragraph, taken alone, would not justify a
13  summary removal of Ms. Tabb?
14   **A   Correct.**
15   Q   If you were to review the entire letter that
16  is Exhibit 2 and all of the reasons laid out in that
17  letter, taking everything as a whole, do you feel that
18  that would justify or would have justified Ms. Tabb's
19  summary removal?
20   **A   As I sit here today, without having more**
21  **context, I'd have to say I'm not sure. I don't know.**
22        MR. BRUCKHEIM: Thank you. I have nothing

118

1  further.
2    REDIRECT EXAMINATION BY COUNSEL FOR PLAINTIFF
3  BY MR. CONDIT:
4    Q   And when you say you would "need more
5  context" or something to that effect, what are you
6  referring to?
7    **A   I'd probably have to go back and review**
8  **everything and figure out kind of what was going on,**
9  **where we were, what these statements really are**
10  **relying on.**
11   Q   Do you recall whether or not you made a
12  recommendation to Ms. Donald or Mr. Charles that
13  Ms. Tabb should be summarily removed?
14        MR. BRUCKHEIM: I'm going to instruct her
15    not to answer that. It's attorney/client
16    privilege. To a similar question, my objection
17    was sustained by Judge Facciola.
18        MR. CONDIT: What question was that?
19        MR. BRUCKHEIM: Something very similar
20    about -- you had asked essentially did she
21    provide a recommendation, and she answered yes.
22    Was the recommendation followed? I objected, and

119

1  he sustained.
2        MR. CONDIT: Okay. Just give me a second.
3        MR. BRUCKHEIM: This is clear
4    attorney/client privilege, because the question
5    is very specific in terms of what she
6    communicated to them.
7        MR. CONDIT: Okay.
8  BY MR. CONDIT:
9    Q   So was the recommendation, Ms. Merene, that
10  you discussed earlier where you indicated that, yes,
11  there was a recommendation made, and you indicated
12  that it was made to Brenda Donald and Ronnie Charles,
13  did that recommendation have to do with whether or not
14  to terminate or summarily remove Ms. Tabb?
15        MR. BRUCKHEIM: Same objection;
16    attorney/client privilege. You're going into the
17    subject area. I think that's sustainable.
18  BY MR. CONDIT:
19    Q   But just so the record is clear, in making
20  the recommendation, you relied on the TV interview
21  that you saw a clip of and parts of the personnel file
22  which you can't recall specifically what they were at

120

1  this point in time; is that right?
2        MR. BRUCKHEIM: Objection; asked and
3    answered and beyond the scope of my questioning,
4    but you can answer.
5        THE WITNESS: Right. As I said, I may have
6    reviewed other things. I just don't recall
7    today, as I sit here today.
8  BY MR. CONDIT:
9    Q   And would there be any record anywhere of
10  what you reviewed?
11   **A   Again I don't know.**
12        MR. CONDIT: That's all I have.
13        MR. BRUCKHEIM: And I have nothing further.
14        (Signature having not been waived, the
15    deposition of DEON MERENE, ESQUIRE, was concluded
16    at 5:39 p.m.)
17
18
19
20
21
22

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

31 (Pages 121 to 124)

121

1
2
3        ACKNOWLEDGEMENT OF WITNESS
4        I, Deon Merene, Esquire, do hereby
5    acknowledge that I have read and examined the
6    foregoing testimony, and the same is a true,
7    correct and complete transcription of the
8    testimony given by me, and any corrections appear
9    on the attached Errata sheet signed by me.
10
11
12   _____    _____
13    (DATE)         (SIGNATURE)
14
15
16
17
18
19
20
21
22

122

1              E R R A T A  S H E E T
2    IN RE:  SHIRLEY TABB VS. DISTRICT OF COLUMBIA
3    RETURN BY:
4    PAGE   LINE            CORRECTION AND REASON
5    ____  ____  _____
6    ____  ____  _____
7    ____  ____  _____
8    ____  ____  _____
9    ____  ____  _____
10   ____  ____  _____
11   ____  ____  _____
12   ____  ____  _____
13   ____  ____  _____
14   ____  ____  _____
15   ____  ____  _____
16   ____  ____  _____
17   ____  ____  _____
18   ____  ____  _____
19   ____  ____  _____
20   ____  ____  _____
21   _____  _____
22    (DATE)        (SIGNATURE)

123

1              E R R A T A  S H E E T
2    IN RE:  SHIRLEY TABB VS. DISTRICT OF COLUMBIA
3    RETURN BY:
4    PAGE   LINE            CORRECTION AND REASON
5    ____  ____  _____
6    ____  ____  _____
7    ____  ____  _____
8    ____  ____  _____
9    ____  ____  _____
10   ____  ____  _____
11   ____  ____  _____
12   ____  ____  _____
13   ____  ____  _____
14   ____  ____  _____
15   ____  ____  _____
16   ____  ____  _____
17   ____  ____  _____
18   ____  ____  _____
19   ____  ____  _____
20   ____  ____  _____
21   _____  _____
22    (DATE)        (SIGNATURE)

124

1
2
3    CERTIFICATE OF SHORTHAND REPORTER -- NOTARY PUBLIC
4        I, Laurie Bangart-Smith, Registered
         Professional Reporter, the officer before whom
5    the foregoing deposition was taken, do hereby
     certify that the foregoing transcript is a true
6    and correct record of the testimony given; that
     said testimony was taken by me stenographically
7    and thereafter reduced to typewriting under my
     supervision; and that I am neither counsel for,
8    related to, nor employed by any of the parties to
     this case and have no interest, financial or
9    otherwise, in its outcome.
10       IN WITNESS WHEREOF, I have hereunto set my
     hand and affixed my notarial seal this 29th day
11   of March, 2008.
12   My commission expires:  March 14th, 2011
13
14
15   _____
16   LAURIE BANGART-SMITH
     NOTARY PUBLIC IN AND FOR
17   THE DISTRICT OF COLUMBIA
18
19
20
21
22

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

125

**A**

ability 93:22
able 33:8 65:6
 92:22 110:13
absent 66:7
abuse 8:22 88:10
 110:17
accept 35:7
acceptable 95:4
access 39:17
accommodate
 23:8
acknowledge
 121:5
ACKNOWLE...
 121:3
act 64:20
Acting 20:5,6
action 1:5 23:11
 23:15 24:10
 27:13 40:16
 52:9 54:1 61:20
 62:20 63:3,20
 64:7 65:12
 66:19 71:21
 75:19 81:18
 89:13 101:5
 109:13 110:2
 114:12
actions 13:9
 22:18 23:1,12
 23:15 24:5,10
 27:2 28:9 29:2
 56:2 62:17 63:6
 63:18 77:11
 110:16
actively 7:20
activities 27:4,4
activity 11:10,12
 11:15
address 7:3 12:18
 20:15 73:9
 105:19 108:13
 108:14
addressing 70:14
adequate 89:1,8,9
 89:20 100:17
administrative

55:2
admittedly 37:10
admonished
 108:20
advice 28:20 35:8
 35:21 46:15,17
 46:20 47:10,15
 47:17,19,20,22
 48:1,4,8,18 49:6
 49:10,12,17,21
 50:2,3 52:8
 59:11,15,16,17
 60:3,8,19 61:3
 62:10,17,22
 64:21 65:14,16
 68:13 76:1,3,6
 82:7 89:14,18
 93:15
advise 9:10,13
 30:20 35:21
 82:4
advised 11:2 13:1
 17:19 28:21
 33:14,16 68:7
advising 11:9
 12:14 30:13
 31:20
advisor 28:19
 116:5
Affairs 116:5
affixed 124:10
afternoon 5:7,8
 79:4 115:3
agencies 12:1
agency 6:22 7:7
 7:11 9:5,8,10,13
 10:2,6,21 11:9
 12:4 19:6,13
 22:6 25:2 29:2
 29:19 40:16
 47:9 48:11,13
 48:16 51:4
 58:11 60:7 88:8
 90:16 94:3
 114:5
Agency's 4:17
 10:7 22:14 51:3
 63:5,19 97:1

114:12
ago 18:19 67:20
 112:6
agree 48:11
Albert 115:22
allegation 85:8
 103:18
allegations 91:2,5
alleged 85:1 86:5
 100:16 111:7
allegedly 103:16
 113:2
amenable 79:9
Amended 4:9
 14:8
America 32:9
and/or 23:3 72:1
annual 115:18
answer 7:13 8:3
 8:14,21 10:15
 11:15 13:8,20
 15:20 16:18
 17:9,18 18:10
 21:8,13,14
 22:21 23:16
 24:14 25:17,20
 27:14 29:5 30:4
 32:1 33:11,21
 34:3 35:3,8
 36:13 37:17,20
 38:8,9,11 40:9
 41:14,18 42:16
 43:19 46:4,8
 47:1,12 48:7,20
 49:4 52:11
 59:13 62:2 64:3
 64:18 65:7,22
 66:6 70:18
 71:10 72:13
 73:15 74:2,14
 75:10,22 76:11
 77:16,21 78:5
 78:10 80:18
 81:20 82:15
 84:1 85:2 87:15
 89:4 90:1,7
 91:22 92:13,16
 92:21 94:8,19

98:22 101:16
 102:11 105:5
 106:9 107:4
 108:1 109:9
 111:2,10 117:5
 118:15 120:4
answered 30:22
 52:11 67:20
 101:12 118:21
 120:3
answering 17:1
 33:1 35:15,16
answers 85:21
 92:20
anytime 23:10
apart 37:13
apologize 109:20
apparently 77:4
appear 34:18
 121:8
appears 15:1,13
 39:10
application 97:8
applied 63:18
 98:19 105:11
 106:7 107:19
apply 96:3 105:20
appointed 48:14
approach 88:8
appropriate
 112:2
approval 88:12
approved 112:3
approximately
 19:21
area 95:3 119:17
areas 9:12,16,22
 10:1,1 11:12,14
 11:19 16:1
 74:12 79:8,10
argue 79:12
argument 102:6
argumentative
 99:19
article 4:17,19
aside 86:4 93:15
asked 29:21 48:2
 48:3 49:13

52:10 59:4 68:6
 94:11 101:14
 118:20 120:2
asking 13:2 16:1
 17:8,11,18
 29:12,13,17,20
 32:11,22 49:5
 49:14 67:12
 74:19 76:9 89:7
 89:9,17,18 92:5
 93:10 97:18,19
 98:10,12 101:2
asks 76:3
aspect 65:12 93:8
assessing 110:20
assistant 3:11
 6:13,15,19,21
 7:6,10 9:3,7
 10:5,20 12:3
 19:5,12 55:2
associated 13:14
 38:4 88:19
assume 86:16
attached 4:7 14:4
 31:8 50:15
 51:13 76:21
 78:19 96:15
 113:17 121:9
attention 18:1
 34:10 39:22
 53:9 56:13
 58:14 61:5 72:5
 84:15 88:4
 90:13 95:7
 104:10 110:8
 112:17
attorney 3:11,12
 5:16,19 6:13,15
 6:19 7:16 31:19
 48:10 55:14,22
 56:21 60:12
 92:21 93:1
attorneys 57:5,11
 57:15
attorney/client
 32:2,15 63:12
 65:1 77:18
 85:18 100:21

101:11 103:5
118:15 119:4,16
**audiotape** 110:14
111:15,17
**August** 110:11
**author** 53:14 62:9
**Avenue** 2:6 5:22
**avoid** 49:14
**aware** 23:11,14
32:9 51:7 62:4
69:3,7 73:8
115:20 116:2
**awareness** 88:9

**B**

**B** 4:6
**back** 34:8,11
64:12 67:15
75:14,17 79:22
84:16 85:20
90:13 95:7
100:5 112:17
118:7
**background**
13:10
**Bangart-Smith**
1:22 2:18 124:4
124:16
**based** 28:2 33:11
46:4 65:19,22
81:16 89:18
102:5 110:11
**bases** 64:7 65:11
86:5,7 90:6 92:6
94:2 100:16
101:1
**basis** 15:21 49:8,9
50:8 77:15
85:12 87:13
89:2,5,8,10,20
90:2 91:5 92:2
92:16 93:11
101:3,9 114:12
**Bates** 14:12 15:1
15:10 53:13
54:8 56:15
58:15 61:6
**BEHALF** 3:2,9

**behavior** 113:11
113:12
**behold** 98:6
**believe** 7:3,8
18:11 20:7
40:21 45:8
51:10,22 52:1,5
52:17 53:2,11
54:12 55:14,20
58:8,12 96:10
96:11 98:3,22
99:12 102:18
107:13 108:3,6
108:7 115:19
117:2,3
**believed** 59:15
97:22
**bell** 56:19
**beneficial** 37:13
**best** 112:11
**beyond** 120:3
**bit** 11:6 65:6
**bookmark** 34:4
**bottom** 40:1
**Brenda** 31:12
40:2,5,21,22
41:11 42:1,13
42:21 43:2,5,7
44:3,11 51:17
71:6 82:5 83:3
119:12
**broad** 9:15 11:10
12:22 47:3
**brought** 31:18
72:5
**Bruckheim** 3:10
4:4 7:12 8:2,13
8:20 9:14 10:14
10:22 11:14
12:20 13:6,19
14:11,16,21
15:5,19,22
16:13 17:3,17
18:9 21:7,14
22:20 23:16
24:11,14 25:12
26:6 27:14
28:11 29:4,8,15

30:3,7 31:16
32:5,11,21 34:2
34:14,21 35:1,5
35:13,18 36:3
36:12,21 37:8
38:9 40:8 41:13
41:17 42:5,15
43:18 46:3,9,22
47:11,16,21
48:5,19 49:7,9
49:22 52:10
57:1,6 58:22
59:7,20 60:9
62:1 63:9 64:9
64:17 65:4,21
66:6 68:5,17,19
71:10,11,13,17
72:13 73:14,18
74:6 75:1,21
76:5,10 77:12
77:17 78:5,10
79:16 80:9 82:8
82:21 85:2,20
87:2,15 89:3,6
89:14,22 90:5
91:21 92:3,19
93:5,19 94:4,13
95:5 97:10,13
98:6 99:19,22
100:19 102:5
103:3,5 104:13
105:4 106:8
107:3,21 109:8
111:1,9 116:8,9
116:11 117:22
118:14,19 119:3
119:15 120:2,13
**building** 21:6,17
21:21

**C**

**C** 3:1 5:1
**California** 7:19
7:20
**call** 15:22 29:6
44:15 45:20
55:21 60:5
64:20 67:1

86:12
**called** 12:5
**calling** 47:12
64:10 101:7
102:6
**Calls** 63:10
**campaign** 88:9,13
**can't** 31:20 37:3
49:18 55:8 58:1
58:2 59:13 87:9
87:9 92:19 96:1
119:22
**capacities** 10:18
**capacity** 10:12
31:19
**care** 21:5
**careful** 11:3
**carefully** 36:18
**Carlotta** 54:22
55:2
**case** 13:3,5,14
19:2 27:9 37:3,5
38:2 54:19 56:9
68:16,20 71:2,7
124:8
**cases** 11:1 13:1
**categorically**
38:18 39:4,7
87:9
**categories** 81:6
**Cecelia** 53:16
54:15,20 55:10
**certain** 9:22 16:9
48:14
**CERTIFICATE**
124:3
**Certified** 2:19
**certify** 124:5
**cetera** 73:10,10
**CFSA** 11:13
20:12 21:4,5,5
21:22 23:11
24:18 25:7
39:14 46:21
51:4 55:11
57:16 58:7
66:13,19,22
67:2,17 74:10

88:7 90:16
91:20 102:17
105:3,12 106:7
107:20 109:6
110:4,16 116:13
116:19
**CFSA's** 90:18,19
102:19,21
103:17
**chain** 4:16 18:7
18:12 51:16
**Chambers** 2:7
**chance** 31:14
**change** 7:14
**channel** 81:2
**Charles** 18:4,5,8
18:16 41:4,5,11
43:15 44:1
50:19 51:18
72:1,10 75:12
82:5,6 118:12
119:12
**chasing** 92:15
**checks** 13:10
**chief** 55:14,20
58:7,10 60:14
60:18 61:1
**child** 6:21 7:7,11
9:4,8 10:6,20
12:4 19:5,12
29:1 48:11
88:10 90:17,19
102:19,21,21
103:1,17 110:14
**children** 21:4,16
21:21
**choose** 15:17
**circular** 92:15
**circumstance**
45:13
**circumstances**
22:10 71:20
75:14
**cite** 38:5 112:9,9
112:10
**Civil** 1:5 8:22
**claim** 110:11
**claims** 94:3

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

127

**clarification** 68:5
**clarify** 11:5 13:7
  26:7 67:15 68:8
  99:20
**clean** 94:11
**clear** 14:21 15:8
  26:8 35:3 49:3
  70:17 83:5 90:2
  93:22 99:16
  106:18 111:21
  117:10 119:3,19
**clearly** 34:17
**clerk** 3:21 55:8
  79:3 84:13
  100:2 108:11
**client** 21:10,17
  33:8 94:3 101:1
**clients** 72:21
**client's** 92:18
**clip** 86:17 91:6,7
  103:11,12
  119:21
**clips** 78:14
**close** 33:10
**code** 112:9,10
**collection** 114:16
**Columbia** 1:1,7
  2:20 7:19 8:1,9
  8:12 122:2
  123:2 124:17
**Columbia's** 14:8
**column** 58:18
**come** 75:14,17
  90:8
**comes** 34:15 38:6
  74:7 110:6
**comfortable**
  35:14 36:20
  112:12
**commercial** 91:10
**commission**
  124:12
**communicated**
  119:6
**communicating**
  46:1 109:7
**communication**
  21:11 24:12

29:11,17 32:15
33:3,7 45:19
63:12 65:1 66:8
**communications**
  25:20 29:6
  31:21 44:16
  100:21
**compiling** 114:10
**complete** 121:7
**completed** 108:8
**concerned** 17:3
  72:21
**concerning** 28:9
  41:11 44:20
  61:20 62:21
  66:3 75:19
  77:10 110:22
  115:16 116:3
**concerns** 73:1
  115:22 116:4
**concluded** 120:15
**conclusion** 47:13
  102:7
**concur** 14:18
**Condit** 3:3,4 4:3,5
  5:6 7:15 8:5,17
  9:2,18 10:17
  11:7 12:2 13:2
  13:12 14:1,5,14
  14:17 15:4,6,21
  16:6,21 17:12
  17:13,20 18:13
  21:12,18 23:6,9
  24:1,13,16 26:1
  26:10,12 27:16
  28:16 29:7,12
  29:20 30:5,8,11
  31:5,9 32:3,6,17
  33:17,20 34:7
  34:19,22 35:2,6
  35:17 36:1,7,15
  37:2,16 38:13
  40:10 41:15,20
  42:8,10,18
  43:21 46:5,7,12
  47:6,14,18 48:2
  48:9 49:1,8,13
  50:7,12,16

51:11,14 52:13
57:4,10 59:4,10
59:21 60:1,13
62:6 63:14,16
64:12,15 65:2,9
66:1,10 68:8,9
71:15,18 72:15
73:16 74:3,16
74:19 75:3 76:2
76:7,12,15 77:1
77:15 78:1,7,12
78:16,20 79:5
79:18,22 80:6
80:11,15,21
82:1,10,18 83:1
83:7,12,19 84:4
84:11,14 85:6
86:3 87:3,4,17
89:5,11,17 90:2
90:9,12 92:2,9
93:2,16,21 94:9
94:21 95:6
96:11,16 97:15
98:9,11 99:20
100:4,10,15
101:22 102:13
103:8 104:2,5,9
104:14 105:8
106:12 107:6
108:3,6,12
109:11 111:5,13
113:14,18
114:20 115:1
116:7 118:3,18
119:2,7,8,18
120:8,12
**condition** 110:12
**conduct** 108:20
**confidential**
  13:22 21:10
**confidentiality**
  11:21 90:17
  91:20 102:17
  110:4 112:6,8
**confining** 98:14
**confirm** 74:20
  87:7 92:6 93:11
  109:2

**confirmed** 92:7
**confirming** 84:22
  85:5,11,15 86:5
  86:7 91:1,4
**confused** 21:15
**connected** 18:6
**considered**
  109:14 110:1
**considers** 110:16
**constitute** 21:10
  29:16 89:1,7
**constitutes**
  108:19
**Constitution** 2:6
**consultation**
  31:19
**consulted** 113:7,9
**contact** 116:17
**contains** 115:10
**content** 59:14
  81:12 112:10
**contention** 73:22
  79:6
**contents** 17:4,5
**context** 47:4 72:7
  95:22 116:18
  117:21 118:5
**conversation** 47:8
  48:12,17 75:10
**conversations**
  74:10
**coordinate**
  110:14,15
**copy** 77:3
**correct** 28:5 35:5
  39:14 54:21
  60:15 61:16
  70:11,22 87:7
  105:15 106:20
  106:21 107:8,9
  117:14 121:7
  124:6
**CORRECTION**
  122:4 123:4
**corrections** 121:8
**correctly** 10:5
**correspondence**
  34:1

**counsel** 5:5 6:5,9
  6:21 7:6,11 9:4
  9:7 10:6,20 12:4
  14:11,19 15:9
  16:21 17:14
  19:5,12 20:5,6,8
  55:3,11 57:12
  57:16 74:10
  75:13 101:2
  116:10 118:2
  124:7
**Counsel's** 8:16,19
  72:1 75:17
**County** 8:16,16
  8:19
**couple** 12:17
  18:19 112:13
  115:2 116:9
**course** 21:9 32:14
  63:12 64:22
  77:13
**court** 1:1 2:5 79:4
  79:7,10,15,21
  80:14,18 81:20
  82:9,15 83:5,15
  84:1,9 100:3,5
  100:14,18
  101:10 102:4,9
  103:4,6 106:10
  108:10
**covered** 95:3
**covers** 104:2
**coworker** 110:15
  111:16,18
**create** 26:16
**created** 70:7,21
**current** 48:13
**curt** 28:17
**curtail** 93:22
**custody** 90:18,20
  102:19,21
  103:17
**customer** 35:16

_____
      **D**
_____
**D** 5:1
**danger** 32:1,3
**Darrell** 19:22

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

128

**date** 15:2 23:17
23:21 24:7
53:14,21 54:4
121:13 122:22
123:22
**dated** 14:13 54:8
56:16 58:16
77:5 113:21
**David** 54:11
**day** 52:14,15,16
124:10
**dealing** 25:9,10
**Deborah** 44:20
45:1,4 50:2
53:16 56:1
61:10 114:18
**December** 53:14
53:21 54:9 55:5
61:21
**decide** 17:15
**decision** 4:14 29:1
29:9 40:15 41:2
50:20 63:5 69:4
69:8
**decisions** 30:1
**decision-makers**
29:14
**declared** 17:6
**Defendant** 1:8 3:9
116:10
**Defendant's** 4:9
**define** 30:22
46:19 47:3,18
**defining** 48:8
**deliberative**
77:17
**deny** 38:18 39:4
**Deon** 1:11 2:2 5:2
5:11 53:15
120:15 121:4
**department** 5:20
6:3,9,11,15,19
25:8 72:20 86:9
**depend** 27:11
**Depending** 27:6
**depends** 21:12
30:19 47:4
**deposed** 93:12

**deposition** 1:11
2:1 4:8 14:4,7
14:10 31:8,11
37:10 50:15
51:13 71:3,7
73:20,21 75:5
76:17,21 78:19
90:10 96:15
108:9 113:17,20
120:15 124:5
**Deputy** 6:5,9
115:22
**describe** 16:3,7
17:4 47:22
**describing** 48:1
**description** 19:4
19:9
**descriptions**
13:10
**destroy** 25:4
**detail** 103:14,14
**detailed** 90:18
102:20 103:16
**details** 56:10
**determination**
63:19 65:11
**determine** 87:12
112:1 113:7
**determining** 64:7
64:20 65:15
**dialogue** 79:11
**didn't** 14:22
16:19 32:17
34:19,20 36:6
59:5 71:13
104:6
**difference** 16:16
**different** 11:17
12:1 36:1 94:21
98:21,22
**Director** 29:18
40:17,18
**disagree** 50:7
**Disciplinary** 13:9
**discipline** 4:21
75:8 96:20
**disclosed** 32:14
33:2 115:22

116:4
**disclosing** 90:18
102:20 103:16
**disclosure** 72:6
**disclosures** 97:1
114:5
**discovery** 71:2
**discuss** 72:2
75:11
**discussed** 31:18
33:15 49:12
72:18,22 73:6
75:2 119:10
**discussing** 18:3
97:4
**discussion** 34:6
74:18 80:5
100:6
**dispensing** 62:17
62:21 64:21
**dispute** 73:21
**disruptive** 113:11
113:12
**disseminate**
108:18
**District** 1:1,1,7
2:5,20 7:19,22
8:9,11 14:8
122:2 123:2
124:17
**District's** 97:3
**document** 16:3
18:1,2 19:1
31:15,17 32:7
32:12,20 33:2
34:13,18 35:4
36:11 37:2,4
39:2,5 50:22
51:20 53:13,15
53:16,19 54:9
54:13 55:5
56:15 58:15,20
58:21 59:2,12
59:18 60:3
84:21 85:1,15
88:3 92:17
94:22 95:3,8
96:18,20,22

97:2,6,10,17,20
98:13,14,15,20
99:1,3 107:21
113:21 114:2,4
**documentary**
114:11
**documentation**
84:5
**documented** 73:6
**documents** 4:10
33:13,18 54:17
62:8,9 63:21
**doesn't** 13:5 16:7
25:19 29:7
33:19 34:18
52:4 56:19 57:2
57:7 76:2 99:8
102:7
**doing** 12:14 73:9
**Donald** 20:7 21:2
31:12 40:2,5,21
41:1,11 42:1,13
42:22 43:3,5,8
44:3,11 51:17
54:12 68:21
71:7,19 72:11
72:16 73:16,18
74:1 75:7,18
82:5 83:3
118:12 119:12
**Donald's** 75:5
76:17
**don't** 9:15 10:11
10:16 16:12,15
16:22 18:17
19:10 23:2,6
24:7,15 26:5
28:17,21 30:15
35:14,15 36:20
37:13,16 38:17
39:3,12,13,20
42:3,3,3,20 45:8
45:11,15,16
49:19 51:1,10
51:22 52:1,2,5
52:16 53:2,8,8
53:20 54:5,14
54:18,20 55:12

56:10,12,22
57:17 60:4,4,11
63:1,1 64:3,3
65:15 66:9,14
67:19 69:11
70:2,5 77:7
79:18 81:2,8,11
83:17 84:3,8,11
85:13 87:10,16
87:20,20 88:1
88:21 91:3
92:12 93:19,20
93:22 94:5,20
97:13 103:7,13
103:19 108:3
109:10 110:6
111:12,20 112:4
112:12,15 114:6
116:7 117:21
120:6,11
**doors** 71:16
**downtown** 55:15
**draft** 38:15 51:8
**drafted** 34:17
36:19 38:1,19
38:22 39:10
**drafting** 35:11,22
36:10 92:8
**draw** 18:1 34:10
39:21 53:9
56:13 58:13
84:15 88:3 95:7
**drawing** 61:5
104:10 110:8
112:17
**duly** 5:3
**duties** 8:19 9:5,9
19:8
**D-E-O-N** 5:13
**D.C** 1:12 2:9 3:7
3:16 96:7
105:13

---

**E**

**E** 3:1,1 4:6 5:1,1
122:1,1,1 123:1
123:1,1
**earlier** 24:3 30:22

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

129

52:18 70:6,19
91:9 108:20
119:10
**earliest** 100:6
**early** 22:7 33:10
**effect** 118:5
**either** 36:20
41:11 55:7 78:9
112:10
**Ella** 56:11,18,20
57:2,7,8
**Emergency** 51:19
**employed** 65:18
124:8
**employee** 22:12
40:13 41:3 58:7
66:5,13 67:18
69:14,18,22
109:6 115:4
**employee's**
115:10
**employment**
55:21 115:18
**ended** 19:20 20:7
**ends** 104:19
**engaging** 113:11
**enter** 79:3 100:2
**entire** 97:14
117:15
**entry** 17:21
**Errata** 121:9
**Esquire** 1:11 2:2
3:3,10 5:2
120:15 121:4
**essentially** 101:7
117:8 118:20
**establish** 46:10
85:7 94:1
**established** 46:5
46:11 50:6
52:17 61:19
**et** 73:10,10
**evaluate** 75:8
**evaluated** 109:14
**evaluating** 89:12
89:19
**evaluations**
115:13,18

**event** 48:14
**evidence** 63:4,8
102:22 103:18
111:6 114:16
**exact** 24:7
**exactly** 28:13
37:11 94:11
**EXAM** 4:5
**examination** 4:1
4:3,4 5:5 77:14
116:10 118:2
**examined** 121:5
**examining** 77:10
**example** 47:7,10
71:6 73:3 99:6
**excerpt** 82:19
83:2
**excessive** 93:10
**excuse** 69:9
**executive** 88:14
**exhibit** 4:8,9,11
4:13,16,17,19
4:20,22 14:1,3,7
14:15 15:9
17:21 23:21
24:3 28:4 31:6,7
31:11 33:22
34:11 35:11
36:9,16 38:1,2
38:14 39:2,11
39:21 50:13,14
50:18 51:9,11
51:12,16 53:10
53:11,12 56:14
58:14,14 61:5
62:13 76:19,20
77:3,3 78:17,18
78:22 84:16,17
84:19 86:22
87:2,3,6 88:3
90:13 95:8
96:13,14,18
97:6 98:16
100:12 102:16
104:11,12,15
105:17,19 106:4
106:13 107:16
108:13,15 110:9

112:17 113:15
113:16,20 114:8
114:8 117:1,4
117:16
**exists** 39:13 46:6
46:9
**exit** 84:13 108:11
**experience** 60:17
60:20,22 61:2
66:19,21
**expert** 89:22 90:4
92:5 101:7
**expertise** 10:1
89:19
**expires** 124:12
**explained** 97:21
**explanation** 48:4
96:9 97:7
**extent** 54:3,4
86:21 87:5
**e-mail** 4:16 13:17
13:18,21 14:10
14:13,22 15:11
15:14,17 17:5,5
17:15,16 18:3,5
18:7,11,18
23:21 24:3 28:2
28:3 45:15,20
51:16,17 61:9
88:8
**e-mails** 18:5

**F**

**Facciola** 3:20
79:3 84:13
100:2 108:11
118:17
**Facciola's** 2:7
**facilitate** 82:18
**fact** 33:2 37:13
72:18
**factor** 15:3
**facts** 16:9 47:4
71:19 85:1,5,15
85:17 87:5,8
88:18 109:2
**factual** 85:12 86:5
86:7

**failed** 108:17
**failure** 48:16
**fair** 61:19 62:4
**familiar** 16:9
27:12,15 28:1
32:7,12,13,19
33:4,5,12 51:2
52:4 66:4 115:4
**family** 6:21 7:7
7:11 9:4,8 10:6
10:21 12:4 19:6
19:13 29:1
48:11 81:14
86:19 87:12,14
110:10,17,22
111:7 112:3
**far** 92:9
**February** 6:17
**feel** 35:14,15
36:20 37:12
112:12 117:17
**field** 9:16
**fifth** 20:18,19
**figure** 11:11
118:8
**file** 24:17,21 25:4
25:18 26:2,3,8,9
26:14,16,18
27:3,9 70:7,11
70:20 75:13
81:3,10,13
86:18 111:11
115:5,8,10,12
119:21
**files** 25:1,10
39:16 51:3,3
**final** 4:14 50:20
**financial** 124:8
**find** 21:20 72:2
**fine** 94:9
**finish** 108:7
**first** 5:3,12,13 6:6
14:1 19:19
22:11,17 23:14
42:5 79:17 80:1
88:4 106:16
110:9 114:8
**floor** 2:8 3:15 6:1

6:2 20:17,18,19
**focus** 108:13
**FOIA** 10:3,7,12
10:20 11:12
**follow** 27:3 82:6
**followed** 118:22
**follows** 5:4
**follow-up** 117:6
**foregoing** 121:6
124:5,5
**forum** 77:10
**forwarding** 51:19
**Foster** 51:19
**foundation** 22:20
22:22 23:5
25:12 40:8
**four** 57:17,19,20
**fourth** 3:14 6:2
20:17,17,19
**frame** 12:10
40:12
**Frank** 55:13
**frankly** 33:9
**full** 95:8
**function** 10:10
28:18
**further** 54:7
79:12 118:1
120:13

**G**

**G** 5:1
**game** 92:15
**general** 3:11,12
4:21 5:17,19 6:5
6:9,13,15,19,21
7:6,11 8:18 9:4
9:7 10:6,20 12:3
12:21 19:5,12
20:5,6,8 48:4
55:3,10,14,22
57:12,16 72:1
73:1 74:10,12
75:13,17 96:19
**generally** 11:9
26:15 47:9
74:12 77:8
**generically** 96:1

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

130

**getting** 37:1,6
48:21 59:14
65:5 92:16 94:6
94:7 100:1
109:19
**give** 12:9,16
35:21 119:2
**given** 34:16 71:7
76:9 89:15
98:15 121:8
124:6
**giving** 47:15,16
59:17,20 60:2,7
71:14 93:15
**glowing** 37:22
**go** 16:4 17:10
27:8 30:8 34:5,8
49:18 53:12
54:7 65:8 67:15
79:10,13,22
82:10 83:19
84:9 94:13
99:22 100:5
101:22 114:20
118:7
**goes** 77:17
**going** 12:20 13:19
14:6 15:22 16:2
16:4 17:4,17
21:7 28:11 29:4
29:6,9 30:3
31:16,22 33:10
34:2 35:7 36:12
38:7 40:13
41:13 42:15
46:3 47:4,9,11
47:21 48:7,15
48:19 49:1,3,11
57:7,9 58:22
62:5 63:9,13
64:9,17,17
65:21 74:14
75:1,4,10,21
76:10 77:12,20
83:1 89:3 91:21
92:20,21 93:7
94:7,15 96:17
101:13 118:8,14

119:16
**goings-on** 48:13
**good** 5:7,8 35:17
51:18 71:17
72:1,10 79:4
**Gorman** 19:22
**gotten** 112:3
**government** 8:9
8:12 88:8 95:14
95:19 96:4 97:9
98:7,18 99:9,17
104:20 105:2,11
105:21 106:6,20
107:12,18
**graduate** 8:6
**grammatically**
73:3
**Grand** 84:10
**grounds** 63:10
73:15 100:20
101:18
**guess** 9:10 11:16
16:21 30:19
36:22 47:2
59:13 62:3
71:10 82:3
86:12
**guidance** 12:5
96:2 97:7 98:1,5
98:17,19 99:1,4
99:8,14 105:9
106:14 107:1,10
**G-O-R-M-A-N**
20:2

**H**
**H** 4:6 122:1 123:1
**hand** 124:10
**handed** 51:15
77:2 78:21
113:19
**handle** 26:2
**handled** 11:1
**handwriting**
114:7
**happened** 16:10
70:20 93:11
**Harvell** 54:22

**haven't** 35:15
46:5 48:2 49:13
112:13
**Hawkins** 53:16
54:16,20 55:10
**Health** 5:20 6:4
6:10,11,16,20
25:8
**hearing** 83:6
**held** 2:4 7:1 34:6
74:18
**help** 35:1 107:11
**hereunto** 124:10
**hiring** 13:10
**hold** 7:5 41:5
**holding** 6:18
**Homes** 51:20
**Honor** 79:9,19
84:12 100:4,10
104:8
**HOSID** 3:21
**HR** 41:8 56:5,6
75:12 86:9
**Human** 41:8
**hypersensitive**
49:15
**hypothetically**
49:14

**I**
**idea** 24:22 39:12
49:10
**identifiable** 103:1
**identification**
14:3 29:15 31:7
50:14 51:12
76:20 78:18
96:14 113:16
**identified** 13:21
14:12 19:8
72:20 81:7
**identify** 12:21
13:2,5 14:9,22
16:2 19:16 36:4
40:1,4 48:3,5
62:7 84:17
106:13
**identifying** 15:3

**image** 90:17
102:19 103:1
**immediate** 19:11
19:17 20:21
**impatient** 37:22
**implementation**
88:11
**implied** 105:3
**implying** 98:1
**improper** 90:6
**include** 67:7
115:12
**including** 37:17
**incorrect** 73:3
**independent**
17:14
**INDEX** 4:1
**indicate** 15:11
16:3
**indicated** 14:22
71:22 97:21,22
119:10,11
**indicates** 92:12
111:15
**indicating** 102:22
**inform** 106:5
107:17
**information** 13:3
26:3,17 29:13
37:11,12,14
39:17 58:19,20
59:1,5,6 65:19
73:7 77:19 84:5
85:7 86:13,15
87:11 89:20
90:19 96:2
102:20 103:16
105:9 108:18
111:6 113:6
114:11,17
115:12
**informed** 21:4,9,9
21:12,16,19,20
24:9
**informs** 95:18
96:3 97:3
**infringe** 32:16
33:15

**infringing** 32:2,3
32:4,8 100:20
**initial** 97:1 114:5
**initially** 94:16
**initiate** 101:5
**input** 12:5,19
**instruct** 13:19
15:19 17:17
22:21 25:16
29:5 31:22
33:10 34:2
36:12 38:7
41:14 46:4 49:1
49:3 73:14 74:1
118:14
**instructing** 35:2
**instructions**
95:10 104:17
112:21 113:1,7
**insubordination**
108:19
**integrity** 95:14,19
96:4 97:9,20
98:7,17 99:9,17
104:20 105:2,11
105:20 106:5,20
107:11,18
**interact** 41:10
42:13 44:20
**interacted** 42:1
42:21 43:2,5,7
43:15 44:1,3
45:1,4
**interacting** 45:22
46:13
**interaction** 46:10
110:3
**interactions**
44:10 45:7,13
**interest** 22:15
124:8
**Internet** 4:19
**interpret** 97:18
105:20
**interpretation**
106:15
**interpreted** 98:21
107:5

**interpretive**
107:1,10
**interview** 73:5
81:1,17 86:17
91:10,11 103:13
103:22 104:1
119:20
**interviews** 110:15
**introduced** 22:12
**invading** 101:12
**investigate** 65:17
88:18
**investigated**
69:21
**invokes** 29:10
77:18
**involve** 62:10
**involved** 11:4,18
22:18 23:1,2
26:15 27:2 29:1
30:13 35:10,19
35:20 36:10,13
52:18,22 53:3
53:22 55:16
62:12,16,20
63:2 64:6 65:10
65:15 66:2,12
67:3,4,16,17
68:6,7,11,12
72:10 82:5
84:22 85:11,14
86:6 89:12 91:1
91:3 92:11
93:12,15 110:20
114:10 115:15
**involvement**
61:13,20 62:2
71:1
**involving** 22:18
23:12 24:5,10
25:5 28:9 30:1
54:1 61:13 63:3
77:11
**isn't** 37:16
**issue** 11:19 37:6
53:7 66:16 70:4
73:10 84:7
87:19 110:2

111:7
**issues** 9:11 11:4
11:20,21 12:18
13:4 22:14
25:10 26:16
27:6,11,12 28:1
28:9 33:15
52:19 53:4
62:16 66:3 73:5
77:10 86:21
108:14 115:20
**item** 82:11 83:20
100:6 102:1
104:2
**items** 79:5 81:6,6
85:10 108:4
**it's** 14:7 15:22
18:3 26:8 31:11
32:1,1 35:18
37:4,5,9,21
41:15 48:21
49:11 50:18
51:16 54:11
59:2 60:10 61:9
64:10,18 79:19
80:18 83:5 89:6
89:6,14 93:10
96:18 99:12
101:3,4,8
102:18 112:19
115:3 117:10
118:15
**I'd** 11:4 16:8 26:6
30:5,21 44:2
74:1 82:3 83:4
94:13,19,22
98:3 113:22
117:21 118:7
**I'll** 31:6 36:1,21
50:12 51:11
73:14 74:3 75:6
88:3 109:18
113:14 114:3
116:9
**I'm** 9:6,20 11:2,8
11:10 12:9,20
13:2,19 14:6
16:21 17:3,10

17:17 19:20
20:4,13,17 21:7
21:15,15 28:11
28:12 29:4,9,12
29:13,20 30:3
31:4,16,17,22
32:9 33:10 34:2
35:1 36:12 37:8
37:11,21 41:7
41:13 42:15
44:9 45:8 46:3
47:11,18 48:7
48:19 49:4,14
51:7 52:4 53:5
57:7,14 58:22
63:9,12 64:9,17
64:17 65:7,21
66:17,20 74:4
74:14,19 75:1,4
75:21 76:8,10
77:12,20 82:3
83:1,4,6,6 86:9
87:3 89:3,17,18
90:1,6 91:21
93:5,5 94:7
96:17 97:19
98:9,12,14
99:16,16,20
100:1 101:13
105:6 109:17,19
114:19 117:21
118:14
**I've** 13:17 52:5
84:9 91:2 98:1
111:14 114:6

**J**
**Janet** 58:3,10
59:11,17 60:2,6
60:11,14 61:1
**January** 7:9
10:13 12:12
**JARED** 3:21
**job** 1:20 13:10
48:14
**jobs** 10:18
**JOHN** 3:20
**judge** 2:7 3:20

34:4 38:6 79:3
84:13 90:8 93:6
93:18,19 94:12
94:14 95:2
100:1,2 108:11
118:17
**judgment** 94:12
**Judiciary** 3:13
**June** 7:8 12:12
**Jury** 84:10
**justified** 117:18
**justify** 117:12,18

**K**
**K** 3:5
**Kaplan** 57:22
**keeping** 37:9
**kept** 70:10
**Kia** 55:6,7
**kind** 12:16 23:4
47:2 48:1 75:11
79:8 94:22
118:8
**kinds** 12:18 13:4
39:16
**knew** 69:11
**know** 9:15 11:4
16:11,15,18
23:2 24:7 28:18
29:17 33:19
37:11,21 39:12
39:13,16,17
41:7 42:3 45:11
45:16 47:8
49:17 53:8,19
54:18,22 55:9,9
55:13,16,18
56:1,5,8,11 57:7
57:9,17 61:1
63:1,17 64:3,3
65:15 68:6
69:16 70:5,20
71:6,9,13 74:12
81:1,2 82:4 84:8
85:2,14,16 86:6
86:10 87:20
88:22 91:5
92:13 94:14,20

98:3 103:20
106:1 109:2,10
109:12,21
112:15 113:1,6
113:11 114:7,15
115:2,15 117:21
120:11
**knowledge** 86:10
93:3 102:8
**known** 66:7
**knows** 36:5 57:4
**Kratchman** 20:6
21:2 58:1 68:21

**L**
**laid** 22:22 117:16
**Laurie** 1:22 2:17
124:4,16
**law** 3:4 8:6 9:17
11:2 38:5 55:7
65:17
**laws** 90:17 91:20
102:17 109:5,13
109:22 110:4,21
112:6,8
**lawyer** 47:14
**lay** 23:4
**learned** 24:5
**leave** 7:10 30:21
72:19 73:2,4
81:14 86:19
87:12,14 110:11
110:17,22 111:8
112:3
**left** 25:2
**legal** 9:11 26:16
28:19,20 46:15
46:17,19 47:10
47:13,15,17,19
47:20,22 48:4,8
48:18 49:6,10
49:17,21 52:8
59:11,15,16,17
60:3,7,18 61:2
62:10,17,22
63:17 64:7
65:11,14,16
66:4 68:13

77:15 89:11
92:2,10 93:15
**legitimate** 23:7
87:13
**letter** 4:11,13
31:12 35:12,22
36:10,17,19
38:15 50:19
51:5,9 84:16
85:11 87:1,6,21
92:6 93:8
102:19 108:16
117:15,17
**let's** 14:1 34:8
36:8 67:15
83:19 96:13
99:22 101:22
108:13 114:20
**licensed** 7:16,18
7:20,22
**licensing** 11:19,20
**limited** 34:12
**line** 49:18 80:3,3
82:13,13 83:9,9
83:22,22 97:14
100:8,8 108:7
122:4 123:4
**lines** 37:9 80:8,13
80:17 86:2
102:3
**listed** 54:16
**listened** 111:17
**litigation** 55:21
68:16
**little** 11:5 37:6
64:18 65:6 70:6
**lo** 98:6
**located** 5:21
20:11,14,15
**log** 4:9 13:22 14:8
15:2 17:7,22
53:10 59:3
61:18 62:8,13
**long** 18:14,15
20:5 25:19
109:17 115:3
**look** 14:9 15:8
24:2 31:14

36:18 50:21
51:20 52:4
56:14,16 77:6
79:1 114:1
115:17,17
**looked** 105:15,16
**looking** 39:21
64:21
**looks** 113:22
**lot** 65:2

---

**M**

**M** 3:20
**Madam** 50:10
100:5
**MAGISTRATE**
3:20
**Maher** 58:3,10
59:11,17 60:2,6
60:11,14,17
61:1
**main** 11:11,14
34:12 37:9
**maintain** 24:17
**maintained** 25:11
**major** 8:18 9:5,9
**making** 29:1,9,22
65:10 119:19
**malfeasance**
108:19
**Mallett** 19:19
**manager** 56:5,6
**manner** 32:13
**March** 1:13 88:7
100:13 124:11
124:12
**mark** 14:1 31:6
50:9,12 51:11
63:14 74:16
76:12 79:8 90:9
96:13 104:6
113:14
**marked** 14:3,7
31:7,11 50:14
50:18 51:12,16
76:20 77:3
78:18,22 79:10
96:14,18 113:16
113:20

**material** 13:13,16
64:14 80:3,8,13
80:17 82:13
83:9,22 86:2
100:8 102:3
**materials** 63:10
64:22
**matter** 23:19 27:5
27:7 30:14
72:17 74:21
92:11 115:16
**matters** 12:6,14
12:19 22:14
25:7 30:1 60:8
61:13 67:3 71:2
89:19 95:18
105:3,12 106:7
107:19 111:19
115:21 116:3
**may** 11:2 13:1
19:21 33:12,12
42:1 45:1 52:2
53:22 57:8
64:20 65:6 66:7
69:11,19 70:5
76:1 77:19
79:13 89:15,15
93:1 100:22
105:22 107:19
112:6 120:5
**maybes** 65:2
**Mayor** 115:22
**Mayor's** 116:5
**ma'am** 5:15
101:16 115:2
**McDougald**
55:13,16
**mean** 9:16,20
12:9 16:15
20:13 24:11
28:15,17 30:19
38:22 39:13
46:20 51:4 58:6
59:15 60:10
65:15 66:20
68:7 85:4,19
87:2 89:8 97:18
112:9 115:8

**means** 23:2 95:18
98:18 99:9,18
106:6 107:12,18
**media** 72:4,21
73:5 90:16 91:6
91:7 103:2
108:18 109:7
110:3,15
**medical** 87:12,14
110:10,12,17,22
111:8 112:3
**meet** 22:3
**meeting** 45:9,11
45:16,19 72:10
72:17 73:12
74:22 75:2,9,11
83:13,14,18
88:14
**meetings** 44:8,10
44:15
**Memorandum**
11:22
**Mental** 5:20 6:4,9
6:11,16,19 25:8
**mentioned** 71:11
88:13
**Merene** 1:11 2:2
5:2,11 14:6,18
15:7 17:14
23:10 30:12
31:10,18 33:21
34:10 35:7,10
36:9,16 38:1
48:10 50:17
51:15 53:15
57:11 63:17
65:10,17 74:1
74:14 75:4
76:18 77:2
78:21 84:15
90:3 92:10 93:3
96:17 97:16
100:22 101:4
113:19 116:12
119:9 120:15
121:4
**message** 18:6,7,15
18:18 51:19

**met** 22:4,5,11
45:10 71:22
**Michael** 3:10 37:2
74:19
**mind** 72:7 110:7
112:7
**Mindy** 51:18
71:22 72:10
**minute** 114:21
**minutes** 94:6
108:8
**misrepresented**
90:15
**misuse** 73:2
**mode** 24:12
**modes** 45:19
**moment** 34:12
41:16,17 84:21
**Monday** 6:7
**month** 12:15 43:7
43:9,22 52:14
52:15,16
**months** 12:15,17
27:8 50:4
**move** 50:8 94:17
104:3
**moving** 25:8
**municipal** 97:22
98:2
**M-E-R-E-N-E**
5:14

---

**N**

**N** 3:1 5:1
**name** 5:9,12,13
5:13 20:1 34:18
54:18 56:19
**names** 58:2
**Nancy** 4:18 77:4
**narrow** 11:10
65:5
**Nature** 103:4
**necessarily** 16:16
23:2 25:3
**need** 51:19 79:12
84:21 118:4
**needed** 9:11
**neglect** 9:1 88:10

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

133

| | | | | |
|---|---|---|---|---|
| **neither** 124:7 | **objection** 7:12 8:2 | 20:11 21:5 | **P** 3:1,1,10 5:1 | 72:19 |
| **new** 5:22 11:20 | 8:13,20 9:14 | 55:10,22 57:12 | **page** 4:2,8 14:14 | **particular** 9:12 |
| 11:22 22:6,12 | 10:14,22 15:19 | 57:16 72:2 | 15:9 17:22 24:2 | 9:16,20,21 15:8 |
| **Newman** 116:4 | 16:12 21:7 | 75:17 | 39:22 40:2,5 | 28:8 32:12 33:2 |
| **news** 4:17 72:19 | 22:20 23:7 | **officer** 10:3,7,13 | 51:17 53:12,13 | 95:22 104:19 |
| 77:4,9 78:2,3,8 | 25:12 34:15 | 10:20 11:12 | 54:8 56:13 | 106:22 107:16 |
| 78:14,22 91:10 | 35:17 36:21 | 73:8 124:4 | 58:15,15 61:5 | 111:14 |
| 91:14 103:2,12 | 40:8 43:18 | **offices** 2:4 3:4 | 76:16 80:3,3,8 | **particularity** 60:5 |
| 103:13 | 46:22 50:8 | **okay** 7:16 13:6,13 | 80:13,17 82:13 | **parties** 38:3 124:8 |
| **Northeast** 5:22 | 52:10 57:1 60:9 | 17:12 30:7 31:5 | 82:13 83:9,9,22 | **parts** 81:3,9,10,13 |
| **Northwest** 2:6 3:5 | 62:1 73:19 74:4 | 36:1 38:12 42:8 | 83:22 86:2 88:4 | 86:17 119:21 |
| 3:14 | 74:6,9 82:8,20 | 43:14 45:18 | 90:14 95:8 | **Paul** 20:6 21:2 |
| **notarial** 124:10 | 82:21 84:1 89:3 | 50:11 52:6,17 | 100:8,8,12 | 57:22 68:21 |
| **Notary** 2:19 | 94:7,16,18 | 57:21 61:18 | 102:3,15 104:11 | **people** 30:12 |
| 124:3,16 | 97:10 100:18 | 62:7 67:2 68:4 | 104:15 108:15 | 57:15 59:14 |
| **note** 114:4 | 101:13,15 102:4 | 71:15,16,17 | 109:16 110:9,10 | 86:9 98:21 |
| **notes** 26:19,20,21 | 102:10 103:3,4 | 75:4 76:14 | 112:18 114:8 | **performance** 73:5 |
| 70:11,11,13,21 | 105:4 106:8 | 79:15 83:19 | 122:4 123:4 | 81:14 86:18 |
| **notice** 2:17 4:12 | 107:3,21 109:8 | 93:16 94:21 | **pages** 1:21 15:14 | 115:13 |
| 4:14 17:21 18:3 | 111:1,9 118:16 | 99:15 102:12 | 15:16 18:14 | **period** 6:14 7:5 |
| 31:13 35:12 | 119:15 120:2 | 106:18 107:15 | **paperwork** 112:2 | 9:3 10:9 12:13 |
| 50:20 84:19 | **observe** 78:13 | 109:18 119:2,7 | **paragraph** 88:5 | 20:10,22 21:3 |
| **notifying** 88:11 | **obtain** 108:17 | **once** 42:22 | 88:16,19,20 | 27:20 40:11 |
| **November** 20:10 | **obtaining** 88:12 | **ones** 79:17 85:17 | 89:1 90:14,21 | 41:1,10,22 |
| 21:1 27:19 | **obviously** 72:18 | 105:16 | 94:5 95:9,9 | 42:12,22 43:3 |
| 41:10,22 42:7 | **occasion** 22:2,13 | **open** 17:22 53:11 | 100:10,11,16 | 43:15 44:19,22 |
| 42:11 43:16 | 41:9 42:13 | **opening** 71:16 | 101:17 102:15 | 45:6,14 46:2,14 |
| 44:19 45:5,14 | 44:19 61:2 63:4 | **operations** 95:14 | 102:15 103:15 | 52:7,12 56:4 |
| 46:2,14 50:5,18 | 66:11 68:15 | 95:19 96:4 97:9 | 104:15 108:16 | 57:13 58:9 |
| 56:4 57:13 | 71:22 78:2 | 97:20 98:8,18 | 109:16 110:9 | 62:19 70:1,15 |
| 58:10 70:1 | **occasions** 44:8 | 99:10,18 104:20 | 111:14 112:18 | 72:11 73:13 |
| **number** 6:1 14:12 | 45:10 62:15,19 | 105:3,11,21 | 112:19 113:10 | 78:13 83:14 |
| 15:1 16:11 | 68:12 | 106:6,20 107:12 | 117:2,4,8,12 | 91:17 |
| 100:19 | **occurred** 99:12 | 107:18 | **paralegal** 55:7 | **periods** 11:17 |
| **numbered** 53:13 | **occurrence** 12:13 | **operative** 50:4 | **paraphrased** | **permissible** 94:15 |
| ——————— | **October** 20:8 | **opinion** 101:8,20 | 112:11 | **permission** |
| **O** | 31:11 33:22 | **opposed** 83:6 | **paraphrasing** | 108:17 |
| ——————— | 35:12 36:9,17 | **options** 75:8,12 | 112:12 | **person** 40:15 44:6 |
| **O** 5:1 | 38:15 40:12,19 | 99:11 | **part** 10:8 22:7 | 47:20 73:7,8 |
| **oath** 5:3 | 41:1,21 42:7 | **order** 109:15 | 38:1,15,16,19 | 89:11 92:10 |
| **object** 12:20 | 56:16 61:9,14 | **outcome** 124:9 | 63:14 73:11 | **personal** 86:10 |
| 28:11 29:4 | 61:21 69:8,16 | **overrule** 101:13 | 74:16 76:12 | 90:18 102:20 |
| 31:16 37:3 | 84:17 85:10 | **overruled** 80:18 | 79:11 90:9,14 | 103:16 |
| 42:15 46:3 63:9 | 86:22 87:6,21 | 84:1 103:6 | 90:21 92:8 97:1 | **personnel** 12:6,14 |
| 71:13 95:2 | 108:16 109:14 | 106:10 | 97:3 98:13 | 12:19 13:4 |
| **objected** 37:20 | 109:21 | **overrules** 94:18 | **participate** 52:8 | 22:18 23:1,11 |
| 100:19,20 101:2 | **office** 3:12 5:16 | ——————— | 73:4 | 23:12,15 24:5,9 |
| 118:22 | 5:19 8:16,19 | **P** | **participated** | 24:10 27:2,7,13 |
| **objecting** 31:17 | | | | |

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

134

28:9 29:2 30:1
30:14 52:9,19
53:4 54:1 56:2
60:8 61:20
62:16,20 63:3,6
63:20 65:12
66:3 67:3 71:21
75:19 77:11
81:3,10,13,18
86:13,15,18
89:13,19 95:17
96:7,8 105:3,12
105:13 106:7
107:19 110:1
111:11,18,22
114:12 115:8,16
115:21 116:3
119:21
**persons** 40:15,22
**perspective** 47:19
49:16,20
**pertained** 24:18
78:4 111:18
**phone** 45:15,20
**photo** 110:14
**phrase** 46:19
106:6,19
**phrased** 77:20
**physical** 20:15
**physically** 20:11
20:13
**picture** 72:20
**place** 25:14,14
26:18 48:15
**placements** 73:10
**places** 84:11
**Plaintiff** 1:5 3:2
3:22 5:5 118:2
**play** 9:22 28:8
**played** 56:9
**playing** 56:2
**please** 5:10 14:2
18:1 19:17 20:1
30:9 33:21
36:17 38:8
39:22 50:21
53:9,12 54:15
56:14 58:14

62:8 63:15
74:17 79:21
82:11,16 83:20
84:18 85:21
88:4 90:10 95:7
96:13 99:2
100:1 102:10
104:3,10 106:14
**point** 32:22 74:7
94:7 99:2
103:10,21 120:1
**pointed** 15:9
**policies** 25:14
109:5,13,22
110:21 111:8
**position** 6:3,6,8
6:12,18,20 7:2,6
7:10 19:4,9 41:3
41:5 55:6 67:5
69:5,10
**possible** 11:10
73:2 75:19
**possibly** 84:8
100:1
**practice** 90:16
**Practices** 4:17
**preparation**
62:12
**prepared** 111:16
**present** 3:19 44:6
45:6
**presented** 65:20
98:2
**preserved** 101:15
**pretty** 11:9
**prevents** 110:13
**previous** 67:14
86:16
**previously** 73:6
**print** 4:22 77:9
78:14 113:21
**printout** 4:19
**prior** 6:8,18 8:11
14:10 15:18
22:2 34:1 52:22
66:11 88:12
97:21
**privilege** 13:21

14:8 15:2 16:1,5
17:2,7,22 32:2,4
32:4,8 33:11
34:16 37:1,9
38:4 46:4 53:10
59:3 61:18 62:7
62:13 63:10
65:22 73:15,22
85:18 92:3
101:11 103:5
118:16 119:4,16
**privileged** 4:10
17:6 21:11
25:19 29:6,10
29:16 37:5,18
37:21 89:6
**probably** 24:20
26:8 27:21,22
34:3 41:4 44:2
45:3 70:16
103:11 114:18
118:7
**problem** 16:22
35:20 49:15
80:14
**procedures** 99:7
**process** 25:9,13
69:13,17 77:18
93:13
**product** 37:1
85:19 89:7
**Professional** 2:18
124:4
**program** 11:19
91:14
**programs** 11:21
11:22
**prohibit** 109:6
**projects** 88:11
**promote** 88:10
**prompted** 44:12
44:12,14
**prosecution** 8:22
**provide** 12:5
37:15 46:14
60:18 96:8
98:16 99:1,8
106:14 117:4

118:21
**provided** 17:9
58:19 61:2
63:11 64:22
65:14,16 76:1,4
77:19 86:13,15
89:16 94:1,2
96:12,22 100:22
114:4 117:3
**provides** 89:20
98:4 99:3,11
117:8
**providing** 12:19
28:20 48:18
52:8 59:11
68:12 71:3
**public** 2:19 38:2
73:7 124:3,16
**purported** 63:5
**purportedly**
47:20 78:22
91:20
**purports** 77:3
**pursuant** 2:17
**put** 36:21
**puts** 74:8
**puzzled** 37:10
**p.m** 1:14 113:22
120:16

**Q**

**qualify** 82:3
**question** 11:5,15
13:8 15:20
16:18 17:1,11
18:4 21:8,13
22:22 23:3,4,16
25:17,21 29:21
31:1 32:6,17,18
32:19 34:11,20
35:8,18 36:2,14
37:17 38:8,10
38:12,14 40:3
41:14 42:5,9
48:3,7,20 49:4
49:14 59:21,22
60:2,21,22
64:11,12 65:6

65:22 67:14
68:6 72:9 74:5
74:13,15 75:6,7
75:16,22 76:3
77:20,21 80:19
82:15 84:20
89:4 90:1,6,7
91:22 92:13
93:2,3 94:22
97:16 98:10
99:8,15,16
100:14,15
101:11,14,16,17
102:11,12,14,16
104:5,7 105:7
105:19 109:17
117:3,6 118:16
118:18 119:4
**Questioned** 4:18
**questioning** 49:18
74:8 97:14
120:3
**questions** 47:12
70:14 85:21
88:2 93:8 94:4
94:19 115:2
116:8
**quite** 33:9
**quotation** 76:16
**quote** 112:20

**R**

**R** 3:1 5:1 122:1,1
123:1,1
**raise** 88:9
**range** 11:10
**read** 35:15 38:20
58:18 64:12
75:4 78:2,9
79:10 80:6,11
80:15 83:5,15
85:20 91:2
121:5
**reading** 74:4
76:16 83:6
**reads** 64:13 80:2
80:7,12,16
82:12 83:8,21

86:1 100:7
102:2
**really** 37:21 39:20
47:3 97:17
101:9 118:9
**realm** 16:4 49:11
**Realtime** 2:19
**reason** 17:6 31:17
91:22 115:17
117:4,9 122:4
123:4
**reasons** 16:12,17
16:20 117:3,16
**recall** 10:11,16
18:9,17 19:10
22:5,10 24:15
26:5 28:21
30:15 38:17
39:3,20 42:4,20
45:15 51:1 52:2
52:16 54:5,13
54:18,20 55:5
56:10 57:2,11
58:1,2,19 63:1
66:9,14 67:19
69:11,13,20
70:2 71:20 72:9
77:7,8 79:18
81:4,5,8,11,12
83:17 84:3
85:13 87:10,16
88:1,21 91:3
103:7,13,19
110:6 111:3,12
111:16,20 112:4
114:6 118:11
119:22 120:6
**recalled** 112:11
**recalling** 73:12
**recalls** 74:22
**recess** 30:10
114:22
**recipient** 54:16
62:9
**recollection** 17:9
24:4 39:9,19
51:5 53:7,22
54:2 56:17

61:12 66:16
70:4 84:7 87:19
103:10,21
**recommend** 79:9
**recommendation**
75:14,18 76:4,5
76:8 82:2
118:12,21,22
119:9,11,13,20
**recommendation...**
75:15 81:16
**record** 5:9 13:7
14:12,21 15:7
23:6 26:7,10,11
30:8 34:5,6,8
35:3 36:22
37:19 38:6
46:11 49:2
67:15 70:17
73:19 74:9,18
76:15 80:5 83:1
90:3 92:9 93:13
93:17,21 94:10
94:11,14,16
95:1 99:22
111:21,22 114:4
114:21 119:19
120:9 124:6
**recorded** 17:7
**records** 115:11
**REDIRECT** 4:5
118:2
**reduced** 124:7
**reference** 12:16
15:8 18:2 25:19
55:4 56:15
58:19 61:6
101:10 107:13
**referenced** 24:3
28:3 42:6
111:15
**references** 58:15
**referred** 100:11
106:19 107:7
112:5 113:8,12
115:7
**referring** 72:4
91:7 98:3

102:15 103:12
112:8 118:6
**refers** 103:15
106:17 112:18
113:10
**reflect** 26:10
70:13
**reflected** 85:10
**reflects** 26:11
92:10
**refresh** 17:8 39:9
39:18 51:4 53:6
53:21 54:2
61:12 66:15
70:3 84:6 87:18
103:9,20
**refreshes** 24:4
56:17
**refusal** 77:16
**regarding** 26:3
29:2 30:1,13
31:13 42:13
43:8,16 44:1
46:1 50:3,19
52:8 62:16 63:6
71:20 81:14
83:14 86:18
87:11 115:21
**Registered** 2:18
124:4
**regular** 12:12
**regulation** 65:18
97:3 107:1,16
**regulations** 96:7
96:8 97:22 98:2
98:14,16 105:14
105:15,18 109:5
109:22 110:22
**relate** 76:2
**related** 12:22
19:2 31:21
124:8
**relates** 75:22
**relating** 89:14
**relations** 115:5
**released** 38:3
**relevance** 7:12
8:2,13,20 10:14

42:16 43:18
60:10
**relevant** 79:11
96:12
**relied** 92:14
119:20
**Religious** 116:5
**relying** 118:10
**remember** 16:10
55:8 57:14 59:8
60:4 81:2
**remembers** 59:5
**removal** 4:12,15
4:20 31:13
35:12 50:20
66:4,12,18,21
67:13 68:1,11
84:16,19 86:6,8
89:2,8,21 96:19
99:7 100:17
101:3,19 117:5
117:9,13,19
**removals** 67:11
**remove** 41:2 69:4
69:8,9,17,21
119:14
**removed** 40:14
67:5 118:13
**removing** 69:14
**repeat** 9:6 62:18
64:11 82:17
**repeats** 106:19
**Reported** 1:22
**reporter** 2:18,19
50:10,11 64:13
76:14 79:7,10
80:2,7,12,16
82:12 83:5,8,16
83:21 85:22
86:1 90:11
100:5,7 102:2
104:4 108:5
124:3,4
**representation**
14:19
**representations**
92:17
**represented**

54:11
**reprimanded**
88:15
**request** 46:17
**requested** 64:13
80:2,7,12,16
82:12 83:8,21
86:1 100:7
102:2
**require** 79:6
**required** 9:13
10:1
**research** 70:13
**resolve** 104:8
**resolved** 79:17
**Resources** 41:8
**respect** 23:17,18
25:18 35:21
36:9,16 38:14
56:2 70:7 73:20
75:18 81:18
89:12 97:7
101:1 106:7
107:19 110:1
111:22 117:2
**responsible**
114:15
**restate** 9:15 23:3
42:8
**result** 88:14
**results** 92:18
**RETURN** 122:3
123:3
**returns** 84:10
**revealing** 33:1
**review** 15:17
16:19 17:15,16
18:18 31:14
38:7 39:8 63:4,8
75:13 80:20
81:10,17 84:6
84:21 87:11,21
97:2 105:10
111:6 112:1
117:15 118:7
**reviewed** 13:13
13:16,17 14:10
15:12,15 16:2,4

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

136

16:7,8,9,11,17
17:1,8 18:15,20
19:2 69:21 77:9
77:13 81:1,3,5,9
85:16 109:15
110:1 112:1
120:6,10
**reviewing** 64:21
**Richard** 3:3,4
32:22 34:3 37:8
**ridiculous** 48:22
**right** 15:14 19:16
20:19 35:10
39:15 45:21
47:18 52:20,21
54:7,22 57:18
58:13 61:17
65:7 68:3 70:8,9
70:12 82:10
83:7 84:9 86:19
91:19 97:12
101:10,22
103:13 107:2
108:5 110:7,8
114:20 116:7
117:9 120:1,5
**ring** 56:19
**Roberson** 56:11
56:18,20 57:2,7
57:8
**role** 9:22 28:8,15
28:17 31:1 56:1
56:8 60:7,18
86:4
**Ronnie** 41:4,11
43:15 50:19
51:18 72:1,10
75:12 82:5
119:12
**room** 2:8 45:17
**routine** 66:21
67:1
**row** 56:16
**rule** 65:18 93:18
**rules** 109:13
**ruling** 30:5 79:13
93:9
**rulings** 108:7

**S**

**S** 3:1,21 4:6 5:1
122:1 123:1
**Sacramento** 8:15
**Sarah** 57:22
**saw** 78:9 81:17
85:16 91:6
103:11 119:21
**saying** 52:4
**says** 33:3 47:14
53:14 54:4,5
72:17 88:7
90:14 95:13
98:6 108:16
110:10
**school** 8:6
**scope** 120:3
**scratch** 67:16
**seal** 124:10
**second** 2:8 34:5
39:22 40:1 42:6
53:11 88:4 95:8
96:11 100:11
101:12,17
104:15 112:18
117:2,8 119:2
**seconds** 113:22
**section** 4:20 50:9
98:16 99:3,6
106:16,22 107:7
**sections** 36:19
96:12 107:13,15
**see** 17:11 26:2
35:11 39:10
50:10 51:9
53:17 54:9
58:16 61:6,10
62:13 65:4 78:3
88:5,16 90:21
90:22 95:11,15
96:20 102:22
103:18,22
104:17,21
107:16 108:2,22
110:18 112:21
114:8
**seeking** 21:20
59:20

**seen** 31:15 32:7
32:20 33:22
34:13 35:4
50:22 51:5,21
52:3,5 77:6 79:2
114:1,6
**sense** 49:5 59:16
**sentence** 95:13
104:19 112:20
**September** 14:13
15:4,10 20:10
20:22 23:22
27:19 28:6 41:9
42:6,11 43:6,11
43:12,16 44:2,4
44:11,18 45:5
45:14 46:2,14
50:4 52:19 53:1
53:4 56:3 57:13
58:9,16 59:19
61:21 69:22
72:11 73:13
77:5 78:15
90:15 91:17
113:21
**serious** 110:12
**serve** 10:9 28:18
**served** 9:3,7 10:5
19:5,12,15,17
**services** 6:22 7:7
7:11 9:4,8 10:6
10:21 12:1,4
19:6,13 29:2
48:11 79:6
**serving** 10:12
**set** 27:3,9 75:15
94:17 124:10
**setting** 44:5 45:12
**sheet** 121:9
**she's** 16:2 17:9
26:7 32:12 33:4
35:4 47:22 50:1
57:1 72:4 89:10
89:11,22 92:3
101:5
**Shirley** 1:4 3:22
4:11,13 22:3,18
23:12 24:6,10

24:18 25:5 26:3
27:13 28:10
29:3 30:2,13
31:12 41:12
42:2,14 43:8,16
44:1,20 46:1
50:3,19 52:9
53:3,17 54:1
55:17 56:3
61:13,21 62:16
62:21 63:3 67:7
67:10 72:18,22
75:19 77:11
78:4 115:16
116:12 122:2
123:2
**short** 30:10 67:20
112:5 114:22
**SHORTHAND**
124:3
**show** 14:6 31:5
50:12 74:3
76:18 78:16
83:2 96:17
113:14
**showed** 72:20
**showing** 82:19
90:17 102:19
**shown** 31:10
50:17 103:1
**sic** 98:16
**sick** 72:18 73:4
**signature** 40:2,5
40:6 120:14
121:13 122:22
123:22
**signed** 121:9
**significant** 66:18
66:20
**silly** 37:7
**similar** 108:20
118:16,19
**simpler** 34:9
**simply** 76:8
106:19
**sit** 38:18 39:4
54:19 69:3
101:20 106:2

109:4 112:15
113:3 117:20
120:7
**sitting** 71:3
**situation** 63:2
66:12 70:8 72:2
89:12
**six** 12:15
**Sixth** 3:15 7:3
20:16
**sleeping** 21:5,16
21:21
**solved** 80:9
**somebody** 29:8
**somebody's** 48:14
**soon** 46:9
**sorry** 9:6 20:13
21:15 83:4,6
87:3 109:17
**sort** 26:16
**sought** 50:2,2
**source** 23:18 33:5
33:7
**South** 3:15
**Southwest** 7:4
20:16
**speak** 97:17
**speaking** 27:10
**speaks** 97:11
98:20 107:22
**Specialty** 9:16
**specific** 12:22
13:3,3,5 38:5
73:20 74:9,13
74:13 76:1,2,6
88:2,11 119:5
**specifically** 25:17
50:3 106:1
119:22
**speculate** 57:8
**speculating** 64:5
86:11
**speculation** 60:10
**spell** 5:12 20:1
**spend** 94:5
**spoke** 68:21 91:9
**Square** 3:13
**staff** 58:7,10

60:14,18 61:1
74:11 88:14
**stage** 75:20
**stamp** 15:1,10
54:8 56:15
58:16 61:6
**standard** 66:4
**standards** 63:18
111:8
**start** 11:20 36:8
**starting** 11:21
100:12
**starts** 95:9 104:16
**state** 5:9 13:20
14:11
**stated** 74:11
86:22 102:18
**statement** 108:22
109:3,15
**statements** 88:19
88:22 118:9
**States** 1:1 2:5
32:9
**stationed** 5:18 7:1
**status** 81:15
86:19 87:12
**stenographically**
124:6
**steps** 69:17,21
**stories** 77:9 78:3
78:3,8
**story** 4:22 72:19
77:4 78:22
113:21
**Street** 3:5,14 7:3
20:16
**strike** 40:11 43:6
**subject** 9:22
23:18 51:18
53:17 72:16
73:11 74:12,21
83:15 95:3
119:17
**subjects** 12:22
**submitted** 112:2
**substance** 76:8
**substantive** 23:18
**success** 48:16

**suffering** 110:12
**sufficient** 101:18
108:6
**suggested** 17:15
**suite** 3:6 6:1
**summarily** 40:13
41:2 67:4 69:4,9
69:14,17,21
118:13 119:14
**summary** 4:12,14
4:20 31:13
35:12 50:20
66:4,12,18,21
67:10,13 68:1
68:11 84:16,19
89:2,21 96:19
99:7 100:17
101:19 117:5,13
117:19
**supervise** 116:15
**supervision** 124:7
**supervisor** 19:11
19:18,20,22
20:5,22 88:12
108:18
**supervisory**
95:10 104:16
112:20 113:1,7
**support** 65:11
109:3,15 114:12
**supported** 85:8
**supporting** 63:5
103:18
**suppose** 30:21
**supposed** 73:4
114:11
**sure** 9:20 12:9
15:7 17:10
19:20 20:4,17
28:12 31:4
37:11 41:7 44:9
45:8 53:5 57:14
66:17,20 82:4
85:22 86:9
105:6 114:19
117:21
**Surely** 39:17
**Susan** 116:4

**sustainable**
119:17
**sustained** 82:9
118:17 119:1
**sustains** 94:16
**sworn** 5:3
**system** 88:8

———————

**T**

**T** 4:6 122:1,1
123:1,1
**Tabb** 1:4 3:22
4:11,13 22:3,11
22:14,19 23:12
24:6,10,19 25:5
26:4 28:10 29:3
30:2,13 31:12
41:12 42:2,14
43:8,17 44:1,20
46:1 50:3,19
53:17 54:1
55:17 56:3
61:13,21 62:21
63:6,19 64:8
65:13,19 66:3
67:7,10 69:4,9
72:22 75:19
77:11 78:4 81:2
81:19 86:17
87:22 91:12,19
97:1 102:17
103:15 110:2,21
111:22 112:2,7
113:2,10 114:13
115:16 116:3,12
117:13 118:13
119:14 122:2
123:2
**Tabb's** 27:13 52:9
52:18 53:3 56:9
62:16 63:3
66:11 70:7
71:21 72:5
81:10 86:5,7,18
87:12 89:13
101:3,18 111:7
111:18 115:17
115:18,21 117:5

117:18
**table** 32:18,19
79:19
**tagged** 108:4
**tail** 92:15
**take** 6:6 14:9 24:2
31:13 36:17
38:21 48:15
50:21 51:8,20
56:16 63:20
64:6 71:15 77:5
79:1 84:9,20
114:1
**taken** 2:17 29:3
30:10 56:3 64:8
65:12 81:18
110:2 114:22
117:12 124:5,6
**talk** 68:15 96:1
**talked** 48:6 68:20
**talking** 11:1
28:12,13,14
33:13,17 35:19
36:22 76:7
**talks** 99:7
**tasks** 10:19
**television** 78:3,9
91:14 104:1
**tell** 24:3 31:15
36:18 50:21
51:21 56:17
59:4 77:6 79:2
79:19 85:17
94:8 97:2,19
114:1
**telling** 37:3 67:21
**ten** 94:6 108:8
**tenure** 12:3 19:20
20:4,7 21:3,22
22:7 23:10
25:11 66:22
67:2,17 116:13
116:18,20,21
**term** 62:1 95:15
95:21 96:3
105:2,10,20
107:17 115:4
**terminate** 41:2

119:14
**terminated** 40:13
67:5 94:3
**termination**
67:13,18 68:1,2
68:11 75:9
92:18
**terminology** 96:9
97:8 98:1
**terms** 25:9 33:11
46:20 65:7 73:1
77:19 100:21
119:5
**Terrell** 20:7 21:2
54:12 68:22
**Terri** 19:19
**testified** 5:3 26:7
44:5 50:1 57:2,6
70:6,10 71:19
73:16,18 74:22
117:1
**testifies** 72:16
**testify** 16:13
25:13,15 31:20
33:9 59:1,7
63:13 64:10
75:2 77:13
80:10 92:22
**testifying** 48:21
92:4,5 101:6
**testimony** 10:4
15:18 52:18
70:19 71:4,7,21
73:21 86:16
92:11 93:13
97:21 112:5
115:7 117:11
121:6,8 124:6,6
**text** 39:1,5,10
**thank** 5:15 20:3,9
52:6 82:11
100:4 108:10
117:22
**thanks** 34:22
**that's** 13:11 19:1
19:2 21:19,22
24:7 25:14,15
28:3 29:5 31:20

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

138

32:8 35:5,17,20
35:20 40:2
46:10 47:2
48:15 50:5
56:14 59:2,22
64:16,19 67:12
73:3 75:20 80:9
81:3 85:18
86:12 90:5 93:9
94:9 99:14,15
100:11 110:6
119:17 120:12
**Theoretically**
27:10
**there's** 37:14
39:18 48:14
65:2 72:3 74:6
98:4
**things** 34:9 37:19
85:16 120:6
**think** 13:11 15:16
16:12 20:21
22:4,6 23:7,21
26:13 27:22
37:14 42:1,5,21
43:2,7,14,22
44:9 45:1 52:2
52:22 55:12
57:22 58:1,12
65:4 70:18,19
78:8 79:16
85:18 86:14
93:9 98:20
101:11 106:16
106:17 114:21
119:17
**thinking** 67:10
114:3
**thinks** 89:9
**Thompson** 19:19
**thought** 67:12
112:13
**threaten** 95:18
99:9
**threatens** 95:14
96:3 97:8,20
98:7,17 99:17
104:20 105:2,10

105:20 106:5,19
107:11,17
**three** 15:16 31:3,4
45:3,5,10 57:21
67:6,9,21,22
68:10
**three-page**
113:20
**Thursday** 1:13
**time** 6:14 7:5 10:8
10:9 11:18
12:10 18:21
19:14 21:3 24:8
27:18,20 28:22
29:14,22 36:17
38:21 40:11,12
40:18 41:6,10
41:22 42:12,22
43:3 44:19,22
45:6,14 46:2,14
52:7,12 55:4,6
56:4 57:16,17
58:7 60:7,15
62:20 66:2
67:20 69:7,12
69:16 70:1,15
72:11 73:13
78:13 83:14
91:17,18 93:20
94:20 108:4
109:7,13,21
110:16 112:6
114:15 116:2,18
120:1
**times** 19:17 41:22
42:12,17 43:14
44:4,22 45:3,5
67:6,9,17,21,22
68:10
**tired** 109:19
**title** 41:7
**titled** 96:19
**today** 15:18 22:2
34:1 35:4 38:19
39:5 50:22 51:6
51:21 52:3
54:19 69:3 71:3
71:12 101:20

106:2 109:4
112:15 113:3
114:2 117:20
120:7,7
**told** 37:20 88:1
93:1
**top** 51:17 96:19
104:16 112:19
**topic** 97:4
**transcript** 4:7
14:4 31:8 50:15
51:13 63:15
74:3,17 75:5
76:13,21 78:19
82:19 83:2
96:15 113:17
124:5
**transcription**
121:7
**transmitted** 59:18
**trial** 101:15
102:10
**tripping** 64:19
**true** 121:6 124:5
**try** 17:11 23:4
26:16 34:8 73:9
109:18
**trying** 11:8,10,20
47:18 49:5,9
99:16,20
**turn** 25:1,3
**turning** 25:18
90:13
**TV** 81:1,17 86:17
119:20
**twice** 43:3,20
**two** 15:16 18:14
30:18 31:2 44:4
45:3,4,10 67:6,9
67:20,21 68:10
78:11 81:6
85:21 104:4
**two-page** 96:18
**type** 24:17 26:17
48:16
**types** 10:18 11:1
11:2 13:1 93:7
**typewriting** 124:7

**typically** 26:17
27:3,8

---

**U**

**unauthorized**
88:9,13
**understand** 11:8
15:11 16:22
32:21 47:7 49:5
49:16,19 57:4
70:18 97:13,16
99:13,17 105:10
107:11 109:20
115:9
**understanding**
10:4 11:22
28:22 29:18,22
40:14 49:20
50:1 60:6 93:4
95:17,21 101:14
102:9 105:1
**understands** 9:19
49:21
**understood** 29:14
**undertaken** 10:19
**unfortunately**
79:7
**United** 1:1 2:5
32:9
**unnecessarily**
93:20
**unnecessary**
93:10
**useful** 13:4
**usual** 11:3

---

**V**

**vague** 9:14 10:22
35:19 47:3
64:19
**valid** 101:3,4,8
**varied** 11:17
**various** 9:10
**video** 77:10 78:14
**violated** 90:16
91:20 102:17
110:21 112:7
**violating** 113:2

**violation** 95:10
104:16 111:7
112:20
**vs** 1:6 122:2 123:2

---

**W**

**waived** 37:5
73:22 120:14
**waiving** 102:10
**Walker** 31:12
40:21 82:5,6
83:3
**Walker's** 40:2,5
**want** 17:10 19:21
33:9 37:12 48:5
65:7 70:17
84:15 93:9,21
93:22 94:5,9,14
94:20
**wanted** 7:14 13:6
16:10 108:14
117:6
**Washington** 1:12
2:9 3:7,16
**wasn't** 34:17
59:21 93:2
**waste** 93:20 94:20
**way** 24:18 35:11
37:18 94:2
95:10 111:16
116:15
**ways** 98:22
**website** 79:1
**week** 6:17 12:15
**weeks** 18:19 27:8
**went** 73:2 87:22
**we'll** 50:8,8 79:19
93:17 94:10,17
**we're** 21:19 33:13
36:22 37:1
47:12 92:15
114:21
**we've** 18:2 61:19
73:8 109:15
**whatsoever** 98:19
**what's** 40:3 47:4
60:20 63:21
77:2,15 78:21

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

139

79:4 92:2,6 94:1
94:1 96:17
102:18
**WHEREOF**
124:10
**who's** 92:21
**Williams** 74:7
**Wilson** 44:20
45:2,4,9,13 46:1
46:13,17 47:8
48:12 50:2
53:16 56:1
61:10 114:18
**Winston** 55:6,7
**witness** 7:14 8:4
8:15,22 9:19
10:16 11:16
12:21 13:9,20
15:20 16:19
18:11 21:15
23:20 24:15
25:15,16 27:15
28:15 35:14
37:14 38:12
41:19 42:17
43:20 47:2 49:2
49:4 52:12 59:9
62:3 66:9 71:11
72:14 73:14
74:20 77:16
78:6,11 80:20
81:21 82:17,19
83:2,4,11 84:3
85:4 87:16
89:10 92:4
93:12,14 97:12
98:9 99:21
101:6,20 102:7
102:12 103:7
105:6 106:11
107:5 108:2
109:10 111:4,11
120:5 121:3
124:10
**witnesses** 92:12
92:20,22
**witness's** 49:20
**won't** 71:15

**word** 64:19
**words** 9:21 18:6
39:2,6
**work** 5:15,16
6:10,14 8:12
10:2 22:13 37:1
46:20 85:18
89:6 115:20
116:12
**worked** 8:15
12:11 39:14
48:10 55:10
57:5,12
**working** 5:18 6:8
8:8,11 27:5
110:13 116:3
**work-related**
116:18
**worried** 37:8
**wouldn't** 33:8
67:1
**wrapping** 25:7
**write** 36:6
**written** 77:4 92:7
**wrote** 36:3,5 37:4
**WSA** 79:1
**WUSA** 4:22
113:21

___

**X**
**X** 4:6

___

**Y**
**Yamada** 4:18
77:4
**Yeah** 49:7 92:19
**year** 8:6,8 73:9
108:21
**years** 112:14
**York** 5:22
**you'd** 12:14 14:9
31:13 36:17
50:20 51:20
53:11,12 56:14
**you'll** 94:18
**you're** 16:1 17:7
17:18 28:13
32:11,22 35:2

35:19 38:7
48:20,21 49:1,9
49:15 65:4
67:10 73:12
76:7 89:7 92:5
92:20 93:7 98:3
98:9 99:19
102:10 104:7
112:8 114:3
119:16
**you've** 31:10,14
31:15 33:22
37:19 44:4
50:21 51:5,15
51:21 52:17
68:6 73:7 77:2,6
78:21 79:2
93:11 113:19
114:1

___

**0**
**05** 78:15

___

**1**
**1** 1:21 4:9 14:3,7
24:3 28:4 53:11
56:14 58:14
61:5 62:13
90:14 100:12
102:15 108:15
109:16
**1-125448** 1:20
**1:06-CV-00789...**
1:6
**10-15** 80:8
**10-19** 86:2
**10/3/05** 4:11
**11** 113:22
**11/3/05** 4:13
**1100** 3:6
**113** 4:22
**116** 4:4
**118** 4:5
**12-20** 80:13
**124** 1:21
**14** 4:10
**14th** 124:12
**15** 82:14 83:10

94:6 108:8
**152** 76:16
**1603** 107:14
**1608** 107:14
**1612** 3:5
**1616** 96:19
**1616.1** 4:20
106:17
**1616.1(a)** 98:8
106:16,18
**1616.2** 106:17
107:7
**1616.4** 99:6
**18** 82:13 83:9
110:11
**19** 90:15 102:3
**1993** 8:7

___

**2**
**2** 4:11 31:7,11
33:22 34:11
35:11 36:9,16
38:1,2,14 39:2
39:11,21 40:5
84:19 87:2,3,6
88:3 90:14 95:8
95:8 100:9
104:11,15
108:13 110:9
112:18 117:1,4
117:4,16
**2:30** 1:14
**20** 1:13 15:4,10
28:6 77:5 102:3
113:21
**20th** 14:13 72:11
73:13 91:17
**20001** 2:9 3:16
**20006** 3:7
**2002** 8:10
**2003** 8:4
**2004** 7:8 12:12
22:8
**2005** 14:13 15:4
15:10 19:21
20:8,11 21:1
23:22 27:19
28:6 31:12

33:22 35:12
36:10,17 38:15
40:12,20 41:1
41:10,21,22
42:11,12 43:12
43:13,16,16
44:2,4,11,18,19
45:5,14 46:2,14
50:4,5,18 52:19
53:1,4,14,21
54:9 55:5 56:3,4
56:16 57:13
58:10,16 59:19
61:9,14,22 69:8
69:16,22 70:1
72:12 73:13
77:5 84:17
85:11 86:22
87:6,21 88:7
90:15 91:17
100:13 108:16
109:14,21
110:11 113:22
**2006** 6:17 7:9
10:13 12:12
**2008** 1:13 124:11
**2011** 124:12
**202)408-0034** 3:8
**202)727-6295**
3:17
**21** 58:16 59:19
**22** 80:3 100:8
**2321** 2:8
**27** 61:9
**28** 80:3
**29** 80:3
**29th** 124:10

___

**3**
**3** 4:13 31:11
33:22 35:12
36:9,17 38:15
50:14,18,18
51:9 84:17
85:10 86:22
87:6,21 108:16
109:14,21
**3rd** 86:22

L.A.D. REPORTING & DIGITAL VIDEOGRAPHY
(202)861-3410 (800)292-4789 (301)762-8282 (703)288-0026 (410)539-3664

DEPOSITION OF DEON MERENE, ESQUIRE
CONDUCTED ON THURSDAY, MARCH 20, 2008

140

| | |
|---|---|
| **30(b)(6)** 25:15 89:10 92:4 101:6 | **78** 4:19 |
| **31** 4:12 80:8 | **8** |
| **333** 2:6 | **8** 4:22 98:16 113:16,20 114:8 |
| **4** | **85** 86:2 |
| **4** 4:16 14:14 15:9 17:22 24:2 51:12,16 56:13 56:16 58:15 61:5 102:15 | **88** 100:8 |
| **4-10** 80:17 | **89** 100:8 |
| **400** 7:3 20:16 | **9** |
| **441** 3:14 | **9** 79:1 83:22 |
| **48** 80:13 | **91** 102:3 |
| **5** | **96** 4:21 |
| **5** 4:3,17 54:9 55:5 76:20 77:3,3 | |
| **5:39** 120:16 | |
| **50** 4:15 | |
| **51** 4:16 | |
| **6** | |
| **6** 4:19 53:14,21 78:18,22 80:4 83:22 | |
| **63** 80:17 | |
| **64** 5:22 | |
| **696** 53:13 | |
| **699** 54:8 | |
| **7** | |
| **7** 4:20 96:14,18 97:6 105:17,19 106:4 107:16 | |
| **7:31** 113:22 | |
| **700** 54:8 | |
| **72** 82:13 83:9 | |
| **73** 82:13 83:9 | |
| **735** 56:15 | |
| **736** 58:16 | |
| **737** 14:12 15:10 | |
| **738** 14:13 15:10 | |
| **742** 61:6 | |
| **744** 61:6 | |
| **75** 83:22 | |
| **76** 4:18 83:22 | |