**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SHIRLEY TABB,    :
         :
     Plaintiff, :
         :
   v.      :   Civil Action No. 06-789 (PLF)
         :
DISTRICT OF COLUMBIA, *et. al.,* :
         :
     Defendants. :

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**
**TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I. PRELIMINARY STATEMENT

Defendants District of Columbia, Brenda Donald Walker, and Mindy Good, by and through undersigned counsel, hereby oppose plaintiff's Motion for Summary Judgment under the First Amendment and the D.C. Whistleblower Act.  *See* Pl.'s Mot., generally.  In support of their opposition, these Defendants state that Plaintiff's motion should be denied based on the following:

1. Plaintiff did not speak as a private citizen, and enjoys no protection for her alleged speech under the First Amendment.

2. Plaintiff's alleged disclosures were not protected disclosures;

3. Plaintiff was not terminated because of her alleged protected disclosures; and

4. The District had legitimate reasons for plaintiff's termination.

The Defendants also rely on the arguments set forth in their motion for summary judgment and herein incorporate their arguments as to why plaintiff is not entitled to summary judgment.

## II.    BACKGROUND

This case concerns the termination of Shirley Tabb's employment from Child and Family Services Agency for the District of Columbia.  *See* Amended Complaint, generally.  Ms. Tabb started at CFSA as a social worker in 1992, and worked her way up to become a Public Information Specialist ("PI Specialist") with the agency by 2003.  *See* Tabb Dep., at 51 – 55 and 66, attached hereto as **Exhibit A.**  Plaintiff avers that as a PI Specialist, it was her job to develop communication campaigns for agency programs and disseminate information on behalf of the agency.  *See* 10/10/05 Response to Notice of Summary Removal at pgs. 1-2, incorporated by reference in Tabb Declaration at ¶ 49, attached hereto as **Exhibit B;** *see also* Tabb Dep., at 66 – 68, attached hereto as **Exhibit C**.  Specifically, the job required her to be knowledgeable about CFSA program activities, initiatives in the agency and required her to stay abreast of systemic issues, problems and progress in CFSA.  S*ee* Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 5, incorporated by reference in Shirley Tabb's Declaration at ¶ 49, attached hereto as **Exhibit D**; Tabb Dep., at 66 – 68, attached hereto as **Exhibit C** (plaintiff testifying that she helped arrange a golf tournament campaign, write profile narratives for children waiting for adoptive homes, speak at and attend staff functions, and present the uses of the public information office for campaigns).  Plaintiff avers that as PI Specialist, she was required by law to report child abuse and neglect in the work place. *See* 10/10/05 Response to Notice of Summary Removal at pg 4., incorporated by reference in Tabb Declaration at ¶ 49, **Exhibit B**; *see also* Tabb Dep., at 240-41, attached hereto as **Exhibit E**, (plaintiff testified that she believed

that, at all times she worked for CFSA, she was a mandatory reporter).

Brenda Donald Walker was the Director of CFSA during all times relevant to the allegations set forth in the Complaint. *See* Amended Complaint, ¶ 9. Defendant Mindy Good was Plaintiff's immediate supervisor during her tenure as a Public Information Specialist. *See* Tabb Dep., at 10, attached hereto as **Exhibit F**.

Plaintiff's speech at issue consists of five (5) separate communications – all which were made in her capacity as Public Information Specialist and were related to the CFSA foster care program about which she was responsible for disseminating information. Plaintiff avers that in March 2005, in her capacity as Public information Specialist, she contacted a public information officer with the Department of Human Services about developing a campaign to increase awareness around child abuse and neglect, reviving the Back to Sleep Campaign and other projects with CFSA. *See* Tabb Dep., at 251 – 255, attached hereto as **Exhibit G**. Plaintiff admits that she used agency equipment for purposes of her communication. *See* Shirley Tabb Declaration, at ¶49, *incorporating by reference* Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 5; *see also* Tabb Dep., at 251 – 255, attached hereto as **Exhibit G.**

Plaintiff avers that in July 2005, she spoke to Brenda Donald Walker, her supervisor, about children sleeping at CFSA and her desire to address the issue in her capacity as a government employee. *See id.*; *see also* Shirley Tabb Declaration, at ¶¶ 30-31, attached hereto as **Exhibit H** (declaring under oath that during the meeting with Brenda Donald Walker, plaintiff "asked if [she] could use [her] social work and marketing skills to recruit emergency homes in the faith-based community"). According to the Plaintiff, "the fact that children are sleeping in our building [was] a well known fact. Everyone in the agency [knew] it, as well community [sic]." *See* Shirley Tabb's Declaration at ¶ 36, attached hereto as **Exhibit H**, *incorporating by*

*reference* Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 4, attached hereto as **Exhibit D**; s*ee also* Tabb Dep., at 177 – 179, attached hereto as **Exhibit I** (plaintiff testified that Mindy Good, Brenda Donald Walker, CFSA's court appointed monitor, and CFSA workers who worked late at night or early in the morning all knew that children where sleeping in the building ); *Id.* at 181-82, 218, attached hereto as **Exhibit I** (plaintiff testified that the Washington Post reported the fact that children where sleeping in the CFSA building before Plaintiff's disclosures).

Plaintiff avers that on August 15, 2007, again in her capacity as Public Information Specialist, she contacted Susan Newman, Senior Advisor for Religious Affairs for the Executive Office of the Mayor. *See* Shirley Tabb's Declaration at ¶36, attached hereto as **Exhibit H** incorporating by reference Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 4. During her communication with Susan Newman, Plaintiff avers that she identified her background and official position with CFSA, and discussed the lack of foster home resources for CFSA and the possibility of contracting to provide a temporary placement for children. *See* Shirley Tabb's Declaration at ¶36, attached hereto as **Exhibit H** incorporating by reference Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pgs. 4, 5.

Plaintiff avers that in September 2005, as Public Information Specialist, she contacted Deputy Mayor Neil Albert, who was responsible for the performance of CFSA. *See* Tabb Dep., at 145 – 147, attached hereto **Exhibit J**; *see also* Tabb Declaration at ¶ 39, attached hereto as **Exhibit H**. During her communication with Deputy Mayor Albert, Plaintiff identified her background and official position with CFSA and indicated that there were children sleeping in the building at CFSA. *See* Tabb Declaration, at ¶¶ 40-41, attached hereto as **Exhibit H**. Plaintiff also claims she communicated concerns relayed to her by a placement worker at CFSA. *See*

Tabb Declaration, at ¶ 41, attached hereto as **Exhibit H.**

Finally, Plaintiff avers that in September 2005, as public information specialist, she contacted the media concerning the lack of placement resources. *See* Tabb Declaration, at ¶¶ 43-44, attached hereto as **Exhibit H**.

On April 22, 2008, Plaintiff moved for summary judgment.  Plaintiff argues that the evidence is clear that she spoke out on a matter of public concern and was terminated in violation of the First Amendment.  Plaintiff also argues that she engaged in protected activity under the D.C. Whistleblower Act, and she has established her claim that she was terminated because of her protected disclosures.  As set forth below, these defendants are entitled to judgment as a matter of law.

## III.    STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  To avoid summary judgment, the non-movant need only show the existence of a factual dispute that may determine the outcome of the litigation.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).

## IV.    ARGUMENT

### A.    Plaintiff's First Amendment Claim Fails As A Matter of Law.

#### 1.    Plaintiff Did Not Speak As A Private Citizen

Plaintiff's motion should be denied concerning her First Amendment claim because she did not speak as a private citizen, an element necessary to establish her First Amendment claim. *See Garcetti v. Ceballos*, 126 S.Ct. 1951, 1958 (2006) (holding that the first inquiry in a First Amendment analysis is whether the plaintiff was speaking as a citizen).

A public employee's cause of action for retaliation in violation of the First Amendment requires proof of four elements: (1) the public employee **must have spoken as a citizen** on a matter of public concern; (2) that the employee's First Amendment interest is not outweighed by the governmental interest of promoting the efficiency of the public service performed through its employees; (3) that the employee's speech was a substantial or motivating factor for the denial of a right or benefit; and (4) that the government would not have reached the same decision absent the protected conduct in which the employee engaged. *See Garcetti v. Ceballos*, 126 S.Ct. at 1958. *See also, Leonard v. D.C.,* 794 A.2d 618 (D.C. 2002). The Supreme Court, in *Garcetti,* held that the public employee **must have spoken as a citizen** on a matter of public concern. *Garcetti,* 547 126 S.Ct. at 1958. *Garcetti* involved a state deputy attorney who was reassigned and denied a promotion after he wrote a memo to his supervisors about inaccuracies in an affidavit used to procure a search warrant. The Supreme Court held that when the plaintiff wrote his memo and had later discussions with his supervisors concerning the inaccuracies of the search warrant, he did not speak as a citizen, but spoke as a government employee. The Court found that "when he went to work and performed the task he was paid to perform, Ceballos acted as a government employee. The fact that his duties sometimes required him to speak or write

does not mean his supervisors were prohibited from evaluating his performance." *Id.* at 1960. The Court found that because plaintiff's speech was pursuant to his official duties, he was not acting as a private citizen and did not enjoy First Amendment protection.

*Garcetti* and its progeny instruct that in cases where a government employee's speech falls within the scope of the employee's employment responsibilities, there is no First Amendment protection. The Court of Appeals held in *Wilburn v. DC*, 2007 U.S. LEXIS 6397 (March 20, 2007), that the plaintiff, the former interim Director of the Office of Human Rights, had no First Amendment protection when she complained of racism and sexism to the Department of Personnel, a Deputy Mayor, and the Mayor's Chief of Staff concerning the Department of Personnel's rejection of her salary recommendations for two (2) African American females. According to the Court, the plaintiff had no First Amendment protection because her speech was made in the context of her employment as interim Director of the Office of Human Rights, where her "official position description included identifying and eliminating discriminatory practices in employment." *Id*. at *29. In other jurisdictions, the Courts of Appeals have similarly held that a public employee enjoys no First Amendment Protection when the speech is made in the course of their employment responsibilities. *See Hill v. Bourough of Kutztown* 455 F.3d 225, 242 (3d Cir. 2006)(holding that a public employee enjoys no First Amendment Protection when employee reported harassment to Bourough Council when he had a duty as a Manager to report complaints). *See Mills v. Evansville,* 452 F.3d 646, 648 (7th Cir. 1006)(holding that that an officer had no First Amendment protection for her speech when it was made while she was on duty, and in uniform, and the speech was made to her superiors contributing to the formation and execution of official policy). *See Green v. Bd of County Comm'rs,* 472 F.3d 794, 2007 U.S. App. Lexis 1 (10th Cir. 2007)(holding that a drug lab

employee who ignored her supervisors and scheduled confirmatory drug tests she suspected were faulty was not protected by the First Amendment, even though her conduct was condemned by her supervisors and not explicitly required in her day to day activities, because her acts were generally the type of activities that she was paid to do.)

In *Thompson v. District of Columbia*, 2007 U.S. Dist. Lexis 19500 *7-8 (D.D.C. March 20, 2007), the Court held that a government employee's speech was not protected by the First Amendment when it occurred in the course of plaintiff's official duties as an auditory and security officer. According to the Court, "even if the speech was outside the bounds of the plaintiff's job description, his speech was as a government employee and related to his professional responsibilities."

In this case, plaintiff, through her own arguments and testimony, clearly demonstrates that her speech was made in her capacity as the Public Information Specialist at CFSA. According to plaintiff, she was mandated by law to report child abuse and neglect - **even in the work place**. *See* 10/10/05 Response to Notice of Summary Removal at pg 4., incorporated by reference in Tabb Declaration at ¶ 49, attached hereto as **Exhibit B**; *see also* Tabb Dep., at 240-41, attached hereto as **Exhibit E**, (plaintiff testified that she believed that, at all times she worked for CFSA, she was a mandatory reporter). Every communication at issue in this case - communications to other District agencies, superiors, officials and to the media - were made in her capacity as Public Information Specialist and were related to her job duties. In fact, plaintiff acknowledges that her job duties included staying abreast of systemic issues, problems and progress in CFSA programs. S*ee* Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 5, incorporated by reference in Shirley Tabb's Declaration at ¶ 36, attached hereto as **Exhibit D**; Tabb Dep., at 66 – 68, attached hereto as **Exhibit C**.

Plaintiff concedes that she used agency equipment for the purposes of her communication. *See* Shirley Tabb Declaration, at ¶49 *incorporating by reference* Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 5; *see also* Tabb Dep., at 251 – 255, attached hereto as **Exhibit G.**  Like the governmental speech discussed in *Mills*, 452 F.3d at 648, plaintiff's speech was allegedly made in an attempt to change an agency practice of allowing children to sleep in the CFSA building.  Under the bright line rule set forth in *Garcetti*, and *Wilburn,* because the plaintiff's speech was made in the course of her duties and not as a private citizen, her communications enjoy no First Amendment protection.  Therefore, plaintiff's motion for summary judgment must be denied.

### 2.    Plaintiff's First Amendment Interest Is Not Outweighed By The District's Interest

Even if the Court finds that plaintiff made her statements as a private citizen, plaintiff's motion must still be denied because her interest in making the statement is outweighed by CFSA's interest to protect children in its care by keeping their identity confidential.  Plaintiff argues that CFSA's interests in this matter stems solely from its desire to avoid negative media attention that would give the agency a "black eye."  *See* Pl.'s Mot., at 11-13.  This is not the case.  Pursuant to D.C. Official Code § 4-1303.02a(c), the Director of CFSA shall be responsible for all child and family services provided by the Agency, and for monitoring child and family services . . . ."  CFSA investigates complaints of abuse and neglect, and takes in children who have been abused or neglected.  *See* § 1303.02a.  In fact, when an investigation indicates that a child has been left alone or with inadequate supervision, CFSA takes custody of the child.  *See* § 4-1303.04(b).  Section 4-1303.06 is clear in its mandate that the records and information obtained

about a child in CFSA's care is confidential and must be kept confidential.[1]  According to the

statute, information acquired by staff of the Social Rehabilitation Administration of the

Department of Human Services which identifies individual children reported as or found to be

abused or neglected … shall be considered confidential and may be released or divulged only for

purposes relating to the identification of abuse or neglect, the identification of service needs or

resources, the securing or provision of treatment or direct services for the child…." See § 4-

1303.06(a).  "persons… who are not covered by confidentiality requirements comparable to

those in subsection (a) of this section, to whom information is released pursuant to this section, §

4-1302.03, or § 4-1302.04 must sign a statement that they will not divulge such confidential

information for purposes unrelated to the purposes of treatment, identification or evaluation."

See § 4-1303.06(b).  Pursuant to § 4-1303.07, "[w]hoever willfully discloses, receives, makes

use of, or knowingly permits the use of information concerning a child or individual in violation

of this subchapter shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined

not more than $1,000.  A violation of this section shall be prosecuted by the Corporation Counsel

in the name of the District of Columbia."  *See also,* § 16-2336.  CFSA's interest in this matter

stems from its desire to protect the children by keeping their identifying information confidential

in accordance with the laws of the District of Columbia.  *See,* Good Dep., at 134, attached hereto

as **Exhibit K**, (testifying, as the Director of CFSA during the relevant time period, that Ms. Tabb

was terminated because "she had violated confidentiality by taking the picture of the alleged

CFSA client to the media");

---

[1] See also, § 16-2332(a), which provides that "[j]uvenile social records refers to all social records made with respect to a child in any proceedings over which the Division has jurisdiction under section 11-1101(3), including preliminary inquiries, predisposition studies, and examination reports."  Those records shall be kept confidential and shall not be open to inspect, subject to a few exceptions.  *See* §§ 16-2332(b), 16-2332(e).  Section 16-2335 provides that "no person shall disclose, inspect, or use [juvenile social] records in violation of … section [16-2332]".  *See* 16-2332(e).

Plaintiff acknowledged that CFSA maintains confidential information about the children in its care.  *See* Tabb Dep., at 86 -88, and 91, attached hereto as Exhibit L.  She further testified that she knew that this confidential information was "not just given out to the public."  *See* Tabb Dep., at 88-89 and 90 -92, attached hereto as **Exhibit L** (plaintiff testifying that it is her understanding that CFSA "wouldn't go out and divulge" identifying information).  Keeping identifying information about children in CFSA care is a  paramount government interest.  Plaintiff recognized the importance of confidentiality as she testified that in most cases, a person must seek a court's order before waiving a CFSA child's confidentiality.  *See* Tabb Dep., at 94, **Exhibit M**.  Plaintiff admits that she used the agency's camera to take pictures of a child in CFSA care.  *See* Tabb. Dep., at 158 – 159, 161 -163, attached hereto as **Exhibit N**.  Plaintiff further admits that she did not have the child's permission to share the pictures with the news media or television media.  *See* Tabb Dep., at 163-164, attached hereto as **Exhibit O**.  Additionally, she never obtained a court order permitting the child's confidential information to be disclosed.  Plaintiff admitted that although she could have alerted the media without providing them photographs, she gave pictures of the child to two television stations, ABC and CBS.  *See* Tabb Dep., at 184, attached hereto as **Exhibit P**.  According to the evidence adducted during discovery, plaintiff gave the media an unaltered copy of the picture, showing the CFSA child's face.  *See* Tabb Dep., at 184 attached hereto as **Exhibit R**; *see also* Pl.'s Mot., at  3 and 5.  As such, plaintiff disclosed confidential information about a child in CFSA's custody in violation of §§ 4-1303.06, and § 16-2332.  *See* Tabb Dep., at 244.

The District's interest in protecting the confidentiality of children far outweighs plaintiff's purported interests.  Plaintiff's knowing violation of the statute resulted in her termination.  Therefore, plaintiff's summary judgment should be denied.

**B.    Plaintiff's D.C. Whistleblower Act Claim Fails as a Matter of Law.**

Plaintiff argues that she was engaged in protected activity for which the District wrongfully terminated her in violation of the D.C. Whistleblower Act (hereafter "the Act"). Plaintiff avers that she made protected disclosures to Susan Newman, Senior Advisor for Religious Affairs for the Executive Office of the Mayor, Deputy Mayor Neil Albert, and the media that children were allegedly sleeping in the building at CFSA. *See* Shirley Tabb's Declaration at ¶36, s*ee* Tabb Dep., at 145 – 147 **Exhibit J**; *see also* Tabb Declaration at ¶ 39, attached hereto as **Exhibit H.**  Contrary to plaintiff's arguments, her alleged disclosures are not protected activity as contemplated by the Act.

According to the Council, "the public interest is served when employees of the District government are free to report waste, fraud, abuse of authority, violations of law, or threats to public health or safety without fear of retaliation or reprisal. *See* D.C. Official Code § 1-615.51. The Act  defines the term ¨protected disclosure" as "any disclosure of information, not specifically prohibited by statute, by an employee to a supervisor or a public body that the employee **reasonably believes** evidences "gross mismanagement, gross misuse or waste of public resources or funds, abuse of authority in connection with the administration of a public program or the execution of a public contract, a violation of a federal, state, or local law, rule or regulation, or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature; or a substantial and specific danger to the public health and safety." D.C. Official Code § 1-615.52(6) (emphasis added).  Under the Act, the following constitute protected disclosures:

(A)    Gross mismanagement;

(B)    Gross misuse or waste of public resources or funds;

> (C)    Abuse of authority in connection with the administration of a public program or the execution of a public contract;
>
> (D)    A violation of a federal, state, or local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor which is not a merely technical or minimal nature, or
>
> (E)    A substantial and specific danger to the public health and safety.

In this case, plaintiff claims "the fact that children are sleeping in [the CFSA] building **[was] a well known fact. Everyone** in the agency **[knew]** it, as well [as the] community [sic]." *See* Shirley Tabb's Declaration at ¶36, attached hereto as **Exhibit H**, *incorporating by reference* Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 4, attached hereto as **Exhibit D** (emphasis added).  Plaintiff's alleged disclosures, about which "everyone at CFSA knew," that is, that children were sleeping in the buildings at CFSA, does not evidence a protected disclosure as contemplated by the statute.  Because plaintiff testified that everyone knew about the alleged protected disclosure, it is not a disclosure at all.  Therefore, plaintiff's claim under the Act fails because she has not made any disclosures for which she claims she was terminated.

Plaintiff's alleged disclosure is not a factor enumerated under the Act.  Her alleged disclosures do not evidence gross mismanagement, gross misuse or waste of public resources  or funds, is not an abuse of authority in connection with the administration of a public program or the execution of a public contract, does not evince violation of a federal, state, or local law, rule or regulation, or a term of a contract between the District and a contractor, and does not pose a substantial or specific danger to the public health or safety.

In support of her entitlement to relief under the Act, plaintiff avers that "the goal is that CFSA [would not] have [a] child under twelve staying overnight in the Intake Center."  Plaintiff

submits that as of June 2005, the Court Monitor documented that eighteen children stayed overnight in violation of the standard.  Pl.'s Mtn, at pg. 10.  Based on the evidence submitted by plaintiff, the Court Monitor had already found that CFSA had violated the standard, so her alleged disclosures would not be protected disclosures at all.  Moreover, according to plaintiff, it was the **goal** not to have children over twelve not staying overnight at the Intake Center, not a mandatory requirement.  Pl.'s Mot.., at 10.

While plaintiff claims that the Court Monitor had evidence that in June 2005, eighteen children stayed overnight, according to her alleged protected disclosure, six children stayed overnight at CFSA.  Plaintiff's alleged disclosure would only show that CFSA was moving closer to its goal not to have children stay overnight at the Intake Shelter, as it had reduced the number of children allegedly staying overnight at CFSA.  Therefore, plaintiff's disclosure does not evidence mismanagement.  Instead, because plaintiff violated confidentiality laws when she disclosed photographs of children in CFSA's care to the media and others, her termination was lawful and her claim under the Act fails as a matter of law.

### C.    The District Had a Legitimate Basis to Terminate Plaintiff

Plaintiff's knowing violation of the statute that mandated the confidentiality of the identity and other information related to children in CFSA's care is a legitimate basis for her termination.  Plaintiff's production of photographs of children in CFSA's care to the news media is without dispute. *See* Tabb Dep., at 163-164, attached hereto as **Exhibit O.**  Additionally, she never obtained a court order permitting the child's confidential information to be disclosed.  She admitted that although she could have alerted the media without providing them photographs, she gave pictures of the child to two television stations, ABC and CBS.  *See* Tabb Dep., at 184, attached hereto as **Exhibit P**.  She gave the media an unaltered copy of the picture, showing the

14

CFSA child's face, thereby disclosing confidential information to someone outside of CFSA. *See* Tabb Dep., at 244, attached hereto as **Exhibit S**. The District can ill afford to have staff remain on its payroll who are charged with protecting children and their interests, but have a disregard for the law, particularly the law that governs the confidential nature of its provision of services to children who either are suspected of having been abused and/or neglected, or have in fact been abused or neglected.  Plaintiff's motion for summary judgment must be denied because she was not terminated because of her alleged First Amendment rights or her alleged protected disclosures, but because she breached the confidentiality of those children of whom she took photographs and divulged those photographs to the media. *See*, Good Dep., at 134 attached hereto as **Exhibit K** (testifying, as the Director of CFSA during the relevant time period that Ms. Tabb was terminated because "she had violated confidentiality by taking the picture of the alleged CFSA client to the media").

**V.     CONCLUSION**

For the reasons set forth above, Defendants respectfully request that Plaintiff's Motion for Summary Judgment be denied.

Respectfully submitted,

PETER J. NICKELS
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Patricia A. Jones
PATRICIA A. JONES [428132]
Chief, General Litigation Sec. IV

/s/Zuberi B. Williams_____

ZUBERI BAKARI WILLIAMS[2]

Assistant Attorney General

Office of the Attorney General

441 Fourth Street, N.W., Suite 6N013

Washington, D.C. 20001

Office: (202) 724-6650; (202) 727-6295

Facsimile: (202) 730-0623

Email:  Zuberi.Williams@dc.gov

---

[2] Appearing under Rule 49(c)(4) of the District of Columbia Court of Appeals, and LCvR 83.2.