UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHIRLEY TABB                             )
                                         )
                                         )
                                         )
            Plaintiff,                   )
        v.                               )
                                         )
DISTRICT OF COLUMBIA; and                )
                                         )
BRENDA DONALD WALKER,                    )        CASE No.  06-00789 (PLF)
                                         )
        Defendants.                      )
                                         )
                                         )
                                         )
                                         )
                                         )

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

**Plaintiff's Response to the Material Facts Asserted by Defendants**

1. **Fact asserted by Defendants**: The plaintiff was employed as a Public Information

Specialist with Child and Family Services (hereafter "CFSA"). *See* Tabb Dep., at 51 – 55

and 66, attached hereto as Exhibit B.  **Plaintiff's Response: admitted.**

2. **Fact asserted by Defendants**: Brenda Donald Walker was the Director of CFSA. *See* District

of Columbia's Responses to Plaintiff's Interrogatory #4, attached as Exhibit A.

**Plaintiff's Response: admitted.**

3. **Fact asserted by Defendants**: Mindy Good was plaintiff's immediate supervisor during plaintiff's tenure as a Public Information Specialist. Tabb Dep. at 10, hereto attached as Exhibit R. **Plaintiff's Response: admitted in part.** Ms. Good was Plaintiff's immediate supervisor only during the last part of her tenure as a CFSA employee.

4. **Fact asserted by Defendants**: As a PI Specialist, it was the plaintiff's job to develop communication campaigns for agency programs and disseminate information on behalf of the agency. *See* 10/10/05 Response to Notice of Summary Removal at pgs 1-2, incorporated by reference in Tabb Declaration at ¶ 49, attached hereto as Exhibit C**;** *see also* Tabb Dep., at 66 – 68, attached hereto as Exhibit D. Specifically, the job required Ms. Tabb to be knowledgeable about CFSA program activities, initiatives in the agency and required her to stay abreast of systemic issues, problems and progress in CFSA. S*ee* Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 5, incorporated by reference in Shirley Tabb's Declaration at ¶ 49, attached hereto as Exhibit E; Tabb Dep., at 66 – 68, attached hereto as Exhibit D.

**Plaintiff's Response:** the general principle that Plaintiff's job duties involved communication campaigns as assigned and that she would be knowledgeable about the programs and projects described by those campaigns is admitted.  However, the references cited by Defendants do not indicate that Ms. Tabb was required to "stay abreast of systemic issues, problems and progress in CFSA" except in connection with the agency newsletter or a specific communication campaign. Specifically, Ms. Tabb was not assigned the task of communicating about CFSA's progress or setbacks in meeting the requirements established by the Court through the *LaShawn* litigation.

5. **Fact asserted by Defendants**: As Public Information Specialist, plaintiff was required by law to report child abuse and neglect in the work place. *See* 10/10/05 Response to Notice of Summary Removal at pg 4., incorporated by reference in Tabb Declaration at ¶ 49, attached hereto as Exhibit C; *see also* Tabb Dep., at 240-41, attached hereto as Exhibit S. **Plaintiff's Response:** denied. Plaintiff's position as a Public Information Specialist did not require her to report child abuse or neglect. However, as a licensed social worker Ms. Tabb is required by law (not by any position description) to report child abuse and neglect.

6. **Fact asserted by Defendants**: Plaintiff alleges that in March 2005, in her capacity as Public Information Specialist, she contacted a public information officer with the Department of Human Services about developing a campaign to increase awareness around child abuse and neglect, reviving the Back to Sleep Campaign and other projects with CFSA. *See* Tabb Dep., at 251 – 255, attached hereto as **Exhibit F**; *see also* Amended Complaint, ¶ 17. Plaintiff admits that she used agency equipment for purposes of her communication. *See* Shirley Tabb Declaration, at ¶49, *incorporating by reference* Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 5; *see also* Tabb Dep., at 251 – 255, attached hereto as **Exhibit F. Plaintiff's Response:** Ms. Tabb admits that she communicated with a public information officer at the District's Department of Human Services (DHS) concerning the subject matter described. Ms. Tabb further admits that she stated on page 5 of her response to the admonition levied against her that: "I used agency equipment to assist District of Columbia Children in a critical situation under authority of DC Code § 4-1301 - 4-1321.06." Chapter 13 of the D.C. Code addresses child abuse and neglect issues.

7. **Fact asserted by Defendants**: Plaintiff alleges that in July 2005, she spoke to Brenda Donald Walker, her supervisor, about children sleeping at CFSA and her desire to address the issue in

her capacity as a government employee. Tabb Dep., at 251 – 255, attached hereto as Exhibit F;

*see also* Shirley Tabb Declaration, at ¶¶ 30-31, attached hereto as Exhibit G.  **Plaintiff's**

**Response:** Ms. Tabb admits that she met with Defendant Brenda Donald in July 2005 and

discussed the problem of children sleeping in the CFSA office building and how she might use

her skills to recruit emergency homes.

8. **Fact asserted by Defendants**: According to the plaintiff, "the fact that children are sleeping in

our building [was] a well known fact. Everyone in the agency [knew] it, as well community

[sic]." *See* Shirley Tabb's Declaration at ¶36, attached hereto as Exhibit G, *incorporating by*

*reference* Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 4, attached hereto as

Exhibit E; s*ee also* Tabb Dep., at 177 – 79, 181-82 attached hereto as Exhibit I.  **Plaintiff's**

**Response:** denied.  The statement made by the Defendants and references cited do not support

the fact(s) being asserted.  Ms. Tabb, in relevant part, testified as follows:

> Q   Okay.  Isn't it true that everybody knew
> that kids were sleeping in the building as CFSA, it
> was public knowledge?
> MR. CONDIT:  Objection, lack of foundation,
> object to the form.  You can answer, if you know.
> THE WITNESS:  I think people knew, but I
> don't say -- I don't think everybody knew but some
> people did know.
> BY MR. WILLIAMS:
> Q   Who did you think knew?
> A   I mean, I know Brenda knew.  Brenda Donald
> knew.  Mindy Good knew.  I mean, it's hard to say who
> all knew because people who were coming in, a social
> worker coming in early in the morning or working late
> at night who had to go down to intake, they would see
> the kids down there.

Tabb Deposition at 176 - 177.   Ms. Tabb's statement in response to her admonition to the effect

that "[t]he fact that children are sleeping in the building is a well known fact" was referring to the historical fact that the issue has recurred over the years.

9.  **Fact asserted by Defendants**: Plaintiff avers that on August 15, 2007, in her capacity as Public Information Specialist, she contacted Susan Newman, Senior Advisor for Religious Affairs for the Executive Office of the Mayor. *See* Shirley Tabb's Declaration at ¶36, attached hereto as Exhibit G incorporating by reference Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pg. 4 attached hereto as Exhibit E. During her communication with Susan Newman, plaintiff avers that she identified her background and official position with CFSA, and discussed the lack of foster home resources for CFSA and the possibility of contracting to provide a temporary placement for children. *See* Shirley Tabb's Declaration at ¶49, attached hereto as Exhibit G incorporating by reference Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition pgs. 4, 5, attached hereto Exhibit E.  **Plaintiff's Response:** Ms. Tabb admits that on August 15, 2005 she spoke with the Mayor's Religious Affairs advisor, Dr. Susan Newman, and disclosed that children were sleeping in the CFSA office building and that she wanted to do something about it. Tabb Declr. ¶ 35.   Plaintiff denies all other characterizations or facts asserted in the Defendants' statements.

10. **Fact asserted by Defendants**: Plaintiff avers that in September 2005, as Public Information Specialist, she contacted Deputy Mayor Neil Albert, who was responsible for the performance of CFSA. *See* Tabb Dep., at 145 – 147 Exhibit J; *see also* Tabb Declaration at ¶ 39, attached hereto as Exhibit G**.**. During her communication with Deputy Mayor Albert, plaintiff avers that she identified her background and official position with CFSA and indicated that there were children sleeping in the building at CFSA. *See* Tabb Declaration, at ¶¶ 40-41, attached hereto as Exhibit

G. Plaintiff also avers that she communicated concerns relayed to her by a placement worker at CFSA. *See* Tabb Declaration, at ¶ 41, attached hereto as Exhibit G. **Plaintiff's Response:** Ms. Tabb admits that she communicated with Deputy Mayor Neil Albert in August and September 2005 regarding the issue of children sleeping in the CFSA office building. See, Tabb at 143 - 145; Albert Deposition at 32 - 43.

11. **Fact asserted by Defendants**: Plaintiff avers that in September 2005, as Public Information Specialist, she contacted the media concerning the lack of placement resources. *See* Tabb Declaration, at ¶¶ 43- 44, attached hereto as Exhibit G. **Plaintiff's Response:** Ms. Tabb denies that she contacted the media in her role as a CFSA Public Information Specialist. Ms. Tabb admits that she did speak to the media about the issue of children sleeping in the CFSA office building and that stories were aired and published bringing attention to the issue. See, *e.g.*, Tabb Declr. ¶s 42 - 45.

12. **Fact asserted by Defendants**: CFSA provided plaintiff with a notice of summary removal before her termination. *See* Tabb Declaration at ¶¶ 46-50, attached hereto as Exhibit G. **Plaintiff's Response:** denied. The summary removal served as Ms. Tabb's termination from CFSA. She was given no opportunity to address the issues raised against her in advance of being removed/terminated from her position at CFSA. See, Declaration of Stephen White (Plaintiff's Exhibit 10 ¶3) indicating that Defendant Brenda Donald had "stated words to the effect that there: was no Point in discussing Ms. Tabb's circumstances because Ms. Tabb was not going to get her job back. Based upon Ms. Walker's statements, it was clear to me that any attempt ask CFSA to reconsider or

modify its decision regarding Ms. Tabb's employment would be futile."

13. **Fact asserted by Defendants**: Pursuant to Chapter 16, § 1616 of the District Personnel Regulations (DPM), the notice of summary removal affords the plaintiff the opportunity to participate in an administrative hearing prior to termination. *See* DPM, Chapter 16, § 1616.

**Plaintiff's Response:** this is a statement that raises a question of law not fact.  To the extent a response is required Plaintiff denies the stated proposition.

14. **Fact asserted by Defendants**: Plaintiff admitted that she did not appear for her October 27, 2005, scheduled hearing. *See* Tabb Dep., at 196-199, attached hereto as **Exhibit K;** *see also* Tabb Declaration at ¶¶ 49, 50 *incorporating by reference* 10/10/05 Response to Notice of Summary Removal at pg 5, attached hereto as **Exhibit C.   Plaintiff's Response:** Ms. Tabb admits that she did not attend the scheduled hearing for the reasons stated in her testimony.

15. **Fact asserted by Defendants**:  Plaintiff acknowledges that the defendants granted her family medical leave and that she took family leave from March 2005- July 2005. *See* Tabb Declaration, at ¶13, attached hereto as **Exhibit G**.  **Plaintiff's Response:** Ms. Tabb admits that she was granted leave for the period March through July 2005, but did not take leave for that entire period.  Ms. Tabb returned to work on or about May 9, 2005. Tabb Declr. ¶ 15.

**Argument - The Defendants are not Entitled to Summary Judgment on any Claim**

**I.      Plaintiff has Proven Her First Amendment Claim and is Entitled to Summary Judgment**

Defendants assert that Plaintiff Tabb did not speak as a "private citizen", but

rather raised concerns to the media about children sleeping in the CFSA office building "in her capacity as the Public Information Specialist at CFSA." Def. Memo at 11 - 14. However, there are no facts that support this argument.

First, Defendants admit that at the time of her communication to the media Ms. Tabb was on approved leave. Defendant District of Columbia's Response to Plaintiff's Request for Admissions at ¶s 16 - 17. When Ms. Tabb spoke to the media she was <u>not</u> acting in her capacity as a Public Information Specialist and had been given no assignment or responsibility to communicate with the media about the issue of children sleeping in the CFSA office building or the agency's efforts to remedy the situation. In fact, Public Affairs Officer Mindy Good, who was Ms. Tabb's immediate supervisor, chided Ms. Tabb for even speaking out about an idea at an executive staff meeting. Tabb at 110 - 114. In general, Ms. Tabb was instructed that she was not to speak directly to the media. Tabb at 79 -80.

Second, Defendant Donald testified that it was the unwritten policy of her administration that employees could not raise issues outside the chain-of-command. Donald at 75 - 77. Ms. Donald was "furious" when Ms. Tabb simply raised her ideas and concerns with the Deputy Mayor and the Mayor's Religious Affairs Advisor. Donald at 110 - 112. In this managerial environment it is plainly incredible to believe that anyone would think that it was part of Ms. Tabb's job duties to talk to the media about children sleeping in the CFSA office building because of the lack of timely foster care placements.

Defendants assert that the holding in the Supreme Court's decision in *Garcetti v. Ceballos*, 126 S.Ct. 1951 (2006) requires dismissal of Ms. Tabbs's *First Amendment* claims. Def.s Memo at 11 - 12, 14. The decision in *Garcetti* turned on the question of whether a

memo from a deputy district attorney raising questions about the legitimacy of a search

warrant could be considered speech protected by the *First Amendment*.  Ceballos claimed

that he was retaliated against for submitting the memo.  The Supreme Court held that in

circumstances where public employees make statements pursuant to their official duties,

they are not protected from discipline by the *First Amendment*.

> Significantly, the Supreme Court emphasized the narrow nature of its holding.

> The controlling factor in Ceballos' case is that his expressions were  made pursuant
> to his duties as a calendar deputy. See Brief for Respondent 4 ("Ceballos does not
> dispute that he prepared the memorandum 'pursuant to his duties as a prosecutor'").
> That consideration -- the fact that Ceballos spoke as a prosecutor fulfilling a
> responsibility to advise his supervisor about how best to proceed with a pending
> case -- distinguishes Ceballos' case from those in which the *First Amendment*
> provides protection against discipline. We hold that when public employees make
> statements pursuant to their official duties, the employees are not speaking as
> citizens for *First Amendment* purposes, and the Constitution does not insulate their
> communications from employer discipline.

*Garcetti*, 126 S.Ct. at 1959 - 1960.[1]  Therefore, the speech at issue must be strictly part of an

employee's job duties in order for *First Amendment* protections to be nullified.

Finally, in light of the admissible evidence and state of the law the Defendants' reliance on

*Garcetti* and *Mills* to support their argument for summary judgment is greatly misplaced.  In both

cases, the public employee involved took the action that was the subject of the claim of First

Amendment protection while on duty and arguably as part of her or his duties.   Ms. Tabb clearly

acted as a citizen not as a public information specialist when she contacted the media about her

concerns.  Considering these undisputed facts, Ms. Tabb is clearly entitled to First Amendment

---

[1]  In addition, the Court noted that broadly written job descriptions cannot form a basis
for restricting employees' rights.  *Garcetti*, 126 S.Ct. at 1961 - 1962.

protection.

## II.    Defendants are not Entitled to Qualified Immunity

As Ms. Tabb has explained in previous filings with the Court, "[q]ualified immunity generally shields public officials from civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)."  *Moore v. Hartman*, 388 F.3d 871, 872 (D.C. Cir. 2004). More specifically, the Court in *Moore* stated:

> The "salient question," then, is "whether the state of the law [at the relevant time] gave [the officials] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope,* 536 U.S. at 741.

*Moore*, 388 F.3d at 876 - 877.   As discussed in *Moore*, the two-part analysis for a qualified immunity defense involves (1) establishing what the law is, and (2) whether the law was clearly established.

Ms. Tabb was summarily terminated in October 2005.  At that time the state of First Amendment protections for public employees was quite clear.

> For purposes of qualified immunity, a right is "clearly established" if "the contours of that right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson v. Layne*, 526 U.S. 603, 119 S.Ct. 1692, 1699, 143 L.Ed.2d 818 (1999); see also *Farmer v. Moritsugu*, 163 F.3d 610, 613 (D.C.Cir.1998). The "clearly established right" requirement protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); see, *e.g.*, *Garcia v. District of Columbia*, 56 F.Supp.2d 1, 14 (D.D.C.1998) (no immunity, because "any reasonable correctional officer must know that retaliation for the filing of a grievance would violate the inmate's constitutional rights").

*District Council 20, AFSCME v. District of Columbia*, 150 F.Supp.2d 136, 145 (D.D.C. 2001).

In Ms. Tabb's case, the right of public employees to speak out on matters of public concern had been clearly established for a number of years. For example, the Supreme Court has held that

> teachers may not be "compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the public schools in which they work." *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). See also *Keyishian v. Board of Regents*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); *Shelton v. Tucker*, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); *Wieman v. Updegraff*, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952).

*City of Madison, Joint School District No. 8, et al., v. Wisconsin Employment Relations Commission et al.*, 429 U.S. 167, 175 (1976). Of course, the right to comment on the operation of public agencies is not limited to teachers. In general, public employees enjoy the privilege of exercising their First Amendment rights. *Hubbard v. EPA*, 949 F.2d 453, 459 (D.C. Cir. 1992).

There is no more obvious act that exemplifies the rights afforded by the First Amendment than a public employee reporting her agency's failure to properly care for children it takes into custody to the news media. There is no question that this action by Ms. Tabb triggered anger on the part of Defendant Donald and other CFSA managers. Good at 118 - 119. Defendant Donald terminated Ms. Tabb primarily because Ms. Tabb allegedly "misrepresented agency practice to the media" by reporting about children sleeping in the CFSA office building. However, Ms. Donald could identify no evidence indicating that Ms. Tabb had in any way misrepresented agency practice to the media. Donald at 177 - 185. Considering that Defendant Donald was "furious" about Ms. Tabb's

-11-

protected communications with the Mayor's office, it is clear that Ms. Tabb's communication with the media was the "straw that broke the camel's back" triggering her termination by Defendant Donald. Donald at 166:5 - 166:9.

Defendant Donald "knew or should have known that it is impermissible to use protected First Amendment associations [and speech] as a substantial motivating factor in a termination decision. The First Amendment's guarantee of freedom of speech protects government employees from termination because of their speech on matters of public concern. See *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)." *District Council 20*, 150 F.Supp.2d at 145.

The Defendants' plea for immunity should be denied.

### III.    Municipal Liability is Established

The Defendants' argument that Plaintiff "has failed to adduce any evidence to support a finding that any District custom, policy or practice and/or final policymaker caused a constitutional deprivation" is nothing more than a bald assertion. Def.s Memo at 17. In reaching this conclusion and demanding that Ms. Tabb's constitutionally based claims be summarily dismissed, the Defendants have failed to discuss any of the facts that have been developed in the discovery record. Considering their failure to even barely justify their argument, the Defendants must be denied relief. However, in an abundance of caution, Plaintiff will explain how the record supports her claims, or, at a minimum, indicates factual disputes that must be addressed at trial.

> There are a number of ways in which a "policy" can be set by a municipality to cause it to be liable under § 1983: the explicit setting of a

> policy by the government that violates the Constitution, *see Monell, 436 U.S. at 694-95*; the action of a policy maker within the government, *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123-30, 99 L. Ed. 2d 107, 108 S. Ct. 915 (1988); the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become "custom," *id. at 130*; or the failure of the government to respond to a need (for example, training of employees) in such a manner as to show "deliberate indifference" to the risk that not addressing the need will result in constitutional violations, *Harris,* 489 U.S. at 390; *Daskalea v. Dist. of Columbia,* 343 U.S. App. D.C. 261, 227 F.3d 433,  441 (D.C. Cir. 2000). Deliberate indifference is determined by analyzing whether the municipality knew or should have known of the risk of constitutional violations, an objective standard. *Farmer,* 511 U.S. at 841.

*Baker v. District of Columbia*, 326 F.3d 1302, 1306 - 1307 (D.D.C. 2003).  In the instant case, the Defendants have taken actions that reflect each of the ways in which a policy can be set by a municipality for the purposes of *Section 1983* liability.   However, as will be made clear, Defendant Donald's role as policymaker and acting official resolves the issue.

It is not disputed that Defendant Brenda Donald was the Director of CFSA and a Deputy Mayor during the period relevant to this litigation.  As CFSA Director, Ms. Donald was charged with managing CFSA to ensure that the agency met its obligations to the families and children of the District who come under the agency's care. See, *e.g.*, D.C. Code § 4-1303.03.  Defendant Donald was empowered by law to: (1) receive and investigate reports of abuse and neglect and remove children from their families; (2) take actions necessary to accomplish the purposes of the Adoption and Safe Families Amendment Act; (3) take into custody children that have been abused or neglected ; (4) deliver a broad range of child and family services; and (5) be the personnel authority for all employees of the Agency, including the exercise of full

authority to hire, retain, and terminate personnel.  D.C. Code §§ 4-1303.03(a)(1), (a)(6), (a)(7), (a-1)(1), (a-1)(3), (a-1)(8).  Under District law, Defendant Donald had significant legal authority, including the authority to terminate personnel.

It is also not disputed by any admissible evidence that as a policymaker and final decision maker, Defendant Donald: (1) was "furious" because Ms. Tabb discussed her concerns about children sleeping in the CFSA office building with the Deputy Mayor and the Mayor's Religious Affairs advisor;[2] (2) summarily terminated Ms. Tabb within two weeks of the airing and publication by the media of her disclosures about children sleeping in the CFSA office building;[3] (3) enforced an unwritten policy that CFSA employees were not permitted to take their concerns outside of CFSA;[4] (4) provided no warning or opportunity for Ms. Tabb to challenge the allegations against her prior to being summarily removed from her job while on medical leave;[5] (5) stated to a union official shortly after Ms. Tabb's summary removal but before any other administrative process that Ms. Tabb was not going to get her job back;[6] and (6) in her decision to

---

[2] Donald at 110 - 112.

[3] Plaintiff's Statement of Material Facts ¶ 26; Donald at 21, 166:5; Good at 84; Charles at 37, 141.

[4] Donald at 75 - 77.

[5] Tabb at 208:20 - 209:6; Donald at 170:9 - 170:19.

[6] Plaintiff's Memorandum in Support of Summary Judgment, Exhibit 10, Declaration of Stephen G. White.

terminate Ms. Tabb secretly considered alleged "overall performance" issues and denied Ms. Tabb any opportunity to address or respond to those concerns.[7]

The uncontroverted evidence clearly demonstrates that Defendant Donald was a policymaker and the final decision maker in the action taken to terminate Ms. Tabb. The Defendants offer no evidence to the contrary and have made no effort to argue that the evidence discussed herein should be disregarded. Thus, Plaintiff has established municipal liability for the constitutional violations she has suffered.

**IV.    Defendants Blatantly Denied Plaintiff her Right to Due Process**

The Defendants argue that they provided the Plaintiff with adequate pre-termination due process. Defendants support this claim by reciting the steps that were available for Ms. Tabb to follow in order to receive adequate due process. There are at least three significant flaws in the sterile argument presented by the Defendants. First, Ms. Tabb was not adequately informed of the charges or evidence against her. Second, the Defendants failed to follow the District's legal standards for summary removal of an employee. And third, the process offered to Ms. Tabb was a sham. Each of these issues will be discussed in turn.

**A.    Defendants Failed to Adequately Inform Ms. Tabb of the charges and evidence against her**

Plaintiff was summarily removed and terminated from her position effective

---

[7] Plaintiff's Statement of Material Facts ¶ 36.

October 3, 2005.[8]  The letter memorializing Ms. Tabb's removal was issued by Defendant

Donald.  In the letter Ms. Tabb was accused of: (1) using the District's computers to e-

mail another District agency about an "unauthorized campaign to raise awareness about

child abuse and neglect;" (2) misrepresenting agency practice to the media; (3) violating

CFSA confidentiality laws; (4) abusing family medical leave by coordinating interviews with the

media.  Ms. Tabb was not informed of what policy, regulation, or law she purportedly violated in

using e-mail to communicate with another District agency.  Nor was Ms. Tabb informed

of what "confidentiality laws" she purportedly violated.  Similarly, it was not explained

to Ms. Tabb what she stated to the media that allegedly misrepresented agency practice

and it was not explained how talking with the media amounted to an abuse of leave.

Moreover, Defendant Donald withheld information from the October 3rd removal-

termination letter that she relied upon in making her decision to terminate Ms. Tabb.

Ms. Donald testified that she has concerns about Ms. Tabb's overall performance but did

not include that issue in her October 3rd letter.  Donald at 230:8 - 232:6.  Absent notice of

this issue, Ms. Tabb had no ability to contest or respond to it.

In *Cleveland Board of Education v. Loudermill*, 470 U.S. 432 (1985), the Supreme

Court articulated the rule and rationale that must be followed when the government

takes action to terminate public employees who have a property interest in their jobs.

The court stated, in part:

An essential principle of due process is that a deprivation of life, liberty, or

---

[8]  Plaintiff's Statement of Material Facts ¶s 26 - 29.

property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950).* We have described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." n7 *Boddie v. Connecticut, 401 U.S. 371, 379 (1971)* (emphasis in original); see *Bell v. Burson, 402 U.S. 535, 542 (1971).* This principle requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. *Board of Regents v. Roth, 408 U.S., at 569-570; Perry v. Sindermann, 408 U.S. 593, 599 (1972).* As we pointed out last Term, this rule has been settled for some time now. *Davis v. Scherer, 468 U.S. 183, 192, n. 10 (1984); id., at 200-203* (BRENNAN, J., concurring in part and dissenting in part). Even decisions finding no constitutional violation in termination procedures have relied on the existence of some pretermination opportunity to respond. For example, in *Arnett* six Justices found constitutional minima satisfied where the employee had access to the material upon which the charge was based and could respond orally and in writing and present rebuttal affidavits. See also *Barry v. Barchi, 443 U.S. 55, 65 (1979)* (no due process violation where horse trainer whose license was suspended "was given more than one opportunity to present his side of the story").

*Loudermill*, 470 U.S. at 542.  These principles continue in force today.  See, *e.g., Thompson v. District of Columbia*, 428 F.3d 283, 287-288 (D.C. Cir. 2005); *Crockett v. District of Columbia Metropolitan Police Dept.*, 293 F.Supp.2d 63 (D.D.C. 2003).

In the instant case, Ms. Tabb was given no opportunity to address the charges against her pre-termination.  That is, Plaintiff was afforded no due process prior to her removal on October 3, 2005.  Of course, the Defendants will assert that Ms. Tabb was not terminated on October 3rd, rather they will insist that she was terminated in November 2005 after she was provided an opportunity to contest the charges against her.  The evidence does not support the Defendants' assertions that they provided any pre-termination due process.

**B.    The Process Offered to Ms. Tabb was a Sham**

To the contrary, the uncontroverted record reveals that Ms. Tabb was not provided with any advance notice of her termination and was given no opportunity to contest the allegations raised against her prior to October 3rd.  Tabb at 208:20 - 209:6; Donald at 170:9 - 170:19.  It was clear from the beginning of Ms. Tabb's ordeal that Ms. Donald was not going to permit her to get her job back.  See, Declaration of union official Stephen White (Plaintiff's Memorandum in Support of Summary Judgment, Exhibit 10 ¶3).

Moreover, CFSA Deputy Director Ronnie Charles was assigned by Defendant Donald to issue the notice of final determination regarding Ms Tabb's termination. Charles at 139:21 - 140:2.  Mr. Charles functioned as a rubber stamp who did no independent assessment of the information to reach a conclusion.  Charles at 73:3 - 74:4, 123:9 - 124:14, and 125:6 - 125:10.[9]  In fact, Mr. Charles understood that his role in the process was to validate the decision that was made much earlier by Ms. Donald. Charles at 141:10 - 141:19.   To add insult to injury in this purported "due process" scheme, Mr. Charles could not remember whether he reviewed Ms. Tabb's written response and objection to Defendant Donald's October 3rd termination letter.  Charles at 141:6 - 141:9, 142:2 - 147:15.  There is nothing in the agency record that has been provided to the Plaintiff indicating that Ms. Tabb's written rebuttal was ever considered by Mr. Charles before he confirmed her termination.

---

[9]  Further, Mr. Charles admitted that he had little or no personal knowledge of Ms. Tabb's alleged work performance or attendance issues.  Charles at 54:12 - 55:18; 99:12 - 100:14; 104:5 - 104:21; 122:20 - 123:22; 125:6 - 125:17: 126:15 - 126:18.

Under the circumstances presented by the record, it is clear that Ms. Tabb was terminated on October 3rd, 2005. She received no pre-termination opportunity to confront the allegations or present evidence. The so-called process that followed was a sham that provided no meaningful opportunity for Ms. Tabb to contest the charges against her and receive an unbiased review of the evidence.

Beyond the sham process, the Defendants implemented a plan to damage Ms. Tabb's reputation and undercut her disclosures about children sleeping in the CFSA office building by providing unflattering personnel information to Court Monitor Judy Meltzer in order to try and assuage Judge Hogan about the issue. Charles at 166:17 - 168:22. The release of Ms. Tabb's personnel information was clearly inappropriate and demonstrates the high degree of animus and hostility CFSA management directed toward the Plaintiff. The Defendants could not risk providing Ms. Tabb with appropriate due process protections as her disclosure may have gained additional credibility that would have been damaging to the agency's position before Judge Hogan in the *LaShawn* litigation.

It is evident that Ms. Tabb was denied any reasonable measure of due process. The Court should reject the Defendants' arguments on this issue.

**C.    Defendants Violated the District's Personnel Regulations in Summarily Removing Ms. Tabb from her Position**

The District's personnel regulations make clear that the proponent of a summary removal must make a good faith effort to determine that the reason for removal that is

-19-

relied upon is met.  DCMR § 6-1616.2.  Defendant Donald's notice of summary removal

fails to evidence any good faith effort to insure that there was in fact a basis for summary

removal.  For example, as pointed out previously, although much is made of the

Plaintiff's alleged violation of "CFSA confidentiality laws", no law, regulation or policy

is cited in the notice.  No facts are stated supporting the allegation that the Plaintiff

disclosed "detailed personal information about why the child was in CFSA's custody."

And, regarding the assertion that the Plaintiff "misrepresented agency practice", there is

no policy or practice cited.

Additionally, Defendant Donalds's claim in the October 3rd termination letter that

the Plaintiff was abusing Family Medical Leave is completely unsupported by reference

to any standard, physician's certification, absence of approval or other basis.  The fact

that Ms. Tabb was able to make contact with the media while she was on leave is not a

basis to claim that she abused leave.  Put it in a slightly different context, Defendant

Donald's allegation about Plaintiff's abuse of leave would mean that a parent that is

home sick could not pick up her children from school or make phone calls as such would

demonstrate an abuse of the leave policy.   Of course, such an interpretation of family

and medical leave standards strains credulity; particularly in light of Ms. Tabb's medical

issues.  See, Declaration of Shirley Tabb (Tabb Declr) ¶s 11 - 13, 33, 38.

Even a modicum of effort to investigate the issues raised against Ms. Tabb would

have demonstrated that there was no basis to impose a summary removal.  In fact,

CFSA's records demonstrate that the Plaintiff was not scheduled to return to the office

until about October 24, 2005 because of complications she was suffering from diabetes. Declaration of Shirley Tabb ¶ 38.

Absent a good faith basis for imposing summary removal "the employee shall be entitled to an advance written notice as specified in § 1608." DCMR § 6-1616.2. Plaintiff Tabb was entitled to advance written notice providing the complete bases for Defendant Donald's allegations.

Moreover, although Ms. Tabb provided a written response to Ms. Donald's baseless allegations ( Tabb Declr ¶s 46 - 49), her response was not considered or referenced in the final decision. At a minimum, under the District's regulations the hearing officer was required to review the Plaintiff's response to the notice of summary removal. DCMR § 6-1612.4(b).

In sum, the District and Defendant Donald violated District regulations in instituting the termination of Ms. Tabb via summary removal. Such flawed and retaliatory-implemented procedure does not meet minimum due process requirements.

**V.    Plaintiff is Entitled to Protection Under the D.C. Whistleblower Protection Act**

The Defendants preposterously assert that there is no "evidentiary support to show that [Ms. Tabb's] alleged disclosure was protected under the Whistleblower Act. More importantly, plaintiff has failed to show that her protected disclosures resulted in adverse action against her." Def.s Memo at 20. The Defendants have misstated the record and misunderstand the law.

It is apparent from the record that Ms. Tabb made protected disclosures about the

inadequate and untimely placement of children (*e.g.*, children sleeping in the CFSA office building) to Defendant Donald, Deputy Mayor Neil Albert and the Mayor's Religious Affairs advisor Susan Newman.  The facts regarding Ms. Tabb's protected activities are clear.

In early July 2005, the Plaintiff met with Defendant Brenda Donald and discussed the lack of emergency foster home resources that had resulted in children sleeping in the CFSA office building. Amended Complaint ¶ 13; Defendants' Answer to the [Amended] Complaint (Dkt. #22) ¶ 13.  During the meeting, the Plaintiff asked Defendant Donald if she could use her social work and marketing skills to recruit emergency homes in the faith-based community. In addition, the Plaintiff suggested that she could assume responsibility over two poorly performing recruitment units that the agency depends upon for placement resources. Defendant Donald rejected the Plaintiff's suggestions. Amended Complaint ¶ 14-15; Defendants' Answer to the [Amended] Complaint (Dkt. #22) ¶ 14-15.

On August 15, 2005, Plaintiff Tabb communicated with Dr. Susan Newman.  Plaintiff advised Ms. Newman that (a) CFSA had children sleeping in the building for lack of foster home resources; (b) she wanted the opportunity to do something about it, and ( c ) she recommended to Defendant Walker emergency placement of children at the Holiday Inn a few blocks from the CFSA office building. The Plaintiff also discussed the recruitment of emergency foster homes in the faith-based community with Ms. Newman. Amended Complaint ¶ 16; Defendants' Answer to the [Amended] Complaint (Dkt. #22) ¶ 16.

In August (and later in early September, 2005), Ms. Tabb communicated her concerns about children sleeping in the CFSA office building and the need for more placement resources to

Deputy Mayor Neil Albert. Tabb at 143 - 145; Albert at 32 - 38. Ms. Tabb sent pictures of children sleeping at CFSA to Deputy Mayor Albert. Tabb at 168; Albert at 41 - 43.

Defendant Donald was informed of Ms. Tabb's communications with Deputy Mayor Albert and Ms. Newman. Donald at 73 - 75, 110 - 112.  On August 17, 2005, Ms. Donald sent an e-mail message to Mindy Good and Ronnie Charles stating that she was "furious" about Ms. Tabb's communications with Ms. Newman. Donald at 110 - 112.  Defendant Donald testified that she was "furious" because "we have an employee who was going outside of the chain of command, raising an issue with the mayor's office that then gets to my boss, the deputy mayor, and is, you know, taken out of context."  Donald at 112:14 to 112:18.

The next day, on August 18, 2005, Ms. Tabb received an official admonition from Mindy Good. Ms. Good admonished the Plaintiff for speaking to Susan Newman about children sleeping in the CFSA office building and her desire to implement some emergency plan to address the problem. In support of her admonishment, Ms. Good also referenced that Ms. Tabb had contacted a public information officer at the D.C. Department of Human Services (DHS) in March 2005 about developing a campaign to increase awareness around child abuse and neglect, reviving the Back to Sleep Campaign and other projects. Amended Complaint ¶ 17; Defendants' Answer to the [Amended] Complaint (Dkt. #22) ¶ 17.  Despite the conscientious and protected nature of her communications and her rebuttal to the charge against her, Plaintiff Tabb was officially admonished for communicating her concerns to Ms. Newman. Amended Complaint ¶ 19; Defendants' Answer to the [Amended] Complaint (Dkt. #22) ¶ 19.

Less than three months after Ms. Tabb initiated her protected disclosures progressively up the chain-of-command to Defendant Donald, Religious Affairs Advisor Newman, and

-23-

Deputy Mayor Albert, she was terminated.  Defendant Donald's termination notice specifically identified Ms. Tabb's disclosures to another agency and her August 2005 admonishment for communicating with Ms. Newman about children sleeping in the CFSA office building.

Defendant Donald testified that she was concerned about Ms. Tabb's communications with the Mayor's office, in part, because Ms. Tabb "was going outside of the chain of command." Donald at 75. Ms. Donald testified that "it was policy that you don't communicate -- employees would not communicate directly with the mayor's office or the deputy mayor's office without going through the chain of command." Donald at 75 - 76.  Ms. Donald further testified that the policy she was referring to was "unwritten."  Donald at 77.

From the unrebutted evidence it is apparent that Ms. Tabb was terminated on October 3, 2005, at least in part, for communicating her concerns about developing a campaign to raise awareness about child abuse and neglect and raising her concerns about children sleeping in the CFSA office building directly with Defendant Donald and cabinet level officials in the Mayor's office.

The District's Whistleblower Protection Act makes clear that

> In a civil action ... once it has been demonstrated by a preponderance of the evidence that an activity *proscribed* by § 1-615.53 [footnote omitted] was a *contributing factor* in the alleged prohibited personnel action against an employee, the burden of proof shall be on the employing District agency to prove by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by this section.

*Crawford v. District of Columbia*, 891 A.2d 216, 218 - 219 (DC App 2006).  In order to obtain

summary judgment in their favor, the Defendants would have to establish by "clear and convincing evidence" that Ms. Tabb would have been terminated for legitimate reasons even absent her protected disclosures.  As the direct evidence in the record establishes that Ms. Tabb's protected disclosures were a contributing factor in her termination, the Defendants cannot meet the high evidentiary burden of demonstrating by clear and convincing evidence that their actions were not taken in retaliation for Ms. Tabb's disclosures.  Summary judgment cannot be granted to the Defendants on this record.  Rather, summary judgment should be awarded to Ms. Tabb.

## VI.   The Evidence Establishes that Plaintiff is Entitled to Relief Under the Federal and District Family and Medical Leave Acts

The Defendants make several unsupportable arguments in their effort to dismiss Plaintiff's claims pursuant to the District's and Federal Government's Family and Medical Leave Acts.  See, D.C. Code § 32-501 *et seq.*; 29 U.S.C. §§ 2601 to 2654.  First, the Defendants incorrectly state that Ms. Tabb consumed her twelve weeks of leave as provided under the federal Family and Medical Leave Act (FMLA).  Def.s Memo at 21.  In 2005, Ms. Tabb was on family leave to care for her mother from mid-March through May 9, 2005 (approximately 8 weeks).

Under District law, Ms. Tabb is entitled to sixteen weeks of family leave during a twenty-four month period.  D.C. Code § 32-502(a).  In addition, District law provides sixteen weeks of medical leave within a twenty-four month period.  D.C. Code § 32-503(a).

-25-

To establish a *prima facie* case of retaliation or discrimination under the FMLA, Ms. Tabb must show that she engaged in protected activity by requesting or taking family or medical leave; that she was adversely affected by an employment decision; and that the protected activity and the adverse employment action were causally connected. *Gelken v. Democratic Congressional Campaign Committee*, 199 F.3d 1365, 1368 (D.C. Cir. 2000). "Temporal proximity is often found sufficient to establish the requisite causal connection for such claims. *See, e.g.,King v. Preferred Technical Group*, 166 F.3d 887, 893 (7th Cir.1999)." *Id.*

In the instant case, it is uncontested that Ms. Tabb was taking leave for serious symptoms related to diabetes when she was terminated on October 3, 2005. It is likewise uncontested that one of the reasons the Defendants relied upon to justify the termination of Ms. Tabb was that she allegedly abused leave. Plaintiff's Statement of Material Facts ¶ 29. Because the October 3rd termination letter is direct evidence that Ms. Tabb's taking leave contributed to her termination, she has established her *prima facie* case.

Having established her *prima facie* case, the burden now shifts to the Defendants to put forward reasonable and nondiscriminatory reasons for her termination. As has been described in her Memorandum in Support of Summary Judgment and this response to Defendants' Motion for Summary Judgment, there are no reasonable bases upon which the Defendants can rely that justify Ms. Tabb's summary termination. It is clear that Defendants' allegation of leave abuse is unsupported by any evidence in the record. For example, Defendant Donald could not identify what policy or standard Ms. Tabb violated regarding leave. Ms. Donald vaguely stated that she thought that CFSA Human Resources

believed that Ms. Tabb's actions amounted to an abuse of leave. Donald at 195 - 197. However, CFSA Human Resources Manager Deborah Wilson testified that she played no role in the development or verification of the facts used to justify Ms. Tabb's termination. Wilson at 148 - 150. See, also, Charles at 73:18 - 74:4 (he did not make any judgments or recommendations on the leave issue).

Considering the entirety of the record, the Defendants cannot establish that they are entitled to summary judgment because, at a minimum, there are material facts in dispute. However, because the Defendants have established no evidentiary basis to support their allegation that Ms. Tabb abuse leave, Plaintiff is entitled to summary judgment on her claim under the Federal and District family and Medical Leave Acts.

## Conclusion

The Defendants cannot be granted summary judgment on any of Ms. Tabb's claims because there are material facts in dispute. Moreover, the Defendants have virtually no bases to justify the actions taken against Ms. Tabb. The discovery record is so devoid of evidentiary support for the Defendants' claims that it is apparent that CFSA's actions were an abuse of discretion and are wholly unsupported by substantial evidence. Thus, Defendants' Motion should be denied and Plaintiff's Motion for Summary Judgment should be granted.

DATED this 4th  day of June, 2008.

                    Respectfully submitted,

                    */s/Richard E. Condit*

                    _____

                    Richard E. Condit, Esq.
                    **D.C. Bar No. 417786**
                    1612 K Street, NW, Suite 1100
                    Washington, D.C.  20006
                    Telephone: (202) 408-0034 ext. 142
                    Facsimile: (202) 318-3211
                    Email: richardc@whistleblower.org