UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHIRLEY TABB | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA; and | ) | |
| | ) | |
| | ) | |
| BRENDA DONALD WALKER, | ) | CASE No.  06-00789 (PLF) |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S REPLY TO DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Shirley Tabb hereby replies to the Defendants' arguments in opposition

to her motion for summary judgment on her First Amendment and District of Columbia

Whistleblower Protection Act Claims.  In their opposition to Plaintiff Tabb's Motion, the

Defendants' argue that: (1) Ms. Tabb is not entitled to protection under the First

Amendment because (a) she did not speak out about children being forced to sleep in

the CFSA office building as a private citizen, (b) she purportedly disclosed confidential

information about a child and her interests in making the disclosure do not outweigh

the Defendants' claimed interest in protecting confidentiality; (2) Ms. Tabb is not

entitled to whistleblower protection because (a) her communications were not protected

disclosures purportedly because many officials knew that children were sleeping in the

CFSA office building, (b) Ms. Tabb's disclosures do not fall within the enumerated types

of disclosures that are protected by the statute; and ( c) the Defendants had a legitimate

basis to terminate Ms. Tabb because "[s]he gave the media an unaltered copy of the

picture" of the child that was sleeping on a cot too small for her/his size under a desk.[1]

See, generally, Defendants' Memorandum in Opposition at 6 - 15.   In the passages that

follow, each of the issues raised by the Defendants will be addressed in turn.


I.      **Plaintiff Tabb is Entitled to Summary Judgment on Her First Amendment**
        **Claim Because the Defendants' Have Failed to Provide Anything More than**
        **Conclusory Allegations as a Defense**


        Plaintiff has thoroughly addressed the issues raised by the Defendants regarding

her First Amendment protected activities.  See, Plaintiff's Memorandum in Support of

Summary Judgment § IV; Plaintiff's Memorandum in Opposition to Defendants'

Motion for Summary Judgment § I.   However, Plaintiff will briefly address the issues

raised in the Defendants Memo and focus specific attention on any issues not

adequately addressed previously.

---

[1]  This last allegation (Defs Opp Memo at 14 - 15) by the Defendants' is
particularly offensive because it is not supported by a shred of evidence in the record.

**A.      Plaintiff spoke out as a citizen, not as a CFSA Public Information
         Specialist**

The Defendants argue that Ms. Tabb made disclosures about children sleeping in

the building in "her capacity as the Public Information Specialist at CFSA."  Defs Opp

Memo at 8.  This argument is simply not supported by the facts adduced during

discovery.

Ms. Tabb spoke out to the Department of Human Services, then-CFSA Director

Brenda Donald, Mayor's Religious Advisor Susan Newman, Deputy Mayor Neil Albert,

and the news media about children being required to sleep in the CFSA office building

due to inadequate services.  Ms. Tabb's job as Public Information Specialist did not

involve evaluating CFSA's serious programmatic deficiencies and proposing solutions.

No evidence in the record indicates to the contrary.

In fact, the record evidence indicates that: (1) it was the unwritten policy of CFSA

at the time not to report concerns outside of the agency (see, Donald at 75 - 77, 110 -

112); (2) Ms. Tabb was instructed that she could not speak to the media (see, Tabb at 79 -

80); (3) Ms. Tabb was not even permitted to raise an idea at an executive staff meeting

(see, Tabb at 110 - 114); and (4) Ms. Tabb was formally admonished (*i.e.*, warned) for

raising her concerns about children sleeping at CFSA to Religious Affairs Advisor

Susan Newman (see, Donald at 101:13 - 102:6; Charles 74:9 - 74:19, 82:21 - 84:5).  This

extensive evidentiary record makes clear the limitations of Ms. Tabb's position.  Thus,

her communications with government officials about children sleeping in the CFSA

office building was far outside the scope of any of her sanctioned duties as a Public

Information Specialist.

Moreover, it is clear that Ms. Tabb was off duty and on approved leave when she

disclosed to the news media that children were sleeping in the CFSA office building.

Defendant District of Columbia's Response to Plaintiff's Request for Admissions at ¶s 16 - 17.

This fact is not controverted by any evidence in the record.   Thus, even if her disclosures to

government officials was not protected by the First Amendment, Ms. Tabb's disclosures

to the media were clearly protected.  It is simply not credible for the Defendants to

assert that Ms. Tabb protected disclosures to the news media were part of her job

duties.

The Court should hold that Ms. Tabb's communications to other District

Government officials and the media about the problem of children being forced to sleep

in the CFSA office building without appropriate accommodations were protected by the

First Amendment.  Ms. Tabb's actions were in her role as a citizen and not as a Public

Information Specialist at CFSA.

**B.      Ms. Tabb did not disclose confidential information to the media**

The Defendants argue that Ms. Tabb "gave pictures of the child to two television

stations, ABC and CBS . . .  According to the evidence adduced during discovery,

plaintiff gave the media an <u>unaltered</u> copy of the picture, showing the CFSA child's

face." Defs Opp Memo at 11 (emphasis added).  This statement is an unconscionable

distortion of the record.

In an effort to support their argument, Defendants have resorted to misrepresenting the evidence.  The Defendants rely on Ms. Tabb's testimony during her deposition, citing to pages 184 and 244.  Ms. Tabb's testimony recorded on these pages does not support the Defendants' statements.  In fact, these references contradict the claim that Ms. Tabb revealed confidential information.  Ms. Tabb's testimony on page 184 reflects the following:

```
4      Q  And why do you disagree?
5      A  Because shortly after the media stories Uma
6  Ahluwalia or someone from CFSA sent out a
7  communication piece to all staff talking about the
8  outpouring of community sentiment and concern.  And,
9  also, as a result of the media coverage, finally a
10  room was set up in CFSA for children to have some
11  modicum of comfort when they were removed from their
12  homes during the aftermath of the media story.
13      Q  Could you have alerted the media without
14  showing them a picture?
15      A  Yes, I could have alerted them without
16  showing them the picture.
17      Q  Why did you decide to use the picture?
18      A  Because I knew -- I was well aware of the
19  dynamic in the -- among the management team.  I had
20  lost all faith and confidence and trust.
```

Tabb at 184:4 to 184:20.  Nothing in this testimony indicates that Ms. Tabb disclosed any confidential information.

If the testimony reflected on page 184 did not resolve the issue, the testimony reflected on pages 243 to 245 of Ms. Tabb's deposition makes perfectly clear that no confidential information was revealed.

```
12      Q  Now, when you took the picture and for the
13  actions that you took thereafter, including talking to
```

14   the media about the issue of children sleeping in the
15   building, did you know the name of the child?
16       A   No, I didn't.
17       Q   So did you ever provide the name of the
18   child to anyone?
19       A   No, because I didn't know who the child
20   was.
21       Q   Did you know the name of the family?
22       A   No.
1        Q   And so you never presented that name to
2    anyone.
3        A   No.
4        Q   Did you know where the child had lived or
5    where the child came from?
6        A   No, I didn't.
7        Q   What steps did you take, if any, to protect
8    the identity of the child when you shared the picture
9    with the media?
10       A   Well, I told the reporters that that photo
11   was confidential because this was a client and a
12   minor, and they assured me that the face would be
13   obscured.  And I, to be on the safe side, redacted the
14   eyes, took a black marker and blackened out this part
15   of his face (indicating).
16       Q   Let the record reflect you're covering your
17   nose and your eyes.
18       A   Yes, where we are normally identified by
19   our eyes down to about the top of our -- bottom of our
20   nose.
21       Q   Okay.  Now, did you provide the picture to
22   the media folks with the redaction in place?
1        A   Yes, I did.

Tabb at 243:12 to 245:1.  Moreover, the testimony of Defendant Brenda Donald further

establishes that Ms. Tabb did not reveal confidential information to the news media.

Donald at 131:6 - 133:6 (testifying that she could not recognize the features of the child

in the picture used by the news media).

In the face of this overwhelming evidence, the Court should hold that Ms. Tabb did not reveal confidential information and that Defendants cannot sustain any argument to the contrary.  Ms. Tabb should be granted summary judgment holding the District of Columbia and Brenda Donald liable for the violation of her First Amendment rights.

## II.    Ms. Tabb is Entitled to Summary Judgment on Her D.C. Whistleblower Protection Act Claim

For many of the same reasons Ms. Tabb is entitled to protection under the First Amendment, she is also entitled to protection under the District's Whistleblower Protection Act.  D.C. Code §§ 1-615.51 to 615.58.  The Defendants' primary arguments are that a disclosure of illegality, mismanagement, etc. is not protected if others know about it.  Defs Opp Memo at 13.  The Defendants cite no authority for this extraordinary proposition.  Under the Defendants' desired interpretation of the law, if a number of government employees were involved in wrongdoing and one employee took a stand to disclose the wrongdoing, she would not be protected from retaliation because "everyone knew about the alleged protected disclosure, [so] it was not a disclosure at all."  Defs Opp Memo at 13.  This argument is plainly ridiculous and is not supported by the intent of the law.  See, D.C. Code §§ 1-615.51 and 1-615.58.

Next, Defendants argue that Ms. Tabb's disclosures about children receiving improper care at CFSA and being forced to sleep in the office building does not fit any of the enumerated categories of protected disclosures under the Act.  No case law is

cited nor is any thoughtful statutory analysis provided to support this argument.  The

Act defines protected disclosure as follows:

> "Protected disclosure" means any disclosure of information, not
> specifically prohibited by statute, by an employee to a supervisor or a
> public body that the employee reasonably believes evidences:
>
> (A) Gross mismanagement;
> (B) Gross misuse or waste of public resources or funds;
> ©) Abuse of authority in connection with the administration of a public
> program or the execution of a public contract;
> (D) A violation of a federal, state, or local law, rule, or regulation, or of a
> term of a contract between the District government and a District
> government contractor which is not of a merely technical or minimal
> nature; or
> (E) A substantial and specific danger to the public health and safety.

D.C. Code § 1-615.52(a)(6).  In the instant case, Ms. Tabb's disclosures about the

mistreatment children by failing to provide proper accommodations and forcing them

to sleep in the CFSA office building meets several of the enumerated standards for

protected disclosures.

At a minimum, CFSA's failure to provide proper care for children that the

agency removed from their families is "gross mismanagement", "gross misuse or waste

of public resources or funds", and an "abuse of authority."  Such inhumane treatment of

traumatized children is gross mismanagement and misuse or waste of resources

because it is so contrary to the mandate of CFSA to protect and provide for abused and

neglected children.  Further, failure to properly accommodate children is an abuse of

authority because it is hardly legal or ethical in most situations to remove children from

their families only to subject them to neglectful conditions at CFSA.  Such agency-

inflicted neglect is the very reason there has been a class action lawsuit pending against

CFSA for almost twenty years.  See, *e.g.*, *LaShawn A. v. Dixon*, 762 F. Supp. 959 (D.D.C.

1991); *LaShawn A. v. Kelly*, 887 F. Supp. 297 (D.D.C. 1995).  There is simply no credible

basis for the Defendants to assert that Ms. Tabb's disclosures are not protected by the

plain meaning of the terms that define "protected disclosure."

The Court should hold that Ms. Tabb has met all the elements of her

whistleblower claim and is entitled to summary judgment.  The Defendants offer no

facts or legal argument that substantively challenge her claim.


### Conclusion

For all of the foregoing reasons, Plaintiff's Motion for Summary Judgment

should be granted.


DATED this 18th  day of June, 2008.


Respectfully submitted,

*/s/Richard E. Condit*

_____

Richard E. Condit, Esq.
**D.C. Bar No. 417786**
1612 K Street, NW, Suite 1100
Washington, D.C.  20006
Telephone: (202) 408-0034 ext. 142
Facsimile: (202) 318-3211
Email: richardc@whistleblower.org