UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
SHIRLEY TABB,                                       )
                                                    )
                Plaintiff,                          )
                                                    )
        v.                                          )
                                                    )        Civil Action No. 06-0789 (PLF)
DISTRICT OF COLUMBIA and                            )
  BRENDA DONALD WALKER,                             )
                                                    )
                Defendants.                         )
                                                    )
_____)

OPINION

        This matter is before the Court on the parties' cross motions for summary

judgment.  After careful consideration of the parties' papers, attached exhibits, and the entire

record in the case, the Court will deny plaintiff's motion for summary judgment and will grant

defendants' motion for summary judgment in part and deny it in part.[1]

I.  BACKGROUND

        Plaintiff Shirley Tabb worked for the District of Columbia for almost 14 years,

most recently as a Public Information Specialist for the District of Columbia Child and Family

Services Agency ("CFSA").  See Pl. Mot., Plaintiff's Statement of Material Facts ("Pl. Facts")

¶ 1; Def. Mot., Defendants' Statement of Material Facts Not in Genuine Dispute ("Def. Facts")

---

[1]        The papers submitted in connection with this motion include: Defendants' Motion
for Summary Judgment ("Def. Mot."); Plaintiff's Opposition to Defendants' Motion for
Summary Judgment ("Pl. Opp."); Plaintiff's Motion for Summary Judgment ("Pl. Mot.");
Defendants' Opposition to Plaintiff's Motion for Summary Judgment ("Def. Opp."); Plaintiff's
Reply to Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment
("Pl. Rep."); and Defendants' Notice of Supplemental Authority ("Def. Supp.").

¶ 1.  In March 2005, plaintiff contacted a public information officer with the Department of

Human Services about developing a campaign to increase awareness around child abuse and

neglect, reviving the Back to Sleep campaign and other CFSA projects.  See Def. Facts ¶ 6;

Pl. Opp., Plaintiff's Response to Material Facts Asserted by Defendants ("Pl. Resp.") ¶ 6.  In July

2005, plaintiff spoke to Brenda Donald Walker, the CFSA Director, about her concerns that

children were sleeping at the CFSA office building rather than in emergency homes.  See Pl.

Facts ¶ 4; Def. Facts ¶ 7.

On August 15, 2005, plaintiff contacted Susan Newman, Senior Advisor for

Religious Affairs for the Executive Office of the Mayor, to discuss the lack of foster home

resources for CFSA and possible solutions.  See Def. Facts ¶ 9; Pl. Resp. ¶ 9.  Plaintiff

subsequently contacted Deputy Mayor Neil Albert, who was responsible for CFSA performance,

about the problem of children sleeping in the CFSA office building.  See Def. Facts ¶ 10; Pl.

Resp. ¶ 10.  Finally, on September 19, 2005, plaintiff contacted various media outlets to report

the problem that children were sleeping in the CFSA office building.  See Def. Facts ¶ 11; Pl.

Resp. ¶ 11; Pl. Facts ¶ 19; Def. Opp., Defendants' Response to Plaintiff's Statement of Material

Facts Not in Genuine Dispute ("Def Resp.") ¶ 19.  Stories about the issue ran that day or the

following day.  See Pl. Facts ¶ 18; Def. Resp. ¶ 18.  Plaintiff also gave a photograph of a child

sleeping at CFSA to media outlets.  See Pl. Facts ¶ 20; Def. Resp. ¶ 20.

Plaintiff took family medical leave from sometime in March 2005 to on or about

May 9, 2005.  See Def. Facts ¶15; Pl. Resp. ¶ 15.[2]  Plaintiff again took leave from August 18,

---

[2]      Defendants' statement of facts asserts that plaintiff took family medical leave
from March 2005 through July 2005.  See Def. Facts ¶ 15.  Defendants rely entirely on plaintiff's
declaration for this assertion, which, when read in its entirety, makes clear that while plaintiff

2005 through September 2005 because of her diabetes and related health issues.  See Pl. Facts ¶ 14; Def. Resp. ¶ 14.  Plaintiff was still on approved leave at the time she contacted the media about children sleeping in the CFSA office building.  See Pl. Facts ¶ 24; Def. Resp. ¶ 24.

On October 3, 2005, Brenda Walker issued a Notice of Summary Removal to the plaintiff, informing her that she was summarily removed from her position.  See Def. Facts ¶ 12; Pl. Mot., Ex. 2 ("Notice").  The Notice informed plaintiff that the basis for her removal was use of the CFSA email system for an unauthorized campaign to raise awareness about child abuse outside the agency; failure to perform job duties in a competent and timely manner; misrepresentation of agency practice to the media and violation of confidentiality laws; and violation of Family Medical Leave Policy.  See Notice at 1-2.  Plaintiff was notified of her right to provide a written response to the Notice, to be represented by an attorney, and to attend an adversary hearing, after which there would be a notice of final decision.  See Notice at 2. Plaintiff submitted a Response to the Notice of Summary Reversal on October 10, 2005 and requested a hearing.  See Def. Mot., Ex. C at 1, 5. The parties scheduled a hearing for October 27, 2005, but plaintiff did not attend.  See Def. Facts ¶ 14; Pl. Resp. ¶ 14.

On April 28, 2006, plaintiff filed a complaint in this Court asserting violations of her First Amendment rights, her Fifth Amendment due process rights, the D.C. Whistleblower Protection Act ("DC-WPA"), the District of Columbia and federal Family and Medical Leave Acts, and 42 U.S.C. § 1985 for conspiracy.  The Court dismissed the conspiracy claim, as well as the DC-WPA claim against plaintiff's supervisors.  See Tabb v. District of Columbia, 477 F.

---

requested leave in order to care for her mother from March 2005 through July 2005, her mother died before the expiration of the leave period and plaintiff returned to work on or about May 9, 2005.  See Def. Mot., Ex. G ("Tabb Decl.") ¶¶ 13-15.

Supp. 2d 185 (D.D.C. 2007).  Defendants now move for summary judgment on all remaining

claims.  Plaintiff moves for summary judgment on her First Amendment and DC-WPA claims.

II.  DISCUSSION

*A.  Standard of Review*

Summary judgment may be granted only if "the pleadings, the discovery and

disclosure materials on file, and any affidavits [or declarations] show that there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED.

R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986);

Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  "A fact is 'material' if a dispute over it

might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or

unnecessary' do not affect the summary judgment determination."  Holcomb v. Powell, 433 F.3d

at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).

An issue is "genuine" if the evidence is such that a reasonable jury could return a

verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248;

Holcomb v. Powell, 433 F.3d at 895.  When a motion for summary judgment is under

consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are

to be drawn in [the non-movant's] favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.  See

also Mastro v. Potomac Electric Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006); Aka v.

Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc); Washington Post

Co. v. Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989).  On a motion

for summary judgment, the Court must "eschew making credibility determinations or weighing

the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in her favor. Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 550 U.S. 372, 380 (2007) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, 'there is no genuine issue for trial.'") (quoting Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). To defeat summary judgment, a plaintiff must produce more than "a scintilla of evidence to support [her] claims." Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).

## B. Plaintiff's First Amendment Claim

Plaintiff alleges that defendants violated her First Amendment rights by terminating her employment in response to her statements to the media about children sleeping in the CFSA building. For a public employee to make out a *prima facie* case of retaliation in violation of the First Amendment, she must establish that (1) she was speaking as a citizen on a matter of public concern; (2) the government's interest in efficient performance of public services is outweighed by the plaintiff's interest as a citizen in commenting upon matters of

public concern; (3) the plaintiff's speech was a motivating factor for the employer's retaliatory action; and (4) the adverse employment action was not motivated by legitimate, non-pretextual grounds.  See Sanders v. District of Columbia, 522 F. Supp. 2d 83, 89 (D.D.C. 2007); see also Garcetti v. Ceballos, 547 U.S. 410, 417-22 (2006).  It now is established, however, that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  Garcetti v. Ceballos 547 U.S. at 421.  In Garcetti, the plaintiff, a prosecutor, was allegedly retaliated against for a memorandum that he wrote advising his supervisor about how to proceed in a particular case.  See id.  Because the preparation of the memorandum was part of his official duties, the Supreme Court determined that the prosecutor's speech was not protected by the First Amendment.  See id. at 422.

As the Supreme Court noted in Garcetti, the determination of whether a public employee spoke pursuant to his or her official duties, rather than as a citizen, is frequently fact-bound: "The proper inquiry is often a practical one.  Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform."  Garcetti v. Ceballos, 547 U.S. at 424-25.  Furthermore one must carefully consider the forum and audience for an employee's speech in conjunction with the employee's job responsibilities to determine whether the speech is protected by the First Amendment.  For example, in Williams v. Johnson, 537 F. Supp. 2d 141, 143 (D.D.C. 2008), Judge Kollar-Kotelly discussed whether statements made by an employee of the District of Columbia were protected by the First Amendment in two different circumstances.  Judge Kollar-Kotelly concluded that the plaintiff's speech was not protected when she spoke to the Council of the District of Columbia and raised concerns about a particular

contract held by the District, because plaintiff's job duties "required her to provide her findings to senior executive personnel in the District government," and plaintiff was expected to attend the Council meeting and to assist her supervisor in answering questions posed by the Council. Id. at 151.  By contrast, the plaintiff in that case had sufficiently alleged that she was speaking as a citizen, and not pursuant to her official duties, when she subsequently met privately with a particular Council member and raised similar concerns.  See id. at 152; see also Freitag v. Ayers, 468 F. 3d 528, 545 (9th Cir. 2006) (state corrections officer spoke as a citizen when she wrote to a Senator and the Inspector General complaining of sexual harassment in her workplace; an employee does not invariably "lose her right to speak as a citizen simply because she initiated the communications while at work or because they concerned the subject matter of her employment").

          In this case, there are genuine factual disputes regarding plaintiff's job responsibilities, and these factual disputes are material to resolving whether all of plaintiff's statements were made pursuant to her official duties (in which case she would have no First Amendment protection for the alleged retaliation) or whether some were made as a citizen. According to plaintiff, her job duties as a public information specialist included inter-agency communications, publishing in-house newsletters, speaking with new social workers, and raising money through an annual golf tournament.  See Def. Mot., Ex. B ("Tabb Dep.") at 56.  Plaintiff states that her job duties generally "involved communications campaigns as assigned and that she would be knowledgeable about the programs and projects described by those campaigns."  Pl. Resp. at 2.  Defendants characterize plaintiff's job duties more broadly, as requiring her to "be knowledgeable about CFSA program activities, initiatives in the agency and [requiring] her to

7

stay abreast of systemic issues, problems and progress in CFSA."  Def. Facts ¶ 4 (citing Def.

Mot., Ex. E, Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition at 5, incorporated by

reference in Tabb Decl. ¶ 49).  Defendants also rely on plaintiff's deposition at which she

testified that at one point she "was responsible for agency communication plans."  Def Mot., Ex.

D at 66.

        If plaintiff was generally responsible for presenting the public face of the agency

to the District of Columbia government and to the media, and if she expressly spoke in that

capacity when she contacted the Mayor's Office and media outlets in the fall of 2005, then, under

Garcetti v. Ceballos, and cases following it, these statements likely are not protected.  If,

however, plaintiff's duties primarily involved organizing discrete public relations events, such as

charity golf tournaments, she was likely speaking as a private citizen when she spoke to the

Mayor's Office and the media.  The Court finds that there are genuine issues of material fact as

to whether certain statements made by plaintiff — namely, her communications with the Deputy

Mayor and subsequent contacts with the media — were made pursuant to plaintiff's job duties.

The Court therefore cannot determine as a matter of law whether her speech was protected by the

First Amendment.  See Garcetti v. Ceballos, 547 U.S. at 421.

        The parties also dispute whether plaintiff's official job responsibilities included

the legal requirement that plaintiff, a social worker, report suspected incidents of child abuse.

See Def. Facts ¶ 5; Pl. Resp. ¶ 5.  In her deposition, plaintiff answered "yes" when asked: "[A]t

the time you worked for CFSA, did you believe yourself to be a mandatory reporter?"  See Def.

Mot., Ex. S at 240.  The record evidence presented by the parties is sufficiently unclear as to

leave genuine issues of fact that must be resolved at trial — specifically, whether plaintiff's

actual job functions included being a mandatory reporter, or whether her obligation to report was

a state requirement that applies to all social workers, separate and apart from her official duties.

This disputed fact is material because it has been held that public employees who have similar

reporting or disclosure obligations as part of their job responsibilities typically speak pursuant to

their official duties when they make statements relating to those disclosure obligations.  See, e.g.,

Wilburn v. Robinson, 480 F.3d 1140, 1150 (D.C. Cir. 2007) (District of Columbia Office of

Human Rights Director, whose job responsibilities included eliminating discriminatory practices

in employment, was speaking pursuant to her official duties when she made statements about

racial discrimination occurring at work).

Because there are genuine issues of material fact as to whether plaintiff has

asserted a deprivation of her constitutional rights under the First Amendment, there necessarily

also are genuine issues of material fact that must be resolved to determine whether defendant

Brenda Walker is entitled to qualified immunity.  See Pearson v. Callahan, 129 S. Ct. 808,

816-21 (2009) (in considering the question of qualified immunity, a district court has discretion

to consider the two elements — whether the facts alleged make out a violation of a constitutional

right and whether that right was clearly established — in either order).

### C.  Municipal Liability

The District of Columbia seeks summary judgment on the ground that there are no

genuine issues of material fact as to whether plaintiff has a claim for municipal liability under 42

U.S.C. § 1983.  In order to hold a municipality liable for civil rights violations under 42 U.S.C.

§ 1983, the municipality must have acted in accordance with a "government policy or custom,

whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); see Feirson v. District of Columbia, 506 F.3d 1063, 1066 (D.C. Cir. 2007) ("To impose liability on the District under 42 U.S.C. § 1983, [plaintiff] must show 'not only a violation of [her] rights under the Constitution or federal law, but also that the [District's] custom or policy caused the violation.'") (citing Warren v. District of Columbia, 353 F.3d 36, 38 (D.C. Cir. 2004)). Proof of a single incident of unconstitutional activity is insufficient to impose liability unless there is proof that there was a policy in place that was unconstitutional. See Monell v. Dep't of Social Servs., 436 U.S. at 694. Defendants contend that the District of Columba cannot be held liable because plaintiff has failed to demonstrate that the District had a custom or policy of retaliating against employees for exercising their First Amendment rights. The Court agrees.

Plaintiff has not alleged that the District of Columbia had a policy or practice of retaliating against employees for exercising the right to free speech under the First Amendment or that she suffered injury because of any such custom or policy. Nor has plaintiff pointed to any other employee who suffered similar retaliation. The policy or custom must be pervasive to support municipal liability. See Carter v. District of Columbia, 795 F.2d 116, 123-24 (D.C. Cir. 1986). The Court finds that the one incident of alleged retaliation against plaintiff does not qualify as pervasive.

Plaintiff also argues that because defendant Brenda Walker was a final policymaker for the District of Columbia, her decision to fire plaintiff supports a finding of municipal liability. For this argument, she relies on Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986) (plurality opinion) ("[I]t is plain that municipal liability may be imposed for a single

10

decision by municipal policymakers under appropriate circumstances."). The instant case, however, is not governed by Pembaur. While Ms. Walker had the authority to discharge her subordinates, which authority she exercised against plaintiff, she did not have the authority to set employment policy for the District of Columbia — a distinction that is significant in considering the question of municipal liability.[3] As Judge Oberdorfer has held, a municipality is not "liable under § 1983 when the officials responsible for the alleged constitutional deprivation . . . possessed only the authority to make employment *decisions* (i.e. transferring or terminating an agency employee), *not* the authority to set employment *policy* for the City." Fox v. District of Columbia, 990 F. Supp. 13, 20 (D.D.C. 1997) (citing City of St. Louis v. Praproptnik, 485 U.S. 112, 128-30 (plurality opinion); 145-47 (Brennan, J., concurring)) (emphasis in original); see also Pembauer v. City of Cincinnati, 475 U.S. at 484 n.12 ("[F]or example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability.").

Nothing in Ms. Walkers' job duties as identified in the District of Columbia Code, see D.C. Code §§ 4-1303.03(a), (a-1), or in the evidence proffered by plaintiff supports a finding that Ms. Walker was a final decision-maker with respect to employment policy for the District. The Court therefore will grant judgment for the District of Columbia on this claim.

---

[3]    As CFSA Director, Ms. Walker had the authority to terminate personnel. See D.C. Code § 4-1303.03(a-1)(8).

*D. Procedural Due Process Claim*

Assuming that plaintiff had a property interest in her employment, a point uncontested by the parties, see Board of Regents v. Roth, 408 U.S. 564, 577 (1972), the issue is whether plaintiff received adequate process before she was finally terminated from employment.[4] The notice of summary removal notified plaintiff of the District's asserted reasons for terminating her employment — namely, use of the CFSA email system for an unauthorized campaign to raise awareness about child abuse; failure to perform job duties in a competent and timely manner; misrepresentation of agency practice to the media and violation of confidentiality laws; and violation of Family Medical Leave.  See Notice at 1-2.[5]  The notice also informed plaintiff that under District of Columbia regulations she had the right to respond in writing and to participate in an adversarial hearing.  See id.  The Court concludes that this process was adequate under the Due Process Clause.  See Cleveland Board of Education v. Loudermill, 470 U.S. 532,

_____

[4]     The parties dispute whether plaintiff was fired on the date the notice of summary removal was issued, before her opportunity for a hearing, or on the date that the hearing officer issued a notice of final decision, after her opportunity for a hearing.  The notice of summary removal indicates that it is the first step in a multi-step process before a "notice of final decision" issues, implying that employment termination is not final until the employee has an opportunity for a hearing.  See Notice at 2.  Plaintiff does not provide adequate facts or law to challenge this conclusion.

[5]     Although plaintiff argues that the Notice did not inform her with sufficient specificity of the bases for her removal, she could have discovered this additional detail had she followed the procedure identified in the Notice.  See Notice at 2 (stating that "[you] have the right to review any material upon which this proposed action is based . . ." and providing the name and contact information for the hearing officer).  The letter served to provide adequate notice of the general reasons for her dismissal.  See Reeve Aleutian Airways, Inc. v. United States, 982 F.2d 594, 600 (D.C. Cir. 1993) (no procedural due process violation where notice was "adequate to avoid serious risk of erroneous deprivation" and provided "the name of a person in authority for [plaintiff] to contact to seek any additional specification [plaintiff] thought necessary.")

546 (1985) ("The essential requirements of due process . . . are notice and an opportunity to respond.").

Plaintiff submitted a written response contesting the charges in the Notice, but she did not appear on the date scheduled for her hearing because she did not think she would be successful and instead decided to "pursue it through the courts." See Pl. Opp. ¶ 14; Def. Mot., Ex. K ("Tabb Dep. pt. 2") at 197-98. Plaintiff contends that the process was a "sham," but this assertion is not supported by the record evidence. See Pl. Opp. at 19; Pl. Mot., Ex. 6 ("Charles Dep."); see also Lepre v. DOL, Emple. Comp. Appeals Bd., 275 F.3d 59, 71 (D.C. Cir. 2001) ("bald assertions" that proceedings were a "sham" do not support conclusion that procedural due process rights were violated). More importantly, plaintiff's belief that the hearing would be futile, whether well-founded or not, does not excuse her failure to take advantage of the process afforded her. The Court will grant judgment in favor of the defendants on plaintiff's procedural due process claim.

### E.   D.C. Whistleblower Protection Act Claim

Both plaintiff and the District of Columbia move for summary judgment on plaintiff's claim under the D.C. Whistleblower Protection Act. The DC-WPA prohibits certain employment actions and other retaliatory behavior as a result of an employee's protected disclosure. See D.C. Code § 1-615.52 - 615.53. In order to establish a *prima facie* case under the DC-WPA, plaintiff must allege facts establishing that she made a protected disclosure, that her supervisor retaliated or took or threatened to take a prohibited personnel action against her, and that her protected disclosure was a contributing factor to the retaliation or prohibited

personnel action.  See Crawford v. District of Columbia, 891 A.2d 216, 218-19 (D.C. 2006).

It is undisputed that the District of Columbia terminated plaintiff — a prohibited personnel action within the meaning of the DC-WPA.  See D.C. Code § 1-615.52.  Defendant contends, however, that plaintiff did not make a "protected disclosure" because the fact that children were sleeping in the CFSA office was well known.  See Def. Mot. at 18-20.  Under the statute, protected disclosure means:

> [A]ny disclosure of information, not specifically prohibited by statute, by an employee to a supervisor or a public body that the employee reasonably believes evidences:
>
> (A) Gross mismanagement;
>
> (B) Gross misuse or waste of public resources or funds;
>
> (C) Abuse of authority in connection with the administration of a public program or the execution of a public contract;
>
> (D) A violation of a federal, state, or local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature; or
>
> (E) A substantial and specific danger to the public health and safety.

D.C. Code § 1-615.52.

In support of its position, defendant relies on Wilburn v. District of Columbia, 957 A.2d 921, 925-26 (D.C. 2008), in which the District of Columbia Court of Appeals considered the possibility that if a plaintiff's statements were already broadly known they could not be protected disclosures, although it ruled against the plaintiff on other grounds.  Defendant relies on plaintiff's statement that "the fact that children are sleeping in [the CFSA] building

14

[was] a well known fact.  Everyone in the agency [knew] it, as well community [sic]."  Def. Mot. at 19 (citing Tabb Decl. at ¶ 36, incorporating by reference Shirley Tabb's 8/18/05 Response to 8/18/05 Admonition at 4, attached at Def. Mot., Ex. E.).  Defendant maintains that her disclosures therefore were not protected; they were already widely known.  The Court is not persuaded that this evidence is adequate to support a finding that there are no genuine issues of material fact as to whether the content of plaintiff's statements was well known in the community.  The statement itself was not under oath, and appears likely to have been hyperbole. In a subsequent deposition, plaintiff stated: "[I]t's hard to say who all knew because people who were coming in, a social worker coming in early in the morning or working late at night . . . they would see the kids down there."  See Def. Mot., Ex. I at 176; see also Pl. Resp. ¶ 8.

The Court concludes that there are genuine issues of material fact as to whether plaintiff's statements about children sleeping in the CFSA Office were protected disclosures.  For that reason, it will deny both motions for summary judgment on this claim.

*F.  Family and Medical Leave Act*

The District of Columbia asserts that it is entitled to summary judgment on plaintiff's claim under both the District of Columbia and federal Family and Medical Leave Acts, D.C. Code §§ 32-503 et seq., and 29 U.S.C. §§ 2601 et seq.  Defendant asserts that plaintiff has failed to provide evidence that she was entitled to federal family medical leave on the date of her removal or on the date of her termination.  It further asserts that plaintiff was not retaliated against for taking leave.  The Court finds that there are genuine issues of material fact as to how much family medical leave plaintiff took in 2005, and whether she was taking federally protected

15

leave on the date of her removal.  The Court further finds that because the notice of summary

removal included abuse of family medical leave as a basis for plaintiff's removal, and because

defendant has not proffered any evidence of a CFSA policy regarding abuse of family medical

leave, there are genuine issues of material fact relating to whether defendant retaliated against

plaintiff for taking protected leave.

### III. CONCLUSION

For the foregoing reasons, the Court will grant defendants' motion for summary

judgment with respect to plaintiff's claim for municipal liability against the District of Columbia

and with respect to plaintiff's procedural due process claim against both defendants.  The Court

will deny defendants' motion for summary judgment with respect to the First Amendment claims

against both defendants, and the D.C. Whistleblower Protection Act claims and the FMLA

claims against the District of Columbia.  The Court will deny plaintiff's motion for summary

judgment in its entirety.

An Order consistent with this Opinion will be issued this same day.


_/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: March 19, 2009

16